UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION NO. 3:03-CV-0169 (AVC) |
| v. | ) |
| | ) |
| SCHOELLER & HOESCH, NA, INC. and | ) |
| P.H. GLATFELTER COMPANY, | ) |
| | ) |
| Defendants. | ) October 14, 2003 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' FIRST MOTION TO COMPEL**

Ahlstrom Windsor Locks LLC ("Plaintiff"), respectfully submits this Memorandum in Opposition to Defendants Schoeller & Hoesch, NA, Inc. and P.H. Glatfelter Company's ("Defendants") First Motion to Compel, dated September 22, 2003, which seeks: (1) the production of documents listed by Plaintiff as privileged under the attorney client privilege and/or as attorney work product, (2) a detailed claim analysis with respect to Defendants' product(s), and (3) the production of documents which have either been produced or are listed on Plaintiff's privilege log. As will be shown, Defendants are not entitled to the relief requested because they essentially seek privileged information or information as to which the request is premature.

1

ARGUMENT

I. Plaintiff Should Not Be Compelled to Disclose its Privilege Log Documents.

A chart and supporting documents have been timely identified in Plaintiff's privilege log. Defendants' seek access to the chart and documents. In support of their effort, Defendants have quoted extensively from *S.S. White Burs, Inc. et al. v. Neo-Flo, Inc.* 2003 U.S. Dist LEXIS 7718 (E.D. Pa, May 2, 2003). Conveniently, the Defendants failed to point out that in the *S.S. White Burs* opinion at *4, the court specifically stated that privileged matter should be listed in a privilege log and not disclosed.[1] *SS. White Burs* at *4.

Therefore the current dispute concerns two questions: 1) Are the documents identified in Plaintiff's privilege log covered by the attorney work product immunity and / or attorney client privilege? and 2) Are Defendants' entitled to gain access to privileged documents? As demonstrated herein, the answers to these questions establish that Defendants' Motion to Compel should be denied.

Both the work product doctrine and attorney-client privilege protect the chart and supporting documents listed on Plaintiffs' privilege log. The work product doctrine shields from

---

[1] Plaintiff's action is not based on an isolated issue involving Defendants. Rather, the present action was precipitated by Defendants' ongoing infringement of Plaintiff's patented technology. First, the '997 patent was issued to Plaintiff's predecessor-in-interest, The Dexter Corporation, in 1995. Defendants' were selling infringing products at that time, which ultimately resulted in a Settlement Agreement being entered into by the parties in 1999, in accordance with whose terms the Defendants were to cease selling goods that infringed the '997 patent. By this action, Plaintiff asserts that the Defendants are selling infringing products again.

Second, the Defendants have been issued a patent on January 28, 2003 (the '949 patent) which discloses information that establishes that products claimed to be covered by such patents infringe the '997 patent.

Finally, Defendants' Rule 11 *discussion* is a red herring. There is no Rule 11 motion before the Court and issues pertaining to same are not before this Court. The primary focus is the infringement of the '997 patent. As will be shown in a Motion to Compel to be filed by Plaintiff, the Defendants should be compelled to produce documents pertaining to such infringement.

2

disclosure documents and other materials prepared in anticipation of litigation or trial by a party or a party's representative. Fed.R.Civ.P. 26(b)(3); see also *Hickman v. Taylor* 329 U.S. 495, 67 S.Ct 42, 91 L.Ed. 451 (1947); *In re Grand Jury Subpoenas*, 959 F.2d 1158, 1166 (2d Cir. 1992); *EDO Corp. v. Newark Insurance Co.*, 145 F.R.D. 18, 21 (D.Conn 1992). Where the material in issue discloses the mental impressions and legal analysis of an attorney or other representative of the party, the protection afforded may be absolute. *Upjohn Co. v. United States*, 449 U.S. 383, 400-02, 66 L.Ed. 2d 584, 101 S.Ct. 677 (1981). The work product doctrine has been extended to include work done by agents at the behest of the attorney in shaping the foregoing legal analysis for the corporation. See *United States v. Nobles*, 422 U.S. 225, 238-239, 95 S.Ct 2160, 45 L.Ed.2d 141 (1975) (Work product doctrine protects material prepared by attorney or attorney's agent). By establishing a zone of privacy for strategic litigation planning, the work product doctrine prevents one party from piggybacking on the adversary's preparation. *United States v. Aldman*, 68 F.3d 1495, 1501 (2d Cir. 1995). The party invoking the protection of the work product doctrine has the burden of establishing that the documents at issue were prepared in anticipation of litigation. *Helt v. Metropolitan District Commission*, 113 F.R.D. 7, 12 (D.Conn. 1986).

Three conditions must be met in order to earn work product protection. The material must be (1) a document or a tangible thing, (2) prepared in anticipation of litigation, and (3) prepared by or for a party, or by or for its representative. See *Softview Computer Products Corp. v. Haworth Inc.*, 58 USPQ2d 1422, 1427 (S.D.N.Y. 2000). Here, the conditions have been met, as demonstrated through Plaintiff's submission of the privilege log (see privilege log annexed to Defendants motion papers as "Exhibit E", at PRI # 91) and supplemented by the declaration of Michele M. Totonis Esq. (Declaration annexed hereto as an Exhibit), wherein she declares:

3

    1. She is a member of the bar of the State of Connecticut in good standing.

    2. She is the Legal Counsel for Plaintiff Ahlstrom Windsor Locks LLC. She has served in this capacity throughout this matter.

    3. In September 1999 Plaintiff settled an infringement dispute with the Defendants based upon the '997 patent.

    4. In November 2002, she became aware of product(s) being sold or offered for sale by the Defendants that were not identified in the agreement.

    5. She directed tests by Plaintiff's lab personnel to determine if Defendants' product infringed the '997 patent. Based upon those tests, she concluded Defendants' product does infringe the '997 patent.

    6. She created a chart (the "Totonis Chart") from the test results to demonstrate that Defendants' product did not exhibit an appreciable water climb.

  The September 24, 1999 Settlement Agreement clearly sets forth that "[Defendants agree] ... until the ['997] patent expires or is held invalid or unenforceable by a court of competent jurisdiction, [they] will not make, have made, use or sell in the United States of America (a) S & H Grade 012/RL-T and/or "S & H Grade 212/LEUT products, either under the present designation or any other designation; or (b) fibrous web materials for making infusion packages for brewing beverages as covered by one or more claims of the ['997] patent" (see Agreement annexed to Defendants motion papers as "Exhibit M" at para. 2).

  Clearly, as set forth *supra*, Attorney Totonis contemplated the '997 patent and earlier Settlement Agreement in directing testing, all of which formed the "Totonis Chart". Therefore the "Totonis Chart" reflects the mental impressions, conclusions, opinions or legal theories of an attorney. Fed R. Civ. P. 26[b][3]. See *United States v. Nobles*, 422 U.S. 225, 238-239, 95 S.Ct 2160, 45 L.Ed.2d 141 (1975) (Work product doctrine protects material prepared by attorney or

attorney's agent); *Martin v.Monfort, Inc.* 150 F.R.D. 172 (D. Colo. 1993) (studies performed at the direction of general counsel in anticipation of litigation were protected under the work product doctrine); *Vardon Golf Company Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 648 (N.D.Ill. 1994) (attorney initiated tests reflecting on infringement or non-infringement of patent were protected under rule 26[b][3]). "The selection of tests and test data ... surely reflect the attorney's strategy.." *Vardon Golf Company Inc.* at 648. Defendants' characterization of the attorney as a mere data pipeline equivalent to a potted plant ignores the deductive guidance and strategy of Attorney Totonis in the case at bar. The Totonis Chart constitutes opinion work product and is for all intents and purposes afforded greater protection. Disclosure of opinion work product is particularly disfavored and requires far stronger showing of necessity and unavailability. *Loftis v. Amica Mut. Ins. Co.*, 175 F.R.D. 5, 11-12 (D.Conn. 1997).

The Totonis Chart and related documents are also subject to the attorney-client privilege. The documents pertain to the corporation's lawyer seeking information to render advice to the corporation. The chart prepared by Michele M. Totonis Esq. concerns an infringement analysis based upon tests performed at her direction. *In Re Spalding Sports Worldwide Inc.* 203 F.3d 800 (Fed Cir 2000). In *Spalding*, an invention record, including technical information contained therein, constituted a privileged communication as it was provided to an attorney for the primary purpose of securing a legal opinion, or legal services, or assistance in a legal proceeding. *Id* at 805.

The law of attorney-client privilege as recognized by the Second Circuit and the Federal Circuit is not substantially different. In *Aktiebolag v. Andrx Pharmaceuticals,Inc.* 208 F.D.R. 92, FN 6 (S.D.N.Y. 2002) the following documents have been deemed covered by the attorney-client privilege:

> [D]ocuments contain[ing] scientific information, including reports, analyses, and other scientific data communicated between internal Astra scientists and Astra in-house lawyers and forwarded to Kim and Chang lawyers or between internal Astra scientists and Kim and Chang lawyers. These documents were prepared in response to requests by Kim and Chang lawyers, or Astra lawyers on behalf of Kim and Chang lawyers, to conduct scientific investigations of CKD's products and to provide scientific information for the purpose of soliciting legal advice regarding Astra's Korean legal proceedings with CKD. Additionally, [other] documents ... are communications between an Astra employee and Astra's consulting expert ... discussing scientific testing methods for the purpose of providing confidential information to Astra's counsel and soliciting legal advice regarding Astra's Korean legal proceedings with CKD. Astra's claims of attorney-client privilege in these documents are sustained.

*Aktiebolag* at 105. Certainly, the chart and supporting documents fall within the type of documents deemed privileged. See also *Cuno Inc. v. Pall Corp.* 121 F.R.D. 198, 203 (E.D.N.Y. 1988) (In patent infringement action, communications between employees and corporate attorney were protected by attorney-client privilege). Here, the conditions for establishing entitlement to attorney client protection have been met through submission of the privilege log supplemented by the declaration of Michele M. Totonis Esq. setting forth specific facts addressing the primary purpose of the relevant communication, as discussed in *Spalding* and *Aktiebolag*. Therefore, Plaintiff should not be compelled to disclose the Totonis Chart, nor the supporting documentation.

II. <u>The Plaintiff has Answered Interrogatory No. 1 Consistent With Discovery.</u>

Defendants' Interrogatory No. 1 (b), (c) & (d) asks the Plaintiff to set forth its claim construction. The Defendant relies on the case of *S.S. White Burs, Inc. v. Neo-Flo, Inc.*, 2003 U.S. Dist. LEXIS 7718 (E.D. Pa. May 2, 2003) as the basis for such a request. However, in *Conopco, Inc. v. Warner-Lambert Co.*, 2000 U.S. Dist. LEXIS 1601 (D.N.J. Jan 26, 2000), which is cited in *S.S. White Burs*, the court ruled that while in the early stages of discovery, any claim construction should await compliance by the party seeking such construction. *Conopco* at 5. Discovery in this matter is in the early stages. Defendants have not as yet complied with their

obligations to respond to Plaintiff's discovery requests. Thus, Plaintiff should not be compelled to provide its claim construction at this time. Moreover, Interrogatory No.1 is a contention interrogatory and should be addressed by Plaintiff at the end of discovery. *McCarthy v.Paine Webber Group Inc.*, 168 F.R.D. 448, 450 (D Conn 1996) (Because of their nature, contention interrogatories are more appropriate after substantial amount of discovery has been conducted.)

Defendants' Interrogatory No. 1 (a) asks the Plaintiff to identify all of Defendants' products that are alleged to infringe each claim. Defendants overlook that its web materials are combined with other "components" to be sold in final product(s) to consumers. The Plaintiff asserts that at least one of Defendants' web materials, namely "Dynacrimp," has been combined into teabags which infringes claims 1 and 10 of the '997 patent and sold or offered for sale to consumers by Redco Foods and/or its parent company Teekane, whose products include tea bag brands such as Red Rose and Salada; Unilever Best Foods North America, whose products include brands such as Lipton; Tetley Tea Company whose products include Tetley and Tetley Southern Tea; and/or Riley Foods. Plaintiff submits that identifying one infringing product is a sufficient response. Because Defendants have not produced all the samples of their web materials requested by Plaintiff, Plaintiff does not have the results of further testing. Plaintiff will, of course, augment its response once Defendants provide the missing samples of their products.

Defendants' Interrogatory No. 1 (e) & (f) asks the Plaintiff to set forth an element by element comparison of each claim and corresponding structure or function of each accused product. First, given the status of the discovery to date, this amounts to a contention interrogatory which should be deferred until the end of discovery. *McCarthy v.Paine Webber Group Inc.*, 168 F.R.D. 448, 450 (D Conn 1996).

Secondly, the pertinent art and complexities in this case are substantial. In *B. Briaun Med. V. Abbott Lab*, 155 F.R.D. 525, 1994 U.S. Dist. LEXIS 5042 (E.D. Pa. 1994), the court did require an element by element analysis because, unlike the present case, there was only one product, i.e., a valve that allegedly infringed the patent. In that case, such a comparison served to clarify and narrow the scope of the dispute. Thus, the court reasoned that even though the requested analysis involved a contention, the response should not be deferred. *B. Briaun at 527*. In contrast, in the case at bar there are numerous products to be considered and analyzed, more than two thirds of which have never been produced by Defendants nor seen by Plaintiff. Lastly, documentary discovery, testing of Defendants' samples and testimonial discovery remain to be completed, not because Plaintiff has dawdled but because Defendants have stubbornly refused to produce all its product or its documents. *Fischer and Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992) as cited by *B Briaun*. Therefore, an element by element analysis is premature pending the production of Defendants' products for testing.

III. <u>The Plaintiff has Answered Defendants' Document Request Nos. 5, 9, 15 and 20.</u>

Plaintiff has provided over 300 responsive documents to the Defendants and is aware of the continuing obligation to provide any other responsive documents that should come into the Plaintiff's possession or control. The Defendants' characterization that these documents are not responsive based upon their respective date is misplaced. The '997 patent, which issued in 1995, is the basis for this infringement action. Therefore, any analysis of that patent is certainly relevant to the present action. The same invention giving rise to the Settlement Agreement of September 1999 is being considered in the case at bar. Therefore, for example, the opinion letter dated March 31, 1999 is relevant to ongoing infringement. It has been amply demonstrated that Defendants are in possession of information that will lead to greater discovery.

8

## CONCLUSION

Defendants have not demonstrated the requisite need to warrant an order from this Court compelling production of the foregoing privileged documents. Furthermore, as to Interrogatory 1(a), Plaintiff is unable to respond fully because Defendants have not produced all requested samples or its products. As to Interrogatory 1(b), (c) and (d), these interrogatories are premature and their answers should await the completion of discovery. As to Interrogatories 1(e) and (f) these are contention interrogatories, the answers to which should await further discovery. Wherefore, the Plaintiff respectfully asks this Court to deny Defendants' motion in its entirety.

        THE PLAINTIFF,
        AHLSTROM WINDSOR LOCKS LLC
        BY McCARTER & ENGLISH, LLP
        ITS ATTORNEYS

Date: October 14, 2003      By _/s/ E. E. Grondahl_
        ERIC E. GRONDAHL (CT 08988)
        BASAM E. NABULSI (CT 20897)
        Four Stamford Plaza
        107 Elm Street
        Stamford, CT 06902
        (203) 324-1800
        (203) 323-6513 (fax)
          -and-
        MYRON COHEN, ESQ. (CT 15349)
        YUNLING REN, ESQ. (CT 21078)
        Cohen, Pontani, Lieberman & Pavane
        551 Fifth Avenue
        New York, NY 10176
        (212) 687-2770
        (212) 972-5487 (fax)