IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AHLSTROM WINDSOR LOCKS LLC, | : | |
| | : | |
| Plaintiff | : | CASE NO.: 3:03-CV-0169-AVC |
| | : | |
| v. | : | |
| | : | |
| SCHOELLER & HOESCH, NA, INC., | : | |
| | : | |
| and | : | |
| | : | |
| P. H. GLATFELTER COMPANY | : | |
| | : | |
| Defendants | : | OCTOBER 27, 2003 |

**DEFENDANTS' REPLY REGARDING ITS FIRST MOTION TO COMPEL**

Plaintiff apparently believes it is entitled to have its cake and eat it too. In a letter to the undersigned dated August 20, 2003 (attached to Defendants' First Motion to Compel as Exhibit G), Plaintiff took the following position with regard to Defendants' obligation to disclose water climb test results conducted by Defendants on Defendants' own products:

> Your privileged document no. 1 is described as "E-mail re: water climb test results"; Document No. 9 is described as "E-mail with handwritten notes re: paper samples and testing procedures"; and Document No. 10 is described as "E-mail with attachment outlining water climb and other testing procedures". **Although these documents themselves may be privileged, the facts discussed in these documents are not.** Please produce all documents relating to the "water climb test results", the "testing procedures" and the "attachment outlining water climb and other testing procedures" indicated above." (emphasis added)[1]

---

[1] Defendants note that two of the three privileged documents referenced by Plaintiff in its August 20 letter were prepared by Defendants <u>after</u> the institution of this litigation (privileged doc. no. 9 on May 21, 2003, and privileged doc. no. 10 on May 28, 2003), unlike the Totonis table which was prepared <u>prior to</u> the start of this litigation. Local Rule 37(a)(1) "requires preparation of a privilege log with respect to all

(continued . . .)

-2-

Yet now, when it comes to *Plaintiff's* obligation to disclose the results of water climb tests allegedly conducted by *it* on one or more of Defendants' (and Plaintiff's) products, Plaintiff takes the exact opposite position:

> Both the work product doctrine and attorney-client privilege protect the chart [i.e., the table indicating the hot water test of Ahlstrom and S&H products, with comments and notes, prepared by Michele Totonis, Esquire, in-house counsel for Plaintiff, prior to the institution of this litigation] and supporting documents listed on Plaintiffs' privilege log.

Plaintiff's Memorandum in Opposition to Defendants' First Motion to Compel, p. 2 (referred to hereinafter as "Plaintiff's Opposition Memorandum").

It is also ironic that Plaintiff - upon whom the burden to establish infringement lies in this case - has failed to produce or identify any other documents demonstrating the basis for and nature of its allegations, and yet at the same time has the gall to assert that it is actually *Defendants* who "should be compelled to produce documents pertaining to such infringement." Plaintiff's Opposition Memorandum, p. 2 (fn. 1). Defendants have been more than forthcoming -- having turned over (1) water climb test results of its own, (2) documents disclosing the highly confidential chemical compositions of various of Defendants' allegedly infringing products and (3) actual sample sheets of all six of Defendants' grades of non-heatsealable tea bag papers (totaling over 60 sheets in all) for testing by Plaintiff. Defendants will postpone further discussion of the one-sided nature in which discovery has been conducted in this case until it files its opposition to the threatened (but as-yet unfiled) motion to compel mentioned in

---

documents withheld on the basis of a claim of privilege or work product protection <u>except</u> the following: written communications between a party and its trial counsel **after commencement of the action** and the work product material created **after commencement of the action**" (emphasis added), and as such Defendants would have been fully entitled to omit these two documents from its privilege log. Nevertheless, they were in fact listed, and indeed it must be noted that Defendants have actually produced such water climb testing data and supporting documents. *See, e.g.*, Defendants Doc. Nos. D 0074 – D 0082 and D 0160, attached hereto as Exhibit 1.

Plaintiff's Opposition Memorandum (at page 2, fn. 1). In this Reply, Defendants respond simply to Plaintiff's utter lack of production of any documents responsive to the disputed discovery requests of Defendants, and its improper withholding of information that is clearly neither privileged nor work product.

It is important for the Court to understand that Plaintiff has not, as it misleadingly states in its Opposition Memorandum, timely identified "a chart *and supporting documents*." Plaintiff's Opposition Memorandum, p. 2 (emphasis added). Defendants defy Plaintiff to point to any other documents it has produced or identified on its privilege log that support or even relate to the Totonis table, for no such documents have been so produced or identified. To date, it is the Totonis table and the Totonis table alone that has been identified. Inasmuch as there obviously are, as Defendants suspected all along and as Plaintiff freely admits, "supporting documents" that relate to the Totonis table, Plaintiff must be required to produce them now. There is simply no excuse for Plaintiff having withheld such documents for this length of time; that they continue to be withheld is a total affront to this Court, Defendants, and the Federal Rules of Civil Procedure.

Nothing contained in the Declaration of Michele Totonis, presented for the first time in this litigation as an attachment to Plaintiff's Opposition Memorandum,[2] does anything to alter the conclusion that the Totonis table embodies, in whole or in part, factual information that cannot be characterized as privileged or work product and thus withheld on those bases. If anything, the Totonis Declaration only reinforces the conclusion that the Totonis table does contain non-privileged, non-work product factual information, when Ms. Totonis states "I created a chart from the test results to demonstrate that Defendants' product did not exhibit an appreciable water

---

[2] Defendants wonder how it was possible for Plaintiff to serve its Memorandum accompanied by the Totonis Declaration on October 14 as indicated in its Certificate of Service, the day **before** the Totonis Declaration was even executed (October 15).

climb." Declaration of Michele Totonis, ¶ 6 (attached to Plaintiff's Opposition Memorandum as Exhibit 1). Clearly, then, all or a portion of the Totonis table must consist of a tabulation of the numerical water climb values exhibited by Defendants' product and observed, measured and/or recorded by the lab personnel of Plaintiff who were directed by Ms. Totonis to conduct the tests. That is, to determine whether Defendants' product satisfied the '997 patent's claim limitation calling for "no appreciable water climb," it would be the numerical water climb values themselves and only those values which one would look to in order to "demonstrate that Defendants' product did not exhibit an appreciable water climb." To the extent it is the supposed "notes and comments" of Ms. Totonis to which Plaintiff has ascribed privileged and/or work product status, Plaintiff must – at a minimum - produce the Totonis table with the notes and comments redacted, as well as all underlying documents that led to the generation of the Totonis table.

Defendants did not - as claimed by Plaintiff in its Opposition Memorandum - "conveniently" fail "to point out that in the *S.S. White Burs* opinion … the court specifically stated that privileged matter should be listed in a privilege log and not disclosed." Plaintiff's Opposition Memorandum, p. 2. Defendants did not address this point because it is an obvious one with which neither Defendants, nor any reasonable litigant with even a minimal understanding of the rules of procedure, could dispute. Plaintiff's accusation simply demonstrates that it clearly misses the point of both Defendants' brief and the *S.S. White Burs* case, which is that documents such as the Totonis table and any documents or information underlying or related to the Totonis table are <u>not</u> privileged in the first place, and therefore are <u>not</u> the sort which may be listed on a privilege log and withheld from production.

Instead, an examination of the cases cited in Plaintiff's Opposition Memorandum reveals that it is actually Plaintiff who is guilty of "conveniently" failing to completely and accurately describe the facts and holdings of the cases it relies upon. For example, Plaintiff cites *Vardon*

*Golf Company, Inc. v. BBMG Golf Ltd*, 156 F.R.D. 641, 648 (N.D. Ill. 1994) for the proposition that "attorney initiated tests reflecting on infringement or non-infringement of patent were protected under rule 26[b][3]." Plaintiff's Opposition Memorandum, p. 5. Yet what Plaintiff fails to point out is that in *Vardon*, the tests in question were tests that had been conducted by the defendant on defendant's own product, and perhaps more importantly, were ones that were conducted <u>after</u> the commencement of the litigation. The obvious distinctions are that (1) documents developed once suit has been initiated are given much more protection than those developed prior to suit (see, e.g., *Vardon*, 156 F.R.D. at 647, characterizing such documents generated after the commencement of litigation as fitting "the classic definition of work product") and (2) the burden of establishing infringement lies with the plaintiff, and as such, in its discovery responses "somehow, there had to be a specification of the infringement charges." *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir. 1981).

     Plaintiff paints a similarly incomplete picture with respect to *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 203 (E.D.N.Y. 1988), cited by Plaintiff for the proposition that "[i]n patent infringement action, communications between employees and corporate attorney were protected by attorney-client privilege." Plaintiff's Opposition Memorandum, p. 6. Plaintiff fails to note, however, that in *Cuno* the communication in question contained information culled from other sources, namely, inventors' notebooks. Those inventors' notebooks were described by the court as "non-privileged sources," and in fact the inventors' notebooks *were actually produced* by the plaintiff to the defendant.[3] 121 F.R.D. at 202. Thus the defendant in *Cuno* was not deprived of

---

    [3] The court in *Cuno* also held as non-privileged a document that in its description sounds very much like the Totonis table:

> In that one case (Item 37), I find simply that Cuno has not met its burden. The cover sheet which seeks to set forth the basis for the attorney-client privilege is inherently contradictory. It asserts no privilege to the communication itself which was made to counsel, but to counsel's notes on that document. Yet the basis for the assertion of the

(continued . . .)

the information contained in the disputed communication, but was merely denied access to the communication between the inventor and counsel. Likewise, in the present action, the information and documents which underlie, support or otherwise relate to the Totonis table, as well as the non-privileged portions of the Totonis table, must be produced.

A more appropriate case for the Court to consider in deciding Defendants' First Motion to Compel is *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577 (7th Cir. 1981). The patents asserted by the plaintiff Loctite contained claims specifying a series of ingredients and the quantities of those ingredients which had to be present, much like that required by the claims of the '997 patent[4] which in addition to calling for the product to be made up of certain chemical compounds in specified amounts further require the product to display certain physical attributes (such as the exhibition of "no appreciable water climb"). Despite it being "Loctite's burden … to prove the presence in the specified quantities of the allegedly infringing ingredients in Fel-Pro's products,"

---

> privilege is that the notes reflect Zall's [Plaintiff's in-house general counsel] understanding of a "confidential" communication. Thus on the one hand Cuno asserts no privilege to the communication but on the other hand claims it is confidential for the purposes of asserting a privilege to counsel's notes.

121 F.R.D. at 205.

[4] For example, Claim 1 of the '997 patent, which is representative of all of the claims of the patent, reads as follows:

> 1. A fibrous web suited for making infusion packages for brewing beverages and exhibiting improved resistance to the failure of a mechanical seam therein, said web comprising a porous fibrous sheet material impregnated throughout its extent with about one percent or more by weight of a hydrophobic treating system comprising a cured hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials, the impregnated sheet material exhibiting no appreciable water climb when measured using water at a temperature of about 100º C and no substantial loss of infusion characteristics while providing less than 10 percent failure in the mechanical seam upon exposure to boiling water.

Loctite's complaint – like Plaintiff Ahlstrom's in the instant case - identified neither the ingredients nor the quantities. *Id.* at 579. Fel-Pro sought to obtain through discovery, to no avail, the data and test results upon which Loctite based its infringement charges. Such efforts included a fruitless Rule 30(b)(6) deposition of Loctite's in-house patent counsel who refused to disclose the test results of Fel-Pro's products upon which Loctite based its complaint, stating that they were irrelevant and that they were protected by the attorney-client or work-product privileges, or both.[5]

In affirming the district court's outright dismissal of the plaintiff's complaint and award of fees to the defendant, the 7th Circuit stated:

> It was clear from the numerous directives of the district court and warnings about possible sanctions that discovery was not proceeding well. Yet Loctite chose to resist disclosure over assisting in the expeditious resolution of the suit. Its arguments on appeal are not persuasive. Loctite instituted and fought to maintain this patent infringement action. **It was Loctite's duty to identify the basis for the suit.** Infringement can only be proven where there is an identity of the ingredients in the same proportion as the patent claims provide. "It is not enough … for the purpose of establishing infringement to show that someone else has made, by using different ingredients, a composition that has the same useful qualities." [citation omitted] "(Every) element … is conclusively presumed to be essential and therefore every element … must be found in the accused device or there is no infringement." [citation omitted]

---

[5] On October 21, 2003, Defendants in the present action served a Rule 30(b)(6) deposition notice on Plaintiff, calling for a deponent with knowledge regarding, *inter alia*, (i) the factual and legal bases for Plaintiff's contention that "least claims 1 and 10 of the patent-in-suit are believed to be infringed, either literally or under the doctrine of equivalents, by Defendants' product(s) such as Dynacrimp…."; (ii) all facts regarding the chemical composition and/or physical properties of each such product (including any reason why Plaintiff believes that such a product is covered by the claims of the '997 Patent)"; and (iii) any and all research, testing and investigations performed by, for or on behalf of Ahlstrom to determine facts to support Ahlstrom's claims of infringement. In light of Plaintiff's discovery abuses thus far, Defendants fully expect Plaintiff to be similarly uncooperative with respect to the 30(b)(6) deposition (currently scheduled for November 10).

> **In a chemical patent, there is no way to show that these elements exist in the accused product without utilizing highly technical tests performed by experts. In order to establish that a justiciable controversy existed, Loctite had to have test results showing the existence of infringing ingredients in specific amounts in Fel-Pro's products. Thus, the production of test results was not only relevant, but essential to the case.**
> Loctite's attempts to shelter them under the attorney-client and/or work-product privileges cannot stand.

*Loctite Corp.*, 667 F.2d at 582 (emphasis added).

The court also found that a letter produced by Loctite which contained a list of Fel-Pro's allegedly infringing products was not enough to sustain the burden of production which Loctite bore. Instead, to be fully compliant Loctite would have had to produce information regarding *quantities* and *ingredients*. *Id.* at 581. Because Loctite refused (or was otherwise unable) to do so, the court – in affirming the award of attorneys fees - concluded that Loctite "initiated suit with unconfirmed data to support infringement, [and] refused to produce test reports which would substantiate the charges." *Id.* at 584.

Plaintiff states in its Opposition Memorandum at footnote 1 that "[b]y this action, Plaintiff asserts that the Defendants are selling infringing products again," i.e., subsequent to the 1999 Settlement Agreement in which Defendants agreed not to sell products covered by one or more claims of the '997 patent. Yet in light of Plaintiff's discovery responses to date, it would appear that there is not a single document in Plaintiff's possession, custody or control which is responsive to any of Defendants' discovery requests, including those at issue in Defendants' First Motion to Compel directed primarily to determining the basis for and nature of Plaintiff's infringement allegations, from:

- *the entire year 2000* (other than Pri. #50, described as a facsimile letter from A. Meirhoefer to M. Donnan, Esquire regarding "Schoeller & Hoesch Sales of 'Leaker Proof' Infusion Products");
- *the entire year 2001*;

- *the entire year 2002* (other than the Totonis table); and
- *the entire year 2003* (other than AWL 00213 and AWL 00214, relating simply to the payment of the '997 patent's 8th-year maintenance fee to the USPTO).

Defendants are hopeful that an Order from this Court directing Plaintiff to produce all responsive, non-privileged documents and identify all responsive, privileged documents, will be the impetus Plaintiff needs to finally start complying with the discovery rules. Failure thereafter to so comply and produce/identify documents supporting the basis for Plaintiff's infringement allegations can then only mean one thing: Plaintiff failed to do the necessary pre-filing investigations, and Defendants can then take the appropriate measures to address such failure.

**CONCLUSION**

"Where the benefit to the resolution of the suit outweighs the potential injury to the party from whom discovery is sought, as is clearly true in the case before us, disclosure is required." *Loctite Corp.*, 667 F.2d at 582. The same can be said for the instant dispute. Defendants have the right to refute Plaintiff's evidence of infringement, and information on any and all tests conducted by Plaintiff, including those the results of which are contained in the Totonis table, are without question relevant for that purpose. *Id.* at 580.

Clearly the information sought by Defendants is uniquely within the possession of Plaintiff - only Plaintiff can speak to what its basis is for its infringement allegations. Therefore, there can be no dispute that Defendants are in substantial need of this information, and have no means whatsoever for obtaining the substantial equivalent of the information sought. "A party should not be allowed to conceal critical, non-privileged discoverable information, which is uniquely in the knowledge of the party and which is not obtainable from any other source, simply by imparting the information from its attorney and then attempting to hide behind the work product doctrine …." *Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*, 208 F.R.D. 92, 106-07

(S.D.N.Y. 2002).

      Defendants urge the Court to prevent the situation that ensued in *Loctite Corp.*, where the plaintiff engaged in "three years of evasiveness and resistance to discovery" without ever fully apprising the defendant of the charges against it, and order Plaintiff to produce the Totonis table, all documents underlying, supporting and/or related to the Totonis table, and documents and information fully responsive to Defendants' Interrogatory No. 1 and Request for Production Nos. 5, 9, 15 and 20.

                                                                                                                                                                            ROBINSON & COLE LLP

                                            By_____/S/_____
                                               Dina S. Fisher (ct 14896)
                                               280 Trumbull Street
                                               Hartford, CT  06103-3597
                                               Tel. No.: (860) 275-8200
                                               Fax No.: (860) 275-8299
                                               dfisher@rc.com

                                               Marc J. Farrell (ct 24539)
                                               REED SMITH LLP
                                               213 Market Street, 9th Floor
                                               P.O. Box 11844
                                               Harrisburg, PA  17108-1844
                                               (717) 257-3044
                                               mfarrell@reedsmith.com

                                               Attorneys for Defendants,
                                               Schoeller & Hoesch, NA, Inc. and
                                               P. H. Glatfelter Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by means of facsimile and United States mail, first class, postage prepaid, upon the following on this 27th day of October, 2003:

Basam E. Nabulsi, Esquire
McCarter & English
Four Stamford Plaza
Stamford, CT  06904-0120

Sidney R. Bresnick, Esquire
Cohen, Pontani, Lieberman & Pavane
551 Fifth Avenue
New York, NY  10176

/S/
Dina S. Fisher

Counsel for Defendants,
Schoeller & Hoesch, NA, Inc., and
P. H. Glatfelter Company