IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AHLSTROM WINDSOR LOCKS LLC, | : | |
| | : | |
| Plaintiff | : | CASE NO. 3:03-CV-0169-AVC |
| | : | |
| v. | : | |
| | : | |
| SCHOELLER & HOESCH, NA, INC., | : | |
| | : | |
| and | : | |
| | : | |
| P. H. GLATFELTER COMPANY | : | |
| | : | |
| Defendants | : | NOVEMBER 7, 2003 |

**DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION FOR ENTRY OF AN AMENDED SCHEDULING ORDER AND ASSOCIATED EXTENSION OF TIME**

Defendants Schoeller & Hoesch, NA, Inc. and P. H. Glatfelter Company (collectively, "Defendants") submit this Objection to Plaintiff's Motion for Entry of an Amended Scheduling Order and Associated Extension of Time ("Plaintiff's Motion for Extension of Time"), wherein Plaintiff requested that all remaining dates be extended by eight months (except for the dates associated with the parties' expert reports which Plaintiff asks be extended by six months). For the reasons set forth below, Defendants respectfully submit that no such extensions are necessary in this case, let alone the exorbitant amounts of time sought by Plaintiff.

Defendants have been, and continue to be, sympathetic to the plight of Attorney Cohen, and do not intend for Defendants' unwillingness to agree to the extension sought by Plaintiff to

be construed as anything to the contrary.[1] However, whereas a situation involving an illness such as Attorney Cohen's might ordinarily justify the granting of whatever extension sought by the requesting party, the circumstances here do not justify the extension requested by Plaintiff.

First, Plaintiff's motion fails to mention that it currently has no fewer than *six* attorneys assisting in connection with this case, all of whom have been actively involved in the case to one degree or another.[2] For this reason, it is difficult to conceive how Attorney Cohen's unfortunate illness and subsequent withdrawal from an active role in this case could possibly necessitate the extension sought by Plaintiff.

Further, given Plaintiff's own previous characterization of this case as being relatively simple, Attorney Bresnick - even without the support of the five other attorneys assisting on behalf of Plaintiff - ought to need very little in the way of "getting up to speed" time. In opposing Defendants' Motion to Bifurcate, Plaintiff insisted that "the instant case is not complex, it involves only a single patent with only 16 claims, essentially one defendant, and one type of product." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Bifurcate, p. 8. It addition, Plaintiff argued that delay in this case would severely harm its interests by preventing a resolution from being achieved as quickly as possible. "[A] prompt and final determination of its claims is critical not only to [Plaintiff] recovering for Defendants' conduct,

---

[1] For example, in connection with Defendants' Motion to Bifurcate, Plaintiff sought an extension of time to respond to same due to Attorney Cohen's illness. Defendants agreed to give Plaintiff 14 additional days, the undersigned stating in an e-mail to Yunling Ren dated August 19, 2003, in part: "I am certainly sympathetic to [Attorney Cohen's] plight, and continue to wish him a speedy and safe recovery." See Exhibit 1, attached hereto.

[2] Attorneys Yunling Ren from Cohen Pontani Lieberman & Pavane, and Basam Nabulsi and Alexandra Stevens from McCarter & English (previously Cummings & Lockwood), have each been involved in this case from the beginning. In fact, the undersigned has had much more interaction with Attorney Ren throughout this case than with Attorney Cohen himself. Attorneys Sidney Bresnick from the Cohen firm and Eric Grondahl from McCarter & English have both recently entered appearances. A sixth attorney, identified as Tom Keating and believed to be associated with Attorney Bresnick and/or the Cohen firm, was an active participant in an October 30 conference call amongst counsel for all parties.

but also to put a stop once and for all to Defendants' continued infringement of the '997 patent." Id, at 11. Yet despite the Court having granted Defendants' Motion to Bifurcate (thereby already lengthening this case, if Plaintiff's view is accepted), Plaintiff appears content to see this case further delayed by a period of eight additional months. Once again, as with Plaintiff's Opposition to Defendants' Motion to Compel,[3] Plaintiff appears intent on taking a certain position with regard to a particular issue in one context, and then taking the entirely opposite position on that same issue in a different context when its previous position no longer suits its interests.

If Plaintiff's Motion for Extension of Time is granted, a trial on the liability phase of the case will not take place until December 30, 2004. In the unlikely event that Defendants do not prevail at the liability trial, discovery and a trial on the damages/willfulness phase of the case would then not take place until 2005 at the earliest. While such a scenario is apparently now acceptable to Plaintiff, it most definitely is not to Defendants. Defendants continue to sell their products, but are doing so under a cloud of uncertainty. Thus, Defendants are desirous of concluding this case - one way or the other - as soon as possible.

Regarding the so-called "discovery issues" alluded to as being the other ground for prolonging this case, Defendants take extreme exception to Plaintiff's description of the manner in which discovery has been conducted thus far, as well as characterization of the supposed issues that remain outstanding. Defendants have addressed in other papers filed with this Court several of the various disagreements they have had with Plaintiff involving discovery, including a pending motion to compel regarding Plaintiff's lack of production of any documents or other

---

[3] In its Opposition to Defendants' First Motion to Compel, Plaintiff argued on the one hand that it need not produce the Totonis table or any other documents or information demonstrating the basis for and nature of its allegations, and yet at the same time insisted that *Defendants* "should be compelled to produce documents pertaining to such infringement." Plaintiff's Memorandum in Opposition to Defendants' First Motion to Compel, p. 2 (fn. 1).

information supporting its claims of infringement, as well as the parties' continued dispute over what grades of paper are relevant to this litigation. Plaintiff indicated in its October 14 Motion for Extension of Time that the discovery issues which it believes justify the granting of its motion would be the subject of a motion to compel to be filed "within the next several days." Yet to date no such motion to compel has been filed. Given that the one of two grounds upon which Plaintiff's Motion for Extension of Time rests is these supposed "discovery issues," and given that Plaintiff has allowed 3½ weeks to pass and has still not yet brought these issues before the Court as promised, Defendants respectfully submit that Plaintiff's Motion for Extension of Time ought not to be granted on the basis of "discovery issues."

In addition, Plaintiff's reliance on the alleged failure of Defendants to produce samples of various papers requested by Plaintiff is similarly unfounded. First, Plaintiff has had samples of one of Defendants' two available binder-containing, non-heatsealable grades of tea bag paper for nearly three months (samples of Grade 212/L-TA were produced on August 11, 2003), as well as samples of three non-binder-containing grades (212/LU a.k.a. 212/LGU; 012/RL; and 212/L).[4] Samples of the only other available grade of binder-containing, non-heatsealable paper (212/RL-TA) were provided a month and a half ago on September 17. Samples of the sixth and final available grade of non-heatsealable paper, binder-free 213/L, were provided on October 20.

Second, the testing which Plaintiff is likely to perform on Defendants' products is not unduly sophisticated, and certainly is not the sort which requires inordinate amounts of time. In particular, the critical "no appreciable water climb" element of Plaintiff's patent claims can be easily tested essentially by dipping a strip of Defendants' paper part-way into a beaker of water

---

[4] It is and has been Defendants position that its grades of paper which do not contain binder are wholly irrelevant to this litigation. Nevertheless, in order to avoid troubling this Court with a needless discovery dispute, Defendants have willingly provided samples of each of its available binder-free, non-heatsealable grades (consisting of 212/LU, also referred to as 212/LGU, 012/RL, 212/L and 213/L) to Plaintiff for testing.

for 400 seconds, and then measuring the distance which the water traveled, if any, up the strip.[5] Thus, Defendants cannot be said to be the cause of the supposed delay in Plaintiff's expert reports.[6]

Interestingly, despite the supposed "discovery issues" which Plaintiff insists mandate an eight-month extension, and despite Plaintiff's insistence that the extension which it seeks is necessary in order for Attorney Bresnick to get "up-to-speed," both Plaintiff and Defendants have continued to vigorously pursue discovery. On October 30, counsel for all parties held a conference call in an effort to resolve all outstanding discovery issues. As a result of that call, it was confirmed that both Defendants and Plaintiff believe they have produced or otherwise identified all relevant documents. Thus, the document production phase of discovery would appear to be all but completed. Defendants will be conducting the Rule 30(b)(6) deposition of a representative from Plaintiff on Monday, November 10. Plaintiff has recently served its own 30(b)(6) notice, seeking a representative from Defendant Schoeller & Hoesch, NA, Inc. to be

---

[5] A detailed description of the water climb test is actually provided in the body of the '997 patent itself: "The web material treated with a hydrophobic binder of the type described, while retaining its porosity, exhibits substantially no absorption characteristics. As mentioned, these are measured by a 'water climb' test procedure that determines the rate of saturation of a web material by capillary action. In accordance with this procedure, a strip of treated material is cut to a specimen size of one inch by five inches. The strip is mounted on a support bar above a container, such as a 500 ml. beaker, so that the strip will be suspended within the beaker. The specimen is marked at ½ inch and at 1½ inches from the bottom of the specimen. The beaker is partially filled with distilled water to a level such that the bottom ½ inch of the specimen will be immersed in the water. The time then is recorded for the water front to advance up the specimen to the 1½" mark, a distance of one inch. The test is stopped at 400 seconds if the water front has not advanced sufficiently to complete the one inch climb on the specimen. The time is reported for the one inch travel of the water front. If the water front does not move above the level of the water in the beaker, a report of 'no absorption' is recorded." U.S. Patent No. 5,431,997, col. 5, lines 9-33.

[6] Of course, Plaintiff's motion again begs the question of why it was necessary for Defendants' papers to be provided to Plaintiff during discovery in order for Plaintiff to determine whether or not such papers infringe the '997 patent, inasmuch as that information presumably should have already been in Plaintiff's possession pursuant to the necessary pre-filing investigations Plaintiff was required to conduct prior to bringing this suit.

deposed on November 18 regarding a variety of topics. Thus, in reality, this litigation is proceeding apace and Attorney Cohen's illness has not caused Plaintiff to miss a beat.

## **CONCLUSION**

Given the number of capable attorneys working on this matter for Plaintiff, and the relatively straightforward nature of the case's subject matter as described by Plaintiff itself, Attorney Cohen's illness is not a sufficient basis to grant the extension sought by Plaintiff. As to the "discovery issues" that Plaintiff claims justifies its Motion, if such issues exists, Plaintiff should properly raise particular matters for the Court's attention, so that the Court can duly hear the parties on any such issues and decide what extensions, if any, are necessary. Plaintiff's motion for entry of a modified scheduling order is not the proper vehicle for addressing such issues.

Clearly, as a practical matter, some sort of extension is now necessary given that Plaintiff waited until the day before its expert reports were due to file its Motion for Extension of Time and subsequently did not produce any such reports. But an eight-month (or even a six-month) extension of the discovery and trial dates in this case is simply not warranted, and unfairly extends the litigation of this case, to Defendants' detriment.

-7-

ROBINSON & COLE LLP

By_____/S/    Dina S. Fisher_____
   Dina S. Fisher (ct 14896)
   280 Trumbull Street
   Hartford, CT  06103-3597
   Tel. No.: (860) 275-8200
   Fax No.: (860) 275-8299
   dfisher@rc.com

   Marc J. Farrell (ct 24539)
   REED SMITH LLP
   213 Market Street, 9th Floor
   P.O. Box 11844
   Harrisburg, PA  17108-1844
   (717) 257-3044
   mfarrell@reedsmith.com

Attorneys for Defendants,
Schoeller & Hoesch, NA, Inc. and
P. H. Glatfelter Company

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Defendants' Brief In Opposition to Plaintiff's Motion for Entry of an Amended Scheduling Order and Associated Extension of Time was served by means of United States mail, first class, postage prepaid, upon the following on this 7th day of November, 2003:

>Basam E. Nabulsi, Esquire
>McCarter & English
>Four Stamford Plaza
>Stamford, CT  06904-0120

>Sidney R. Bresnick, Esquire
>Cohen, Pontani, Lieberman & Pavane
>551 Fifth Avenue
>New York, NY  10176

>_____/S/    Dina S. Fisher
>Dina S. Fisher
>
>Counsel for Defendants,
>Schoeller & Hoesch, NA, Inc., and
>P. H. Glatfelter Company