IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AHLSTROM WINDSOR LOCKS LLC, | : | |
| | : | |
| Plaintiff | : | CASE NO. 3:03-CV-0169-AVC |
| | : | |
| v. | : | |
| | : | |
| SCHOELLER & HOESCH, NA, INC., | : | |
| | : | |
| and | : | |
| | : | |
| P. H. GLATFELTER COMPANY | : | |
| | : | |
| Defendants | : | NOVEMBER 14, 2003 |

**DEFENDANT SCHOELLER & HOESCH, NA, INC.'S MOTION FOR PROTECTIVE ORDER AS TO PLAINTIFF'S OCTOBER 31, 2003 RULE 30(b)(6) NOTICE OF DEPOSITION**

Defendant, Schoeller & Hoesch, NA, Inc. ("S&H") hereby moves for a protective order with respect to three subjects identified in a Notice of Deposition served by the Plaintiff, Ahlstrom Windsor Locks LLC ("Plaintiff" or "Ahlstrom") on October 31, 2003 pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure ("Plaintiff's 30(b)(6) Notice") (attached hereto at Tab A).

As set forth more fully below, Plaintiff's 30(b)(6) Notice asks S&H to produce one or more corporate representatives to testify as to three inappropriate areas of inquiry: (1) manufacturing processes of an operating division of Defendant P. H. Glatfelter Company ("Glatfelter") (and collectively with S&H, "Defendants"), about which no one at S&H is qualified to testify, and which are of such a highly technical nature that it would be virtually impossible for someone at S&H to testify as to these subjects; (2) information protected by the

attorney-client privilege and/or the attorney work product doctrine; and (3) matters concerning events surrounding and leading up to the execution of a certain agreement on September 24, 1999 (the "'99 Agreement"), which particular subject is irrelevant to this litigation.

For the reasons set forth herein, S&H asks that this Court grant an order protecting it from having to produce a corporate representative to address items A(1) through A(5), C(1), and C(2) as listed in Exhibit A to Plaintiff's 30(b)(6) Notice.

## I.    BACKGROUND

By a complaint dated January 24, 2003 ("Complaint"), Ahlstrom claims that Defendants have infringed U.S. Patent No. 5,431,997 (the "'997 Patent"), related to porous, fibrous web materials used for making products such as tea bags. In Count Two of the Complaint, Ahlstrom also claims that Defendants breached a certain agreement concerning a prior claim by Ahlstrom's predecessor-in-interest as to infringement of the same patent.

Defendants denied the claim and counterclaimed seeking a declaratory judgment that the '997 Patent is invalid, unenforceable and not infringed.

In its March 25, 2003 Answer, Defendants admitted that S&H is a Delaware corporation with a principal place of business in North Carolina, but denied that it is in the business of manufacturing web materials for making infusion packages for brewing beverages such as tea bags. Defendants further admitted that Glatfelter has a principal place of business in Pennsylvania, and that it is in the business of manufacturing and marketing through its subsidiaries, *inter alia*, web materials used for making tea bags and other products.

In response to discovery questions, Defendants have explained to Plaintiff that S&H itself is not engaged in manufacturing; and that Glatfelter's manufacturing operations as to fibrous

web materials for making infusion packages for brewing beverages at issue in this case are performed entirely and exclusively by one of its operating divisions, Papierfabrik Schoeller & Hoesch GmbH & Co. KG, a limited partnership organized under the laws of the Federal Republic of Germany located in Gernsbach, Germany ("Papierfabrik"), an entity not named by Plaintiff as a party to this suit. As indicated in the attached Affidavit of Jennifer C. Deitchman (the "Deitchman Aff.") (see Tab B), Papierfabrik is currently not owned or controlled by S&H, nor is it a division, corporate predecessor, joint venture, subsidiary, or parent corporation of S&H. *See* Deitchman Aff., ¶ 16.

Plaintiff, by its 30(b)(6) Notice, asks that S&H produce corporate representative(s) to testify as to a number of discrete subjects. Notably, in Exhibit A of the Notice, Plaintiff defined the party served, S&H, as follows:

> Schoeller & Hoesch, N.A., Inc., as well as its parents, divisions, corporate predecessors, joint ventures, and other legal entities that wholly or partly own or control S&H, its officers, directors, attorneys, managing agents, agents, consultants, experts, representatives, and other individuals or business entities acting or purporting to act on its behalf.

*See* Tab A. It did not serve a 30(b)(6) notice of deposition on Defendant Glatfelter or any of its subsidiaries or divisions other than S&H.

As set forth in the Notice, Plaintiff seeks to depose one or more representatives of S&H as to the following subjects:

A.   Manufacturing Processes;
B.   Sales and Marketing;
C.   The '997 Patent, specifically (1) "investigations related to the validity, enforceability, claim construction, and/or infringement of [same]" and (2) information relating to any disputes regarding the '997 patent between S&H and Plaintiff's predecessor-in-interest, The Dexter Corporation, including in particular the '99 Agreement; and
D.   The location and custody of documentation (as related to infusion paper)

regarding (1) manufacturing; (2) sales and marketing; (3) competitive companies and products; (4) the '997 patent; and (5) the '99 Agreement.

## II.    ARGUMENT

### A.    ALL INFORMATION RELATING TO EVENTS LEADING UP TO AND CULMINATING IN THE '99 AGREEMENT ARE IRRELEVANT AND OUTSIDE THE SCOPE OF PERMISSIBLE DISCOVERY.

Plaintiff has called for the production of an S&H corporate representative to testify as to "information relating to any disputes regarding the '997 patent between S&H and The Dexter Corporation… and, in particular, [the '99 Agreement]" (*see* Plaintiff's 30(b)(6) Notice, C(2)). The events leading up to and culminating in the '99 Agreement are entirely outside the scope of permissible discovery. Any information that Plaintiff would gain in a deposition regarding the dispute between S&H and Dexter or the agreement between the two companies would be entirely irrelevant to issues in dispute in this case.

The fact that Plaintiff has claimed a breach of the '99 Agreement as part of this lawsuit does not mean that the events leading up to and surrounding execution of that agreement are relevant or would otherwise lead to the discovery of admissible evidence. Plaintiff's 30(b)(6) Notice appears to be an effort to fish for irrelevant parole evidence. There has been no judicial finding that the '99 Agreement which Plaintiff claims Defendants breached was ambiguous or was not an integrated contract; therefore, there is no reason to assume (at least at this juncture) that parole evidence concerning events leading up to the execution of the '99 Agreement would ever be admitted into evidence. Accordingly, any effort to engage in discovery on this subject should be denied.

The courts have interpreted Federal Rule of Evidence 408 to require a party seeking discovery as to compromises and offers to compromise to make a particularized showing "that

4

the documents relating to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence." *Fidelity Fed. Sav. and Loan Ass'n v. Felicetti*, 148 F.R.D. 532, 534 (E.D.Pa. 1993). The effect of this heightened requirement is to switch the burden of proof from the party in opposition to the discovery to the party seeking the information. *Doe v. Methacton School District*, 164 F.R.D. 175, 176 (E.D.Pa. 1995). This burden is nowhere near satisfied by Plaintiff in this case.

In addition, the request set forth in Section C(2) of Plaintiff's 30(b)(6) Notice is contrary to a previous agreement which the parties reached several months ago to resolve a dispute as to the allowable scope of discovery with regard to the time period prior to September 24, 1999 (the effective date of the '99 Settlement Agreement). As evidenced by the attached e-mail dated August 7, 2003 from Plaintiff's counsel, Yunling Ren, the parties agreed that with regard to pre-September 24, 1999 discovery, Defendants need only produce (or otherwise identify, if privileged) documents related to (a) the validity and/or enforceability of the '997 patent, (b) the scope and/or content of any claim in the '997 patent, and/or (c) the infringement or non-infringement of one or more claims of the '997 patent by any products. *See* Tab C. As such, Plaintiff has already agreed that any pre-September 24, 1999 information outside of those limited exceptions is not discoverable. Therefore, the category of questions as set forth in Section C(2) of Plaintiff's 30(b)(6) Notice goes far beyond the parties' agreement as to the limited area of discovery to be conducted regarding pre-'99 Agreement events. Further, as to pre-September 24, 1999 information regarding the validity, enforceability, claim construction and/or infringement of the '997 patent, all such information would fall under the attorney/client privilege and/or the attorney work product doctrine for the reasons set forth in Section C herein below.

### B.  S&H CANNOT PRODUCE A CORPORATE REPRESENTATIVE QUALIFIED TO TESTIFY AS TO "MANUFACTURING PROCESSES."

In its Notice of Deposition, Plaintiff also requested that S&H produce a corporate representative to testify as to "Manufacturing Processes" related to "infusion paper."[1]  S&H is not in the business of manufacturing web materials for making infusion packages for brewing beverages such as tea bags. *See* Deitchman Aff., ¶ 15.  It is a sales and marketing operation only. *Id.*  S&H markets and sells products manufactured by Papierfabrik, such as the products believed to be at issue in this suit, but as-yet-unidentified by Plaintiff. *Id.*  No one at S&H itself is qualified to testify as to the "manufacturing processes" listed in Plaintiff's 30(b)(6) Notice, A(1) through A(5). *See* Deitchman Aff., ¶ 17.  Furthermore, the subjects listed are of such a highly technical nature that it would be virtually impossible for someone at S&H to testify as to these subjects. *Id.*  Only personnel at Papierfabrik, located in Gernsbach, Germany, are qualified to so testify.  However, Papierfabrik is a separate corporation from S&H, and is not controlled by S&H. *See* Deitchman Aff., ¶ 16.  It, therefore, does not fall within the definition of the "deponent" in Plaintiff's 30(b)(6) Notice.

Defendants recognize that Rule 30 imposes on them a duty to prepare a representative to testify as to matters that are not necessarily within that person's firsthand experience.  See, e.g,

---

[1]  Plaintiff defined "infusion paper" as "porous web materials used for making mechanically sealed infusion packages for brewing beverages such as tea bag paper."  Plaintiff's 30(b)(6) Notice, Exhibit A, definition 2. Defendants object to this definition as casting an overly wide net which inappropriately encompasses papers that are not reasonably related to any dispute between the parties.  Defendants have proposed that the only papers about which there should be any discovery are papers made from fibrous webs that are available in the U.S. from Defendants and that (1) are used for making infusion packages for brewing beverages (a limitation with which Plaintiff appears to have no objection), (2) are of the nonheat-seal variety and require mechanical fastening (another limitation with which Plaintiff appears now to have no objection), and (3) contain one or more of the following cured hydrophobic agents:  high molecular weight cross-linked acrylic polymers; silicones; fluorohydrocarbons; paraffins; alkyl ketene dimers and/or stearylated materials.  This is a more appropriate definition given the limitations as explicitly called for by each of the claims of the '997 Patent which forms the basis for the allegations in Plaintiff's Complaint.

*Buycks-Roberson v. Citibank Federal Sav. Bank,* 162 F.R.D. 338, 342 (N.D. Ill. 1995)

(responding party must make a conscientious good faith effort to designate the persons having

knowledge of the matters sought by the [discovering party] and to prepare those persons in order

that they can answer fully, completely, unevasively, the questions posed by [the discovering

party] as to the relevant subject matters). This principle is not absolute, however, such as where,

for example, the discovery sought is unduly burdensome. In this case, the manufacturing

processes that Plaintiff wishes to explore in deposition are highly technical, and it is unrealistic

and unreasonable to ask a representative from S&H to become prepared on such arcane topics

solely for the purposes of a deposition.

Accordingly, S&H moves for a protective order precluding it from having to produce any

witness to testify as to "Manufacturing Processes" as set forth in Plaintiff's 30(b)(6) Notice.

### C. ALL INFORMATION AS TO DEFENDANTS' INVESTIGATIONS RELATING TO THE VALIDITY OR INFRINGEMENT OF THE PATENT IN SUIT IS PRIVILEGED.

Section C(1) of Plaintiff's 30(b)(6) Notice calls for the production of an S&H corporate

representative to testify as to "investigations related to the validity, enforceability, claim

construction and/or infringement of the '997 patent." *(See* Tab A, C(1).) There is no one at

S&H itself who would be qualified to testify as to these subjects. *See* Deitchman Aff., ¶ 8.

Assuming it is appropriate for Plaintiff to define S&H to include any "parent" of S&H (thereby

implicating Defendant Glatfelter, S&H's parent), the only person at S&H who would be

qualified to testify as to these subjects would be Glatfelter corporate counsel. *See* Deitchman

Aff., ¶ 8. Hence this entire category of information is privileged. *See* Deitchman Aff., ¶ 9. One

can imagine no single question that Plaintiff could pose to Glatfelter corporate counsel having to

do with <u>investigations</u> related to the validity of the '997 patent, its enforceability, claim

construction, or "infringement" that would <u>not</u> fall within the privilege and/or be attorney work

product. The subjects about which Plaintiff would inquire of such attorney would by necessity

and by definition consist of either that attorney's mental impressions or strategies, information

conveyed to that attorney by his or her client, or communications between that attorney and

outside patent counsel. *See* Deitchman Aff., ¶ 9. All such questioning would invade either the

attorney/client privilege or the work product doctrine, and should not be allowed. See *SEC v.*

*Rosenfield,* 1997 U.S.Dist. LEXIS 13996 (S.D.N.Y. 1997) at *7 (granting a motion for protective

order and quashing a 30(b)(6) notice on the grounds that it "would necessarily involve the

testimony of attorneys assigned to this case, or require those attorneys to prepare other witnesses

to testify"). *Upjohn v. United States,* 449 U.S. 393 (1981). See also *SEC v. Morelli,* 143 F.R.D.

42 (S.D.N.Y. 1992):

> Opinion work product includes such items as an attorney's legal strategy, his
> intended lines of proof, his evaluation of the strengths and weaknesses of his case,
> and the inferences he draws from interviews of witnesses. Such material is
> accorded almost absolute protection from discovery because any slight factual
> content that such items may have is generally outweighed by the adversary
> system's interest in maintaining the privacy of an attorney's thought processes and
> in ensuring that each side relies on its own wit in preparing their respective cases.

*Id.* at 47.

The courts in this Circuit traditionally regard depositions of counsel in a negative light.

*See id.* The rule has developed that a court should allow the taking of opposing counsel's

deposition "only where the party seeking the discovery has shown that (1) no other means exist

to obtain the information than to depose opposing counsel, (2) the information sought is relevant

and nonprivileged, and (3) the information is crucial to the preparation of the case." *New York v.*

*Solvent Chemical Co.,* 214 F.R.D. 106, 110-111 (W.D.N.Y. 2003), citing *Shelton v. American*

*Motors Corporation,* 805 F.2d 1323, 1327 (8th Cir. 1986), cited with approval in *United States v. Yonkers Bd. of Ed.,* 946 F.2d 180, 185 (2d Cir. 1991).

By seeking to inquire into the "investigations" relating to the patent in suit, the Plaintiff is directly threatening to invade the work product of counsel.[2] It is a settled doctrine that the thought processes, mental impressions, and opinions of attorneys are considered attorney work product and are not subject to discovery. *Hickman v. Taylor,* 329 U.S. 495, 508 (1947) ("an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties...falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims."). Codified in Rule 26(b)(3) of

---

[2] This is to be contrasted with the 30(b)(6) deposition recently conducted of Michele Totonis, Plaintiff's in-house Legal Counsel and Intellectual Property Officer, on November 10, 2003. In that instance, Defendants sought purely factual material regarding the basis for, and nature of, Plaintiff's infringement allegations via a 30(b)(6) notice. Plaintiff, on the other hand, by Section C of its 30(b)(6) Notice, seeks information that is devoid of any factual components. In addition, as came to light during Ms. Totonis' deposition, there were several other non-lawyer witnesses who could have testified as to the factual information sought by Defendants, and indeed probably were more or at least equally qualified to testify as to that subject matter than was Ms. Totonis (including two of Plaintiff's sales people who allegedly secured samples of Defendants' products from a mutual customer of the parties in the months leading up to the filing of this suit, and two of Plaintiff's lab technicians who performed various scientific tests on those and other samples in order to probe Plaintiff's belief that Defendants were selling infringing products). Here, there is no one whatsoever at S&H qualified to testify as to the topics identified in Section C of Plaintiff's 30(b)(6) Notice, and likewise no one at Glatfelter other than in-house counsel. *See* Deitchman Aff., ¶¶ 8, 12-13. In addition, Ms. Totonis, while not a patent attorney registered to practice before the United States Patent and Trademark Office, represented during her deposition that she had extensive patent-related experience, including the interpretation of patent claims vis-à-vis products. Neither Mr. Mueller nor Ms. Deitchman possesses anything more than a limited understanding of patent matters, and certainly does not have any experience with claim interpretation, nor with validity, enforceability or infringement determinations. *See* Deitchman Aff., ¶¶ 10-11. Further distinguishing the instant motion is the fact that Plaintiff voluntarily chose to identify Ms. Totonis, and only Ms. Totonis, to testify as to the matters outlined in Defendants' 30(b)(6) deposition notice and thus consented to her being deposed. While Plaintiff did suggest in a document dubbed "Response to Notice of Deposition Pursuant to Rule 30(b)(6) Fed.R.Civ.P." essentially an unwillingness to have Ms. Totonis testify as to matters that were *sub judice* in Defendants' currently-pending First Motion to Compel, Plaintiff did not file any sort of motion for protective order. Defendants will be filing a second motion to compel in order to resume the deposition of Ms. Totonis who, by her appearance and testimony on November 10 as Plaintiff's 30(b)(6) deponent, has waived any claim to attorney-client privilege. (Defendants are awaiting a transcript of that deposition.) Defendants, by contrast, intend to have no such waiver apply by having its in-house counsel testify, and hence have filed the instant motion for protective order to preclude Mr. Mueller or Ms. Deitchman from having to testify.

the Federal Rules of Civil Procedure, the work product doctrine protects otherwise discoverable documents if, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.* 709 F.2d 1109, 1118-19 (7th Cir. 1983). The work product doctrine is a qualified privilege and is much broader than the attorney-client privilege. *United States v. Nobles,* 422 U.S. 225, 228 n. 11 (1975). Parties seeking to discover such materials and to overcome the privilege must either show that they have a substantial need for said materials or cannot otherwise obtain the materials without suffering undue hardship. Fed.R.Civ.P. 26(b)(3). No such showing has been made by the Plaintiff in this case.

Accordingly, absent such showing, S&H is entitled to a protective order barring Plaintiff from taking the 30(b)(6) deposition as to Item C(1) on the Plaintiff's 30(b)(6) Notice.

## III.    **CONCLUSION**

For the foregoing reasons, S&H respectfully requests the Court to enter an order protecting it from having to produce a witness to testify as to Items A(1) – A(5), C(1) and C(2) in Plaintiff's 30(b)(6) Notice of Deposition dated October 31, 2003.

Attorneys for Defendants,
Schoeller & Hoesch, NA, Inc. and
P. H. Glatfelter Company

By_____
Dina S. Fisher (ct 14896)
280 Trumbull Street
Hartford, CT  06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
dfisher@rc.com

Marc J. Farrell (ct 24539)
REED SMITH LLP
213 Market Street, 9th Floor
P.O. Box 11844
Harrisburg, PA  17108-1844
(717) 257-3044
mfarrell@reedsmith.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served by means of facsimile and the

United States mail, first class, postage prepaid, on this the 14th day of November, 2003, upon

the following:

Sidney R. Bresnick, Esquire
Yunling Ren, Esquire
Thomas Keating, Esquire
Cohen, Pontani, Lieberman & Pavane
551 Fifth Avenue
New York, NY 10176


Basam E. Nabulsi, Esquire
McCarter & English LLP
Four Stamford Plaza
107 Elm Street, 9th Floor
Stamford, CT 06902

Eric E. Grondahl, Esquire
Alexandra Stevens, Esquire
McCarter & English LLP
City Place I
185 Asylum Street, 36th Floor
Hartford, CT 06103-3495


Dina S. Fisher

Counsel for Defendants,
Schoeller & Hoesch, NA, Inc., and
P. H. Glatfelter Company

12

A

# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AHLSTROM WINDSOR LOCKS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:03-CV-0169 (AVC) |
| v. | ) | |
| | ) | |
| SCHOELLER & HOESCH, N.A., INC. | ) | |
| and P.H. GLATFELTER COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF DEPOSITION PURSUANT
## TO RULE 30(b)(6) FED. R. CIV. P.

To:   Schoeller & Hoesch, N.A., Inc.
      c/o Dina S. Fisher, Esq.
      Robinson & Cole LLP
      280 Trumbull Street
      Hartford, CT 06103-3597
              -and-
      Marc J. Farrell, Esq.
      Reed Smith LLP
      213 Market Street, 9th Floor
      P.O. Box 11844
      Harrisburg, PA 17108-1844

Please take notice that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiff, Ahlstrom Windsor Locks LLC, will take the deposition of

Defendant, Schoeller & Hoesch, N.A., Inc. (S&H), commencing at 9:00 a.m. on

November 18, 2003 at the offices of McCarter & English, LLP, CityPlace 1, 185 Asylum

Street, 36th Floor, Hartford, CT 06103-3495 (Tel. 860- 275-6700), before a person duly

authorized to administer oaths, and continuing thereafter from day to day until completed.

The deposition will be recorded stenographically and by videotape.

In accordance with Rule 30(b)(6), S&H shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf. Said person or persons shall be qualified to testify on behalf of S&H as to facts known or reasonably available to S&H, which shall relate to and include the subject matter identified in Exhibit A, attached hereto. S&H is requested to identify the person or persons designated to testify and the subject matter as to which each designated person will testify on or before November 13, 2003.

You are invited to attend and participate as provided by the Federal Rules of Civil Procedure.

THE PLAINTIFF,
AHLSTROM WINDSOR LOCKS LLC
By _____
Eric E. Grondahl (CT 08988)
McCARTER & ENGLISH, LLP
CityPlace I
185 Asylum Street, 36th Floor
Hartford, CT 06103-3495
(860) 275-6704
(860) 724-3397 (fax)
        -and-
Cohen, Pontani, Lieberman & Pavane
551 Fifth Avenue
New York, New York 10176
Tel. 212-687-2770
Fax 212-972-5487

Attorneys for Plaintiff,
Ahlstrom Windsor Locks LLC

Date:    October 31, 2003

## EXHIBIT A

The following definitions apply to the areas of inquiry listed below:

1.     "S&H" shall mean the defendant, Schoeller & Hoesch, N.A., Inc., as well as its parents, divisions, corporate predecessors, joint ventures, and other legal entities that wholly or partly own or control S&H, its officers, directors, attorneys, managing agents, agents, consultants, experts, representatives, and other individuals or business entities acting or purporting to act on its behalf.

2.     "Infusion paper" shall mean porous web materials used for making mechanically sealed infusion packages for brewing beverages, such as tea bag paper.

3.     The "'997 patent" shall mean U.S. patent No. 5,431,997, issued July 11, 1995, the patent in suit.

## AREAS OF INQUIRY

### A.   Manufacturing Processes

1.     The formulations of the chemical coating systems used in the manufacture of infusion paper.

2.     The laboratory and pilot plant operations, if any, for the design, development, testing and formulating of the chemical compositions used in the treatment of infusion paper.

3.     The packaging and shipping of manufactured infusion paper.

4.     Research and development with respect to infusion paper.

5.     The testing and comparison of infusion papers and tea bags and coffee bags made from such paper.

**B.** **Sales and Marketing**

    1.    The sale of infusion paper.

    2.    The marketing of infusion paper.

    3.    The various grades or types of infusion paper sold.

    4.    Customers' evaluations of infusion paper.

**C.** **The '997 Patent**

    1.    Investigations related to the validity, enforceability, claim construction, and/or infringement of the '997 patent.

    2.    Information relating to any disputes regarding the '997 patent between S&H and The Dexter Corporation of Windsor Locks Connecticut, and in particular, a settlement agreement between S&H and Dexter, dated September 24, 1999.

**D.** **Documentation**

    1.    The location and custody of documents relating to the manufacture of infusion paper.

    2.    The location and custody of documents relating to the sales and marketing of infusion paper.

    3.    The location and custody of documentation relating to competitive companies and products relating to infusion paper.

    4.    The location and custody of documentation relating to the '997 patent.

    5.    The location and custody of documentation relating to the settlement agreement between S&H and The Dexter Corporation, dated September 24, 1999.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing NOTICE OF DEPOSITION PURSUANT TO RULE 30(b)(6) FED. R. CIV. P. has been delivered by hand this 31st day of October, 2003 to:

> DINA S. FISHER, ESQ.
> Robinson & Cole LLP
> 280 Trumbull Street
> Hartford, CT 06103-3597

This is to further certify that a copy of the foregoing NOTICE OF DEPOSITION PURSUANT TO RULE 30(b)(6) FED. R. CIV. P. has been mailed, postage prepaid, this 31st day of October, 2003 to:

> MARC J. FARRELL, ESQ.
> Reed Smith LLP
> 213 Market Street, 9th Floor
> P.O. Box 11844
> Harrisburg, PA 17108-1844

ERIC E. GRONDAHL (CT 08988)

HARTFORD: 601957.01

B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

AHLSTROM WINDSOR LOCKS LLC,                    :

               Plaintiff                        :        CASE NO. 3:03-CV-0169-AVC

                              :

    v.                                               :

SCHOELLER & HOESCH, NA, INC.,                   :

    and                                            :

P. H. GLATFELTER COMPANY                        :

              Defendants                     :        NOVEMBER 13, 2003

## AFFIDAVIT OF JENNIFER C. DEITCHMAN

I, Jennifer C. Deitchman, being duly sworn, do hereby depose and say, to the best of my personal knowledge, information and belief that as of the below-signed date:

1.     I am over the age of 18 years and understand the obligations of an oath.

2.     I am a member in good standing of the bar of the Commonwealth of Pennsylvania.

3.     I am Associate Counsel & Assistant Secretary for Defendant, P. H. Glatfelter Company ("Glatfelter"), of which Defendant Schoeller & Hoesch, NA, Inc. ("S&H") is a subsidiary.

4.     This Affidavit is submitted in support of the Motion For Protective Order filed by S&H, with respect to a Notice of Deposition served by the Plaintiff, Ahlstrom Windsor Locks LLC ("Plaintiff") on October 31, 2003, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure ("Plaintiff's 30(b)(6) Notice").

5.    Defendants Glatfelter and S&H have already provided to Plaintiff all of the responsive, non-privileged documents and factual information in Defendants' possession. Such information includes, *inter alia*, (1) results of water climb tests conducted by Defendants on its own products, (2) documents disclosing the highly confidential chemical compositions of various of Defendants' allegedly infringing products, and (3) actual sample sheets of all six of Defendants' grades of non-heatsealable tea bag papers (totaling over 60 sheets in all) for testing by Plaintiff.

6.    All relevant, privileged documents located to-date which are responsive to Plaintiff's discovery requests have been identified on Defendants' privilege log, served August 8, 2003.

7.    In addition, Defendants expect to offer expert testimony as to its products and the infringement claims asserted by Plaintiff. Plaintiff will be free to inquire into the basis of that expected testimony at the appropriate time.

8.    There are no individuals at S&H itself who would be qualified to testify as to matters concerning S&H's "investigations related to the validity, enforceability, claim construction and/or infringement of the '997 patent" (as stated in Plaintiff's 30(b)(6) Notice at issue in the instant Motion for Protective Order). The only such individuals, if anyone, who might possibly be qualified to testify as to these matters would be at Glatfelter, S&H's parent, namely, me or Markus Mueller, Glatfelter's Corporate Counsel, Secretary and Director of Policy & Compliance, as well as Secretary of S&H.

9.    To the extent Mr. Mueller or I possess any information regarding "investigations related to the validity, enforceability, claim construction and/or infringement of the '997 patent", such information would be entirely privileged or protected by the attorney work product

2

doctrine, as it would consist of client information, the mental impressions and strategies of attorneys, or communications with outside patent counsel.

10.    Neither myself nor Mr. Mueller is a patent attorney registered to practice before the United States Patent and Trademark Office or the patent office of any other country.

11.    Neither myself nor Mr. Mueller has more than a limited understanding of matters related to patent law, and in particular possess no experience with regard to validity, enforceability or infringement determinations, or issues involving claim interpretation.

12.    Neither Glatfelter nor S&H employ in-house patent counsel.

13.    There is no non-attorney who could be produced to testify as to the matters included in Section "C" of Plaintiff's 30(b)(6) Notice without that person having to be entirely prepared by either myself or Mr. Mueller, which in turn would render such preparation privileged and not a permissible area of inquiry in deposition.

14.    S&H is a Delaware corporation with a principal place of business in business in North Carolina.

15.    S&H is not in the business of manufacturing web materials for making infusion packages for brewing beverages such as tea bags. It is a sales and marketing operation only. S&H markets and sell products manufactured by a company called Papierfabrik Schoeller & Hoesch GmbH located in Gernsbach, Germany ("Papierfabrik"), such as the products believed to be at issue in this suit, but as-yet-unidentified by Plaintiff.

16.    Papierfabrik is an operating division of the Glatfelter organization. It is not a parent, division, corporate predecessor, joint venture, or any other legal entity that owns or partly owns or controls S&H.

3

17.    No one at S&H has first-hand knowledge sufficient to testify with any degree of specificity as to the subjects listed under Section "A" in Plaintiff's Notice of Deposition (Exhibit A). Furthermore, the subjects listed are of such a highly technical nature that it would be virtually impossible for someone at S&H to testify as to these subjects.

_____
Jennifer C. Deitchman

Subscribed and sworn to before me
this 13th day of November, 2003

_____

NOTARIAL SEAL
CAROLYN L. GROSS, Notary Public
Spring Grove Borough, York County
My Commission Expires July 16, 2005

4

C

**Fisher, Dina**

| | |
|---|---|
| **From:** | Yunling Ren [YRen@cplplaw.com] |
| **Sent:** | Thursday, August 07, 2003 5:53 PM |
| **To:** | 'Farrell, Marc J.' |
| **Cc:** | Myron Cohen; bnabulsi@cl-law.com; astevens@cl-law.com; dfisher@rc.com |
| **Subject:** | Documents prior to 1999 Agreement |

Hi! Marc,

Mike was not feeling well yesterday so that he was not able to make the follow up call as discussed on Tuesday. Our apology.

As to the scope of the documents prior to the Settlement Agreement, we will request S&H/Glatfelter only to produce all documents and things dated between July 11, 1995 and September 2, 1999 relating to: a) the validity and /or enforceability of the '997 patent; b) the scope and/or content of any claim in the '997 patent, and/or c) the infringement or non-infringement of one or more claims of the '997 patent by any products.

Also, as we have agreed, we will exchange the privilege logs by 5:00pm tomorrow by fax, and you will send us the S&H's product samples as requested.

Have you given any thought about the issue Mike raised that our requested "fibrous web materials" will include the heatsealable materials that are used for making mechanically sealed tea bags?

Regards,

Yunling Ren, Esq.
Cohen, Pontani, Lieberman & Pavane (CPLP)
551 Fifth Avenue
New York, New York 10176
Tel: 212-687-2770
Fax: 212-972-5487
Email: YRen@CPLPLAW.com