FILED

2004 MAR -3  P 3: 18

U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC, | : |
| Plaintiff | : CASE NO. 3:03-CV-0169-AVC |
| v. | : |
| SCHOELLER & HOESCH, NA, INC., | : |
| and | : |
| P. H. GLATFELTER COMPANY | : |
| Defendants | : MARCH 3, 2004 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR ORDER OF COMPLIANCE**

The Defendants, Schoeller & Hoesch, NA, Inc. and P. H. Glatfelter Company ("Defendants") submit this memorandum in support of the Motion for Order of Compliance filed on even date herewith.

**I.   BACKGROUND**

This case arises from allegations by the Plaintiff, Ahlstrom Windsor Locks LLC ("Plaintiff"), of patent infringement and breach of a settlement agreement. Due to lack of specificity in Plaintiff's Complaint, Defendants served interrogatories and requests for production on May 22, 2003 directed in part to discovering which claims of Plaintiff's patent were alleged to be infringed by which of Defendants' products, and the factual basis for such allegations.

On September 22, 2003, Defendants filed a Motion to Compel, seeking an order compelling Plaintiff to furnish a complete response to Defendants' Interrogatory No. 1, which requested two discrete categories of information, namely (1) information related to evidence of infringement, and (2) information related to claim interpretation. Defendants' Motion to Compel

also sought an order compelling Plaintiff to provide complete responses to Defendants' Requests for Production Nos. 5, 9, 15 and 20, concerning materials relating to infringement investigation/analysis. Lastly, Defendants' Motion to Compel sought an order compelling Plaintiff to furnish a table and associated comments and notes prepared by Plaintiff's in-house counsel, Michele Totonis, relating to water climb tests allegedly performed on one or more of Plaintiff's and Defendants' products.

In granting in part and denying in part Defendants' Motion to Compel, the Court stated in its 12/12/03 Order as follows:

> Having reviewed the parties relevant positions, the motion is granted to the extent it seeks to compel responses to interrogatory 1 and requests for production 5, 9, 15, and 20. The court orders, however, a simultaneous exchange of relevant **claims information** and, in this regard, on February 27, 2004,[1] the parties shall simultaneously exchange their proposed **claim constructions.** The plaintiff shall provide all facts and identify all information supporting their allegations of infringement, and the defendants shall provide all facts and identify all information supporting their allegations of invalidity. Failure to disclose shall be at the party's peril as, after February 27, 2004, any party seeking to amend, modify or submit any proposed claim construction must either obtain consent of all parties or leave of the court.
>
> Finally, the motion is denied to the extent it seeks disclosure of the Totonis table. Because this item was prepared in anticipation of litigation, it is protected by the work product doctrine. *See, e.g., Aktiebolag v. Andrx Pharmaceuticals, Inc.,* 208 F.R.D. 92 (S.D.N.Y. 2002).

Order dated December 12, 2003 (Covello, U.S.D.J.) (emphasis added).

## II. ARGUMENT

Defendants disagree with the Plaintiff as to the intent and scope of the 12/12/03 Order. Following issuance of the Order, Plaintiff has produced only a **single sentence** of new information elucidating in any way its allegation of infringement (*see* "Response to

Interrogatory No. 1" dated January 26, 2004, attached hereto as Exhibit A); two individual tea bags and a sample sheet of tea bag paper measuring 3½" by 9" purportedly consisting of paper that originated with Defendants[2]; and in response to a document request associated with a deposition of Ahlstrom inventors, several thousand pages of internal lab documents that had inexplicably been withheld until the eve of the depositions, none of which related to the allegations of any supposed infringement.  <u>Beyond that</u>, Plaintiff has refused to produce any facts or evidence concerning its claims of infringement, stating that it need not do so until April 27, 2004 – and that even by that date, it need not produce information that it does not intend to <u>use</u> in its case against Defendants.  *See* Affidavit of Dina S. Fisher ("Fisher Aff."), attached hereto as Exhibit B.

Defendants interpret the 12/12/03 Order quite differently.  Defendants understand the Court to have ordered the disclosure of two different categories of information, in two different timeframes:  (a) complete responses to Interrogatory No. 1 and Requests for Production Nos. 5, 9, 15 and 20, including <u>all</u> facts and <u>all</u> information supporting Plaintiff's allegations of

---

[1]   This deadline was subsequently extended at the request of Plaintiff to April 27, 2004 (pursuant to the Court's Order dated January 29, 2004).

[2]   It is important to note, however, that Defendants have no way of knowing whether or not the two tea bags and hand sheet remnant do in fact (a) consist of paper originating with them, and (b) correspond identically to the tea bags and hand sheet that were supposedly tested by Plaintiff prior to filing suit. Plaintiff has made absolutely no showing, as far as chain-of-custody or the like, to support its assertion that these items consist of paper manufactured by Defendants.  In fact, the circumstances surrounding the obtaining of these items is one of the areas Defendants have thus far been unable to fully explore due to Plaintiff's inappropriate claims of privilege and work product.  In addition, unlike many patent infringement suits where the products at issue are brand-labeled, readily-identifiable goods whose origin is not in dispute, the nature of tea bag paper is such that not even someone skilled in the art can tell from a visual inspection where the paper may have originated from.  *See* Deposition of Helen Viazmensky ("Viaz. Dep."), 1/30/04, attached hereto as Exhibit C, at 11:8 – 11:19, 12:3 – 12:19 (as one of the Dexter patent inventors, stating that she is skilled in the art of tea bag paper manufacture and that neither she nor anyone at Ahlstrom can determine the manufacturer of tea bag paper by visual inspection).

**infringement** (the production of which was to occur within ten days of the 12/12/03 Order, as provided by the Rules); and (b) Plaintiff's proposed **claim constructions** (to be exchanged simultaneously with Defendants' proposed claim constructions on April 27, 2004).

Furthermore, the Court's denial of Defendants' request for the document(s) now referred to as the "Totonis Table," on the basis of attorney work product, did **not** absolve Plaintiff of the responsibility of producing all underlying facts and information as to the testing that preceded creation of the Table, or the facts and information contained within the Table.

Defendants disagree with Plaintiff's interpretation of the 12/12/03 Order, and regard as improper its refusal to provide specific information regarding its allegations of infringement as well as the facts and information obtained in pre-suit testing of Defendants' allegedly infringing products. *See* transcript of discussion between counsel on January 15, 2004 (Deposition of Gerhard Slawik, vol. II, at 227:20 to 236:16, attached hereto as Exhibit D.) Following this discussion, Plaintiff provided to Defendants only the following rather vague sentence concerning the basis of Plaintiff's claims of infringement:

> As presently advised and subject to supplementation upon further discovery, **at least one of claims 1, 2, 3 and 4 are infringed** by each of Defendants' tea bag paper grades 212-L/TA, 212-L/TA-NA, 212-RL/TA, 213 RL/TA and 214 L/TA; **at least one of claims 10, 11, 12 and 13 are infringed** by processes used by Schoeller & Hoesch for the manufacture of said infringing paper grades.
> The remaining subsections ... dealing with ... claim interpretation and infringement will be responded to in a simultaneous exchange of information with Defendants, as provided in the Court's order of December 16, 2003.

"Plaintiff's Response to Interrogatory No. 1," Ex. A (emphasis added). In response to the 12/12/03 Order for production of documents responsive to Document Request Nos. 5, 9, 15 and 20, other than the aforementioned two tea bags and small tea bag paper hand sheet, Plaintiff

-4-

stated that all documents had either been produced or were privileged. *See* "Plaintiff's Responses to Requests for Production of Documents Nos. 5, 9, 15 and 20," dated January 26, 2004 (attached hereto as Exhibit E).

It is plainly Plaintiff's position that it need produce no information supporting its allegations of infringement until April 27, 2004, and, if it so chooses, it need not **ever** produce certain factual information which Plaintiff has characterized as being privileged and/or work product – even if that factual information is related to its infringement allegations. *See also* Rule 30(b)(6) Deposition of Michele Totonis, November 10, 2003 ("Totonis Dep."), at 97:17 to 99:25 (relevant portions from the transcript of the Totonis Deposition are attached hereto as Exhibit F).

Plaintiff's refusal to respond to fair and appropriate discovery requests is unfairly impeding the Defendants' ability to mount a defense or prove its counterclaims in this case. Plaintiff has misread the 12/12/03 Order, and is hiding behind an amorphous claim of privilege and/or work product to keep from the Defendants information to which they are entitled and which they need to proceed in this case.

    **A.    THE COURT'S 12/12/03 ORDER DENYING DEFENDANTS' REQUEST FOR THE "TOTONIS TABLE" DOES NOT EXTEND TO THE FACTS EMBODIED WITHIN THE TABLE OR SURROUNDING ITS CREATION, NOR TO TESTING OF THE DEFENDANTS' PRODUCTS OR PLAINTIFF'S PRE-SUIT INVESTIGATIONS.**

In the 12/12/03 Order, the Court ruled that the Totonis Table need not be produced to Defendants on the basis of the attorney work product doctrine. Plaintiff has interpreted this to be a blanket endorsement of Plaintiff's overall "position with respect to work product" (*see* Ex. D, at 233:2-15), by which Plaintiff seeks to justify withholding far more than just the document that is the Totonis Table. This position is wholly improper.

The invocation of the work product doctrine is governed by federal law. *Fine v. Facet Aerospace Products Co.*, 133 F.R.D. 439, 444-45 (S.D.N.Y. 1990). It is well settled federal law that facts are not protected from disclosure by virtue of having been gathered by an attorney. *See, e.g., Bowne of New York City, Inc. v. AmBase Corp.*, 500 F.R.D. 465, 471 (S.D.N.Y. 1993).

There are numerous examples of factual information that Plaintiff has improperly refused to produce on the grounds of the attorney work product doctrine (without having satisfied its burden of establishing the propriety of its claim; *see Von Bulow v. Von Bulow*, 811 F.2d 136, 144 (2d Cir.), *cert. denied,* 481 U.S. 1015 (1987)).

    1.    **<u>Plaintiff Is Improperly Withholding Documents Listed On Its Privilege Log On The Basis of The Attorney Work Product Doctrine.</u>**

A number of documents listed on Plaintiff's Supplemental Privilege Log contain, in whole or in part, factual information related to Plaintiff's infringement allegations. *See* Plaintiff's Supplemental Privilege Log ("Privilege Log"), attached hereto at Exhibit G.[3] That information continues to be improperly withheld as attorney work product despite the 12/12/03 Order to produce <u>all</u> facts and all information supporting Plaintiff's allegations of infringement. *See* 12/12/03 Order, at page two.[4]

The documents identified on Plaintiff's Privilege Log as "Pri. # 93, 94 and 95" each

---

[3] Plaintiff's Supplemental Privilege Log was not produced until November 6, 2003, and thus was not available to Defendants at the time the Motion to Compel was filed on September 22, 2003.

[4] Furthermore, even if these documents were properly deemed "work product," Defendants are entitled to them as they have a substantial need in mounting their defense for all information underlying Plaintiff's claims of infringement, and have no other means of obtaining this information. *See Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir. 1989) ("In a chemical patent, there is no way to show that these elements exist in the accused product without utilizing highly technical tests performed by experts. In order to establish that a justiciable controversy existed, [plaintiff/patent holder] had to have test results showing the existence of infringing ingredients in specific amounts in [defendant/accused infringer's] products. Thus the production of the test results was not only relevant, but essential to the case. Plaintiff/patent holder's attempts to shelter them under the attorney-client and/or work product privileges cannot stand."); Fed.R.Civ.P. 26(b)(3).

-6-

relate to "**test results** re: [Defendants'] tea bag papers" (emphasis added). These documents are identified as having been authored by "C.J. Fay", a non-lawyer (*see* Totonis Dep., Ex. F, at 56:9-21), and addressed to no one. To say that these documents constitute the mental thoughts and impressions of an attorney, and thereby deprive Defendants of critical information that goes to the very heart of this litigation, is simply untenable. Attorney Totonis cannot even claim, at a minimum, to have been an author or a designated recipient of any of these communications. The same can be said for "Pri. #96," described as an "Analytical Report re: test of [Defendants'] teabag papers", authored by "M. Fuss", a non-lawyer, and addressed to two non-lawyers. *See* Totonis Dep., Ex. F, at 81:3-15 and 95:25 to 96:11.

Likewise, "Pri. #97 and 98" each relates to "**test results** of [Defendants'] teabag papers" conducted by an unidentified "Outside Laboratory" and sent to non-lawyers.[5] The fact that this information was purportedly developed "at the request of M. Totonis, Esq" as indicated on the Privilege Log does not alter its purely factual nature and therefore its discoverability.

    2.    **Attorney Totonis Has Improperly Refused To Answer Questions About Pre-Suit Testing, Even Though She Was Produced As a 30(b)(6) Witness on Plaintiff's Claims of Infringement.**

On November 10, 2003, in response to a 30(b)(6) notice of deposition served by the Defendants, Plaintiff produced its in-house counsel, Michele Totonis, Esq., for deposition. Attorney Totonis was designated as the sole witness to speak for the corporation on the topics of (1) discovery responses, (2) factual bases of contentions of infringement, (3) investigations pre-suit as to allegations of infringement, (4) research and testing to determine facts in support of claims of infringement. (*See* Exhibit H, Notice of Deposition.) Plaintiff did not file a motion for

---

[5]     The extreme nature of Plaintiff's position is demonstrated by its refusal even to reveal the *identity* of the testing lab to which the Plaintiff purportedly submitted samples of paper for testing, on the ground

protective order in advance of the deposition. It merely sent Defendants a document titled "Response to Notice of Deposition," attached hereto as Exhibit I.

On multiple occasions in the course of that deposition, Attorney Totonis refused to answer questions on the basis of the attorney-client privilege or attorney work product doctrine. The following is a partial list of topics as to which she refused to answer, with citation to the attached pages of transcript:

1. The type of tests run pre-suit: Totonis Dep., Ex. F, at 56:9 to 57:2; 51:20 to 52:3; 129:1 to 131:25.
2. The location of where pre-suit testing was performed: *Id.*, at 52:12 to 52:14.
3. The results of pre-suit testing: *Id.*, at 52:15 to 52:20.
4. Whether a mutual customer was treating paper post-sale with a surfactant: *Id.*, at 71:15 to 71:22.
5. The name of the lab that performed the testing: *Id.*, at 94:1 to 95:10.

The Rule 30(b)(6) deposition of Attorney Totonis was suspended, pending resolution of the privilege/work product issue by this Court[6] in the then-pending Motion to Compel. Defendants believe that issue to have been unequivocally resolved by the 12/12/03 Order, and seek an order of compliance therewith.

**B.   TESTING CONDUCTED PRIOR TO CREATION OF THE TOTONIS TABLE AND ALL FACTS RELATED THERETO ARE DISCOVERABLE AND SHOULD BE TURNED OVER TO THE DEFENDANTS.**

Plaintiff's claim that it need not disclose facts concerning its pre-suit testing of Defendants' products on the basis of the attorney work product doctrine is improper and does not

---

that the name of the lab constitutes work product. *See* Totonis Dep., Ex. F, at 58:4 to 59:12, and 93:23 to 94:24.

[6] The 30(b)(6) Totonis Deposition took place while the Defendants' Motion to Compel was under consideration.

comport with settled Second Circuit law. *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 2003 U.S.Dist. LEXIS 19340, *13 (October 30, 2003) (S.D.N.Y. 2003) (holding that the work product doctrine exists "to protect materials created by an attorney in preparation for litigation; typically, the underlying factual matters are not protected"); *Black & Decker, Inc. v. Hoover Service Center*, 1990 U.S. Dist LEXIS 15599,*12 (D. Conn. 1990) (requiring plaintiff in patent infringement suit to produce all communications withheld on the basis of privilege or work product that do not reveal confidential client communications or attorney advice). *Cf. Baum v. Village of Chittenango*, 218 F.R.D. 36, 40 (N.D.N.Y. 2003) (refusing to extend work product protection to correspondence from attorney to retained expert, and distinguishing between facts and mental impressions of attorney).

It would appear that Plaintiff is seeking to avoid disclosure of facts in its possession by designating in-house counsel as its 30(b)(6) witness. This strategy should not allow Plaintiff to hide facts and information to which Defendants are entitled. Plaintiff should not be allowed to use a 30(b)(6) designation of Ms. Totonis as a means of thwarting Defendants' inquiry into the factual basis of Plaintiff's claims:

> On these and other infringement topics, Plaintiff has attempted to avoid being pinned down by producing its attorney as its 30(b)(6) witness. The deponent has repeatedly sought to avoid committing Plaintiff to specific positions, frequently attempting improperly to hide behind one or more privileges. . . .
> However, a fact, contention, or litigation position is not privileged merely because it has been part of a privileged communication at some time in the past. Indeed, a position taken in commercial litigation that was not the result of various privileged work product and communications would be a rare find. Defendant is entitled to a 30(b)(6) deposition that obtains explicit statements that will bind Plaintiff on the matters in issue in this litigation, notwithstanding that any or all aspects of Plaintiff's case might also have been discussed in a conversation [claimed to be work product and attorney-client privileged] such as the one to

> which [Plaintiff's 30(b)(6) attorney witness] alluded. Conversely, and equally important in the present context, facts in issue and Plaintiff's contentions, positions, etc. can be communicated in the deposition without revealing any privileged communication.

*Masco Corp. v. Price Pfister, Inc.*, 1994 U.S. Dist. LEXIS 20597, *5 (E.D. Va. 1994), *aff'd in part and rev'd in part*, 1994 U.S. Dist. LEXIS 20365, *judg. entered*, 1994 U.S. Dist. LEXIS 20366, *aff'd*, 1995 U.S. App. LEXIS 33962 (Fed.Cir. 1995). *See also Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 268 (2d Cir. 1999) (corporate deponent has an affirmative duty to make available such number of persons as will be able to give complete, knowledgeable and binding answers on its behalf); *Sony Electronics v. Soundview Technologies, Inc.*, 217 F.R.D. 104 (D. Conn. 2002).

In *Sony*, defendant's general counsel testifying as a 30(b)(6) witness refused to answer a number of questions on the basis of attorney-client privilege. *Id.* at 106. The court pointed out: "Questions posed which elicit purely factual information that is now in the possession of corporate officials and do not ask for the substance of communications between counsel and client are to be answered, as the answers to the inquiries will not be disclosing legal advice of counsel." *Id.* at 109-10.

Likewise, in *Primetime 24 Joint Venture v. Echostar Communications Corp.*, the Southern District dealt with a similar dispute, in which defendants' in-house counsel testifying as a 30(b)(6) witness refused to answer questions about various issues including investigations performed in preparation for litigation. The court held:

> At its heart, defendants' argument reduces to the proposition that if an attorney or his agents gather information for use in a pending or anticipated lawsuit, those facts are immunized from discovery from the attorney, and are equally protected from compelled

> disclosure by the client, unless perhaps the client acquired the information separately and solely for a non-litigation purpose. **This argument fails** .... With very limited exceptions, liberal civil discovery rules compel parties to disclose the purely factual information that they have gathered -- if relevant to the issues in the case -- regardless of the context in which it has been gathered.
>
> In addition, although a litigating attorney's mental processes are protected from compelled direct disclosure in most situations -- whether or not embodied in a document, ...- they must of necessity be revealed, at least by implication, in a variety of discovery contexts, most particularly in responding to inquiries about a litigant's legal and factual contentions in the case. Although contentions of this sort reflect an attorney's assessment of and generalization about the purely historical facts, they are specifically required to be provided in the course of discovery. Indeed, this is not surprising, since failure to require such disclosure would prevent each litigant from understanding the position of its adversaries and preclude adequate pretrial preparation in most cases.

*Primetime 24 Joint Venture v. Echostar Communications Corp.*, 2000 U.S. Dist. LEXIS 779, at *6 n.2 (S.D.N.Y. Jan. 28, 2000) (citations omitted) (emphasis added).

The same conclusion is warranted here. Defendants are entitled to discover <u>all</u> facts that support Plaintiff's infringement allegations, including but not limited to the test results that underlie the Totonis Table (Pri. #91), as well as the factual information contained within or underlying Pri. #92-98 (all of which support Plaintiff's allegations of infringement, and relate in one way or another to the Totonis Table; *see* Totonis Dep., Ex. F, at 93:1-22 and 97:17-20).[7] *This is nothing more than what has already been mandated by the Court in its 12/12/03 Order.* Unfortunately, Plaintiff's improper interpretation of that Order has further delayed its compliance with discovery, and necessitated the filing of the instant motion.

---

[7] Such information can be produced without reaching into any legitimate work product or privileged material, if necessary. For example, the documents could be redacted to obscure any such material, or the factual information could be extracted from the documents and produced to Defendants in a different form. *See, e.g., Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*, 208 F.R.D. 92, 106-7 (S.D.N.Y. 2002).

-11-

### III. <u>RELIEF SOUGHT</u>

Defendants seek an order of this Court requiring Plaintiff to comply with its obligations to provide <u>all</u> facts and information relating to Plaintiff's infringement allegations, and to respond fully and fairly to all questions on this topic raised during depositions. Defendants ask that Plaintiff be instructed to respond fully, fairly and immediately to the Defendants' discovery requests that go beyond claim construction, including specifically to Requests for Production Nos. 5, 9, 15 and 20 and Interrogatory No. 1 which seek the <u>factual information related to Plaintiff's allegations of infringement</u>, of which the documents identified on Plaintiff's Supplemental Privilege Log as Pri. #91-98 are clearly a part (in addition to the factual information contained therein or otherwise related to those documents).

These unanswered discovery requests seek information separate and apart from Plaintiff's claim construction information to be provided on April 27, 2004. (For example, the meaning to be given a particular element of a claim in Plaintiff's patent does not in any way hinge on information related to Defendants' allegedly infringing acts.) As Defendants believe this Court affirmed in granting in part Defendants' Motion to Compel, information in Plaintiff's possession concerning Defendants' allegedly infringing acts is an appropriate matter of inquiry for Defendants, and it should be produced forthwith, so that Defendants can prepare their defense, including preparation of dispositive motions.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, as well as the reasons set forth in Defendants' September 22, 2003 Motion to Compel, and in accordance with the Court's December 12, 2003 Order, Defendants request that the Court order the Plaintiff to comply forthwith with the 12/12/03 Order, to answer all questions concerning the factual basis of Plaintiff's claims of infringement,

including but not limited to pre-suit testing, and to produce all documents containing facts that relate to Plaintiff's allegations of infringement in this case.

                                  Attorneys for Defendants,
                                  Schoeller & Hoesch, NA, Inc. and
                                  P. H. Glatfelter Company

By_____
                                  Dina S. Fisher (ct 14896)
                                  280 Trumbull Street
                                  Hartford, CT  06103-3597
                                  Tel. No.: (860) 275-8200
                                  Fax No.: (860) 275-8299
                                  dfisher@rc.com

                                  Marc J. Farrell (ct 24539)
                                  REED SMITH LLP
                                  213 Market Street, 9th Floor
                                  P.O. Box 11844
                                  Harrisburg, PA  17108-1844
                                  (717) 257-3044
                                  mfarrell@reedsmith.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served by means of facsimile and federal express, on this the 3rd day of March, 2004, upon the following:

>Sidney R. Bresnick, Esquire
>Yunling Ren, Esquire
>Cohen, Pontani, Lieberman & Pavane
>551 Fifth Avenue
>New York, NY  10176

>Basam E. Nabulsi, Esquire
>Alexandra Stevens, Esquire
>McCarter & English LLP
>Four Stamford Plaza
>107 Elm Street, 9th Floor
>Stamford, CT  06902

_____
Dina S. Fisher