UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

2004 MAR 17 P 12: 10

U.S. DISTRICT COURT
HARTFORD, CT.

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SCHOELLER & HOESCH, N.A., INC. and )<br>P.H. GLATFELTER COMPANY, )<br>)<br>Defendants. ) | CIVIL ACTION NO. 3:03-CV-0169 (AVC) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR AN ORDER OF COMPLIANCE**

I.   **PRELIMINARY STATEMENT**

Schoeller & Hoesch, N.A., Inc. and P. H. Glatfelter Company ("Defendants") have moved this Court for an order compelling Ahlstrom Windsor Locks, LLC ("Plaintiff") to comply with the Court's order of December 12, 2003, on the grounds that discovery has been and continues to be improperly withheld on the grounds of attorney-client privilege and the attorney work product doctrine. The motion is baseless, without foundation in material respects, wrong on the facts and the law, and an attempt to relitigate matters that have already been settled by the Court and which are now the law of the case. The motion should be denied in all respects.

II.   **ARGUMENT**

A.   **The Order**

The Court's order of December 12, 2003, (the "Order") (Exh. A), directed the parties to take certain actions respecting discovery. The Court ordered Plaintiff to answer Defendants' Interrogatory No. 1 and to produce documents called for in

Defendants' Requests Nos. 5, 9, 15, and 20. The Court also ruled that on February 27, 2004 (now by extension April 27, 2004) there be "a *simultaneous exchange* of relevant claims information", including a "simultaneous exchange [of] their proposed claim constructions" and "all information" supporting Plaintiff's allegations of infringement and Defendants' allegations of invalidity. (emphasis added). The Court also ruled that the "Totonis Table" was subject to protection as attorney work product and need not be produced by Plaintiff.

    Defendants now claim that that ruling, which was crystal clear, requires "clarification" on two issues: (1) the scope of discovery to be produced by Plaintiff, and (2) the timing of such discovery.[1] Defendants also seek what they call the "facts underlying" the Totonis Table, through the production of related documents and the deposition of Plaintiff's in-house counsel and intellectual property manager, Michele M. Totonis.[2] Defendants also want Plaintiff to provide them with the "factual information related to Plaintiff's allegations of infringement", even though the Court has specifically ordered that this information be *simultaneously exchanged* by the parties. Defendants are not entitled to any of the relief that they seek by this motion.

  **B. The Underlying Facts on Which the
    Totonis Table is Based are Work Product**

    1. **The Court has Already Ruled on this Subject**

    The Court has already ruled that because the Totonis Table was prepared in anticipation of litigation, it "is protected by the attorney work product doctrine." Defendants, nevertheless, seek the discovery of what they call the "facts underlying that

---

[1] Defendants should have made a request for clarification over two months ago if they thought one was needed. A request for reconsideration or "clarification", as Defendants call it, must be made within ten (10) days of the filing of the decision or order from which such relief is sought. D. Conn. L. Civ. R. 7(c).

[2] The title has since been changed to "Intellectual Property Manager".

2

document." To permit such an invasion of Plaintiff's work product privilege would, in effect, nullify the Court's original order regarding this document.

The Totonis Table is a compilation of test data that was prepared by Attorney Michele M. Totonis, a member of the Connecticut bar, pursuant to her direct responsibilities as Ahlstrom's in-house counsel and intellectual property officer, in anticipation of litigation with Defendants. The test data contained in the Table was specifically prepared and collected at Ms. Totonis's request. The underlying data, whose production Defendants seek by this motion, are the test results that are collected in the Table. To produce the underlying data is to produce the Table. This could not have been the intent of the Order, which granted the Table work product protection.

The attorney work product doctrine as we know it today, is derived from *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385 (1947) and Federal Rule of Civil Procedure 26(b)(3). *Sporck v. Peil*, 759 F.2d 312, 315 (3d Cir. 1985); *Loftis v. Amica Mut. Ins. Co.*, 175 F.R.D. 5, 10-11 (D.Conn. 1997). The work product doctrine shields from disclosure documents and tangible things prepared in anticipation of litigation, absent a showing of substantial need and an inability without undue hardship to obtain the substantial equivalent of the materials by other means. Fed. R.Civ.P. 26(b)(3); *Loftis*, 175 F.R.D. at 10; *see also In re Grand Jury Subpoenas*, 959 F.2d 1158, 1166 (2d Cir. 1992). There is a strong public policy supporting the rationale and applicability of the work product doctrine. *United States v. Nobles*, 422 U.S. 225, 236-240, 95 S.Ct. 2160, 2169-2171 (1975); *Upjohn Co. v. United States*, 449 U.S. 383, 398, 101 S.Ct. 677, 687 (1981). Among the purposes of the doctrine is that it (1) "shelters the mental processes of the attorney, providing a privileged area in which he can analyze and prepare his client's

case." *Nobles*, 422 U.S. at 238, 95 S.Ct. at 2170 and (2) prevents "one party from piggybacking on the adversary's preparation." *United States v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995). The doctrine now "extends its protection *far beyond*" the original concern for the files and mental impressions of an attorney. *United States v. Stewart*, 287 F.Supp.2d 461, 465 (2003) (emphasis added). Contrary to the defendant's assertion, the doctrine can cover "factual" material. *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 508, 511 (S.D.N.Y. 1992); *Henry v. Champlain Enterprises Inc.*, 212 F.R.D. 73, 91 (N.D.N.Y. 2003).

In general, three conditions must be met in order to earn work product protection. *Astra Aktiebolag v. Andrx Pharmaceuticals Inc.*, 208 F.R.D. 92, 104 (S.D.N.Y. 2002) [hereinafter *Astra*]. "The material must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *Id.* (citation and quotation omitted).

The Totonis Table was specifically prepared in anticipation of litigation. The data collected and produced were generated at the request of Attorney Totonis and has been held to meet the requisite conditions of the attorney work product doctrine. The tests results underlying the Table were generated for the same purpose, *i.e.*, it was prepared by a party, or by or for his representative and represents a "tangible thing." The test results contained in the Table are separate parts of the whole and should be treated the same.

The test data that is contained in the Totonis Table was generated at the request of Attorney Totonis. Similarly, computer printouts that contained statistical and other information that was compiled or prepared at the attorney's direction in anticipation

4

of litigation was deemed attorney work product. *Maloney v. Sisters of Charity Hosp. of Buffalo*, 165 F.R.D. 26, 30 (W.D.N.Y. 1995). The Totonis Table's underlying data, although it is in a sense factual, was generated in anticipation of litigation and, therefore, "come[s] squarely within the ambit of the work-product doctrine." *Golden Trade, S.r.L.*, 143 F.R.D. at 511. Testing results have been recognized as constituting work product material. *Hendrick v. Avis Rent A Car System, Inc.*, 916 F.Supp. 256, 260 (W.D.N.Y. 1996) (noting that testing results were not disputed as attorney work product). Discovery of the testing results "will allow defendants in effect to appropriate the research labors and, to a degree, the analysis of the [attorney]," *Golden Trade, S.r.L.*, 143 F.R.D. at 511, and will violate the scope of Rule 26. Fed. R.Civ.P. 26(b)(3).

Attorney Totonis, during her prior Rule 30(b)(6) deposition, properly invoked the work product doctrine in declining to answer questions that were seeking privileged material. The net result of her testifying as to the tests that were included in her Table, would have been the same: disclosure of her work product. The Court has already decided this issue.

It is important to note that there is a difference between facts that were *already in existence* (*e.g.*, facts previously generated during the ordinary course of business) and the type of facts that are contained in the Totonis Table. The facts (test data) contained in the Table were *not* "preexisting facts" in the sense that they already existed in the files of the company. These test data were specifically prepared and generated at the request of an attorney in anticipation of litigation. That is classic work product.

5

The cases cited by the Defendants in support of their motion are inapposite. For example, in *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465 (S.D.N.Y. 1993)[3], the court mentions that underlying facts are not protected from disclosure, and rules that *a document prepared in the ordinary course of business* will not be protected. *Id.* at 471. *Bowne* is not at all applicable to the case at bar, because the underlying facts (test data) collected in the Totonis Table were *not* prepared in the ordinary course of business, but were specifically prepared in anticipation of litigation.

### 2. Attorney Totonis's Work Product Privilege Extends to Her Representatives and Agents

The work product privilege extends to documents and tangible things prepared in anticipation of litigation or for trial by, *inter alia*, a party's representative and an agent of a party. Fed. R.Civ.P. 26(b)(3). "The definition of the term 'representative' in Fed.R.Civ.P. 26(b)(3) goes beyond attorney work product and includes the work product prepared on an attorney's behalf." *Weinhold v. Witte Heavy Lift, Inc.*, 1994 WL 132392 at *2 (S.D.N.Y. 1994). The rule "makes clear that the work product doctrine protects work done in anticipation of litigation or trial by an attorney, as well as ... agents of the party or its representative." *Id.*; *see also Nobles*, 422 U.S. at 238-39, 95 S.Ct. at 2170. "It is ... necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *Nobles*, 422 U.S. at 238-39, 95 S.Ct. at 2170. The attorney's agents do not themselves need to be attorneys. Rule 26 includes a list of non-attorneys who are explicitly subject to its provisions. Fed. R.Civ.P. 26(b)(3). If an attorney hires an investigator, their findings are protected by the privilege. *In re Grand Jury Subpoena Dated October 22, 2001*, 282 F.3d 156, 161 (2d.Cir. 2002).

---

[3] The Defendants incorrectly cite this case as 500 F.R.D. 465.

Attorney Totonis, in the direct performance of her duties as legal counsel and intellectual property officer at Ahlstrom, made a request to Ray Volpe, Ahlstrom's director of technology for the food products line, that certain tests be conducted on products she believed to have originated with Defendants. Mr. Volpe then instructed his subordinates, Charles J. Fay and Michael Fuss to have these tests conducted. Totonis Tr. at 96:7-19, 97:12-16, 56:3-21, 147:11-18 (Exh. B). These tests were conducted and the results thereof transmitted by Fay and Fuss to Volpe who, in turn, transmitted them to Attorney Totonis. The fact that these investigators are not attorneys has no bearing on whether or not the work product doctrine is applicable to their work. Although, Ms. Totonis's name does not appear on the documents prepared by Fay and Fuss, they were prepared for delivery to her at her direct request. As such, they are subject to the protection of the attorney work product privilege.

### 3. Defendants Have Failed to Demonstrate a Substantial Need or Inability to Obtain the Equivalent Data

To defeat a claim of work product privilege, Defendants are required to make a showing of a *substantial need* for this information in the preparation of their case, and their *inability to obtain* the equivalent without undue hardship. Fed. R.Civ.P. 26(b)(3); *Upjohn Co. v. United States*, 449 U.S. 383, 400, 101 S.Ct. 677, 688 (1981); *Walsh v. Seaboard Surety Co.*, 184 F.R.D. 494, 496-97 (D.Conn. 1999). "The burden of proving that the need for the [information] overrides the protection of the work product doctrine rests with the [moving party]." *Loftis*, 175 F.R.D. at 11 (citing *Helt v. Metropolitan District Commission*, 113 F.R.D. 7, 12 (D.Conn. 1986)). Defendants have failed to meet their burden.

It is implicit in the Order denying Defendants access to the Totonis Table, that the Court has made the requisite finding of no substantial need nor inability to obtain the equivalent data. This finding should extend to the underlying data as well, since the Table is a compilation of such data. Except for a footnote to their argument, Defendants make no such showing. Consequently, the strong public policy in favor of the attorney work product doctrine has not been overcome by the Defendants.

C.  **The Court's Order Calls for a *Simultaneous Exchange* of Claims Information**

The Court's Order of December 12, 2003, provided that Plaintiff answer Interrogatory No. 1, relating to the patent claims, and further provided as follows:

> The court orders, however, a <u>simultaneous</u> exchange of relevant claims information and, in this regard, on February 27, 2004, the parties shall simultaneously exchange their proposed claim constructions. The plaintiff shall provide <u>all</u> facts and identify all information supporting its allegations of infringement, and the defendants shall provide <u>all</u> facts and identify all information supporting their allegations of invalidity. Failure to properly disclose shall be at the party's peril as, after February 27, 2004, any party seeking to amend, modify or submit any proposed claim construction must either obtain consent of all parties or leave of the court.[4]

In a supplemental response, Plaintiff identified the specific claims of the patent that it alleges are infringed and identified the specific products that it believes infringe those claims. It took Plaintiff several months of intense discovery, in the face of determined opposition, to obtain the facts upon which that supplemental answer was made. Defendants have now moved the Court for additional claims information including such things as: (i) Plaintiff's proposed claim construction for each element of such claims, (ii) special or uncommon meanings of words in the claim, (iii) citations that support,

---

[4] The date has been extended to April 27, 2004.

8

describe, or explain the proposed claim constructions, (iv) an element-by-element comparison of the claims with each accused product, and (v) if the doctrine of equivalents is claimed, the function of each element claimed to be performed by that element.

The information that Defendants have called for in this motion falls under the category of "*claim construction*", as to which the Court has ordered a simultaneous exchange. There is no other way to describe it. The Federal Circuit has held that in claim *construction*, "the court determines the *scope and meaning* of the patent claims." *Minton v. National Association of Securities Dealers, Inc.*, 336 F.3d 1373, 1376 (Fed. Cir. 2003); *Deering Precision Instruments, L.L.C. v. Vector Distribution Systems, Inc.*, 347 F.3d 1314, 1322 (Fed. Cir. 2003) ("construction of the claims to determine the *scope and meaning* of the asserted claims"); *Eaton Corporation v. Rockwell International Corporation*, 323 F.3d 1332, 1337 (Fed. Cir. 2003) ("the claim must be properly construed to determine its *scope and meaning*") (emphasis added throughout).

The parties' respective positions regarding the *scope and meaning* of the patent claims are properly simultaneously exchanged to prevent either side from altering its position after learning of the other side's claim construction, and the fairness of this procedure is seen in its adoption by various courts in dealing with this issue. *See, e.g., British Telecommunications PLC v. Prodigy*, 189 F. Supp.2d 101, 105 (S.D.N.Y. 2002) ("The parties exchanged proposed claim constructions for the patent *claim terms* to be interpreted …and a hearing was held limited to issues of extrinsic evidence"); *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 270 F. Supp.2d 519, 523-24 (D.Del. 2003) ("The parties then exchanged expert reports … in which each side's expert

provided a proposed claim construction ... Both parties' experts proffered a contrary construction to the *phrase* 'characterized by the effiency equation.'); *Datatreasury Corporation v. First Data Corp.*, 243 F. Supp.2d 591, 596 (N.D.Tex. 2003) ("The parties have exchanged their preliminary claim and infringement *contentions*, preliminary invalidity contentions, and proposed claim construction statements.") (emphasis added throughout). Defendants' motion, therefore, should be denied.

### D.   Plaintiff's Document Production Is Complete

Defendants have asked the Court to compel Plaintiff to comply with the Order by producing the documents called for in requests 5, 9, 15, and 20. In fact, these documents, to the extent they existed in Plaintiff's files, were produced by Plaintiff some time ago. Since then, Plaintiff has also produced additional documents that were the subject of subsequent requests by Defendants. In any event, *all* of the documents in Plaintiff's possession, custody or control that relate to the patent-in-suit, with the exception of those listed in its privilege log, have now been produced to Defendants. There are no additional documents to produce from Plaintiff's files that relate to the patent-in-suit.[5] (Declaration of Michele M. Totonis, attached hereto as Exh. C).

---

[5] Certain additional documents in the files of Plaintiff's outside patent counsel that have recently been subpoenaed by Defendants, will be the subject of a separate claim of privilege and/or a motion for a protective order.

III.  **CONCLUSION**

       For all of the foregoing reasons, Defendants' motion should be denied in all respects.

                                    Respectfully submitted,

March 15, 2004                   Cohen, Pontani, Lieberman & Pavane

                                    By _/s/ Sidney R. Bresnick_
                                    Sidney R. Bresnick, Esq. (ct 16295)
                                    Yunling Ren, Esq.
                                    David Badanes, Esq.
                                    551 Fifth Avenue
                                    New York, NY 10176
                                    Tel. 212-687-2770
                                    Fax 212-972-5487
                                          -and-
                                    McCarter & English, LLP
                                    Basam E. Nabulsi, Esq. (ct 20897)
                                    Four Stamford Plaza
                                    107 Elm Street, 9th Floor
                                    Stamford, CT 06902
                                    Tel. 203-965-0601
                                    Fax 203-323-6513

                                    Attorneys for Plaintiff,
                                    Ahlstrom Windsor Locks LLC

## CERTIFICATE OF SERVICE

      This is to certify that a copy of the foregoing Plaintiff's Opposition to Motion for an Order of Compliance has been sent by first class mail, postage prepaid, this 15th day of March, 2004 to:

>Dina S. Fisher, Esq.
>Robinson & Cole LLP
>280 Trumbull Street
>Hartford, CT 06103-3597
>      -and-
>Marc J. Farrell, Esq.
>Reed Smith LLP
>213 Market Street, 9th Floor
>P.O. Box 11844
>Harrisburg, PA 17108-1844

_/s/ Sidney R. Bresnick_
Sidney R. Bresnick