IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

AHLSTROM WINDSOR LOCKS LLC,                  :
                                             :
                    Plaintiff                :        CASE NO. 3:03-CV-0169-AVC
                                             :
    v.                                       :
                                             :
SCHOELLER & HOESCH, NA, INC.,                :
                                             :
    and                                      :
                                             :
P. H. GLATFELTER COMPANY                     :
                                             :
                    Defendants               :        MARCH 30, 2004

### DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION FOR ORDER OF COMPLIANCE

Pursuant to Local Rule 7(c) of the Local Civil Rules of the United States District Court

for the District of Connecticut, the Defendants, Schoeller & Hoesch, NA, Inc. and P. H.

Glatfelter Company ("Defendants"), respectfully move for reconsideration of the Court's Order

dated March 16, 2004 (the "3/16/04 Order") denying Defendants' Motion for Order of

Compliance, filed on March 3, 2004. Defendants must have miscommunicated the object of its

motion. Defendants are not seeking work product, but simply the facts underlying the

documents withheld as work product.

I.   **DEFENDANTS SEEK PURELY EMPIRICAL DATA AND THE RESULTS OF TESTS CONDUCTED BY PLAINTIFF TO SUPPORT ITS ALLEGATIONS OF PATENT INFRINGEMENT.**

Plaintiff's in-house counsel, Michele Totonis, has testified that prior to bringing this suit

on January 24, 2003, Plaintiff obtained various samples of what it believed to be tea bag paper

that had been manufactured by Defendants.[1]  *See* Totonis Dep., at 48:19 to 49:20. Those

---

[1] Relevant portions from the transcript of the Totonis Deposition were attached as Exhibit B to Defendants' Motion
for Order of Compliance filed March 3, 2004..

samples consisted of a hand sheet obtained in the field by an Ahlstrom salesperson named Brian Koesher and another hand sheet obtained in the field by an Ahlstrom salesperson named Richard Klist (both presumably from a mutual customer of the parties), and two additional samples that were purchased in the marketplace by persons yet to be identified, in the form of actual tea bags sold at a grocery store in Connecticut. Those samples were then subjected to a series of tests performed or supervised by Ahlstrom technicians, including Charlie Faye and Matt Fuss, and the empirical results of those tests were recorded. *See* Totonis Dep., at 56:9, and 74:15 to 76:4; *see also* Plaintiff's Supplemental Privilege Log, attached to Defendants' Motion for Order of Compliance as Exhibit C.

Plaintiff's Complaint alleges, *inter alia*, a claim for patent infringement. Therefore, the empirical data which Defendants seek goes to the very crux of this case, namely, evidence which Plaintiff believes tends to show that Defendants are infringing its patent. Defendants are entitled to this data. It is to be contrasted with the nature of the information sought by the defendants in Golden Trade S.r.L. v. Jordache, 143 F.R.D. 508 (S.D.N.Y. 1992), the case relied upon by the Court in its 3/16/04 Order denying Defendants' Motion for Order of Compliance. The facts in Golden Trade are markedly different from the present dispute, and it is respectfully submitted necessitate a different ruling here than was reached in that case.

In Golden Trade, the defendants sought the results of a prior art search conducted at the request of plaintiff's attorney. The results of that prior art search were in no way related to Plaintiff's case in chief, i.e., it was not information – factual or otherwise – that would assist in establishing or refuting the existence of infringement.[2] This is in stark contrast to the information Defendants are seeking in the present dispute. The results of tests conducted on Defendants' allegedly-infringing paper(s) constitute underlying facts which are relevant to an

---

[2] "[T]he identity of the patents listed in the researcher's report is not, in itself, an 'underlying fact' relevant to the issues in the litigation." Id. at 511.

issue of central importance in this litigation: whether or not there is evidence of infringement on the part of Defendants. For that reason alone, Golden Trade simply does not apply here.

Further, the court in Golden Trade *did* in fact allow for the possibility of the defendants obtaining the information they sought via other means:

> [D]efendants may ask plaintiffs to identify any patents or other inventions known to plaintiffs that may embody some or all of the specific techniques of the process covered by the challenged patent, irrespective of whether plaintiffs' knowledge of those patents and inventions was acquired by means of the prior art search commissioned by their attorneys.

Id. at 512. Therefore, at a minimum, Defendants in the present case ought to be permitted to resume the deposition of Ms. Totonis and obtain the information they seek in a manner along the lines of that suggested by the court in Golden Trade.[3]

"The most significant role of the work-product doctrine is to protect from disclosure 'an attorney's mental impressions, opinions or legal theories concerning specific litigation." Id. at 511. This is plainly not an instance wherein Defendants are attempting to appropriate the research labors of Ms. Totonis or any of her agents. Nor are Defendants in any way trying to obtain her analysis (or that of her agents) in the sense of seeking information having to do with her interpretation of the meaning of the test results. Defendants seek simply to know the results of the tests performed to be able to assess the basis of Plaintiff's claims in this case.

## II.    BY ITS VERY NATURE, THE INFORMATION WHICH DEFENDANTS SEEK CANNOT BE OBTAINED THROUGH ANY OTHER MEANS.

Not only is the *role* of the information sought by Defendants different from the role of the information sought in Golden Trade, but so too is the *character* of the disputed information,

---

[3] Moreover, Defendants do not read the Court's 12/12/03 Order granting their First Motion to Compel, even as clarified by the Court's 3/16/04 Order, as preventing them from deposing Mr. Koesher and Mr. Klist and eliciting complete information from them regarding, for example, the circumstances surrounding their obtaining of the two hand sheets they purportedly obtained in the field, or having Mr. Faye and Mr. Fuss provide full and complete answers regarding the nature of the tests that were performed and the empirical results of those tests.

which by its very nature in the instant dispute cannot be obtained from any means other than via disclosure by Plaintiff.

In Golden Trade, the defendants could have performed their own prior art search just as easily as the plaintiff. Presumably, if the defendants did a thorough enough search, they would likely have turned up the same or very similar prior art uncovered by the plaintiff in its search. It was in that vein that the court in Golden Trade equated the defendants' attempts to obtain the results of plaintiff's search as "in effect to appropriate the research labors and, to a degree, the analysis of the attorney's agent." Id. at 511.

In contrast, by its very nature, the results of the tests conducted by Plaintiff prior to filing the instant suit *cannot* be obtained by other means. Defendants have a right to know the facts upon which Plaintiff brought suit. If those facts do not support Plaintiff's infringement allegations, they will surely not disclose them on the April 27 "exchange date." Defendants have a right to this information, and Plaintiff should not be entitled to hide it behind the cloak of "work product."

Certainly, Plaintiff has produced to Defendants three items (two individual tea bags and a 3½" by 9" portion taken from a single hand sheet) that it has indicated were taken from the samples Plaintiff purportedly tested prior to filing suit. However, having those items in hand puts Defendants no closer to being able to obtain the facts that are in Plaintiff's possession, and that Defendants continue to seek.

Several issues bear noting. First, without the ability to inquire fully into the circumstances surrounding the obtaining of these samples, including chain-of-custody issues, Defendants have no way of knowing that the two tea bags and sample hand sheet portion that have been turned over to Defendants are identical in all respects to the ones supposedly tested by Plaintiff. Even if Defendants could be certain that the items given to them by Plaintiff were identical to the samples Plaintiff claims to have tested prior to filing suit, Defendants cannot

possibly reproduce the testing that was done by Plaintiff, for Defendants do not know *what* tests were performed by Plaintiff.

Second, even with knowledge of the tests that were performed, Defendants could not perform its own tests in an effort to replicate the results purportedly obtained by Plaintiff, without knowing the details of precisely *how* each test was performed (the testing environment, the test parameters, the manner in which results were recorded, etc.).

Therefore, by the very nature of the situation, there simply is no way for Defendants to obtain equivalent data.

III.    **THE 3/16/04 ORDER LEAVES OPEN THE POSSIBILITY OF PLAINTIFF POTENTIALLY WITHHOLDING HIGHLY MATERIAL INFORMATION THAT MIGHT ACTUALLY REFUTE ITS CLAIMS OF INFRINGEMENT.**

Plaintiff has asserted that the results of the tests it conducted prior to filing suit support Plaintiff's allegations of infringement. *See* Totonis Dep., at 93:1-22 and 97:17-20. The Court's 12/12/03 Order requires Plaintiff to "provide all facts and identify all information supporting their allegations of infringement." Defendants believe this Order allows Plaintiff to selectively pick and choose which information it may disclose. Presumably, Plaintiff may conclude that if the test results do not support its infringement allegations, then they need not be provided to Defendants. Defendants submit that such information is indeed properly discoverable, and the Court's 12/12/03 and 3/16/04 Orders merely address the *timing* of when such information must be turned over to Defendants.

Defendants submit that Plaintiff **must** produce the information underlying its Pri. #91-98 to Defendants, either in advance of the exchange date or on April 27, including the data underlying the Totonis Table, since it clearly embodies "facts and … information supporting their allegations of infringement." If Plaintiff produces this information on April 27, any claim of work product as to the disclosed facts and information will have been waived and Defendants will be free to resume Ms. Totonis' deposition, undertake the depositions of Messrs. Koesher,

Klist, Faye and Fuss, and make full inquiry into the circumstances surrounding the obtaining of the samples, the testing that was subsequently performed, and the results of those tests.

## CONCLUSION

"While the work product privilege is accorded to protect the adversary system by affording an attorney a private realm in which to develop his legal strategies, that privilege impedes a fair adversarial presentation of the facts when it is invoked to avoid disclosure of anything other than a necessarily biased presentation of the relevant facts." Coleco Industries, Inc. v. Universal City Studios, Inc., 110 F.R.D. 688, 690 (S.D.N.Y. 1986).

> [T]he work product privilege is intended to shield the strategic considerations of a party's attorney from exploration by the opposing party, but the privilege should not be wielded as a sword to advance the holder's interest, while depriving the opponent of the bases upon which the strategic considerations are premised.

Minn. Specialty Crops v. Minn. Wild Hockey Club, L.P., 210 F.R.D. 673, 677 (D. Minn. 2002), citing United States v. Workman, 138 F.3d 1261, 1263-64 (8th Cir. 1998) ("The attorney client privilege cannot be used as both a shield and a sword...."). Defendants submit that Plaintiff's pre-filing testing data is information that it must disclose regardless of whether or not it is favorable to its case.

**WHEREFORE**, Defendants respectfully request that the Court reconsider its Order dated March 16, 2004, and grant Defendants' Motion for Order of Compliance filed March 3, 2004.

Attorneys for Defendants,
Schoeller & Hoesch, NA, Inc. and
P. H. Glatfelter Company

By_____

Dina S. Fisher (ct 14896)
280 Trumbull Street
Hartford, CT  06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
dfisher@rc.com

Marc J. Farrell (ct 24539)
REED SMITH LLP
213 Market Street, 9th Floor
P.O. Box 11844
Harrisburg, PA  17108-1844
(717) 257-3044
mfarrell@reedsmith.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served by means of facsimile and first class mail, on this the 30th day of March, 2004, upon the following:

Sidney R. Bresnick, Esquire
Yunling Ren, Esquire
Cohen, Pontani, Lieberman & Pavane
551 Fifth Avenue
New York, NY  10176

Basam E. Nabulsi, Esquire
Alexandra Stevens, Esquire
McCarter & English LLP
Four Stamford Plaza
107 Elm Street, 9th Floor
Stamford, CT  06902

Dina S. Fisher