UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SCHOELLER & HOESCH, N.A., INC. and ) <br> P.H. GLATFELTER COMPANY, ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. 3:03-CV-0169 (AVC) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S FIRST
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Plaintiff, Ahlstrom Windsor Locks LLC ("Ahlstrom" or "Plaintiff"), hereby moves the Court, pursuant to Rule 37, Fed.R.Civ.P., for an order directing defendants, Schoeller & Hoesch, N.A., Inc. ("S&H") and P.H. Glatfelter Company ("Glatfelter") (collectively "Defendants"), to produce outstanding documents that were requested by Plaintiff pursuant to Rule 34, Fed.R.Civ.P. on May 6, 2003 and on July 28, 2003. Specifically, Plaintiff is seeking the test records or test data sheets concerning Defendants' accused products. The documents requested by Plaintiff are critical to Plaintiff's allegations of Defendants' infringement of Plaintiff's U. S. Patent No. 5,431,997 (the '997 patent") and Defendants' breach of contract. Defendants' refusal to comply with the subject requests is unwarranted and improper.

Q:\YR\1783-125L\first motion to compel

## I. INTRODUCTION

### A. <u>**Factual Background**</u>

The '997 patent issued on July 11, 1995 to The Dexter Corporation of Windsor Locks, Connecticut ("Dexter") and was subsequently assigned to Plaintiff Ahlstrom when it acquired the assets of Dexter's Non-Woven Division in June 2000. A copy of the '997 patent is attached as Exhibit A. The '997 patent is directed to fibrous web material, including tea bag papers, for making infusion packages for brewing beverages such as tea. Plaintiff Ahlstrom and Defendants S&H and Glatfelter are major players in the tea bag paper industry. Ahlstrom manufactures and markets fibrous web material (e.g., soft, absorbent, tissue thin paper) for making tea bags and coffee bags, as do S&H and Glatfelter. Ahlstrom, therefore, is in direct competition with S&H and Glatfelter and has a critical interest in maintaining and enforcing its rights in the '997 patent against infringement by Defendants.

The conflict among the parties is not new, however, as Dexter, Ahlstrom's predecessor in interest, had also been involved in disputes over the '997 patent with S&H and Glatfelter. Those disputes were resolved by an agreement, dated September 24, 1999 (the "Agreement") (Exhibit B), in which S&H agreed, on behalf of itself and Glatfelter, that it would not make, have made, use or sell in the United States:

> (a) S&H Grade 012/RL-T and/or S&H Grade 212/LEUT products, either under the present designation or any other designation; or
> (b)  fibrous web materials for making infusion packages for brewing beverages as covered by one or more claims of the Dexter patent ['997 patent].

Ahlstrom is the successor in interest to Dexter's agreement with S&H and Glatfelter regarding the '997 patent. Defendants' breach of the Agreement and infringement of the '997 patent are at the heart of the present action.

Reduced to its simplest terms, the '997 patent relates to a product (and the process thus producing the product) that is a chemically treated porous web material that is used in making infusion bags, e.g., tea bags, and the like. Typically, tea bags are manufactured by folding and mechanically crimping the tea bag paper (porous web materials) together into the familiar shape of a tea bag. The chemical treatment of such fibrous web material involves impregnating the web with a hydrophobic system that eliminates or substantially reduces breakage of the crimped seam of the bag while in hot water. When the seam on the bag breaks (bursts) tea leaves spill into the beverage, an unsatisfactory result. It is commonly known to the tea bag manufacturers that the failure of mechanically sealed tea bags is primarily caused by weakening of the crimped seams due to water absorption by the paper fibers. The hydrophobic system described in the '997 patent, when applied to tea bag papers, effectively delays or inhibits water from entering into the paper fibers, thereby reducing water absorption and resultant breakage of the crimped seams. It is this hydrophobic treatment system that has played a key role in resolving the long existing problem of seam failures in the tea bag making industry.

Tea bag papers are generally made of fibrous materials that are free from perforations or punctures yet possess a high degree of porosity. The hydrophobic materials utilized in the invention provide not only a resistance to water absorption to prevent seam failures, but also provide this property without adversely affecting the infusion characteristics of the web (the '997 patent, claim 1). The hydrophobic system in

3

the '997 patent includes such chemical compounds as acrylic polymers and/or copolymers and is generally prepared in the forms of latex dispersions or emulsions. These materials are preferred due to their ability to permeate the filaments or fibers of the web without blocking the porous openings between the fibers. (the '997 patent, col. 4, lines 4-11). The effectiveness of the process can be determined by the "water climb test" (the '997 patent, column 5, lines 9-32, and claim 1) and the "seam failure test" (also known as the "bag bursting test") (the '997 patent, column 5, lines 33-62, and claim 1).

The documents sought in this motion concern any experimentation, testing or analysis, including the "water climb test", the "seam failure test" ("bag bursting test") and the "infusion test", made by Defendants or on Defendants' behalf, of Defendants' products that are chemically treated with a binder system containing a hydrophobic agent. It is important to note, however, that the present action involves not only products that Defendants have sold or offered for sale since September 24, 1999, but also products Defendants developed prior to the 1999 Settlement Agreement, including the specific products identified in the Agreement. To establish that Defendants have breached the Agreement, Plaintiff must know the similarity or difference between the pre-Agreement and the post-Agreement products. It can only do this by means of a direct comparison between them. Therefore, it is Plaintiff's attempt to obtain <u>all</u> relevant evidence needed to establish Plaintiff's allegations of patent infringement and Defendants' breach of contract that precipitated the present motion to compel.

**B.    Document Requests in Dispute**

Plaintiff has alleged that Defendants have infringed the '997 patent (Complaint, Count I) and breached the Agreement entered into in 1999 between the

parties (Complaint, Count II). Pursuant to Fed. R. Civ. P. Rule 34, Plaintiff served on Defendants its First Set of Document Requests (Exhibit C)[1] on May 6, 2003, where the pertinent Requests Nos. 32 and 33 read as follows:

> **Request for Production No. 32**
> All Documents and things concerning any experimentation, testing or analysis, made by Defendant or on Defendant's behalf, of each Fibrous Web Material Product that Defendant has manufactured, used, offered for sale, or sold.
>
> **Request for Production No. 33**
> All documents and things concerning any experimentation, testing or analysis, made by Defendant or on Defendant's behalf, of each S&H [Glatfelter] Grade 012/RL-T and/or S&H [Glatfelter] Grade 212/LEUT Product that Defendant has manufactured, used, offered for sale, or sold.

Defendants having failed to produce the documents requested above, Plaintiff served on Defendants a Second Set of Document Requests (Exhibit D) on July 28, 2003, in which Requests Nos. 43 and 46 generally repeat Requests Nos. 32 and 33 except that they are more specific:

> **Request for Production No. 43**
> All documents concerning research, development, and/or manufacture of Defendant's product designated as grades 012/RL, 212/L, 212/LU(212/LGU), 213/L, 212/LTA, 212/L-TA, 212-L/TA, 212/RLTA and 212-RL/TA, including, but not limited to, all laboratory notebooks or any notebooks, manufacturing specifications, documents concerning analysis, testing or experimentation of such products including procedures and results, and all correspondence.
>
> **Request for Production No. 46**
> All documents concerning research, development, and/or manufacture of Defendant's Fibrous Web Material Products (as defined by Ahlstrom) under the trade name "Dynacrimp", including, but not limited to, all laboratory notebooks or any notebooks, manufacturing specifications, documents concerning analysis, testing or experimentation of such products including procedures and results, and all correspondence.

---

[1] All of Plaintiff's discovery requests were served on each individual Defendant in this case.

It is evident that all records or data sheets of Defendants' "water climb test", "bag bursting test", and "infusion test" are encompassed by Plaintiff's Requests Nos. 32, 33, 43 and 46 (collectively, "Plaintiff's document requests"). Although Defendants have produced some documents responsive to Plaintiff's document requests, they have intentionally withheld a majority of those test records or data sheets[2], knowing that these test records or data sheets are critical to Plaintiff's claims of patent infringement and breach of contract.

On October 30, 2003, a telephone conference was held between Plaintiff's counsel and Defendants' counsel to resolve the parties' discovery disputes. By letter dated October 31, 2003, Plaintiff's counsel summarized the issues discussed in this telephone conference (Exhibit E). In response, Defendants' counsel stated:

> ... that thus far no documents have been found, privileged or otherwise, dated prior to September 24, **1999**, which relate to [the infringement or non-infringement of one or more claims of the '997 patent by any of [S&H's] products]. Any such documents dated between September 24, 1999 and January 24, 2003 have in fact been produced or otherwise identified. (emphasis in original).

See Exhibit F. It should be noted that Defendants' production, as to documents post- 1999 Settlement Agreement, did <u>not</u> include all test records or data sheets relating to their hydrophobic binder papers, which were presumably developed in 1997[3].

---

[2] As of today, Defendants have only produced seven sheets of the relevant test results: D0074 dated April 18, 2002, D 0076 dated April 13, 2003, and D0498-D0502 dated May 8, 2003.

[3] The parties' counsel, through email communications, agreed that in view of the 1999 Settlement Agreement, Defendants' pre-1999 document production is limited to:
   "a) the validity and/or enforceability of the '997 patent;
   b) the scope and/or content of any claim in the '997 patent; and/or
   c) the infringement or non-infringement of one or more claims of the "997 patent by any products." See, Exhibits J and K.

Thereafter, Plaintiff learned from Defendants' Rule 30(b)(6) designee Mr. Guenter Grauer's deposition taken on January 16, 2004, that Defendants had routinely performed quality control tests including the "water climb test", the "bag bursting test", the "infusion test" and the "wettability test" on Defendants' products and recorded the results of these tests on data sheets that had been kept in the main laboratory in Defendants' plant since 1997 (Exhibit G).

On March 30, 2004, Plaintiff's counsel sent a letter, via facsimile, to Defendants' counsel demanding that Defendants produce those test records identified by Defendants' witness (Exhibit H). Defendants, however, completely ignored Plaintiff's demand. On April 19, 2004, Plaintiff's counsel again sent Defendants' counsel a letter demanding immediate production of these documents (Exhibit I). There has been no response from Defendants. Defendants' failure and refusal to produce the requested documents necessitates this motion to compel.

## II.  ARGUMENT

Fed.R.Civ.P. Rule 26 (b)(1), which provides the scope and limits of discovery, states:

> (1)  In General. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, …. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. …

Fed.R.Civ.P. Rule 26 (b)(1) further states:

> … Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

It is beyond dispute, that the "federal rules evince a liberal policy with regard to discovery in order to allow litigants to secure helpful evidence from the hands

7

of their adversaries." *Schlesinger Investment Partnership v. Fluor Corp.*, 671 F.2d 739, 742 (2d Cir. 1982); *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964) (Discovery rules "are to be accorded a broad and liberal treatment") citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003) (citing *Schlagenhauf* for this proposition). Clearly, the documents sought by Plaintiff contain information that falls well within the liberal discovery rules.

In this patent infringement and breach of contract action, whether or not Defendants' products meet each and every requirement of the claims in the '997 patent is the central issue of this case. Among others, claim 1 of the '997 requires that the tea bag papers treated by a hydrophobic binder system have the following characteristics:

> exhibiting no appreciable water climb when measured using water water fat a temperature of about 100 °C. and no substantial loss of infusion characteristics while providing less than 10 failure in the mechanical seam upon exposure to boiling water.

Exhibit A (the '997 patent, column 7, lines 33-38). These characteristics are determined by the "water climb test", the "bag busting (seam failure) test" and the "infusion test". The hydrophobicity of the tea bag papers also can be determined by the "wettability test", which Defendants have admitted is one of their standard quality control tests (Exhibit E). The records or data sheets of these tests are direct evidence demonstrating the characteristics of Defendants' products. Therefore, they are relevant to the issues of infringement and breach of contract. Plaintiff is entitled to know what were/are the standards set by Defendants for their products, how and when Defendants changed their standards over time, and whether or not Defendants' products were/are consistent with these standards. Simply put, Plaintiff is entitled to the entire records of all these tests to evaluate Defendants' products. Defendants have these documents but have been

withholding these critical documents until today. Plaintiff would have been left in the dark about these critical documents if Defendants' witness, Guenter Grauer, had not revealed their existence during his deposition. There is utterly no justification for Defendants to withhold these documents.

### III. CONCLUSION

For all of the foregoing reasons, Plaintiff's respectfully request that the Court order Defendant to produce the entire records of the water climb, bag bursting, infusion and wettability tests that have been conducted by Defendants since at least 1997, pursuant to Plaintiff's Document Requests Nos. 32, 33, 43 and 46.

Respectfully submitted,

April 23, 2004

**COHEN, PONTANI, LIEBERMAN & PAVANE**

By_____
Sidney R. Bresnick, Esq. (CT 16295)
Yunling Ren, Esq. (CT 21078)
David P. Badanes, Esq.
551 Fifth Avenue
New York, NY 10176
Tel. 212-687-2770
Fax 212-972-5487
        -and-
McCarter & English, LLP
Basam E. Nabulsi, Esq. (CT 20897)
Four Stamford Plaza
107 Elm Street, 9th Floor
Stamford, CT 06902
Tel. 203-965-0601
Fax 203-323-6513

*Attorneys for Plaintiff,*
Ahlstrom Windsor Locks LLC

## **CERTIFICATE OF SERVICE**

        This is to certify that a copy of the foregoing Plaintiff's First Motion to Compel Production of Documents and Exhibits A-K in support of Plaintiff's Motion has been sent by first class mail, postage prepaid, this 23rd day of April, 2004 to:

        Dina S. Fisher, Esq.
        Robinson & Cole LLP
        280 Trumbull Street
        Hartford, CT 06103-3597
            -and-
        Marc J. Farrell, Esq.
        Reed Smith LLP
        213 Market Street, 9th Floor
        P.O. Box 11844
        Harrisburg, PA 17108-1844

_____
Yunling Ren

# EXHIBITS A-K

# IN SUPPORT

# OF PLAINTIFF'S FIRST

# MOTION TO COMPEL

# PRODUCTION OF DOCUMENTS