UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC,      ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.      ) | CIVIL ACTION NO. 3:03-CV-0169 (AVC) |
| ) | |
| SCHOELLER & HOESCH, N.A., INC. and ) | |
| P. H. GLATFELTER COMPANY,      ) | |
| ) | |
| Defendants. ) | MAY 20, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION PURSUANT TO RULE 15, FED. R. CIV. P.,
<u>FOR LEAVE TO FILE AN AMENDED COMPLAINT</u>**

Pursuant to D. Conn. L. Civ. R. 7, Plaintiff, Ahlstrom Windsor Locks, LLC ("Plaintiff"), through its undersigned counsel, submits this Memorandum of Law in support of its motion pursuant to Rule 15, Fed. R. Civ. P., for leave to file an amended complaint in the form annexed as Exhibit A to Plaintiff's motion, adding claims for inducement of infringement under 35 U.S.C. § 271(b) and contributory infringement under 35 U.S.C. § 271 (c) against defendants, Schoeller & Hoesch, N.A., Inc. ("S&H") and P. H. Glatfelter Company ("Glatfelter") (collectively, "Defendants"), and conforming certain of the allegations to the proofs herein. As set forth in detail below, the grounds for the motion are:

     1.     The additional claims of inducement of infringement and contributory infringement are based on newly discovered information, which has only recently been reported to Plaintiff by its experts;

2. The additional claims for inducement of infringement and contributory infringement arise from the same activities and products of Defendants that gave rise to the allegations of patent infringement that is currently the subject of the lawsuit;

3. The additional claims for inducement of infringement and contributory infringement are necessary to afford Plaintiff complete relief in the action;

4. The proposed amendment to the complaint should not result in any delay in bringing this case to trial as expert discovery has not yet begun and, as Defendants have admitted in their own motion to amend, with over three months remaining until the close of discovery, there is *plenty of time to conduct additional discovery if necessary to adequately address* these additional claims;

5. The additional claims for inducement of infringement and contributory infringement will not prejudice Defendants; and

6. Allowance of the amendment will not be futile.

I. **Background of the Case**

Plaintiff has alleged in its complaint that Defendants have infringed its United States patent No. 5,431,997 ("the '997 patent") claiming (i) tea bag papers having hydrophobic properties that protect the mechanically crimped seams of a tea bag from bursting when the bag is placed in hot water and (ii) a method of making this hydrophobic paper. Plaintiff has concluded, based on reports recently received from its experts, that in addition to Defendants' direct infringement of the '997 patent, they have actively induced

infringement and contributed to the infringement of the patent by others. In particular, Plaintiff seeks to add alternative counts for inducement of infringement and contributory infringement of the '997 patent on the grounds that when the ultimate consumer of the tea bag places it in hot water (as they must if they are to brew tea) the tea bag becomes hydrophobic in nature and meets all of the elements of one or more claims of the '997 patent. The ultimate consumer thus becomes a direct infringer, while Defendants are the indirect infringers, having induced infringement and contributed to the infringement of the patent.

Plaintiff has also amended the complaint in minor respects to conform to the evidence, particularly with respect to the corporate relationship between the Defendants and as to their activities. Thus, Plaintiff has withdrawn an allegation that Schoeller & Hoesch, N.A., Inc. is a manufacturer of tea bag papers; it is a marketer, distributor and seller of these products. Additionally, the relationship of Papierfabrik Schoeller & Hoesch GmbH in Germany and Papeteries de Cascadec SAS in France, as manufacturers of the infringing tea bag paper and as subsidiaries of defendant, P. H. Glatfelter Company, has been alleged.

## II. Inducement of Infringement and Contributory Infringement

### A. Inducement of Infringement

The basis for a claim of inducement of infringement is set forth in 35 U.S.C. § 271(b), which reads as follows:

> (b) Whoever actively induces infringement of a patent shall be liable as an infringer.

The Federal Circuit has held that "[a] person infringes [under § 271(b)] by actively and knowingly aiding and abetting another's direct infringement." *Water Technologies Corporation v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988). "While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." *Id.* (citing *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986). "The requisite intent to induce infringement may be inferred from all of the circumstances." *E. I. Du Pont De Nemours & Company v. Monsanto*, 903 F. Supp. 680, 739 (D. Del. 1995).

Defendants herein have sold tea bag paper that has been treated with an acrylic copolymer, which imparts hydrophobicity to the paper (as claimed in the '997 patent) and a surfactant that imparts hydrophilicity to the paper. The apparent effect of this added hydrophilicity is to raise the water climb[1] of Defendants' paper to a level that could be asserted to be beyond the limit set forth in the patent claims. Plaintiff's experts have determined, however, that the surfactant that Defendants have added to their paper dissolves and washes out of the paper almost immediately (less than 2 seconds) when it is put in hot water, as it must be if it is to be used to brew tea. When surfactant is washed away, the tea bag becomes the tea bag of Plaintiff's '997 patent, namely a fibrous web with an overall coating of hydrophobic material which exhibits no appreciable water climb and a seam failure rate of less than 10%. Therefore, when the ultimate consumer uses a tea bag made from Defendants' paper to

---

[1] Water climb is an element of the '997 patent claims and is an indicator of hydrophilicity.

brew a cup of tea, they are directly infringing one or more claims of the '997 patent. Obviously, Plaintiff can not sue every consumer who uses the infringing tea bag to make a cup of tea, nor does it wish to do so. Defendants, however, are liable as inducers of infringement of the '997 patent by the ultimate consumer.

Plaintiff's evidence of inducement is found in the report of its experts, Dr. Shaw Ling Hsu and Dr. David A. Hoagland of the Polymer Science and Engineering Department at the University of Massachusetts at Amherst, a copy of which is attached as Exhibit A to the accompanying Declaration of Sidney R. Bresnick, Esq. In their report, Drs. Hsu and Hoagland conclude in relevant part (Par. 30):

1) The alleged infringing tea bag paper was impregnated throughout with a cured, cross-linked polymeric coating of acrylic polymer and styrene and a hydrophilic wetting agent or surfactant;

2) The wetting agent or surfactant imparts hydrophilicity and does not contribute to the mechanical properties of the paper. It serves only to make the paper hydrophilic, i.e. to increase the rate of water climb;

3) The wetting agent or surfactant is removed very rapidly and completely upon even brief exposure (less than 2 seconds) to hot (100° C.) water;

4) The alleged infringing tea bag paper maintained its hydrophobicity irrespective of the surfactant's presence or absence; and

5) Except for their enhanced wettability, the alleged infringing

tea bag papers tested are consistent with papers prepared and treated according to claim 1 of the '997 patent. Thus, when the tea bag papers are made into tea bags and exposed to hot water, as they must in ordinary usage, the surfactant present on the paper dissolves and washes away in less than 2 seconds and the tea bag paper exhibits no water climb and a seam failure rate of less than 10%, as called for in the '997 patent.

The evidence will show that Defendants sold their infringing tea bag papers in the United States knowing that they would be made into tea bags, which are sold to and used by consumers in making tea. The evidence will also show that Defendants knew or had reason to know or should have known that the surfactant they added to their tea bag papers would quickly dissolve and wash out of the paper when the tea bag was immersed in hot water, and that the hydrophobic content of the paper would be left intact to protect the seam (Hsu/Hoagland report, Par. 30)[2]. A paper having these characteristics infringes one or more claims of the '997 patent and makes the ultimate consumer an infringer Malcolm report, Pars. 18-30)[3]. It also makes Defendants inducers of infringement. For this reason, Plaintiff has moved to amend its complaint to add a count for inducement of infringement.

**B.  Contributory Infringement**

The basis for a claim of contributory infringement is set forth in 35 U.S.C. § 271(c), which reads as follows:

(c) Whoever offers to sell or sells within the United States or

---

[2] Expert report of Dr. Shaw Ling Hsu and Dr. David A. Hoagland, dated May 14, 2004.
[3] Expert report of Dr. Earl W. Malcolm, dated May 13, 2004.

imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

The Supreme Court has held that "[t]he prohibition against contributory infringement is confined to the knowing sale of a component especially made for use in connection with a particular patent." *Sony Corporation of America v. Universal City Studios, Inc. et al.*, 464 U.S.417, 440-442 (1984). It held, moreover, that "[T]he Act expressly provides that the sale of a 'staple article or commodity of commerce suitable for substantial noninfringing use' is not contributory infringement." *Id.* "To form the basis for contributory infringement the item must almost be uniquely suited as a component of the patented invention." *Id.* at 441. "Section 271(c) codified the prohibition against the common type of contributory infringement ... and made clear that only proof of a defendant's *knowledge*, not *intent*, that his activity cause[s] infringement was necessary to establish contributory infringement." *Hewlett-Packard Company v. Bausch & Lomb Incorporated*, 909 F.2d 1464, 1469 (Fed. Cir. 1990). The knowledge required is that the alleged contributory infringer knew that the combination for which his component was especially designed for a purpose that was both patented and infringing. *Dynamis, Inc. v. Leepoxy Plastics, Inc.*, 831 F. Supp. 651, 654 (N.D. Ind. 1993) (citing *Aro Mfg.*

*Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 487-90 (1964)).

As demonstrated in Dr. Hsu's and Dr. Hoagland's report, the consumers of tea bags manufactured by Defendants becomes hydrophobic and exhibits no appreciable water climb once the tea bag is placed in hot water, as it is intended to be (Hsu/Hoagland report, Par. 30). At that time, the tea bag paper meets all of the elements found in claims 1-4, 6-8, 10-13 and 15-16 of the '997 patent (Malcolm report, Pars. 18-30).

### IV. **The Proposed Amendment Should Be Granted**

Rule 15, Fed. R. Civ. P., provides that leave to amend a complaint "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The factors cited in *Foman* as a basis for possibly denying a motion to amend include, undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and where the amendment would be futile. None of those factors is present here. Additional good cause for granting the motion is found in the fact that the lawsuit is still in the liability discovery stage and sufficient time remains for discovery on the additional claims. No change to the overall schedule for completion of the case is contemplated or required. Further good cause is found in the fact that the amendment is based on information that has only recently been developed as a result of Plaintiff's experts' analysis of Defendants' alleged infringing tea bag papers. See Declaration of Sidney R. Bresnick, Esq., attached hereto. Defendants will not be prejudiced by the amendment since the additional claims alleged in the amended complaint arise out of the same

conduct, transactions and occurrences that are alleged in the initial complaint (infringement of the '997 patent). The amendment will not be futile because, if proved, it will provide plaintiff either with an additional or an alternative theory of recovery under 35 U.S.C. § 271.

The District of Connecticut has held, consistently with *Foman, supra*, that "[r]ule 15 of the Federal Rules of Civil Procedure establishes a liberal policy in favor allowing amendments." (citing *Foman v. Davis, supra*, at 182). *Even if the time limit for amending the pleadings has expired*, 'Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded." (emphasis added). *Warboys v. Proulx*, 303 F. Supp.2d 111, 115 (D. Conn. 2004). *See Torrence v. Pelkey, et al.*, 164 F. Supp.2d 264, 274 (D. Conn. 2001) ("The decision whether to grant leave to amend is within the court's sound discretion. (citing *Foman*)). As *Foman* 'makes equally and explicitly clear, that discretion must be exercised in terms of a justifying reason or reasons consonant with the liberalizing spirit of the Federal Rules.'"). *Concerned Citizens Of Belle Haven, et al. v. The Belle Haven Club, et al.*, WL 32124959, page *3, (D. Conn. 2002) (Nevas, U.S.D.J.) See also, *Conntect v. Turbotect, Ltd.*, 1998 WL 91067, page *2, (D. Conn. 1998). When such liberality in favor of amendment is coupled with good cause therefore, the requirements for allowing amendment of the complaint established in the district have been fully complied with. Accordingly, it is respectfully requested that the motion be granted.

## V. <u>Conclusion</u>

For all of the foregoing reasons, Plaintiff, Ahlstrom Windsor Locks, LLC, respectfully requests that its Motion for Leave to File a First Amended Complaint in the form annexed thereto as Exhibit A be granted.

Respectfully submitted,

May 20, 2004

PLAINTIFF – AHLSTROM WINDSOR LOCKS, LLC

By _/s/ Eric E. Grondahl_
Myron Cohen, Esq.
Sidney R. Bresnick, Esq. (ct 16295)
Yunling Ren, Esq. (ct 21078)
551 Fifth Avenue
New York, NY 10176
Tel. 212-687-2770
Fax 212-972-5487
    -and-
McCarter & English, LLP
Eric E. Grondahl, Esq. (ct 08988)
Basam E. Nabulsi, Esq. (ct 20897)
Four Stamford Plaza
107 Elm Street, 9th Floor
Stamford, CT 06902
Tel. 203-965-0601
Fax 203-323-6513

*Attorneys for Plaintiff,*
Ahlstrom Windsor Locks LLC

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Motion Pursuant to Rule 15, Fed.R.Civ.P. For Leave To File An Amended Complaint has been sent by first class mail, postage prepaid, this 20th day of May, 2004 to:

>Dina S. Fisher, Esq.
>Robinson & Cole LLP
>280 Trumbull Street
>Hartford, CT 06103-3597
>            -and-
>Marc J. Farrell, Esq.
>Buchanan Ingersoll PC
>One South Market Square, 3rd Floor
>Harrisburg, PA 17101-2121


_____
Eric E. Grondahl

HARTFORD: 615339.01

97291-00001