UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:03-CV-0169 (AVC) |
| | ) |
| SCHOELLER & HOESCH, N.A., INC. and | ) |
| P.H. GLATFELTER COMPANY, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S FIRST MOTION TO COMPEL**

Plaintiff, Ahlstrom Windsor Locks LLC ("Ahlstrom" or "Plaintiff"), submits this Reply ("Reply Memorandum") to Defendants' Memorandum in Opposition to Plaintiff's First Motion to Compel, dated April 23, 2004 ("Opposition Memorandum").

I. ARGUMENT

In their Opposition Memorandum, Defendants argue that: 1) Documents relating to Defendants' products developed prior to 1999 are irrelevant to the present action, because they have stopped selling those products (Dkt #76; pages 5-6)[1]; 2) Plaintiff is estopped from seeking documents prior to 1999 by a purported agreement among counsel (Id., pages 4-5); and 3) Defendants do not have to produce the documents sought by Plaintiff because they have produced some other documents that contain some of the testing records or results sought by Plaintiff (Id., pages 11-12). Defendants' arguments are without merit. First, Defendants' pre-1999 products are closely related to and substantially the same as the accused products. Therefore, information regarding

---

[1] It should be noted that Defendants did not argue that the post-1999 documents sought by Plaintiff are irrelevant.

1

these products is material to the issues in the case. Second, Defendants have erroneously interpreted the scope of the language embodying the parties' agreement with respect to the pre-1999 documents. Third, Plaintiff is entitled to <u>all evidence</u> relevant to the claim or defense of any party under Rule 26, Fed. R. Civ. P.

### A. Pre-1999 Testing Records or Data Sheets are Material to the Present Action

Defendants argue that the pre-1999 documents sought by Plaintiff are "irrelevant to the issue of whether or not Defendants sold or offered for sale in the United States one or more products covered by the claims of the '997 patent *after* 1999" because Defendants are no longer selling their pre-1999 products (Dkt #76, pages 5-6). This is directly contrary to the provisions of the federal discovery rules. Under Fed.R.Civ.P. 26(b)(1), Plaintiff is entitled to all documents "regarding any matter, not privileged, that is relevant to the claim or defense of any party." The fact that a product has been taken off the market does not make information concerning that product irrelevant to the issues of the present action, particularly when such product is substantially the same as the accused product.

It is undisputed that Defendants began to develop their so called "binder paper" in about 1997 following Plaintiff's commercialization of tea bag paper treated with a hydrophobic binder system. As a result, Defendants' two tea bag paper grades, 212/LEUT and 012/RLT, became available to the U.S. market *prior* to 1999. It is also undisputed that by the nature of the 1999 Agreement (Dkt #74, Exh. B), Defendants have acknowledged that these two paper grades are covered by the patent-in-suit (the '997 patent). A simple comparison reveals that Defendants' current paper grade 212/LTA is essentially the same paper as paper grade 212/LEUT (See Exhibits L and M). The

2

evidence also shows that both of the tea bag paper grades 212/LEUT and 012/RLT were treated with a hydrophobic binder system to provide the tea bags with strengthened crimped seams, thereby substantially reducing the bursting of the tea bags during tea brewing and that the hydrophobic binder system used for treating 212/LEUT and 012/RLT (Exhibits N and O) is essentially the same as that used for treating the accused product 212/LTA (Exhibit P). Simply put, Defendants merely insubstantially modified their pre-1999 paper grades to convert these grades to their current grade.

As the existing evidence has established that the pre-1999 paper grades and the current paper grade are substantially the same, the pre-1999 papers exhibit the same properties as the current paper grade measured by the water climb, bag burst, infusion and wettability tests. Since the properties of Defendants' tea bag papers are at the heart of this dispute, Plaintiff needs to know what, if any, are the differences between Defendants' pre-1999 paper grades and the current paper grades and how Defendants converted their pre-1999 papers to the current grades to avoid infringement of the '997 patent. It would be wrong to ignore the fact that Defendants' product development is a continuing process and to exclude such material evidence from discovery by an arbitrary cut off date.

It should be noted that Plaintiff has also asserted a breach of contract claim against Defendants in this action (Complaint, Count II). All of the documents sought by Plaintiff are material to the breach of contract claim. Evidence showing the properties of the pre-1999 paper grades and a comparison between the pre-1999 grades and the current paper grade is relevant and material to Plaintiff's breach of contract claim

3

against Defendants because they are selling a product that is substantially the same as the products specified in the 1999 Agreement, namely, 212/LEUT and 012/RLT.

### B. Defendants Erroneously Interpreted the Language Embodying the Parties' Agreement with Respect to the Scope of the pre-1999 Documents

Defendants contend that Plaintiff has conceded that the testing records or data sheets concerning Defendants' pre-1999 binder papers were not discoverable by "counsel's agreement" (Dkt #76, pages 4-5). Defendants' contention is baseless, since neither the language of the "counsel's agreement" itself nor any communication between counsel supports Defendants' position.

To clarify the issue, Plaintiff hereby sets forth the language of the "counsel's agreement" with respect to the areas of Defendants' pre-1999 documents that counsel has agreed upon:

> "As to the scope of the documents prior to the Settlement Agreement, we will request S&H/Glatfelter only to produce all documents and things dated between July 11, 1995 and September 2[4], 1999 relating to: a) the validity and/or enforceability of the '997 patent; b) the scope and/or content of any claim in the '997 patent; and/or c) the infringement or non-infringement of one or more claims of the '997 patent by <u>any products</u>." (Dkt #74, Exh. J, emphasis added)

The plain language of this agreement clearly indicates that Plaintiff intended to seek <u>all</u> evidence relating to <u>all</u> products that tend to prove Defendants' infringement or non-infringement of the '997 patent without any limitation. As discussed above, Defendants' pre-1999 products 212/LEUT and 012/RLT infringe the '997 patent. They are in fact closely related to and substantially the same as the Defendants' current paper grades. Thus, the documents concerning the properties of 212/LEUT and

4

012/RLT, more specifically, the testing records or data sheets of these papers, fall squarely within the scope that the parties have agreed on.

Furthermore, Plaintiff's breach of contract claim relies on evidence demonstrating the properties of Defendants' pre-1999 paper grades. If Defendants' interpretation of the language of the "counsel's agreement" were correct, it would suggest that Plaintiff had waived it's breach of contract claim by giving up this body of evidence. That is certainly not true.

Defendants have not and could not provide a shred of evidence to show that Plaintiff has waived its right to the evidence demonstrating the properties of Defendants' pre-1999 paper grades, because there is none. Contrary to Defendants' preposterous statement that Plaintiff's counsel, Myron Cohen, somehow previously conceded that Defendants would not have to produce any documents concerning the pre-1999 paper grades including the testing records or data sheets (Dkt #76, pages 2-3)[2], Mr. Cohen could not and never agreed to that, either explicitly or implicitly (Exhibit Q, Myron Cohen's Declaration). It has always been Plaintiff's intent to fully explore the evidence proving Defendants' infringement through discovery.

As Mr. Cohen states in his accompanying declaration, all he agreed to was to refrain from seeking documents relating to *damages* which may have arisen prior to the Settlement Agreement of 1999 as such damages were released by the Agreement. In accordance with Mr. Cohen's understanding, Plaintiff is not seeking any documents concerning damages resulting from Defendants' pre-1999 commercial activities in light

---

[2] Mr. Cohen could not have done so because he did not have the knowledge that those testing records and data sheets even existed at the time he communicated with Defendants' counsel. The existence of these documents did not become apparent until much later.

5

of the parties' 1999 Settlement Agreement. That is precisely reflected in the language of the "counsel's agreement".

Thus, there is only one agreement between the parties as to the pre-1999 documents, that is, Defendants must produce all documents relating to the validity and enforcement of the '997 patent and infringement of the '997 patent by <u>any of Defendants' products</u>.

### C. Defendants Are Obligated to Produce All Relevant Documents

Plaintiff is now seeking a group of specifically identified documents in a specific location. They are the records or data sheets of the water climb, bag burst, infusion and wettability tests of Defendants products dated from 1997 to the present located in the "main laboratory" of Defendants' plant. These documents were created by Defendants' quality control department for one purpose: to determine whether Defendants' products are comparable with Plaintiff's products and whether these products are encompassed by the '997 patent. These quality control documents include a showing of the ultimate properties of Defendants' final products and are critical to the infringement determination.

Defendants argue that they have produced hundreds of pages of <u>other</u> technical documents, some of which contain some of the testing data (Dkt #76, pages 11-13). But these <u>other</u> documents are not the same as those that Plaintiff is now seeking. Defendants have not verified by declaration or affidavit that <u>none</u> of the documents sought by Plaintiff exists. Indeed, Defendants have intentionally withheld those testing records or data sheets that are kept in their main laboratory. The fact that Defendants have produced <u>other</u> technical documents does not lessen their obligation to produce this

6

category of quality control documents that are crucial to the issues of the case under Fed.R.Civ.P. 26. To the extent that the documents exist, Defendants are mandated by law to produce all such <u>testing records or data sheets kept in Defendants' main laboratory dated from 1997 to the present</u>.

## II. CONCLUSION

For the foregoing reasons and the reasons set forth in Plaintiff's Memorandum In Support of Plaintiff's First Motion To Compel Production of Documents, Plaintiff's motion should be granted.

Respectfully submitted,

June 1, 2004

**COHEN, PONTANI, LIEBERMAN & PAVANE**

By _/s/_
Sidney R. Bresnick, Esq. (CT 16295)
Yunling Ren, Esq. (CT 21078)
David P. Badanes, Esq.
551 Fifth Avenue
New York, NY 10176
Tel. 212-687-2770
Fax 212-972-5487
    -and-
McCarter & English, LLP
Basam E. Nabulsi, Esq. (CT 20897)
Four Stamford Plaza
107 Elm Street, 9th Floor
Stamford, CT 06902
Tel. 203-965-0601
Fax 203-323-6513

*Attorneys for Plaintiff,*
Ahlstrom Windsor Locks LLC

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Plaintiff's Reply to Defendants' Memorandum in Opposition to Plaintiff's First Motion to Compel has been sent by first class mail, postage prepaid, this 1st day of June, 2004 to:

>Dina S. Fisher, Esq.
>Robinson & Cole LLP
>280 Trumbull Street
>Hartford, CT 06103-3597
>           -and-
>Marc J. Farrell, Esq.
>Buchanan Ingersoll PC
>One South Market Square
>213 Market Street, 3rd Floor
>Harrisburg, PA 17101-2121

Basam E. Nabulsi