IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC, | : |
| Plaintiff, | : : : : CASE NO. 3:03-CV-0169-AVC |
| v. | : : |
| SCHOELLER & HOESCH, NA, INC., P.H. GLATFELTER COMPANY, | : : : |
| Defendant. | : JUNE 4, 2004 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO COMPEL COMPLIANCE WITH THE SUBPOENA
OF ALIX, YALE & RISTAS, LLP**

Pursuant to Fed. R. Civ. P. 45, the defendants, Schoeller & Hoesch, NA, Inc. ("S&H") and P. H. Glatfelter Company ("PHG") (collectively, "Defendants"), submit this Memorandum in Support of Their Motion to Compel the Subpoena of Alix, Yale & Ristas, LLP ("AYR").

## I. BACKGROUND

Defendants claim invalidity and unenforceability as two of their defenses in this patent infringement case, and counterclaim for a declaration of the same. Defendants have always contended that the subject patent, U.S. Patent No. 5,431,997 (the " '997 Patent"), is unenforceable due to inequitable conduct that occurred during its prosecution, but out of an abundance of caution recently sought leave to amend their Answer and Counterclaim to clarify this contention. The allegation of unenforceability due to inequitable conduct forms the basis for this Motion to Compel and therefore a brief summary of the underlying factual allegations is warranted to underscore the need for the remedy sought in this instance.

Defendants allege that the predecessor-in-interest of Plaintiff Ahlstrom Windsor Locks, LLC's ("Ahlstrom"), The Dexter Corporation ("Dexter", which together with Ahlstrom may be interchangeably referred to as "Plaintiff"), failed to disclose a material prior art reference, European Patent Application No. EP-A-0 170 461 (the "Yadlowsky Reference" or "Yadlowsky"), to the United States Patent and Trademark Office ("USPTO") during the '997 Patent's prosecution.

The application which would eventually lead to the '997 Patent was filed by Plaintiff in July 1993, namely, U.S. Application Serial No. 08/086,973 (the "U.S. Application"). In May 1994, Plaintiff filed a European patent application (the "European Counterpart") based on and claming priority to the U.S. Application. During the pendency of the U.S. Application, the European Patent Office ("EPO") issued a European Search Report on September 23, 1994 in connection with the European Counterpart, informing Plaintiff of the Yadlowsky Reference. The EPO assigned Yadlowsky a letter "X" designation, to indicate to Plaintiff it was considered a "particularly relevant" prior art reference. (*See* European Search Report at Ex. A.) The materiality of the Yadlowsky Reference at the time the U.S. Application was prosecuted is therefore indubitable.[1]

Even though the U.S. Application was still pending, Plaintiff did not disclose the "particularly relevant" Yadlowsky Reference to the USPTO, despite its duty to do so and despite the fact that the U.S. Application would remain pending for another nine months after the EPO

---

[1] Further bolstering Defendants' claim of Yadlowsky's materiality is the EPO's recent decision sustaining a pending opposition and invalidating claims in Plaintiff's European Counterpart patent of the same scope as those in the '997 Patent. *See* European Patent Office Interlocutory Decision in Opposition Proceedings, June 1, 2004, at Ex. B.

issued its Search Report. Plaintiff *did* disclose to the USPTO the only other reference noted on the European Search Report, namely, U.S. Patent No. 3,386,834 ("Noiset Patent") - a reference designated by the EPO as being far less relevant than Yadlowsky. (See European Search Report at Ex. A.) However, Plaintiff never disclosed Yadlowsky.

To obtain further information as to the circumstances surrounding this failure to disclose a material reference to the USPTO, on March 4, 2004, Defendants subpoenaed AYR, the law firm that prosecuted the U.S. Application, requesting documents and a deposition concerning the '997 Patent's prosecution, the European Counterpart, and the Yadlowsky Reference, among other things. (*See* Subpoena, at Ex. A.) AYR, alone and together with Plaintiff, served Defendants with an objection to the subpoena on March 18, 2004. (*See* "Objection" at Ex. D; and "Plaintiff's and AYR's Objection…" at Ex. E.) No motion for protective order or motion to quash the subpoena was filed.

On the evening prior to the scheduled deposition, in response to the subpoena AYR produced approximately 500 pages of documents (many of them duplicates) in haphazard order, and without reference to the subjects listed on the subpoena. A lengthy privilege log was also produced. (*See* Letter of James Piotrowski, Esq., dated March 31, 2004, Ex. F; Privilege Log ("AYR Privilege Log") at Ex. G.) As can be seen in Exhibit G, the AYR Privilege Log simply identifies most of the documents for which AYR claims privilege under the broad rubric of "legal advice" regarding prosecution of either the U.S. Application or the European Counterpart. (*See*, e.g., AYR Privilege Log documents 5, 6, 19, 27.)

AYR also produced the attorney who was primarily responsible for the U.S. Application's prosecution, currently retired AYR partner James E. Alix, Esq., for deposition on April 1, 2004 (the "Alix Deposition"). During the Alix Deposition, counsel for Plaintiff, Sidney R. Bresnick, Esq., who stated that he was appearing as counsel for Attorney Alix as well as for the Plaintiff (but not for the AYR law firm), instructed Attorney Alix not to answer a number of questions on the basis of the attorney-client privilege.

Defendants now submit a motion to compel AYR to properly comply with its subpoena. In their motion, Defendants make the following requests of the Court:

(1) <u>As for all documents for which AYR claims privilege:</u> Defendants ask the Court to order AYR to produce all withheld documents for *in camera* review by the Court to determine (a) whether the documents <u>are</u> privileged or redacted areas were properly withheld; (b) if so, whether any of the documents speak to Plaintiff's intent, i.e., the reason(s) why the Yadlowsky Reference was withheld from the USPTO's consideration during the '997 Patent's prosecution, and if so, order that they be produced even if properly redacted or deemed privileged; and (c) if the documents are not privileged, order that they be produced.

(2) <u>As for all documents for which AYR does not claim attorney/client privilege:</u> Defendants ask the Court to order AYR to provide a document production that complies with Rule 45(d)(1), producing or making available for inspection the responsive documents *as they are kept in the usual course of business* or at least labeled corresponding to the categories in Schedule A of the subpoena.

And:

(3) <u>As to the claims of privilege in Attorney Alix's deposition:</u> Defendants ask the Court to review the questions which Attorney Alix refused to answer, declare which questions and subjects are not properly shielded by the attorney-client privilege, and order Attorney Alix to provide answers to the questions not protected by privilege when the deposition is resumed.

## II.  ARGUMENT

### A.  DEFENDANTS ARE ENTITLED TO DISCOVERY AS TO PLAINTIFF'S KNOWLEDGE OF, AND INTENT IN WITHHOLDING, MATERIAL PRIOR ART DURING PROSECUTION OF THE '997 PATENT.

Defendants seek to establish the unenforceability of the '997 Patent by proving inequitable conduct on the part of Plaintiff and/or its agents in the prosecution of the U.S. Application. Information in the files of the AYR firm is relevant to this defense. In fact, information regarding Plaintiff's knowledge of the Yadlowsky Reference in particular, and its decision to withhold that reference from the USPTO during prosecution, may be found in no other source but the files of AYR. However, the bulk of information in those files appears to have been withheld on the basis of the attorney/client privilege and the attorney work product doctrine. *See* AYR Privilege Log at Ex. G. Defendants dispute the propriety of many of AYR's claims of privilege.

At this juncture, Defendants ask this Court to provide the most direct and expeditious solution: to review *in camera* the documents that AYR has withheld to determine whether the documents are properly deemed privileged – that is, contain confidential communications between Plaintiff and its lawyers for the purposes of obtaining or providing legal advice. *See Sony Corp. of Am. v. Soundview Corp. of Am.*, 61 U.S.P.Q.2d 1538, 2001 WL 1772920, *3

(D.Conn. 2001). Certainly, Defendants are entitled to all relevant factual information relating to Plaintiff's conduct in prosecuting the '997 Patent. Such information is highly relevant to their claim of inequitable conduct. Defendants must prove not only that the prior art withheld from the PTO was material, but also that Plaintiff and/or its patent counsel manifested a deceptive intent in failing to disclose it. *See LaBounty Mfg, Inc. v. U.S. Intern. Trade Comm'n*, 958 F.2d 1066, 1070 (Fed. Cir. 1992). "If an applicant withholds material information from the PTO with the intent to affect the allowance of claims, the applicant may be found guilty of inequitable conduct." *Id.* Moreover, when balanced against high materiality, the showing of intent can be proportionally less. *See Brasseler, U.S.A I., L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1381 (Fed. Cir. 2001). Accordingly, given the high level of materiality of the Yadlowsky Reference, if some minimal level of deceptive intent can be shown, then the '997 Patent is unenforceable as a consequence of this conduct. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995).

To establish these facts, Defendants naturally seek evidence of the circumstances surrounding the prosecution of the U.S. Application, leading to issuance of the '997 Patent. "Because intent need not, and rarely can, be proven by direct evidence, establishing the intent element of an inequitable conduct defense requires the fact finder to evaluate *all* the facts and circumstances in the case." *See Sony Corp. of Am.*, 2001 WL 1772920, at *2 (emphasis in original, internal citations omitted). Intent is generally inferred from the circumstances surrounding the patent applicant's overall conduct. *See Elk Corp. of Dallas v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 32 (Fed. Cir. 1999) (affirming inequitable conduct finding where

applicant failed to disclose two prior art patents identified in a search report); *see also Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1239 (Fed. Cir. 2003) ("Intent to deceive does not require direct evidence, and is typically inferred from the facts.").

Facts in the possession of the Plaintiff and its attorneys AYR are relevant to this inquiry, and are crucial to Defendants' defense of inequitable conduct. *See Alcon Labs v. Pharmacia Corporation*, 225 F. Supp. 2d 340, 344 (S.D.N.Y. 2002). Notably, among these relevant facts are the prosecuting attorney's mental impressions, which "are crucial to any claim of inequitable conduct in a patent infringement action." *Id.* If in fact any of the withheld documents contain information revealing that the AYR firm or Plaintiff regarded the Yadlowsky Reference as material and fraudulently withheld it from the USPTO, such communications - even if privileged - are discoverable. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000.)

Consequently, in conducting its *in camera* review, the Court is requested to determine not only whether withheld documents are privileged, but also to order the release of any such documents that contain evidence concerning the Yadlowsky patent and the decision not to disclose it to the USPTO.

Defendants' request is founded on information that the AYR firm <u>did</u> know about the Yadlowsky Reference during the '997 Patent's prosecution. (*See, e.g.,* Privilege Log # 80, Ex.G). Further, there can be no doubt that Yadlowsky is not just a material prior art reference, but a *highly* material one (*see* EPO Search Report, at Ex. A; EPO Interlocutory Decision in Opposition Proceeding, at Ex. B). Accordingly, Defendants submit that they have established the necessary

basis upon which to ask this Court to inspect the documents withheld by the AYR firm to decide whether they do in fact constitute privileged communications, and at a minimum to order that any such documents which go directly to the heart of Defendants' inequitable conduct defense be produced.

### B. AYR FAILED TO COMPLY WITH RULE 45'S REQUIREMENT THAT DOCUMENTS NOT PRODUCED ON THE BASIS OF ATTORNEY/CLIENT PRIVILEGE BE DESCRIBED WITH INFORMATION SUFFICIENT TO EVALUATE THE CLAIM OF PRIVILEGE.

A broad set of documents have been withheld simply because they purportedly contain "legal advice." (*See*, e.g., AYR Privilege Log documents 6, 7, 17, 27.) No affidavit supporting this claim of privilege was submitted; s*ee Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 473 (S.D.N.Y. 1993); and the AYR Privilege Log fails to offer sufficient information (as required by FRCP 45(d)(2)) on which to make a more precise challenge of the claim of privilege.

AYR's privilege log contains descriptions of withheld documents such as "legal advice re: prosecution of U.S. Patent App. No. 08/086,673", "legal advice re: prosecution of EP application No. 94303680.6", "letter with legal advice re: prosecution of...." These descriptions do not come close to meeting the proper standard for responding to a subpoena. Federal Rule of Civil Procedure 45(d)(2) requires a party claiming privilege in response to a subpoena to support the claim "by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." The purpose of this section "is to provide a party whose discovery is constrained with information sufficient to

evaluate such a claim and to resist if it seems justified." Fed. R. Civ. P. 45(d), 1991 Am. Advisory Committee Notes. "The person claiming a privilege cannot decide the limits of that party's own entitlement." *Id.*

Descriptions similar to those found in the AYR Privilege Log were held to be inadequate by the Federal Circuit Court of Appeals in an instructive case. In *Dorf & Stanton Commn's, Inc. v. Molson Breweries,* 100 F.3d 919, 923 (Fed. Cir. 1996), the Court affirmed the lower court's determination that the descriptions "Regarding Ice Beer competition, and associated litigation" and "Notes of meeting with ... re: patented process, presentation of Labatt's trademarks, and pending litigation" failed to adequately establish privilege. *Id.* at 921-923. The lower court had also held that the language "recommended plan of action for pending litigation, with cover memo" was also inadequate to establish privilege and ordered the documents disclosed. *Id.* Confirming these observations, the Federal Circuit held that failure "to provide a complete privilege log demonstrating sufficient grounds for taking the privilege" may result in a <u>waiver</u> of the privilege. *See id.* at 923.

Even if the circumstances do not warrant a waiver, at a minimum "[a] person claiming a privilege or protection who fails to provide adequate information about the privilege is subject to an order to show cause why the person should not be held in contempt under [Rule 45(e)]." Fed. R. Civ. P. 45(d), 1991 Am. Advisory Committee Notes.

Under Rule 45, AYR's all-encompassing "legal advice" description cannot be taken at face value. This inadequate language mirrors the vague language the court disapproved in *Dorf & Stanton*. AYR must do more than hang its hat on the presumed magic words "legal advice" or

"re: infringement" to substantiate its privilege claims. Further, the <u>facts</u> underlying legal advice are freely discoverable. *See Upjohn Co. v. U.S.*, 449 U.S. 383, 395-96 (1981). It is quite possible that at least some of the documents for which AYR claims privilege contain discoverable facts or other non-privileged information within the body of or attached to the document and are therefore not privileged in their entirety.

**C.  AYR ALSO FAILED TO COMPLY WITH RULE 45'S REQUIREMENT THAT RESPONSIVE DOCUMENTS BE PRODUCED AS THEY ARE KEPT IN THE USUAL COURSE OF BUSINESS OR LABELED BY SUBJECT IDENTIFIED IN THE SUBPOENA.**

Defendants also ask the Court to order AYR to comply with the subpoena in accordance with Federal Rule 45 with respect to unprivileged document production. Rule 45(d)(1) requires AYR to produce the documents "as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand." Fed. R. Civ. P. 45(d)(1). AYR produced the documents in one batch with a cover letter indicating that the documents "related to" AYR's files "for the patent in suit and its European counterpart." (*See* Letter of James Piotrowski, dated March 31, 2004, Ex. F.) It is impossible for the Defendants to determine which document came from which file, except through guesswork based on its contents. This indefiniteness coupled with the inadequate privilege log has prevented the Defendants from obtaining meaningful discovery to which they are entitled. This failure to comply with the Rules' requirements concerning document production and response to a subpoena on a third-party unfairly impedes the Defendants' ability to prove its inequitable conduct claims. Certainly Defendants are entitled to ascertain all discoverable information surrounding the circumstances of the '997 Patent's prosecution. *See Elk Corp. of Dallas,* 168 F.3d at 32.

Accordingly, Defendants request that this Court order AYR to produce or make available for inspection copies of its <u>entire</u> patent file for the '997 Patent as it is kept in the normal course of business. The location of any withheld document(s) should be noted by a blank sheet or some other marker. In the alternative, AYR should be ordered to produce all responsive documents from its patent files labeled to correspond to the categories listed in Schedule A of the March 3, 2004 subpoena.

### D. IN HIS DEPOSITION, ATTORNEY ALIX WAS IMPROPERLY INSTRUCTED NOT TO ANSWER A WIDE VARIETY OF QUESTIONS ON THE BASIS OF PRIVILEGE.

On numerous occasions during his deposition, Plaintiff's counsel improperly instructed Attorney Alix not to answer Defendants' questions on the basis of the attorney/client privilege. (Excerpts from the Alix Deposition are attached as Exhibit H.) This conduct on the part of Plaintiff's counsel impaired Defendants' ability to obtain discovery as to a wide range of relevant subjects. The following are questions that Attorney Alix would not answer on the basis of the attorney/client privilege:

1. Whether there was "ever any consideration as to whether or not a [request for reexamination] ought to be filed with regard to the '997 Patent." (Alix Deposition at 53.)

2. Why the Yadlowsky Reference was not submitted to the [U.S.] Patent Office. (*Id.* at 54.)

3. Whether he discussed the Yadlowsky Reference with the inventors. (*Id.* at 56.)

4. At the time of the drafting of the application which led to the '997 Patent, what the phrase "no appreciable water climb" meant to him. (*Id.* at 70.)

5. Whether seam strength was directly related to or corresponded to hydrophobicity in any way. (*Id.* at 70-71.)

6.   Whether he recalled learning while drafting the application which led to the '997 Patent that the inventors experimented with the addition of a surfactant on top of the hydrophobic binder. (*Id.* at 71.)

7.   Whether, if the inventors had told him that Hycar "TN-512" was preferable over the two HYCARs that are listed in the '997 Patent, he would have included a mention of Hycar TN-512 in the application which led to the '997 Patent. (*Id.* at 75.)

8.   Whether he gave any consideration in drafting the application which led to the '997 Patent to the importance of the binder's glass transition temperature. (*Id.* at 76; *see also* 77-80.)

9.   With regard to the naming of the three inventors on the U.S. application, whether he could recall if there was anyone who was considered for possible inventorship in connection with the '997 Patent but then subsequently not named as an inventor. (*Id.* at 105.)

These and similar questions that Attorney Alix refused to answer do not properly fit within the protection afforded by the attorney/client privilege. They do not seek legal advice revealing what Plaintiff said to Attorney Alix or other attorneys. *See SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 522 (D. Conn. 1976) (Newman, J.) ("Unless the legal advice reveals what the client has said, no legitimate interest of the client is impaired by disclosing the advice"), *appeal dismissed,* 534 F.2d 1031 (2d Cir. 1976). In *SCM Corp.*, then-Judge Newman went on to state: "If the attorney makes an admission as agent for his client, without revealing a fact confidentially communicated from the client, <u>no reason appears why such admission should be protected</u>." *Id.* at 521 (emphasis added). He further articulated a now well-settled rule that applies directly in this case and underscores the impropriety Plaintiff's counsel's assertion of privilege throughout the Alix Deposition, as well as throughout the AYR document production:

> [Another] issue is whether the attorney's advice is privileged only when communicated to the client or whenever expressed in confidence, such as in a memorandum to his own file. *Hickman v. Taylor,* 329 U.S. 495, 508 (1947)

provides at least the basic answer when it states: "Nor does this privilege concern the memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories."

Of course, the attorney's opinions and legal theories, even if recorded in his own files, are privileged ... if they reveal information supplied in confidence by the client. But absent such information from the client, it is only the work product rule and not the privilege that protects the attorney's uncommunicated expression of opinion.

*Id.* at 523 (citations omitted).

### E. DEFENDANTS HAVE DEMONSTRATED SUBSTANTIAL NEED OF INFORMATION IN AYR'S PATENT FILES REDACTED AND/OR WITHHELD AS "WORK PRODUCT," AND HAVE NO OTHER SOURCE FOR THIS INFORMATION.

The Defendants have made diligent efforts to obtain discovery establishing the Plaintiff's conduct and extent of knowledge of prior art during its patent prosecution, including the reason(s) why the highly-material Yadlowsky Reference was withheld from the USPTO's consideration (relevant to Defendants' inequitable conduct defense); the degree of participation of the named inventors in the development of the patented invention (relevant to Defendants' claim of invalidity); the extent to which there were water climb test results were excluded from Table 1 in the U.S. Application or included at any time in drafts (relevant to invalidity); the extent to which Plaintiff or its attorneys were aware of developments and issues in the concurrent prosecution of the European Counterpart (also relevant to Defendants' claim of unenforceability); and related topics of legitimate inquiry. At this juncture, with Attorney Alix's inability to respond to a large number of questions, in addition to his refusal to answer others,

Defendants are stymied. They have inquired of all available witnesses, to no avail. Therefore, under the standards set forth in FRCP 26(b)(3), Defendants submit they have satisfied a finding of substantial need sufficient to warrant disclosure of attorney work product information[2] in the care, custody, control or memory of the AYR firm. *See Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 12 (2d. Cir. 1989). No other means of obtaining this information is available to Defendants. *Id.*

Certainly the depositions of the inventors yielded no information on these topics. (*See, e.g.,* Deposition of Helen Viazmensky ("Viaz. Depo."), attached hereto at Ex. I, at pp. 68-70, where she states that she had very little recollection of the patent application process or of meeting with AYR or its lawyers during the prosecution of the U.S. Application). Attorney Alix, the only other known person that could be the source of this information, stated at his deposition that he could not recall a large amount of information about these subjects, and said that any answers would have to come from the file. In his deposition, Attorney Alix testified that he had a lack of memory on the following important subjects:

1.  Whether the European Search Report (in which the Yadlowsky Reference was disclosed) was ever mailed by Plaintiff's European patent counsel to the AYR firm, and if so, when. (Alix Depo. at 40-47.) (He stated that such information would be in his files. (*Id.* at 47.))

2.  When he was first given an invention disclosure in connection with what led to the '997 Patent. (*Id.* at 59.)

3.  When he was first approached or asked to write the U.S. Application, and whether there was anyone at Dexter he spoke with as part of the drafting process other than Ms. Viazmensky and Mr. Scott. (*Id.* at 71-72.)

---

[2] It should also be noted that many of AYR's claims of work product appear to relate to documents that were not prepared in connection with or in anticipation of this litigation, or for that matter *any* litigation in some instances.

      4.      Whether any sections of the '997 Patent were lifted wholly from materials given to him by Dexter, such as in the invention disclosure record, or whether the language was his own drafted "from scratch". (*Id.* at 114-15.)

      5.      Whether he was provided with any data at any time prior to July 1, 1993 for inclusion in what would become "Table 1" of the '997 Patent (beyond what is shown in Table 1), and whether he was given any such data subsequent to receiving the invention disclosure record. (*Id.* at 72-74.)

      6.      Whether he had any notes regarding the Yadlowsky Reference in his file or in correspondence. (*Id.*)

      7.      Whether he conducted a patent search prior to filing the U.S. Application. (*Id.* at 89.)

      8.      Whether there was anything "out of the ordinary" regarding the preparation of the U.S. Application. (*Id.* at 91.)

      9.      Regarding the 1999 Settlement Agreement, how a particular letter signed by him and sent to Defendants came about, and what led him to write the letter. (*Id.* at 107.)

      10.      Whether he received any input from others in writing the aforementioned letter. (*Id.* at 109.)

      Given Attorney Alix's lack of memory of these issues and Defendants' clear need for such information to prove its defenses in this case, a full review of the relevant AYR files is necessary in order for Defendants to have access to the information to which they are entitled. AYR's claims of work product and redactions thereon should be overruled.

### III. <u>CONCLUSION</u>

      For the foregoing reasons, Defendants respectfully request the intervention of the Court to clear a substantial logjam in discovery. Defendants submit that AYR has improperly relied on the attorney/client privilege and the attorney work product doctrine to shield a vast amount of

relevant, legitimately discoverable information. Only an *in camera* review by this Court will assist both parties to move past this obstacle.

Attorneys for Defendants,
Schoeller & Hoesch, NA, Inc. and
P. H. Glatfelter Company

By_____
Dina S. Fisher (ct 14896)
dfisher@rc.com
Brett J. Boskiewicz (ct 25632)
bboskiewicz@rc.com
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299

Marc J. Farrell (ct 24539)
BUCHANAN INGERSOLL PC
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121
Tel. No.: (717) 237-4820
Fax No.: (717) 233-0852
farrellmj@bipc.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served by means of facsimile (without attachments) and federal express, on this the 4th day of June, 2004, upon the following:

Sidney R. Bresnick, Esq.
Yunling Ren, Esq.
Cohen, Pontani, Lieberman & Pavane
551 Fifth Avenue
New York, NY  10176

Basam E. Nabulsi, Esq.
Alexandra Stevens, Esq.
McCarter & English LLP
Four Stamford Plaza
107 Elm Street, 9th Floor
Stamford, CT  06902

Dina S. Fisher