IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC, | : |
| Plaintiff | : CASE NO. 3:03-CV-0169-AVC |
| v. | : |
| SCHOELLER & HOESCH, NA, INC., | : |
| and | : |
| P. H. GLATFELTER COMPANY, | : |
| Defendants | : JUNE 14, 2004 |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Defendants, P. H. Glatfelter Company and Schoeller & Hoesch, NA, Inc. (collectively "Defendants") submit this memorandum of law in opposition to the Motion for Leave to File Amended Complaint ("Motion") filed by the Plaintiff, Ahlstrom Windsor Locks LLC ("Plaintiff" or "Ahlstrom") on May 20, 2004. As set forth more fully below, Plaintiff's proposed amendment adding counts of inducement of infringement and contributory infringement are futile and the Motion should therefore be denied. Furthermore, Defendants submit that there is no newly discovered evidence, but merely newly discovered theories. This late addition of these theories to the case will unduly prejudice the Defendants by requiring them, with only a week left to disclose experts, to develop defenses to new (arguably quite far-fetched) theories and to engage in new areas of discovery.

I.  **BACKGROUND**

This case concerns allegations of patent infringement and breach of a settlement agreement. Plaintiff filed its Complaint in this action on January 24, 2003, alleging that Defendants infringed U.S. Patent No. 5,431,997 ("the '997 Patent" or "patent-in-suit"). Specifically, the Complaint alleges that "[u]pon information and belief, [Defendants] have manufactured, used, offered for sale or sold in the United States and in this judicial district fibrous web materials for making infusion packages for brewing beverages, which infringes one or more claims of the '997 patent, and are currently continuing such infringing acts." Complaint at ¶ 7. Plaintiff further alleged that "[u]pon information and belief, ... [Defendants] are presently manufacturing, using, offering for sale and selling fibrous web materials for making infusion packages for brewing beverages that are substantially the same as S&H Grade 012/RL-T and/or S&H Grade 212/LEUT products and/or come within the scope of one or more claims of the '997 patent in the United States ...." Complaint at ¶ 17.

The '997 Patent is directed towards a hydrophobic web material (and a process for producing the web material) which is designed to be used to manufacture mechanically-crimped tea bags. The claimed web material is treated with a hydrophobic or water-repelling agent, purportedly to ensure the integrity of the mechanically-crimped seam, without negatively affecting the web material's infusion properties (flow of liquids and gases into and out of the tea bag).

On May 20, 2004, Plaintiff moved for permission to add two counts to its complaint, both predicated on the theory that the consumer is directly infringing the '997 Patent when it uses a tea bag made of Defendants' paper and makes a cup of tea. The proposed new counts allege that Defendants knowingly and actively induced the consumers to infringe and/or knowingly contributed to the alleged consumer infringement. Plaintiff claims it raises these so-called "alternative theories" of relief on the basis of "newly discovered information, which has only

recently been reported to Plaintiff by its experts." (*See* Plaintiff's Memorandum in Support of Motion ... to File an Amended Complaint, ("Brief"), p. 3.)

## II. ARGUMENT

Fed. R. Civ. P. 15(a) requires courts to freely grant leave to amend pleadings unless such amendments would be futile. Leave to amend should be denied if the proposed new claims are futile, that is, if they would be subject to dismissal for failure to state a claim. See *MacNeill Eng. Co., Inc. v. Trisport, Ltd.*, 59 F. Supp. 2d 199, 200-01 (D. Mass. 1999) (denying a motion for leave to amend to add a contributory infringement claim, where the claim would be subject to dismissal under FRCP 12(b)(6)); *see also Senich v. American-Republic, Inc.*, 215 F.R.D. 40, 41 (D. Conn. 2003). On a 12(b)(6) motion to dismiss for failure to state a claim, the court assesses the legal sufficiency of the claim, not the weight of evidence that might be offered in support thereof. See *Sony Electronics, Inc. v. Soundview Techns., Inc.*, 157 F.Supp.2d 190, 194 (D. Conn. 2001). A plaintiff must support the legal sufficiency of its claims with <u>factual</u> allegations of the claim's material elements. See *MacNeill*, 59 F.Supp.2d at 201.

### A. AHLSTROM'S PROPOSED CLAIMS REST ON A FUTILE AND FLAWED THEORY OF DIRECT INFRINGEMENT BY CONSUMERS.

#### 1. <u>Plaintiff's Theory Does Not Comport With the '997 Patent.</u>

In seeking leave to file an amended complaint, the Plaintiff seeks to add a count for inducement to infringe and a count for contributory infringement. Before addressing the pleading defects in Plaintiff's proposed new counts, attention must be paid to a core issue: the futility of allowing the Plaintiff to add these new claims, because they both are utterly baseless

3

and illogical. In order to substantiate inducement and contributory infringement claims, a patentee must prove direct infringement by someone other than the alleged inducer or contributor. *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1349 (Fed. Cir. 2003). Therefore, to properly state inducement and contributory infringement claims, Ahlstrom must show that it can state a claim for direct infringement by others. It simply cannot do so in this case, particularly based on its new, far-fetched theory that consumers infringe the '997 Patent every time they make a cup of tea.

Plaintiff's Brief sheds some light on the basis for this theory. As stated in the Brief, the allegation underlying the two new proposed counts is that the Defendants purposefully make their paper in such a way that consumers who make tea using teabags manufactured from the Defendants' paper will directly infringe the '997 Patent after the tea bag is in hot water for presumably as little as two seconds (Brief, p. 3.) The underpinnings of the theory are as follows:

1. Defendants' paper has been treated with two types of chemicals: (a) an acrylic copolymer, which repels water, like the '997 Patent claims; and (b) a surfactant, which attracts water, and which is not claimed in the '997 Patent. (Brief, p. 4.)

2. After a tea bag has been made using Defendants' paper, and after the end-user/consumer puts that tea bag in hot water, the surfactant on the tea bag paper washes away within the first two seconds in the water. (Brief, p. 4.)

3. "When [the] surfactant is washed away, the tea bag becomes the tea bag of Plaintiff's '997 patent...." (Brief, p. 4.)

The Court must not lose sight of the fact that the '997 Patent is <u>not</u> directed towards an infusion package, i.e., is <u>not</u> directed to tea bags (either before or after use). This is no small

4

point, as Plaintiff could very easily have added claims for an infusion package made from the claimed fibrous web material had the scope of its invention extended that far. Even under Plaintiff's new "theory," its target is a used *tea bag*. At the point in time at which a tea bag is formed, by definition it ceases to be a "fibrous web material *suited for making infusion packages for brewing beverages*" as called for by the claims of the '997 Patent.

While creative under the circumstances, Plaintiff's new theory does not stand up to scrutiny. A soaked tea bag cannot be said to be the same as the product or process claimed in the '997 Patent. A soaked, used tea bag is not the "fibrous web suited for making infusion packages for brewing beverages and exhibiting improved resistance to the failure of a mechanical seam therein" as claimed in the '997 Patent. Nor can it be subjected to the water climb test disclosed and claimed in the '997 Patent. The following analysis explains why.

First, Plaintiff's proposed theories of contributory infringement and inducement of infringement arise out of their experts' testing in which tea bags made from Defendants' paper are put through a hot water pre-washing step, followed by drying, followed then by conducting the water climb test. (Brief, pp. 5-6.) The fact that the claims of direct infringement depend on these conditions, <u>conditions that are not disclosed in the '997 Patent and that are illogical in light of the plain language of the claims and specification of the '997 Patent,</u> reveals that Plaintiff's theories are wrong. For there to be infringement by the consumer, each and every element of at least one of the claims of the '997 Patent must be found in the accused product which, under Plaintiff's new theory, in now a used tea bag sitting in the consumer's cup. A review of the claims of the '997 Patent reveals that <u>each</u> require a fibrous web material suitable for making infusion packages for brewing beverages that, among other things, exhibits "no appreciable water climb

when measured using water at 100 degrees C". (*See* '997 Patent, Claim 1, col. 7, attached to Plaintiff's Proposed Amended Complaint.)

The test used to determine whether a web material exhibits any "appreciable water climb" (and thus, to determine whether or not that element of the patent claim is met) is defined in the '997 Patent's specification. This description plainly contemplates performing the test on the web material prior to its ever having been used as a tea bag to brew a beverage. (*See id.*, col. 5, ll. 9-32.) The '997 Patent describes the necessary steps to be performed in a proper water climb test, which involve suspending a dry treated one-inch by five-inch "strip" of the claimed fibrous web product in a beaker of boiling water, and measuring the time and/or distance of the ascent (if any) of the water up the strip.

The description of the water climb test contains absolutely no mention of any chloroform or hot water pre-washing step, steps which Ahlstrom's experts included at the beginning of the sequence of steps that made up their water climb tests. (Brief, pp. 5-6.) That such a pre-washing step is not only not disclosed, but could not possibly have been contemplated, is borne out by a comparative example set forth in very specification of the '997 Patent itself. At column 6, lines 20-25, a comparative example is discussed in which a surfactant was added to the claimed invention (i.e., to web material treated with hydrophobic binder). In this example, offered for illustrative purposes to emphasize the purely hydrophobic paper disclosed in the '997 Patent and thereby distinguish the claimed web material from one which had been treated with both a

hydrophobic agent *and* a surfactant[1], substantial water climb was observed when the water climb test was performed. This result is completely incongruous with Plaintiff's new theory, and makes clear that the water climb test disclosed in the '997 Patent does not include the pre-washing step on which Plaintiff's new theory is entirely predicated. For if such a step were read into the specification of the '997 Patent, then the surfactant would have washed away in two seconds and when the resulting web material was tested for water climb thereafter, no appreciable water climb would have been observed. Yet that is plainly not the case, as a very fast water climb is reported. Indeed, in the '997 Patent's comparative example, the water traveled the full one-inch climb in a mere 10-20 seconds.

Accordingly, no reasonable interpretation of the '997 Patent could construe the claim limitation "no appreciable water climb" as suggested by Plaintiff, i.e., to involve a test performed either: (a) after the claimed web material has been constructed into an infusion package and used to brew a beverage; or alternatively (b) after the claimed web material has been (i) exposed to a pre-washing step consisting of exposure to hot water or chloroform, followed by (ii) drying, and then followed by (iii) the actual climb portion of the test.

As such, amending the Complaint to add contributory/inducement infringement would be futile.

---

[1] Notably, as discussed in Plaintiff's Brief, this is precisely how Plaintiff's experts have characterized the nature of Defendants' accused products, i.e., a web material treated with the combination of hydrophobic and hydrophilic agents. (*See* Brief, p. 5.)

### 2. Similar Theories of Infringement Through Use Have Not Stood Up in Court.

Ahlstrom's consumer infringement theory also fails because theories similar to the "used tea bag" claim have not held up in court. The few courts that have considered this type of "product wear" theory have rejected it. *See e.g. Stash, Inc. v. Palmgard Int'l, Inc.*, 937 F.Supp. 531, 536-537 (D. Md. 1996). The *Stash* court discussed two cases decided in the 1920s in which the plaintiffs argued that the defendants' products <u>became</u> their patented inventions after consumers used the products for their intended purposes. One case involved a heel lift that wore away through use to meet the elements of a patented heel lift. *See Elyria Nat'l Rubber Heel Co. v. I.T.S. Rubber Co.*, 263 F. 979 (6th Cir. 1920). The other case involved a tire with a recessed tread surface that became smooth with use and then fell within the plaintiff's patent claims for an unbroken tread surface. *See Cadwell v. Firestone Tire & Rubber Co.*, 13 F.2d 483, 487 (E.D.N.Y. 1926), *aff'd*, 23 F.2d 1000 (2d Cir. 1928). Both courts rejected the notion that consumer use that caused the defendants' products to fall within the scope of the plaintiffs' respective patents could constitute direct infringement. *Stash*, 937 F.Supp.2d at 537-538. *See also Omark Indus., Inc. v. Carlton Co.*, 458 F.Supp. 449, 453-454, (D. Or. 1978), *aff'd*, 652 F.2d 783 (9th Cir. 1980) ("manufacture of an article which as a result of wear becomes identical with the patented article does not necessarily constitute infringement").

Ahlstrom's direct infringement allegations are similarly defective. Just like the heel lifts and tires that deteriorated through use to become the claimed invention, Ahlstrom's new theory is based on an allegation that "when surfactant is washed away, the tea bag becomes the tea bag

8

of Plaintiff's '997 patent...." (Brief, p. 4.) A used product that cannot be re-used, or reformed into a tea bag, cannot constitute the same product as a product prior to such "use." Moreover, this assumes that a used tea bag made from Defendants' paper does in fact infringe at least one claim of the '997 Patent, a point which Defendants strenuously deny. In fact, if Plaintiff's new theory is recognized as being viable, it becomes impossible for any product, fixed at a given point in time, to ever be found to possess each and every element of at least one claim of the '997 Patent. The reason for this is that Claim 1, for example, would then require the presence of elements some of which are present in one stage of the life a tea bag, some of which exist only in an entirely different stage. Claim 1 would have elements directed to:

> (1) a first phase consisting of tea bag paper before it is ever constructed into a tea bag ("fibrous web material suited for making infusion packages");
>
> (2) a second phase consisting of a constructed tea bag as it is first exposed to hot water ("providing less than 10 percent failure in the mechanical seam upon exposure to boiling water"); and
>
> (3) if Plaintiff's new theory is deemed viable, a third phase consisting of a used tea bag after following its exposure to hot water for at least two seconds.

Given the nature and necessary construction of the '997 Patent's claims (if Plaintiff's new theory is accepted), it would be impossible for any paper in any one of these phases to exhibit all of the necessary elements of a single claim. Therefore, no single entity could be found guilty of direct infringement, and without the underlying direct infringement there can be no contributory or inducing infringement. Consequently, Ahlstrom's proposed inducement and contributory infringement claims fail as a matter of law.

Certainly, Ahlstrom may attempt to distinguish the "product wear" cases and argue that unlike the heel lifts and tire treads, the Defendants' surfactant serves no function other than to

get around the '997 Patent. In fact, Ahlstrom alleged in its brief that the surfactant "does not contribute to the mechanical properties of the paper" and "serves only to make the paper hydrophilic, i.e. to increase the rate of water climb[.]" (Brief, p. 5.) Ahlstrom also stated that "[t]he apparent effect of this added hydrophilicity is to raise the water climb of Defendants' paper to a level that could be asserted to be beyond the limit set forth in the ['997] patent claims." (Brief, p. 4.) These attempts to trivialize the surfactant's function are perplexing because, as Ahlstrom knows, Defendants have obtained a United States Patent protecting the surfactant's use and function in making infusion bag paper. See U.S. Patent No. 6,510,949.

Furthermore, Defendants' representative Gerhard Slawik has testified that the surfactant performs the important function of reducing ballooning in the tea bag during use. This ballooning is a well-known deficiency of tea bags made of purely hydrophobic paper. Defendants' addition of hydrophilic surfactant lessens the ballooning and speeds infusion, without loss of seam strength and resulting bag bursting. It is an important innovation in tea bag paper technology, and constitutes a significant improvement over the paper disclosed in the '997 Patent (as evidenced by the USPTO's awarding of the Grauer Patent to Defendants).

Ahlstrom may also try to latch on to the *Stash* court's attempts to distinguish the "product wear" cases. That court stated in dicta that the "product wear" cases suggest that "where alleged infringement is not the intended use or where it occurs, if at all, only over a period of time, such action does not constitute infringement." *Stash*, 937 F.Supp. at 537. The facts in *Stash* showed that the accused infringing product, a padded glove worn under a baseball glove, "quickly" broke down so that it functioned the same way as the patented invention. *Id.* The court thought this situation "may be different" than the other "product wear" cases because the padded glove

10

"would almost certainly" develop the similar function relatively quickly as opposed to the longer duration in the heel lift and tire cases. *Id.*

A similar argument in this case will burst at the seams when the useful life of a teabag is considered. Ahlstrom alleges that Defendants' surfactant "washes away" in two seconds after immersed in hot water by someone making tea. Unlike heel lifts, tires, or baseball gloves, a teabag has a very short life span. This life span is measured in seconds, or at most, minutes. Therefore, when considered with the product life in mind, this argument fails in this case.

Accordingly, Plaintiff's theory of end-user infringement is just as defective as the "infringement through wear" claims involving worn heel lifts and worn tires.

**B.    AHLSTROM'S PROPOSED INDUCEMENT CLAIM MERELY PARROTS THE ELEMENTS OF SUCH A CLAIM AND FAILS TO PROPERLY ALLEGE SUPPORTING FACTS.**

From a pure pleading standpoint, Plaintiff's proposed new claims are futile and should not be allowed. An inducement claim has four required elements: (1) The inducer knew of the asserted patent; (2) inducement of direct infringement by a third party; (3) actual intent to cause the acts which the inducer knew or should have known would constitute actual infringements; and (4) an act that constitutes inducement, not merely authority or failure to act. *Sony,* 157 F.Supp.2d at 195. A claim that lacks allegations of facts showing <u>how</u> the Defendants actually induced <u>direct</u> infringement would not constitute a valid inducement claim. *Id.* at 197-198. Plaintiff's claim lacks this critical element.

In its proposed new claim of inducement, Ahlstrom alleges:

1.    The Defendants had "full knowledge" of the '997 Patent;

11

    2.      The Defendants manufacture, distribute, and sell certain fibrous web materials for infusion packages for brewing beverages, such as tea bags;

    3.      Through these actions, the Defendants knowingly and actively induced direct infringement of the '997 Patent "by others who use said tea bags in the manner for which they are intended"; and

    4.      The Defendants intended to induce the direct infringement by people who use tea bags.

[Proposed Am. Compl., Count II.]

Plaintiff fails to allege <u>how</u> the Defendants induce direct infringement by people who use teabags. <u>Id.</u> at 197-198. The proposed pleading also fails to allege facts establishing a causal connection between the Defendants' alleged manufacture, distribution, and sale of fibrous web material and any direct infringement by people who use teabags.[2] Therefore, Ahlstrom's proposed amended complaint falls far short of stating an inducement claim. *MacNeill*, 59 F.Supp.2d at 201.

The Plaintiff also cannot point to its supporting brief ("Brief") to remedy this pleading deficiency. *Id.* at 202, n. 3. The brief is not the amended complaint. Plaintiff must include factual allegations supporting its claims <u>in its amended complaint</u>; otherwise, it fails to state those claims.

### C. AHLSTROM ALSO FAILS TO SUPPORT ITS PROPOSED CONTRIBUTORY INFRINGEMENT CLAIM WITH THE REQUISITE FACTUAL FOUNDATION.

The proposed pleading of contributory infringement is also flawed by the absence of necessary factual claims. Here too the Plaintiff must provide factual support for the material

---

[2] Plaintiff's Motion, Brief and proposed Amended Complaint conveniently fail to mention a critical intermediary, without whom Defendants' papers would be useless in the hands of the ultimate consumers: tea bag manufacturers, who just so happen to be the parties to whom Plaintiff and Defendants sell their respective tea bag papers. If

elements of its contributory infringement claim. The material elements of contributory infringement are: "(1) knowledge that an article is being used as *a material element* in an infringing product, and (2) a showing that the article being used is not a staple item of commerce with no substantial noninfringing uses." *MacNeill*, 59 F.Supp.2d at 201 (emphasis added). At a minimum, the allegations should describe the component or material part that the contributory infringer is making, using, or selling that enables direct infringement. *Id.*

Here again, Plaintiff fails to provide facts that show how the Defendants have contributed to direct infringement or how the purported direct infringement occurs. (Proposed Am. Compl., Count III). The proposed amended complaint also lacks facts to support the bald assertion that the Defendants' paper products are not staple articles of commerce suitable for substantial noninfringing uses. *Id.* Therefore, Ahlstrom also fails to state a claim for contributory infringement because the requisite factual foundation for the material elements is absent.

**D.     THERE IS NO NEWLY DISCOVERED INFORMATION, ONLY NEWLY DISCOVERED THEORIES, AND PLAINTIFF'S DILATORY EFFORTS TO FIND SUPPORT FOR ITS CLAIMS SHOULD NOT BE REWARDED.**

The Plaintiff seeks to add claims of inducement of infringement and contributory infringement against the Defendants, on grounds allegedly discovered by its expert witnesses whose reports were disclosed on or about May 15, 2004. These claims are new liability theories and do not arise out of new evidence uncovered during discovery. For nearly a year and a half, Plaintiff has insisted that Defendants were selling hydro<u>phobic</u> papers which exhibited <u>no</u> <u>appreciable</u> water climb and thus were <u>directly</u> infringing the '997 Patent by the mere sale of its

---

Plaintiff's new theory is accepted, tea bag manufacturers are at least equally if not more guilty of

papers to tea bag manufacturers (i.e., without the need for Defendants' papers to ever be made into tea bags before infringement could be found, let alone subsequently used by the end consumers to brew beverages). Plaintiff has now acknowledged what Defendants have asserted for months: that the accused products were hydro<u>philic</u> and exhibited <u>appreciable</u> water climb. As a result, Plaintiff has now crafted a desperate attempt to resuscitate its case in the form of its foundationless contributory/inducement theories of infringement.

The delay in the Plaintiff's efforts to expand their claims against the Defendants is occasioned purely by dilatory litigation practice and should be discouraged. Allowing amendment to include these new theories would prejudice the Defendants by requiring them, with only a week left to disclose expert reports, to develop information to test and refute the Plaintiff's new theories.

---

contributory/inducement infringement. Presumably though, Plaintiff has no intentions of suing its own customers.

### III.  CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the Plaintiff's Motion for Leave to File An Amended Complaint, dated May 20, 2004, should be denied.

Attorneys for Defendants,
Schoeller & Hoesch, NA, Inc. and
P. H. Glatfelter Company

By_____
Dina S. Fisher (ct 14896)
280 Trumbull Street
Brett J. Boskiewicz (ct 25632)
Hartford, CT  06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
dfisher@rc.com

Marc J. Farrell (ct 24539)
REED SMITH LLP
213 Market Street, 9th Floor
P.O. Box 11844
Harrisburg, PA  17108-1844
(717) 257-3044
mfarrell@reedsmith.com

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was served by means of facsimile and the United States mail, first class, postage prepaid, on this the 14th day of June, 2004, upon the following:

>Sidney R. Bresnick, Esquire
>Yunling Ren, Esquire
>Thomas Keating, Esquire
>Cohen, Pontani, Lieberman & Pavane
>551 Fifth Avenue
>New York, NY  10176
>
>
>Basam E. Nabulsi, Esquire
>McCarter & English LLP
>Four Stamford Plaza
>107 Elm Street, 9th Floor
>Stamford, CT  06902
>
>Eric E. Grondahl, Esquire
>Alexandra Stevens, Esquire
>McCarter & English LLP
>City Place I
>185 Asylum Street, 36th Floor
>Hartford, CT  06103-3495

_____
Dina S. Fisher

Counsel for Defendants,
Schoeller & Hoesch, NA, Inc., and
P. H. Glatfelter Company