IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC,<br>Plaintiff, | :<br>:<br>: |
| v. | : CASE NO. 3:03-CV-0169(AVC) |
| SCHOELLER & HOESCH, NA, INC., and<br>P.H. GLATFELTER COMPANY,<br>Defendants. | :<br>:<br>:<br>: JUNE 17, 2004 |

### DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIM

Defendants, P. H. Glatfelter Company and Schoeller & Hoesch, NA, Inc. (collectively "Defendants") hereby reply to the memorandum filed by Plaintiff, Ahlstrom Windsor Locks LLC ("Plaintiff" or "Ahlstrom") entitled "Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Leave to Amend Answer and Counterclaim" (hereinafter "Pl. Mem.").

As set forth more fully below, both objections raised by the Plaintiff as to Defendants' motion lack merit. The first – that Defendants should not be allowed to amend their Answer and Counterclaim because they have failed to plead inequitable conduct with the necessary particularity (Pl. Mem. at pages 3-5) -- is simply incorrect. The proposed pleading identifies the time, place and substance of particular inequitable conduct with the same degree of particularity shown in many of the cases Plaintiff cited in its memorandum.

Second, Plaintiff's attack on the *substance* of Defendants' proposed amendments to their Answer and Counterclaim -- which assert that the Yadlowsky Application is material prior art intentionally withheld from the United States Patent Office ("USPTO") by Plaintiff or its agents – misses the mark, and indeed makes the Defendants' point. The materiality of the Yadlowsky Application will be decided at a later stage of this litigation; for now, the issue is simply one of

pleading and notice. Defendants have sufficiently pled this issue to put the Plaintiff on notice thereof. As to the relevance of this prior art, the fact that it was the subject of a hearing by the European Patent Office on Ahlstrom's European Counterpart patent (as Plaintiff points out; Pl. Mem. at 8), resulting in a finding of invalidity as to claims identical in scope to those in the '997 Patent, only underscores the Yadlowsky Application's relevance.

### A. DEFENDANTS HAVE ADEQUATELY PLED INEQUITABLE CONDUCT.

In support of its claim that Defendants' affirmative defense of inequitable conduct should be disallowed for lack of particularity, Plaintiff erroneously cites inapposite cases which do nothing to advance its arguments. The cases cited either address a claim of inequitable conduct at a later stage of the proceedings (*e.g.*, *Chiron Corp. v. Abbott Labs*, 156 F.R.D. 212 (N.D. Cal. 1994)[1] (Pl. Mem. at page 3), granting a motion to strike under Rule 12(f), not a request for leave to amend under Rule 15); or are examples of a court's finding a pleading much like Defendants' to be properly pled (*Videojet Sys. Int'l, Inc. v. Eagle Inks, Inc.*, 14 F. Supp. 2d 1046, 1049 (N.D. Ill. 1998)[2]; or involve a pleading of inequitable conduct consisting simply of a one-sentence, conclusory allegation without grounding in facts (*e.g.*, *Solarex v. Arco*, 121 F. R.D. 163, 178 (E.D.N.Y. 1988) (Pl. Mem. at 3.)), unlike Defendants' proposed amended pleading in this case.

---

[1] Notably, while striking a defective pleading, the *Chiron* court allowed the defendant to replead inequitable conduct with greater particularity. In this case, however, Ahlstrom is urging this Court to deny the Defendants from *ever* having the opportunity to plead inequitable conduct – not because of claimed prejudice, but on the basis of boilerplate objections.

[2] The court in *Videojet* held that allegations "on information and belief" are only insufficient if the party also fails to state the grounds of suspicion of inequitable conduct. *Id.* at 1049. The following is instructive: "[Defendant] alleges Videojet inventors knew 'the compositions set forth in the [patent] were non-functional for the intended purpose. . . .' and that regardless of this knowledge, Videojet inventors represented to the United States Patent and Trademark Office that the compositions were functional with the intent that the Patent Office rely on the false representations in determining patentability." *Id.* The court found this to be sufficient particularity to meet the Rule 9(b) standard. "[Defendant] has specified the alleged fraudulent conduct, where it occurred, and when it occurred." *Id.* The same conclusion applies in this case as well.

The *Solarex* case, one of the only Second Circuit cases cited by Plaintiff, is an example of a misleading citation that does not address the matter at bar. The *Solarex* decision arises out of a discovery motion concerning a deposition purportedly relevant to defendant's inequitable conduct defense. In dictum, the court happened to quote the standard proof required for such a defense, which Plaintiff's quote in their brief (Pl. Mem. at p. 3). *Id.* at 177-78. By way of comment, however, the *Solarex* court observed that defendant's pleading of inequitable conduct was inadequate in that it consisted of only the following allegation: "The ...patents were each procured by inequitable conduct before the [USPTO] and each is therefore invalid." *Id.* at 178. The paucity of this pleading underscores the sufficiency of Defendants' pleading in the instant case, which has far greater particularity than the one-sentence assertion quoted in *Solarex*.

In fact, the sufficiency of Defendants' pleading of inequitable conduct is demonstrated by another of the cases cited by the Plaintiff in its opposition memorandum: *Astra Aktiebolag v. Genpharm Inc.*, 2000 U.S.Dist. LEXIS 2513 (S.D.N.Y. Mar. 8, 2000) (copy attached) (see Pl. Mem. p. 5). In the *Astra* case, the district court held that the defendants' pleading of inequitable conduct (which was strikingly similar to that of Defendant in this case) met the requirements of Rule 9(b): it identified the statements alleged to be fraudulent, where and when the statements were made; and why the statements were fraudulent. *See id.* at *3. An examination of the *Astra* pleading is instructive because it outlines the necessary particularity, all of which matches Defendants' pleading in this case.

First, the *Astra* court pointed out with approval that the Defendant claimed " 'The applicants and/or their agents knowingly withheld prior art more material than the prior art they disclosed to the examiner during prosecution of the '230 patent . . . .' " *Id.* This was held to be sufficient identification of the speakers – that is, the applicants and/or their attorneys – and

- 3 -

sufficient identification of the time and place (that is, during the prosecution of the patent at issue). Further, the *Astra* court pointed out that the defendant in that case properly identified the non-disclosed statement by identifying the material art withheld to include "at least European Patent No. 124,495, 'Omeprazole Salts'." *Id.* at *4. The district court in *Astra* held that this pleading was sufficient as to the named patent, but insufficient as to <u>unnamed</u> others, and therefore struck the words "includes at least." *Id.* However, <u>the remainder of the pleading was held to be sufficient</u>. *Id.*

This same conclusion applies to Defendants' proposed amended pleading in this case. In that proposed pleading, Defendants identify the speakers alleged to have misled the USPTO – the patent applicant (Plaintiff) or its attorneys. Defendants identify place and time: the prosecution of the '997 patent. Defendants identify the non-disclosed statement: the Yadlowsky Application. Defendants identify the materiality of the Yadlowsky Application: its citation by the European Patent Office as a "particularly relevant" prior art reference in connection with the prosecution of Plaintiff's European Counterpart patent, and the fact that the Yadlowsky Application had not been uncovered by the USPTO itself during prosecution of Plaintiff's U.S. patent application or otherwise been brought to the USPTO's attention by Plaintiff. By alleging that the Yadlowsky Application was material prior art that would have affected the USPTO's decisionmaking, the Defendants have pled with the necessary particularity. Furthermore, like the defendant in the *Astra* case, Defendants have put Plaintiff sufficiently on notice of their inequitable conduct claims so as to avoid any prejudice by the pleadings.[3] *See Astra* at *5, so ruling, and citing for authority *Schwarzkopf Technologies Corp. v. Ingersoll Cutting Tool Co.*,

---

[3] Defendants must note once again that Plaintiff's recent claims that inequitable conduct is not "in the case" are disingenuous, given Plaintiff's recognition of same in its portion of the Report of Parties' Planning Meeting filed April 18, 2003 in which Plaintiff stated it "currently intend [sic] to seek discovery on ... all patent-related defenses advanced by Defendants, e.g., purported patent invalidity and **inequitable conduct**" (emphasis added).

820 F. Supp. 150, 154 (D. Del. 1992). As to Plaintiff's claim that Defendants have failed to plead intent with sufficient particularity, as the *Astra* court also pointed out, "intent may be averred generally." *Id.*, citing Fed.R.Civ.P. 9(b).

### B. PLAINTIFF'S ARGUMENT PROVES THE MATERIALITY OF THE YADLOWSKY APPLICATION.

Ignoring the issue of whether Defendants' proposed amended pleading is occasioned by improper delay, bad faith, or repeated failure to cure deficiencies, *Foman v. Davis*, 371 U.S. 178, 182 (1962), Plaintiff attempts to convince this Court to rule on the merits of Defendants' proposed amended defense, and in so doing effectively demonstrates the relevance of the claim and the appropriateness of allowing Defendants to assert it. (See Pl. Mem. at pages 6-8.)

First, somewhat anomalously, Plaintiff argues that even if Defendants had pled the failure to disclose the Yadlowsky Application with more particularity, the claim "would still fail." Pl. Mem. at 7. This argument is wrongheaded. The motion submitted by Defendants is a motion for leave to amend its pleading. It is not a motion for summary judgment, on which the merits of Defendants' defense would rise or fall. Plaintiff thus skips over the core issue (whether any prejudice would be caused to Plaintiff if Defendants were allowed to assert their proposed amended defense/counterclaim, or whether Defendants have put Plaintiff sufficiently on notice by its proposed amended pleading), and jumps right to the merits of the defense. This is highly premature.

Plaintiff's arguments suggest that Defendants must prove inequitable conduct now, simply to be permitted to amend their Answer/Counterclaim, which is obviously not the case. See Senich v. American-Republic, Inc., 215 F.R.D. 40, 41 (D. Conn. 2003) (courts should freely allow amendments to pleadings unless the proposed amendments fail to state a claim upon which relief may be granted). Defendants are entitled to amass further proof of Plaintiff's inequitable

conduct in ongoing discovery. However, the very information which Defendants seek to confirm that inequitable conduct was committed is entirely in Plaintiff's hands and/or the hands of the Alix, Yale & Ristas law firm. That information is being improperly withheld on the basis of attorney-client privilege and attorney work product, and is the subject of Defendants' currently-pending Motion to Compel Compliance With Subpoena Served on Alix, Yale & Ristas, LLP (filed June 4, 2004). Accordingly, further proof supporting Defendant's claims will be revealed down the road. For now, Defendants' allegation that Plaintiff withheld disclosure of the Yadlowsky Application knowingly and with the intent to mislead, based on abundant circumstantial evidence, is sufficient from a pleading standpoint and should be allowed. *Astra* at *5.

The issue at bar is either whether Defendants have sufficiently pled its defense of inequitable conduct, or whether it is too late in the day for the new pleading. The issue is not whether there is evidence to prove this claim (contrary to Plaintiff's argument at page 8 of its brief). That issue must wait for a later day. See Senich, 215 F.R.D. at 41.

Defendants feel obligated at this point, however, since Plaintiff has raised the issue, to point out the misleading light in which Plaintiff puts the outcome of the European opposition proceeding. In its opposition brief, Plaintiff states that the Yadlowsky Application "neither teaches nor suggests any element of the claims in the '997 Patent," and dismisses Yadlowsky as "immaterial" and "a very weak reed upon which to base a claim of inequitable conduct." (Pl. Mem. at pages 8-9.) This is misleading and wrong. An analysis of the very claims held unpatentable by the European Patent Office's ("EPO") Opposition Division and the claims as they exist in the '997 Patent, demonstrates that Plaintiff's characterization of Yadlowsky's

materiality could not be further from the truth. Plaintiff's incorrect characterization of the Yadlowsky Application forces Defendants here to set the record straight for the Court.

By way of example, the broadest claim of the '997 Patent, Claim 1, reads almost verbatim to one of the claims struck down by the EPO as being <u>unpatentable in light of the Yadlowsky Application</u>.

| **CLAIM 1 FROM '997 PATENT** | **CORRESPONDING CLAIM HELD INVALID BY EUROPEAN PATENT OFFICE DUE ON THE BASIS OF THE YADLOWSKY APPLICATION**<br><br>(taken from the set of claims submitted by Ahlstrom in the European Opposition proceeding as "Auxiliary Request 2") |
|---|---|
| 1. A fibrous web suited for making infusion packages for brewing beverages and exhibiting improved resistance to the failure of a mechanical seam therein, | 1. A porous fibrous web material of the non-heat seal type suited for making infusion packages which are for brewing beverages and which exhibit improved resistance to the failure of a mechanical seam there, |
| said web comprising a porous fibrous sheet material impregnated throughout its extent with about one percent or more by weight of a hydrophobic treating system | said web material being impregnated throughout its extent with one percent or more by weight of a hydrophobic treating system, |
| comprising a cured hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials, | wherein the hydrophobic treating system comprises a hydrophobic strength-imparting binder selected from acrylic polymers and copolymers, or wherein the fibrous material contains a strength imparting binder and the hydrophobic treating system comprises a hydrophobic agent selected from the group consisting of fluorohydrocarbons, paraffin, alkyl ketene dimmers and stearylated materials |

| the impregnated sheet material exhibiting no appreciable water climb when measured using water at a temperature of about 100° C and | the impregnated web exhibiting a water climb of not more than 0.5 inch (13 mm) over a period of 400 seconds when measured using water at a temperature of about 100° C and |
|---|---|
| no substantial loss of infusion characteristics | no substantial loss of infusion characteristics as measured by first-colour infusion time |
| while providing less than 10 percent failure in the mechanical seam upon exposure to boiling water. | while providing less than 10 percent failure in the mechanical seam of tea bags constructed from the said web material upon exposure to boiling water. |

To the extent the wording of the '997 Patent does not <u>exactly</u> mirror the claim held invalid in Europe, any such differences are very minor and do not in any way change the virtual similarity in scope between these two claims (and thus, do not alter the invalidating nature of Yadlowsky on such claim).

The fact that Plaintiff completely fails to mention this aspect of the European Patent Office's decision is disturbing to say the least. Instead, Plaintiff conveniently omits any mention of the *three different sets* of claims[4] it submitted to the EPO (each set consisting of approximately 20 individual claims), all in what would prove to be unsuccessful attempts to come up with a set of claims that the EPO would rule as being patentable over Yadlowsky.

Plaintiff attempts to downplay the significance of the EPO's decision, with the misleading statement "the claim as amended [from Auxiliary Request 3] and presumptively *allowed* in the European patent application is commensurate in scope with that of a mechanically sealed, non-heat sealable <u>tea bag made from paper</u> in accordance with claim 1 of the '997 patent"

(underlining added). Unfortunately for Plaintiff, however, **<u>the '997 Patent does not cover tea bags</u>**. Rather, the '997 Patent -- like the approximately 60 claims rejected in Europe as being unpatantable due to Yadlowsky -- covers **<u>paper</u>**. This distinction, which Plaintiff attempts to gloss over as being a minor point, is instead a very significant one.

The fact that Plaintiff fails to tell this Court the complete story with regard to the European Opposition proceeding is deceptive, and the fact that Plaintiff paints such a distorted picture of the outcome of that proceeding only highlights the substantial materiality of the Yadlowsky Application as it relates to the invalidity of the claims of the '997 Patent.

---

[4] The claims as issued in the European Counterpart patent were all held invalid in view of Yadlowsky, as were alternate sets of claims identified as Auxiliary Request 1 and Auxiliary Request 2 submitted by Plaintiff during the European opposition proceeding.

## II. CONCLUSION

The Yadlowsky Application is at the very least colorably relevant to the '997 Patent, and Defendants are entitled to have the opportunity to prove that Plaintiff's failure to disclose it to the USPTO was a willful attempt to deceive the USPTO in order to secure the granting of its application. For the foregoing reasons, Defendants respectfully submit that Plaintiff's arguments in opposition to Defendants' Motion for Leave to File Amended Answer and Counterclaim lack merit, and the Motion should be granted.

Attorneys for Defendants,
Schoeller & Hoesch, NA, Inc. and
P. H. Glatfelter Company

By _____
Dina S. Fisher (ct 14896)
dfisher@rc.com
Brett J. Boskiewicz (ct 25632)
bboskiewicz@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299

Marc J. Farrell (ct 24539)
farrellmj@bipc.com
BUCHANAN INGERSOLL PC
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121
Tel. No.: (717) 237-4820
Fax No.: (717) 233-0852

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served by means of facsimile and the United States mail, first class, postage prepaid, on this the 17th day of June, 2004, upon the following:

Sidney R. Bresnick, Esq.
Yunling Ren, Esq.
Cohen, Pontani, Lieberman & Pavane
551 Fifth Avenue
New York, NY  10176

Basam E. Nabulsi, Esq.
McCarter & English LLP
Four Stamford Plaza
107 Elm Street, 9th Floor
Stamford, CT  06902

Eric E. Grondahl, Esq.
Alexandra Stevens, Esq.
McCarter & English LLP
City Place I
185 Asylum Street, 36th Floor
Hartford, CT  06103-3495

_____
Brett Boskiewicz