Exhibit

A



| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum<br>Date  **CODINGDATE**<br>Date | Blatt<br>Sheet    1<br>Feuille | Anmelde-Nr.:<br>Application No.: 94 303 680.6<br>Demande n°: |

## Summary of Facts and Submissions

I.  The grant of European Patent No. 0 632 163, based upon European Patent Appli-
cation No. 94 303 680.6, filed on 23/05/1994 and claiming priority of 01/07/1993
(US86673), was published on 29/08/2001 in Bulletin 2001/35.
Present proprietors of the patent are **Ahlstrom Windsor Locks LLC**, Windsor
Locks (USA).
The set of claims as granted is attached to this decision as **Annex I**.

II.  Opposition was lodged against the patent by **J R Crompton Limited**, Manchester
(GB) with the notice of opposition received on 29/05/2002. The opponents re-
quested revocation of the patent in its entirety on the grounds of Art. 100(a), (b)
and (c) EPC, i.e. for lack of novelty (Art. 54(1),(2) EPC), lack of inventive step
(Art. 56 EPC), for lack of clear and complete disclosure (Artr. 100(b) EPC) and
because of introduction of subject-matter not having been originally disclosed (Art.
123(2) EPC). In support of the request they cited documents

D1:  US-A-3 386 834,
D2:  EP-A-0 170 461 and
D3:  US-A-3 616 166.

Subsidiarily, oral proceedings were requested.

III.  In response the proprietors requested to maintain the patent in unamended form
(main request) since none of the arguments brought up by the opponents were
pertinent. In case this request could not be granted, the patent should be main-
tained on basis of the claims according to first to third auxiliary requests.
The sets of claims according to the three auxiliary requests are attached to this
decision as **Annex II**.
Subsidiarily, the proprietors, as well, requested oral proceedings.

IV.  The oral proceedings were scheduled and took place on 06/05/2004.
As announced with letter of 30/04/2004 the oral proceedings were not attended by
the opponents.

V.  Concerning further details, attention is directed to the minutes of the oral proceed-



| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum<br>Date  **CODINGDATE**<br>Date | Blatt<br>Sheet    2<br>Feuille | Anmelde-Nr.:<br>Application No.: 94 303 680.6<br>Demande n°: |

ings and to the content of the file.

<u>**Reasons for the Decision**</u>

1. The opposition is admissible because it meets all the requirements of Arts. 99 (1) and 100 and of Rules 1(1) and 55 EPC.

2. Objection under Art. 100(b) EPC:

2.1 The opponents object that the patent specification does not disclose the invention in a manner sufficiently clear and complete for it to be carried out by a person skilled in the art. In particular, they express, that not enough information would be provided to the skilled person to determine whether or not a porous fibrous web material meets the criteria expressed in the independent claims and in the description, namely to provide "less than 10 percent failure in the mechanical seam of tea bags constructed from the said web material upon exposure to boiling water". Indispensable indications such as the exact nature of the seam, the manner in which it is formed, the size of the tea bag and the amount of tea contained therein, are not mentioned in the specification. Consequently, the patent is to be revoked under Art. 100(b) EPC.

2.2 The opposition division cannot share this view for the following reasons.
The requirements of Art. 100(b) are complied with, when the specification discloses any feature essential for carrying out the invention in sufficient detail to render it apparent to the skilled person how to put the invention into practice. These requirements are unambiguously fulfilled in the present case. As correctly expressed by the proprietors, the specification gives clear indications of how to obtain the claimed impregnated porous fibrous web material. It explicitly specifies the starting web material and fibres that can be used (see paragraphs 11 to 13 of the patent), the hydrophobic agents (paragraphs 14, 15), the methods of applying the agents to the web material, suitable solution concentrations and web pick-up amounts (paragraphs 16 to 18).
No indication is given - and the opponents could also not provide any evidence - that the porous fibrous web material which is defined in the patent is not suitable

| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum<br>Date  **CODINGDATE**<br>Date | Blatt<br>Sheet    3<br>Feuille | Anmelde-Nr.:<br>Application No.: 94 303 680.6<br>Demande n°: |

for achieving the result indicated in the description and the claims, namely for the construction of tea bags the mechanical seams of which exhibit less than 10 percent failure upon exposure to boiling water.

3.    Objection under Art. 100 (c) EPC

3.1    The opponents object that the feature "water climb of not more than 0.5 inch (13mm) over a period of 400 seconds" in the independent claims is not originally not have been disclosed in the present context. Particularly the value of 0.5 inch is "disclosed in the application as filed as a specific value only, using water at 100°C, for the water climb in Cross Direction (CD)  for the particular product of Example E.

3.2    Again the opposition division cannot share the opponents' opinion and must agree to the proprietors' argumentation: table I of the application shows how the water climb in the web material is correlated to the seam failure. It can be clearly deduced therefrom that, regardless of the binder material, a water climb of 0.5 inch over a period of 400 seconds when measured using water at a temperature of about 100°C constitutes the maximum value for which no seam failure occurs. Consequently, the introduction of these values into the claims does not contravene the requirements of Art. 123(2) EPC.

4.    Main request

4.1    Document D3 discloses a porous fibrous web which is suitable for making infusion packages for brewing beverages  (D3, column 5, lines 64 to 66) and which is impregnated throughout its extent with more than one percent by weight (D3: column 5, lines 18 to 21) of a binder composition comprising a polymer of ethyl acrylate (D3, column 1, lines 36 to 42) ie with a "hydrophobic treating system" within the context of the patent in suit.
According to D3, up to 100 percent of a polyblend (D3, column 2, lines 27 to 29) containing up to 90 percent of ethyl acrylate polymer binder (D3, column 5, lines 18 to 21) may be picked up. This results in a pick up level of 90 percent by weight of ethyl acrylate binder. Since it is expressed in the patent (see claim 1 in context with page 3, lines 54, 55 indicating ethyl acrylate polymer to constitute a preferred hydrophobic treating system), that a pick up level of 1 percent and more of an



| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum<br>Date **CODINGDATE**<br>Date | Blatt<br>Sheet 4<br>Feuille | Anmelde-Nr.:<br>Application No.: 94 303 680.6<br>Demande n°: |

acrylate polymer binder "will be effective to provide improved seam integrity" (see also paragraph [0018] of the patent), it can be taken as read that this pick up level of up to 90 percent inevitably results in a porous web exhibiting "less than 10 percent failure in the mechanical seam of tea bags constructed from the said material upon exposure to boiling water". Also the water climb which is correlated to the failure rate (see table I of the patent) inevitably meets the conditions expressed in claim 1 (ie not more than 0.5 inch over a period of 400 seconds when measured using water at a temperature of about 100°C). Finally, the relative and vague feature of claim 1 that "no substantial loss of infusion characteristics as measured by first-colour infusion time" also applies for the web of D3 since this web shall also be for forming eg tea bags and must, consequently, offer good infusion properties.

Therefore, the opposition division is of the opinion that document D3 discloses a porous web exhibiting all the features of claim 1 and equally a process for making the web exhibiting all the features of claim 12.

4.2    According to the proprietors, since the polyblend binder used in D3 is a pressure sensitive adhesive (D3, column 4, lines 39 to 65), the porous webs impregnated with this polyblend binder would exclusively be suited for heat seal applications (D3, column 4, lines 46 to 49 and column 5, lines 66 to 71), since heat sealable webs in general are not suitable for forming mechanical seams (this expression is interpreted to mean seams which are formed by folding and crimping). Processing heat seal type webs in a technical machine for forming mechanical seams would inevitably create problems. Thus the subject-matter of claim 1 would differ from the porous web of D3 in that it is suited for making infusion packages with mechanical seams. Further, the proprietors asserted that the web of D3 would not even be suitable to produce heat sealed infusion packages as for processing a web in a heat sealing machine an integral barrier layer must be provided on one side of the web which barrier layer is not present in the web of D3.

The opposition division is not persuaded by these allegations. In fact, it is said in D3 that the webs are heat sealable (D3, column 4, lines 46 to 49) and the infusion packages are made by heat sealing the web (column 5, lines 66 to 71). This does not, however, exclude that it is also possible to use the webs for producing infusion packages with mechanical seams (ie seams which are formed by folding and crimping; other mechanically sealed seams produced without heat application are anyway disclosed in D3, column 4, lines 60 to 62).



| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|

| Datum<br>Date **CODINGDATE**<br>Date | Blatt<br>Sheet     5<br>Feuille | Anmelde-Nr.:<br>Application No.: 94 303 680.6<br>Demande n°: |
|---|---|---|

The binder compositions utilized according to the patent may consist exclusively of ethyl acrylate polymer (see patent in suit, page 3, lines 54, 55 where ethyl acrylate polymer is declared without restriction of any kind to be particularly effective as hydrophobic binder). According to D3 the binder composition contains 60 to 90 percent by weight of ethyl acrylate polymer (D3, column 2, line 28) to which 40 to 10 percent by weight of a second compound is admixed (D3, column 2, lines 30, 31) in order to reduce the tackiness of the binder composition (D3, column 2, lines 63 to 69). As explained in D3 (column 2, lines 63 to 71) the tackiness, the adhesiveness and the adaptation of the porous fibrous web material to be heat sealed is just due to the ethyl acrylate polymer content.

The type of web to be impregnated according to D3 (column 5, lines 1 to 10) differs neither from the type of web disclosed in the patent (paragraph [0011]), nor from the amount of the hydrophobic substance present on the web.

Thus it cannot be seen why the porous web of the patent in suit which may be impregnated with a binder consisting exclusively of ethyl acrylate polymer should be less adhesive and less heat sealable and consequently more apt for the production of mechanical seams than the porous web of D3. If the web as defined in claim 1 of the opposed patent is suited to be processed in a machine for forming mechanical seams, then so should the web of D3. No difference can be seen between the two webs.

4.3     Consequently, the subject-matter of independent claims 1 and 12 according to the main request is not novel. These claims do not meet the requirements of Art. 54(1),(2) EPC.

5.     First auxiliary request

5.1     Claim 1 of the first auxiliary request defines the porous fibrous web material to be of the non-heat seal type. The proprietors explicitly confirmed this formulation to characterize the final product after treatment. This means that the treated and impregnated web does not contain any fusible fibers or tacky compounds. However, this property of the porous fibrous web material is neither in consistency with what is expressed in independent process claim 12 of the first auxiliary request nor is it disclosed in the originally filed application documents.

According to claim 12 of the first auxiliary request the porous web material is produced by "providing a porous absorbent web material of the non-heat seal type



| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum<br>Date    **CODINGDATE**<br>Date | Blätt<br>Sheet       6<br>Feuille | Anmelde-Nr.:<br>Application No.: 94 303 680.6<br>Demande n°: |

and" treating this material in order to arrive at the final product. The thus defined
process does not exclude the final web material to be heat-sealable.

The same follows from page 3, lines 29 to 34 of EP-A-0 632 163 (corresponding
to paragraph [0011] of the patent in suit) which is the only passage the proprietors
could indicate in support of the amendments introduced to the independent claims
of the first auxiliary request. It is said in this passage that the "present invention in
its application to tea bags permits the use of commercially available, self-support-
ing infuser webs [which] are of the nonheat-seal variety and require mechanical
fastening". This passage does not define the final web to be of the non-heat seal
type but merely expresses that usual webs of the non heat seal variety when
treated according to the patent, can be formed into tea bags with improved integ-
rity of their mechanical seams. This does not exclude the final web to be heat-
sealable.

5.2    As in the discussion of novelty of the independent claims according to the main
request (see item 4.2 of this decision) the proprietors insist that heat seal type
web material could not be used for producing packages exhibiting mechanical
seams. Therefore, the mere declaration in the originally filed application docu-
ments that the web material is suitable for tea bags having mechanical seams,
implicitly discloses that the final web material is of the non-heat seal type.
However, on account of similar grounds as brought forward under item 4.2 of this
decision, the opposition division cannot accept this argumentation: no difference
can be seen between the binder compositions which are utilized in document D3
(a composition containing up to 90 percent ethyl acrylate) and which may be uti-
lized according to the patent in suit (a composition containing up to 100 percent
ethyl acrylate), so that the adhesiveness and the ability to be heat sealed of at
least some of the final webs according to the patent may be comparable with the
adhesiveness and ability to be heat sealed of the web disclosed in document D3,
which web is designated to be a heat-seal type web.

5.3    The opposition division is further of the opinion that if a heat seal seam can be
formed only with a heat seal type web, a mechanical seam, on the other hand, can
be formed with both a non-heat seal type web and a heat seal type web.

5.4    Thus no basis can be found in the originally filed documents for amending claim 1
such to define the final web to be of the non-heat seal type. Claim 1 according to

| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum<br>Date  **CODINGDATE**<br>Date | Blatt<br>Sheet        7<br>Feuille | Anmelde-Nr.:<br>Application No.: 94 303 680.6<br>Demande n°: |

the first auxiliary request does not meet the requirements of Art. 123(2) EPC.

6.  Second auxiliary request

On account of the same reasons as explained for claim 1 according to the first auxiliary request, claim 1 of the second auxiliary request does not meet the requirements of Art. 123(2) EPC, either.

7.  Third auxiliary request

7.1  According to the third auxiliary request, claim 1 as granted is restricted to a mechanically sealed infusion package. Accordingly, independent process claim 12 concerns the manufacturing of such an infusion package.

The formal admissibility under Art. 84 and 123 EPC of the amended claims is not disputed. The amendments can be directly deduced from the original wording of the claims where it is expressed that the fibrous web is suited for making infusion packages with mechanical seams and from the description (see eg paragraphs [0001] to [0003]).

7.2  Novelty (Art. 54(1),(2) EPC)

The infusion package disclosed in document D3 (see column 5, lines 64 to 68) exhibits heat sealed seams. Consequently, the subject-matter of the independent claims according to the third auxiliary request is novel over the disclosure of D3.

Document D1 - as the contested patent - addresses the avoidance of the rupture of the seams of infusion packages due the "ballooning effect". D1 mainly addresses heat sealed tea bags (see D1, eg column 1, line 42; column 2, line 43; column 4, line 10 etc) but also mentions webs "of the nonheat-seal variety" (D1, column 2, line 46). Thus, the main difference between the claimed packages and the packages disclosed in D1 is, that according to D1 the surface area of the infusion packages is impregnated only in discrete sections (see eg D1, claim 1), whereas the contested patent defines the web material of the infusion packages to be impregnated throughout its extent with the hydrophobic substances.

D1 additionally discloses an example where the entire surface area of tea bags is treated by a hydrophobic substance, but this example serves solely to show how



| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum<br>Date **CODINGDATE**<br>Date | Blatt<br>Sheet 8<br>Feuille | Anmelde-Nr.: 94 303 680.6<br>Application No.:<br>Demande n°: |

the concentration of the hydrophobic compound utilized in the treating dispersion influences the porosity of the treated web. Although it is not explicitly said which type of seal the tea bags of this example exhibit, the description of D1 (see column 3, line 70 to column 4, 31, especially column 4, line 10) strongly indicates that heat-seal tea bags are employed. Thus, the tea bags of this example differ from the packages of the patent at least in the seam.

Thus, the subject-matter of the independent claims according to the third auxiliary request is novel over the disclosure of D1.

Document D2 mainly concerns the treatment of an infusion package material with a sizing agent (which does not constitute a hydrophobic treating system; D2, page 8, lines 3 to 5) in order to prevent sorption of flavour oil by this material. This document mentions the application of an hydrophobic compound to the infusion bag material only incidentally and exclusively with reference to D1 (see D2, page 8, lines 5 to 9 and page 2, lines 22 to 26). Consequently, although the sizing agent is distributed uniformly throughout the infusion package material (D2, page 6, lines 6 to 8), it can be excluded that the hydrophobic compound is applied other than in accordance with the teaching of D1, ie the surface area of the infusion packages is impregnated only in discrete sections.

The subject-matter of the independent claims according to the third auxiliary request is novel over the disclosure of D2.

7.3  Inventive step (Art. 56 EPC)

The closest prior art is represented by document D1 which also concerns the avoidance of the rupture of the seams of infusion packages due the "ballooning effect".

In view of the general teaching of D1, which teaches away from impregnating the web material of an infusion package throughout its extent but instead teaches to cover at most 40%, preferably less than 15% of the complete area with the hydrophobic substance (D1, column 4, lines 71 to column 5, line 4), the above mentioned example of D1 (see item 7.2) cannot be contemplated when assessing inventive step. Consequently, the subject-matter of the independent claims according to the third auxiliary request differs from the main teaching of document D1 (see above, item 7.2) in that the web material of the infusion package is impregnated throughout its extent with the hydrophobic substances.



| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum<br>Date     **CODINGDATE**<br>Date | Blatt<br>Sheet     9<br>Feuille | Anmelde-Nr.: 94 303 680.6<br>Application No.:<br>Demande n°: |

The treatment of the entire area of a web is a much more convenient operation than treatment of only discrete regions thereof (see also notice of opposition, item 4.1.1 (iv) (c)).

Neither the disclosure of document D3 which deals with overcoming the problems arising from the resilience and springiness of a porous fibrous web material impregnated with an ethyl acrylate binder, when the web is formed into a package by heat sealing (see D3, column 1, lines 17 to 28), nor of document D2 which mainly addresses the treatment of an infusion package material with a sizing agent in order to prevent sorption of flavour oil by this material, can conduct the skilled person to disregard the main teaching of document D1.

Thus, the subject-matter of the independent claims according to the third auxiliary request is based on an inventive step.

8.  Consequently, the patent can be maintained in amended form, ie on basis of the claims according to the third auxiliary request and the correspondingly adapted description (Art. 102(3) EPC).

9.  The opponents did not submit any written comments to the claims according to the auxiliary requests (on file since 17/01/2003), nor did they, although duly summoned, attend the oral proceedings (on 06/05/2004). Thus, they deliberately deprived themselves of the opportunity to produce further comments as provided by Art. 113(1) EPC. Since no new facts or evidence were dealt with during the oral proceedings, the opposition division could give the decision orally pursuant to Rule 68(1) EPC at the end of the oral proceedings, to maintain the contested patent in amended form in accordance with the third auxiliary request of the patentee submitted more than one year before the oral proceedings. Under these circumstances, the application of R. 58(4) EPC could also be dispensed with (G1/88, T446/92).

Exhibit
B

Case 3:03-cv-00169-AVC    Document 95-2    Filed 06/25/2004    Page 12 of 23



## Article 123 - Amendments

Homepage => Toolbox for applicants => EPC => HTML version

E / **D** / F

**EUROPEAN PATENT CONVENTION**

▲ **PART VII - COMMON PROVISIONS**

► Chapter I - Common provisions governing procedure

◄ Article 122 - Restitutio in integrum

► Article 124 - Information concerning national patent applications

*Art. 100, 138*
*R. 2, 7, 16, 41,*
*51, 57, 57a, 58,*
*86, 87*

*Article 123* [87]
**Amendments**

(1) The conditions under which a European patent application or a European patent may be amended in proceedings before the European Patent Office are laid down in the Implementing Regulations. In any case, an applicant shall be allowed at least one opportunity of amending the description, claims and drawings of his own volition.

(2) A European patent application or a European patent may not be amended in such a way that it contains subject-matter which extends beyond the content of the application as filed.

(3) The claims of the European patent may not be amended during opposition proceedings in such a way as to extend the protection conferred.

*87* See decisions/opinions of the Enlarged Board of Appeal G 2/88, G 3/89, G 11/91, G 1/93, G 7/93, G 2/95, G 2/98, G 1/99 (Annex I).



EPO Home Page | Download area | Request info | Index
Patent Information on the Internet | Send comments
Last updated in March 2004 - version epc-01.03.2004
Copyright © 1996-2004 European Patent Office . All Rights Reserved.
e-mail: EPO Mail Distribution

Exhibit
C

US005431997A

# United States Patent [19]

## Scott et al.

[11] **Patent Number:** **5,431,997**

[45] **Date of Patent:** **Jul. 11, 1995**

[54] **PROCESS OF PRODUCING POROUS WEB MATERIALS USED FOR MAKING INFUSION PACKAGES FOR BREWING BEVERAGES AND THE WEB MATERIALS THUS PRODUCED**

[75] Inventors: **Peter C. Scott**, Enfield; **Helen Viazmensky**, South Windsor; **Nicholas Wolcheck, Jr.**, Suffield, all of Conn.

[73] Assignee: **The Dexter Corporation**, Windsor Locks, Conn.

[21] Appl. No.: **86,673**

[22] Filed: **Jul. 1, 1993**

[51] Int. Cl.$^6$ .............................................. **B32B 27/00**
[52] U.S. Cl. ...................................... **428/290**; 206/0.5; 426/77; 426/84; 428/289; 428/311.1; 428/311.7; 428/306.6; 428/308.8; 428/446; 428/449; 428/511
[58] Field of Search ..................... 428/289, 290, 311.1, 428/311.7, 511, 446, 449, 306.6, 308.8; 426/77, 84; 206/0.5

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,852,795 | 9/1958 | Hermanson et al. | 15/131.1 |
| 3,174,889 | 3/1965 | Anderson et al. | 156/254 |
| 3,183,096 | 5/1965 | Hiscock | 99/77.1 |
| 3,373,043 | 3/1968 | Rubenstein | 99/77.1 |
| 3,386,834 | 6/1968 | Noiset et al. | 99/77.1 |
| 3,468,696 | 9/1969 | Conway | 117/62.1 |
| 3,616,166 | 10/1971 | Kelley | 161/148 |
| 3,881,987 | 5/1975 | Benz | 162/116 |
| 4,289,580 | 9/1981 | Elston et al. | 162/109 |
| 4,902,370 | 2/1990 | Dust et al. | 156/327 |
| 5,015,513 | 5/1991 | Newbold et al. | 428/35.5 |

*Primary Examiner*—James J. Bell
*Attorney, Agent, or Firm*—Chilton, Alix & Van Kirk

[57] **ABSTRACT**

A porous web material for making infusion packages having enhanced mechanical seam integrity is obtained by treating the entire fibrous web material with an aqueous emulsion of a hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials. The hydrophobic agent, which may also act as a strength imparting binder, is preferably applied as a saturating treatment. The treated web is subsequently dried to insolublize the agent on the web. The web exhibits no appreciable water climb when measured using water at a temperature of about 100° C. and no substantial loss of infusion characteristics while providing less than 10 percent failure in a mechanical seam therein when exposed to boiling water.

**16 Claims, No Drawings**

5,431,997

1

### PROCESS OF PRODUCING POROUS WEB MATERIALS USED FOR MAKING INFUSION PACKAGES FOR BREWING BEVERAGES AND THE WEB MATERIALS THUS PRODUCED

#### BACKGROUND OF THE INVENTION

The present invention relates generally to fibrous web materials and more specifically is concerned with a process of producing porous web materials used for making infusion packages for brewing beverages, such as tea, coffee and the like and with the web materials thus produced.

It has generally been the practice in making individual cups of tea to either place the bag of tea or the like in a cup containing boiling water, or alternatively, to place the bag in an empty cup and subsequently add the boiling water. In either event, the tea bag generally tends to inflate and float to the top of the water for a time despite the high porosity of the infusion paper utilized in making the tea bags. This inflation or "ballooning effect" is generally attributable to entrapped gases and vapors within the bag that are unable to escape due to a very thin film of water surrounding the bag. The entrapped gases, both condensible and non-condensible, tend to build up a positive pressure within the bag, frequently causing opening of the seams of mechanically sealed bags, thus undesirably discharging the tea leaves into the brew and defeating the purpose of using the bag. In the mechanically sealed tea bags, the edges of the web material are brought together, folded a number of times, and the multiple fold is crimped to provide a mechanical seam securing the two edges of the web material. The mechanically sealed bags are to be distinguished from heat seal bags where a heat seal material, usually present within the web, is subject to heat and pressure to form a heat sealed seam.

Although seam failure and leakage of tea leaves has been evidenced for some time, it has been noticed that the incidence of failure was higher when certain strength imparting binder systems were used in the infusion web material. For example, increased seam failure has been noted with binder systems using carboxy methyl cellulose (CMC) and a reaction product of epichlorohydrin and a polyamide sold under the trade name Kymene as compared with the viscose (cellulose xanthate) bonding system widely used prior thereto. Changing the binder to latex binder materials that impart comparable tensile strength to the web material, such as ethyl vinyl acetate, cross linked polyvinyl alcohol or polyvinyl chloride, appear to provide no improvement in seam integrity and may even result in significantly higher instances of seam failure and leakage.

The treatment of infusion web material in discontinuous areas with water repellent material is disclosed by Noiset et al in U.S. Pat. No. 3,386,834 as one way of minimizing the ballooning effect. The repellent treated areas are isolated spots covered from 0.1 to 40 percent of the surface of the infuser material. Additionally, Elston et al in U.S. Pat. No. 4,289,580 achieved improved infusion in heat seal tea bags when using synthetic pulp as the heat seal phase, provided that the heat seal phase is disrupted over 10 to 75 percent of the total exposed surface area. That patent notes the disadvantages with respect to infusion properties when the hydrophobic synthetic pulp phase is not disrupted. The permeability of the web material is reduced together

2

with its wettability, and the infusion is substantially retarded or inhibited.

#### SUMMARY OF THE INVENTION

In accordance with the present invention, it has been found that the above and related disadvantages can be avoided and mechanical seam integrity can be enhanced by treating the entire web material with a latex dispersion of a hydrophobic agent to provide a porous tea bag material which exhibits an extremely low absorbency and wettability as measured by standard water climb test procedures coupled with a retention of its infusion characteristics. The use of such material prevents the buildup of differential pressures on opposite sides of the web and facilitates the passage therethrough of condensible and noncondensible gases without adversely affecting the ability of such material to confine the dispersion of fine solid particles. The present invention achieves these characteristics by employing a hydrophobic treatment system that saturates and completely impregnates the entire web material. Although the use of a hydrophobic agent on the entire web material intended for use as an infusion material may be contraindicated, as set forth in Elston et al U.S. Pat. No. 4,289,580, it has been found in accordance with the present invention that infusion is not adversely impacted and resistance to mechanical seam failure is significantly enhanced.

Other features and advantages of the present invention will be in part obvious and in part pointed out more in detail hereinafter.

These and related advantages are achieved by providing an infusion web exhibiting improved resistance to the failure of a mechanically-crimped seam therein. The web consists of a porous fibrous sheet material impregnated throughout its extent with at least one percent by weight of a hydrophobic agent, preferably a strength imparting hydrophobic binder. Alternatively, a bonded web material may be impregnated throughout with a water repellent material. The impregnated sheet material advantageously exhibits no appreciable water climb when measured using water at a temperature of about 100° C. and no significant loss of infusion characteristics while providing less than 10 percent failure in the mechanical seam, and preferably no failure whatsoever, upon exposure to boiling water. A latex dispersion of the hydrophobic agent preferably is applied to the entire web as a saturating solution.

A better understanding of the invention will be obtain from the following detailed disclosure of the article and the desired features, properties, characteristics, and the relation of elements as well as the process steps, one with respect to each of the others, as set forth and exemplified in the description and illustrative embodiments.

#### DESCRIPTION OF A PREFERRED EMBODIMENT

Broadly, the present invention comprises a continuous infuser web material impregnated throughout its extent with a hydrophobic agent, preferably in the form of a latex binder system. In order that the invention may be more clearly understood and for purposes of simplicity and brevity of discussion, the present invention will be discussed with relation to its use as tea bags and the like. The infuser tea bag webs are generally made of fibrous materials that are free from perforations or punctures yet possess a high degree of porosity and

5,431,997

3

particularly are those wet laid fibrous materials made on conventional papermaking machines.

As used herein the term "hydrophobic" refers to the characteristic of the treating agent that imparts to the web material a resistance to, or the ability to avoid, wetting with water. The hydrophobic material imparts an aversion to or lack of affinity for water and resists the passage of liquid water into the structural components of the paper through capillary action. Since the absorbent character of the fibrous web material is best measured by its "water climb", the absence of such water climb is a primary indicator of its hydrophobic character. The water climb is a measure of the rate at which the web material absorbs water by capillary action, that rate being a relationship between distance and time. The rate is reported in units of time, such as seconds, needed to travel a fixed distance, such as one inch. Also, since hot water typically is used to brew tea, the water climb is given for both hot and cold water, with the hot water value being particularly relevant for this application.

The present invention in its application to tea bags permits the use of commercially available, self-supporting infuser webs. These webs are generally soft, tissue-thin fibrous materials characterized by light weight but, when used as described hereinbefore, possess the disadvantage of somewhat limited seam integrity in boiling water. The webs are of the nonheat-seal variety and require mechanical fastening, i.e., folding and crimping, for the formation of the tea bag. Typical are the loosely formed, low density papers made of long natural fibers as described in Osborne U.S. Pat. Nos. 2,045,095 and 2,045,096.

The fibers utilized in these webs may be of any of the well-known papermaking fibers or mixtures thereof. They should be those approved for use in food and beverage applications and may include natural fibers such as jute, bleached or unbleached kraft, abaca, sisal, and other wood fibers as well as lesser amounts of approved synthetic fibers.

A variety of infuser webs may be made from these fibers and utilized in accordance with the present invention; however, for purposes of discussion, the invention will be described in its application to commercially available infuser web materials. It will be appreciated that such materials, while being extremely porous and highly wettable, are generally free from perforations and will not permit the fine dust particles of the tea to filter through the bags made therefrom.

According to the preferred aspect of the present invention, the continous infuser webs are treated throughout their entire extent with a suitable hydrophobic agent which, when set or cured, is insoluble in aqueous solutions and unaffected by boiling water. The hydrophobic agents utilized must provide not only a resistance to wetting or aqueous absorption as measured by water climb, but also must provide this property without adversely affecting the infusion characteristics of the web throughout the treated areas. Additionally, these water repellent agents utilized according to the invention should exhibit an affinity for being readily absorbed into the fibers of the web while substantially retaining the porosity of the web. Accordingly, they are distinguished from materials which form solid films over the treated area.

Those materials found most suited for this type of application are strength imparting binders used in place of the binder systems employed heretofore or as supplemental treatments in addition to the conventional

4

binder. When employed as substitutes for prior binders, they also must be effective to provide the strength imparting characteristics of the conventional binder systems. Those found to be particularly effective as hydrophobic binders are the materials generally categorized as acrylic polymers and, more particularly, as latex dispersions or emulsions of alkyl acrylate polymers and copolymers. These materials are preferred due to their ability to substantially permeate the filaments or fibers of the infuser web without blocking or interfering with the porous openings between the fibers. Although various alkyl acrylates, including mixtures thereof, may be utilized, those used must be hydrophobic and prevent the treated web from exhibiting absorptive water climb in both hot and cold water. The preferred materials are alkyl acrylates such as ethyl acrylate and butyl acrylate polymers, copolymers and interpolymers, such as the ethyl acrylate copolymer and butyl acrylate copolymer sold by B. F. Goodrich Company under the respective tradename designations HYCAR 26-315 and 26-373 as well as the copolymer of ethyl acrylate and butyl acrylate sold by Rohm & Haas under the designation "Rhoplex NW-1715". These materials show little or no transfer to the brew after cure, are generally nontoxic and do not affect the odor, taste or quality of the brew produced, all of which are important and necessary characteristics in food and beverage products. Of course, all exhibit the requisite hydrophobic character.

The hydrophobic agent may be applied to the preformed infuser web material by well-known techniques used to add binders while assuring complete coverage of the web material. For example, the web may be treated by brush, roll, spray or immersion bath to effectuate the desired application to the web material. Since complete impregnation of the web is desired, a saturation treatment is preferred. The alkyl acrylate binder emulsions generally penetrate quickly through the rather thin and absorbent infuser web and may be applied during a suitable stage in the manufacture of the continous fibrous web. For example, in a conventional papermaking machine, a saturating size press may be placed adjacent the dryer section prior to the final drying and collection of the web material.

After treating the infuser web with the latex dispersion of the alkyl acrylate binders, which immediately permeates through the entire thickness of the paper in the treated areas, the web then is subjected to a thermal or heat cure in order to set the binder and prevent leaching therefrom. This operation may be combined with the normal drying steps employed in making the infuser web. Although the latex binders may be air dried since they are self curing, heat curing during the drying operation is preferred. Consequently, by using proper techniques, complete coverage and adherence of the hydrophobic binder may be readily achieved.

The acrylate polymer emulsions may be employed in undiluted form or the aqueous emulsions may be diluted to provide the desired binder concentration and pick up by the web during saturation. The concentration range of the copolymer within commercially sold emulsions is typically in the high solid range of about 55–60 percent by weight with a viscosity of about 90 cps. However, the commercial emulsions typically are diluted by about 3:1 to 20:1 and preferably 5:1 to 10:1 prior to use such that the pick up by the web will be from about 3 percent to 20–25 percent by weight. Although the hydrophobic character of the binder will be effective to provide improved seam integrity at a pick up level of only about

5,431,997

| 5 | 6 |

**5**

1 percent by weight; at least 3–4 percent binder is preferably employed to impart adequate stiffness to the web to facilitate handling on commercial seam forming machinery. For conventional tea bags, a binder pick up of about 8–10 percent is preferred. With larger "family size" tea bags, as much as 15–20 percent binder pick up may be used.

The web material treated with a hydrophobic binder of the type described, while retaining its porosity, exhibits substantially no absorption characteristics. As mentioned, these are measured by a "water climb" test procedure that determines the rate of saturation of a web material by capillary action. In accordance with this procedure, a strip of treated material is cut to a specimen size of one inch by five inches. The strip is mounted on a support bar above a container, such as a 500 ml. beaker, so that the strip will be suspended within the beaker. The specimen is marked at ½ inch and at 1½ inches from the bottom of the specimen. The beaker is partially filled with distilled water to a level such that the bottom ½ inch of the specimen will be immersed in the water. The time then is recorded for the water front to advance up the specimen to the 1½" mark, a distance of one inch. The test is stopped at 400 seconds if the water front has not advanced sufficiently to complete the one inch climb on the specimen. The time is reported for the one inch travel of the water front. If the water front does not move above the level of the water in the beaker, a report of "no absorption" is recorded.

The water climb absorbency rate test has been correlated to the number of seam failures in a standard teabag of the flow through type. The purpose of the seam failure test is to assess the ability of a tea bag seam to maintain its integrity during forces exerted on it in a harsh brewing condition. In accordance with this test procedure, a teabag of the flow through type is inverted so that the "W" fold is extending in an upward direction and the head fold in a downward direction, with the tea located adjacent the head fold. The teabag so oriented is placed in the bottom of a beaker with the head fold facing down. Tap water is heated to a constant boiling condition and approximately 400 ml. of boiling water is poured directly onto the teabag with the stream of water being maintained on the bag throughout the pour to provide a maximum degree of water flow turbulence upon the bag. The time for pouring the boiling water onto the teabag should take about 3 seconds. The container then is examined for tea leaves discharged by the teabag. Thereafter, the bag is removed and examined at both the center fold and the head fold for any openings therein. If any of the following conditions are present, the seam is considered to be a failure:

1. Tea leaves in the beaker;
2. Opening of the center fold area;
3. Opening of the head fold area.

Based on the foregoing, the determination is made as to either failure or non-failure of the seam.

Table 1 provides an indication of the direct relationship between the water climb value of papers treated with various binders and the percent of seam failures. The seam failures are based on a minimum of 20 teabags tested.

**6**

TABLE I

| | Water Climb | | | | Seam Failure (%) |
| | Cold Water | | Hot Water (100° C.) | | |
| Binder | MD | CD | MD | CD | |
|---|---|---|---|---|---|
| A. Viscose | 191 | 400+ | 72 | 262 | 30 |
| B. Kymene/CMC | 35 | 69 | 46 | 70 | 50 |
| C. Polyvinyl chloride | ½"* | ½"* | 292 | 370 | 75 |
| D. Ethyl vinyl acetate | ½"* | ½"* | 303 | 400+ | 50 |
| E. Ethyl acrylate copolymer | NA | NA | ½"* | ½"* | 0 |
| F. Butyl acrylate copolymer | NA | NA | NA | NA | 0 |
| G. Copolymer of ethyl and butyl acrylate | NA | NA | NA | NA | 0 |

*Extent of water climb in 400 seconds
NA = no absorption

When the web material made with binder G was further treated with a surfactant, water climb values of 10 to 20 seconds were obtained coupled with 10 percent seam failures, thus indicating that the hydrophobic character of the binder as measured by the water climb was the significant factor in the seam failure results.

Measurements were also made to compare the time for the first color to appear in a tea brew using web materials with different binders. When samples B and F were compared, the first color infusion time varied by only 0.2 seconds with sample B having an infusion first color time of 6.7 seconds.

As mentioned, the hydrophobic agent used to treat the web material may also be applied to a prebonded sheet to achieve the beneficial result of the present invention. In accordance with this embodiment of the invention, the hydrophobic treating agent may be any of a number of fluid-repellent materials, such as silicones, fluorohydrocarbons, parafins, alkyl ketene dimers, stearylated materials and the like. The silicones may be any of those materials mentioned in U.S. Pat. No. 3,386,834, the disclosure of which is incorporated herein by reference. The silicone pick up varies from 10–30 percent by weight. Where a fluorochemical treating agent is employed, it should, of course, meet the standards for use with foods and beverages and preferably should be in the form of an aqueous emulsion for ease of application. A typical aqueous emulsion formulation contains about 0.7 to 1.5 parts by volume of a fluorohydrocarbon for each hundred parts of water and may employ materials such as the Scotchban treating agent sold by Minnesota Mining and Manufacturing under the designation "FC-809" or "FX-845". Other fluorohydrocarbon materials that can be employed include the DuPont material designated Zonyl RP or NF. The parafin and stearylated materials include those sold by Sequa Chemicals Company under the tradename Sequapel, such as Sequapel 414 and 417, while the alkyl ketene dimers are exemplified by Hercon 70 sold by Hercules Chemical Company.

Where a material using viscose binder, as shown in sample A of Table I, was saturated with a solution containing 0.3 percent of a fluorohydrocarbon, the water climb values for both hot and cold water were comparable to samples F and G, namely no absorption. A similar situation was evidenced when a web containing binder B of Table I was saturated with an emulsion containing 25 percent silicone (a mixture of methyloxy-polydimethyl siloxane and polydimethyl siloxane sup-

5,431,997

7

plied by General Electric under the name Silicone II). The same result is achieved when the web material using binder B is treated with a fluorohydrocarbon at a fluorocarbon treatment level of 0.3 percent. This material also exhibits no seam failures although the appearance of first color is slightly slower.

As will be appreciated, the repellent may be added as a separate treatment to a bonded web material or may be added to the conventional binder to be applied simultaneously therewith to the web material.

As can be seen from the foregoing, the present invention provides infuser web material possessing improved mechanical seam integrity as a result of impregnating the web with a hydrophobic treating material in a latex dispersion. The latex may be used as a replacement for binder systems used heretofore or as a supplement thereto.

As will be apparent to persons skilled in the art, various modifications and adaptations of the web material above described will become readily apparent without departure from the spirit of the invention.

We claim:

1. A fibrous web suited for making infusion packages for brewing beverages and exhibiting improved resistance to the failure of a mechanical seam therein, said web comprising a porous fibrous sheet material impregnated throughout its extent with about one percent or more by weight of a hydrophobic treating system comprising a cured hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials, the impregnated sheet material exhibiting no appreciable water climb when measured using water at a temperature of about 100° C. and no substantial loss of infusion characteristics while providing less than 10 percent failure in the mechanical seam upon exposure to boiling water.

2. The infusion web of claim 1 wherein the hydrophobic agent that completely impregnates the entire web material comprises at least 3–4 percent by weight of the web material.

3. The infusion web of claim 1 wherein the hydrophobic agent is a high molecular weight alkyl acrylate strength imparting hydrophobic binder.

4. The infusion web of claim 3 wherein the hydrophobic binder is selected from the group consisting of ethyl acrylate and butyl acrylate polymers and copolymers.

5. The infusion web of claim 1 wherein the hydrophobic agent comprises up to about 8–12 percent by weight of the web material and the mechanical seam failure of the web is less than one percent.

6. The infusion web of claim 1 wherein the hydrophobic agent is a strength imparting hydrophobic binder comprising a high molecular weight cross-linked butyl acrylate copolymer.

7. The infusion web of claim 1 wherein the hydrophobic agent is a hydrophobic strength imparting binder completely impregnating the entire web material and imparting sufficient resistance to wetting to eliminate the water climb of the fibrous sheet material, the hydro-

8

phobic binder exhibiting an affinity for being readily absorbed into the fibers of the web, the binder being a high molecular weight cross-linked alkyl acrylate polymeric material.

8. The infusion web of claim 1 wherein the fibrous sheet material contains a strength imparting binder other than the hydrophobic agent.

9. The infusion web of claim 8 wherein the hydrophobic agent comprises from 0.3 to 30 percent by weight.

10. A process for producing porous web materials for making infusion packages having enhanced mechanical seam integrity comprising the steps of providing a porous absorbent web material suited for use as an infusion package, treating the entire web material with an aqueous emulsion of a hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials to provide a treated web that exhibits no appreciable water climb when measured using water at a temperature of about 100° C. and less than 10 percent failure in a mechanical seam therein when exposed to boiling water.

11. The process of claim 10 wherein the aqueous emulsion of the hydrophobic agent exhibits an affinity for being readily absorbed into the fibers of the web and the process includes the step of subsequently insolublizing the agent on the web.

12. The process of claim 10 wherein the hydrophobic agent is a cross-linked high molecular weight acrylic polymer which also acts as a strength imparting hydrophobic binder, the hydrophobic agent imparting resistance to aqueous absorption as measured by water climb and exhibiting an affinity for being readily absorbed into the fibers of the web, the treating step comprising a saturating treatment and the process includes the step of subsequently drying the treated web material.

13. The process of claim 12 wherein the binder is a latex dispersion of an alkyl acrylate, the latex binder being present in an amount sufficient to provide a binder pick up by the web of at least 3–4 percent by weight.

14. The process of claim 10 wherein the fibrous sheet material is soft, tissue weight material, the process including the step of treating the web with a binder in addition to the hydrophobic treating agent, said agent exhibiting an affinity for being readily absorbed into the fibers of the web, said hydrophobic agent being applied as a latex dispersion in an amount sufficient to impart a hydrophobic agent pick up of about 0.3 to 30 percent by weight.

15. The process of claim 10 wherein the fibrous sheet material is a prebonded, light weight, highly wettable material and the hydrophobic agent imparts complete resistance to wetting as measured by water climb, the hydrophobic agent exhibiting an affinity for being readily absorbed into the fibers of the web and being applied by a size press.

16. The process of claim 10 wherein the hydrophobic treating agent completely impregnates the web material as the web material is being treated with a strength imparting binder.

*     *     *     *     *

65

Exhibit D
cont'd

| ISSUE CLASSIFICATION | Class | Subclass |
|---|---|---|
| OR 086673 | 428 | 290 |

*18 X*

*5431997*

| UTILITY SERIAL NUMBER | 08/086673 | PATENT DATE | APR 11 1995 | PATENT NUMBER |
|---|---|---|---|---|

5431997

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 08/086,673 | 07/01/93 | 428 421 | 288 | 1802 1504 | BCC |

APPLICANTS

PETER C. SCOTT, ENFIELD, CT; HELEN VIAZMENSKY, SOUTH WINDSOR, CT; NICHOLAS WOLCHECK JR., SUFFIELD, CT.

**CONTINUING DATA***************** None
VERIFIED

**FOREIGN/PCT APPLICATIONS*********** None
VERIFIED

FOREIGN FILING LICENSE GRANTED 08/06/93

| Foreign priority claimed ☐ yes ☒ no | | | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|---|
| 35 USC 119 conditions met ☐ yes ☒ no | | AS FILED → | | | | | | |
| Verified and Acknowledged   Examiner's initials | | | CT | 0 | 18 | 2 | $710.00 | DEXNON079US |

ADDRESS

CHILTON, ALIX & VAN KIRK
750 MAIN STREET
HARTFORD, CT 06103-2708

TITLE

PROCESS OF PRODUCING POROUS WEB MATERIALS USED FOR MAKING INFUSION PACKAGES FOR BREWING BEVERAGES AND THE WEB MATERIALS THUS PRODUCED

U.S. DEPT. of COMM.-Pat. & TM Office— PTO-436L (rev. 10-78)

PARTS OF APPLICATION FILED SEPARATELY

Applications Examiner

| NOTICE OF ALLOWANCE MAILED | | | CLAIMS ALLOWED | | |
|---|---|---|---|---|---|
| 02-08-95 | | | Total Claims | Print Claim | |
| | Assistant Examiner | | 16 | 1 | |

| ISSUE FEE | | | | DRAWING | | |
|---|---|---|---|---|---|---|
| Amount Due | Date Paid | AU 1504 | Sheets Drwg. | Figs. Drwg. | Print Fig. | |
| 1710.00 | 11-14-95 | JAMES J. BELL PRIMARY EXAMINER ART UNIT 1504 | | | | |
| | | Primary Examiner | ISSUE BATCH NUMBER | I 72 | | |

Label Area

PREPARED FOR ISSUE

WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

Form PTO-436A
(Rev. 8/92)

*Bell*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent application of

P.C. Scott, H. Viazmensky and N. Wolcheck Jr.

Serial No. 08/086,673

Filing Date: 07/01/93          Group Art Unit: ~~1302~~ 1504

For: PROCESS OF PRODUCING POROUS WEB MATERIALS USED FOR MAKING
INFUSION PACKAGES FOR BREWING BEVERAGES AND THE WEB MATERIALS
THUS PRODUCED

Commissioner of Patents        9-11-93
 and Trademarks                1504          RECEIVED
Washington, DC 20231                          UCI, 6 1993
Sir:                           Bell
                                             GROUP 1500

### INFORMATION DISCLOSURE STATEMENT

Applicant submits herewith patents, publications or other
information of which they are aware, which they believe may be
material to the examination of the above-identified application and
in respect of which there may be a duty to disclose in accordance
with 37 CFR 1.56.

This Information Disclosure Statement is not intended to
constitute an admission that any patent, publication or other
information referred to herein or submitted herewith is "prior art"
for this invention unless specifically designated as such.

In accordance with 37 CFR 1.97(b), the filing of this
Information Disclosure Statement shall not be construed to mean

I hereby certify that this correspondence is being deposited on the
date given below with the United States Postal Service as first
class mail in an envelope addressed to "Commissioner of Patents and
Trademarks, Washington, DC 20231."

Date:  September 28, 1993          James E. Alix, Reg. No. 20,736

that a search has been made or that no other material information
as defined in 37 CFR 1.56(a) exists.

A copy of each of the items listed on the attached PTO-1449 is
supplied herewith.

Respectfully submitted,

P.C. Scott et al

By _James E. Alix_
James E. Alix
Registration No. 20,736
Chilton, Alix & Van Kirk
Attorney for Applicant

Date:  September 28, 1993
750 Main Street
Hartford, CT 06103
(203) 527-9211
Our Ref:  DEXNON/079/US
JEA/ra

RECEIVED
OCT  6 1993
GROUP 1500

2

MAIL ROOM
SEP 30 1993

RECEIVED
OCT 6 1993
GROUP 1500

Form PTO-1449 (2-92)

**INFORMATION DISCLOSURE CITATION
IN AN APPLICATION**

*(Use several sheets if necessary)*

Sheet ___ of ___

| Docket Number (Optional) | DEXNON/079/USA |
|---|---|

Title: Process of Producing Porous Web Materials...

| Applicant | Peter C. Scott et al |
|---|---|
| Filing Date | 07/01/93 | Group Art Unit | 1302 |

### U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| | 2,852,795 | 09/58 | Hermanson et al | 15 | 131.1 | |
| | 3,174,889 | 03/65 | Anderson et al | 156 | 254 | |
| | 3,183,096 | 05/65 | E.F. Hiscock | 99 | 77.1 | |
| | 3,373,043 | 03/68 | S. Rubenstein | 99 | 77.1 | |
| | 3,386,834 | 06/68 | Noiset et al | 99 | 77.1 | |
| | 3,468,696 | 09/69 | B.W. Conway | 117 | 62.1 | |
| | 3,616,166 | 10/71 | L.E. Kelley | 161 | 148 | |
| | 3,881,987 | 05/75 | C.S. Benz | 162 | 116 | |
| | 4,289,580 | 09/81 | C. Elston et al | 162 | 109 | |
| | 4,902,370 | 02/90 | Dust et al | 156 | 327 | |
| | 5,015,513 | 05/91 | Newbold et al | 428 | 35.5 | |
| | | | | | | |
| | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | Translation YES | NO |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

### OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| | | |
| | | |
| | | |

| EXAMINER | JAMES J BELL | DATE CONSIDERED | 09/29/94 |
|---|---|---|---|

EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP § 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to the applicant.

(2-92)                                    Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE