UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:03-CV-0169 (AVC) |
| | ) |
| SCHOELLER & HOESCH, N.A., INC. and | ) |
| P.H. GLATFELTER COMPANY, | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF JAMES E. PIOTROWSKI, ESQ.

James E. Piotrowski declares and says:

1) I am a member of the bar of the State of Connecticut and a partner in the law firm of Alix, Yale & Ristas, LLP ("AYR"), 750 Main Street, Hartford, CT 06103. AYR represents plaintiff, Ahlstrom Windsor Locks, LLC ("Ahlstrom"), in matters relating to patent prosecution. I am generally responsible for Ahlstrom patent prosecution matters. I make this declaration in support of Ahlstrom's Opposition To Defendants' Motion To Compel Compliance With The Subpoena Of Alix, Yale & Ristas.

2) On or about March 3, 2004, AYR was served with a subpoena (Exhibit 1) addressed to the attention of James Alix, Esq., calling for the deposition of Mr. Alix and for the production of certain documents in the files of AYR relating to U. S. patent No. 5,431,997 ("997 patent") and its European counterpart patent ("European Counterpart Patent").

3) Pursuant to the subpoena, I retrieved the following files, which are Dexter/Ahlstrom patent files relating to the '997 patent and its European Counterpart Patent.

(i) DEXNON/079/US (United States file for the '997 patent);

(ii) DEXNON/079/EP1 (European Counterpart file, Vol. 1);

(iii) DEXNON/079/EP2 (European Counterpart file, Vol. 2);

(iv) DEXNON/M733 (Miscellaneous matter file relating to the 1999 Dexter/Glatfelter infringement matter and settlement).

In addition, we also retrieved some computer files related to these applications/matters, which were printed out and produced to defendants.

4) United States patent application files at AYR are typically kept in a two-sided folder having left and right sides. The right side includes flaps along the right and bottom edges that, when folded in, can create a separate additional "pocket part" in the right side. Documents attached to the left and right sides of the folder are top hole-punched and fastened into the folder with an ACCO-type fastener.

Correspondence to or from a client is typically attached to the left side of the folder. Papers to and from the U. S. Patent and Trademark Office (PTO) are attached to the right side of the folder. Papers attached to each side are typically, but not always, added sequentially so that the earliest documents are usually on the bottom and the most recent at the top.

In some cases there are other documents that may be useful during the course of patent application prosecution, such as cited references, marked-up copies of documents,

2

attorney notes and miscellaneous documents, that are kept loose in the folder. These other documents may be located in the separate pocket on the right side of the folder.

5) Files for patent applications outside of the United States use the same two-sided folder as U.S. application files (with a different color) and are arranged in a similar fashion (left side for correspondence, right side for official documents to or from patent authorities, loose papers may be present). However, documents and instructions coming from or going to a foreign patent office are transmitted through one of the firm's foreign patent agents. The foreign patent agent will typically include a cover letter and explanation with a foreign patent office document. The foreign patent agent letter and foreign patent office document are typically attached to the right side of the folder, although the foreign patent agent letter or a copy thereof may be attached to the left side of the folder. Additionally, the foreign patent agent may initially send AYR a facsimile of a letter and subsequently mail a confirmation copy of that letter so that it is possible for a file to have both the facsimile letter and the original confirmation copy of that same letter.

6) The two-sided file folder containing documents relating to the prosecution of the '997 patent in the United States (DEXNON/079/US) is arranged in the above-described order; left side, right side, and loose papers (pocket). The DEXNON/079/EP1 and DEXNON/079/EP2 files containing documents relating to the prosecution of the European Counterpart are also kept in the same two-sided file folder (having a different color) and are arranged in the same order; left side, right side, and loose papers.

7)  AYR will sometimes prepare "miscellaneous" files for matters that are not patent or trademark applications. One miscellaneous file, DEXNON/M733, dating to about 1999 is related to the previous Dexter/Glatfelter patent infringement investigation and settlement. As is typical of AYR miscellaneous files, this file is a folder containing memos, correspondence and miscellaneous documents relating to the investigation and settlement. The papers in this file are not fastened to the folder.

8)  Pursuant to the subpoena, I reviewed the retrieved files for privileged material. All documents in these files that were considered to be privileged were withheld from production and identified on a first privilege list organized according to file position that was provided to the defendants (Exhibit 2). Those documents that were not privileged were copied. If a file included any duplicate, not privileged, document, the duplicate document was also copied. These master copies were prepared and maintained in the same order as the parent file, that is by file and location or group e.g., DEXNON/079/US left side, DEXNON/079/US right side and DEXNON/079/US loose papers.

9)  I had the master copies numbered sequentially. Each separate file (DEXNON/079/US, DEXNON/079/EP1, DEXNON/079/EP2, DEXNON/M733, DEXNON computer files) was numbered in sequential order. Each group within each file (e.g. left side, right side and loose papers) was in sequential order within the respective file. The sequential numbering for each group started at the top page and ended at the bottom page of that group. Each sequentially numbered file was copied, maintaining the order of the parent file (left side, right side, loose papers). The

4

numbering and copying of the master copies was done by an outside vendor, "One Stop Copy Shop", located in our building at 750 Main Street, Hartford, CT 06103.

10) I reviewed the sequentially numbered copies and discovered that, inadvertently, a few pages had not been copied and numbered. I copied these pages, sequentially numbered them with the next available lowest numbers and included them in the documents to be produced at the appropriate file/group/page location. Thus, these few pages (about 20 pages in all) were produced out of order but in the correct file location. There were also two documents (2 pages in all) that were mistakenly numbered and copied but which were not produced because they were privileged. This resulted in two numbers being missing from the sequentially numbered documents. These documents were identified on the privilege list.

11) To the best of my recollection, the DEXNON/079/US file was produced as a single set containing three groups, DEXNON/079/US left side, DEXNON/079/US right side and DEXNON/079/US loose papers. Each page within each group was sequentially numbered from top to bottom, with the above-discussed exceptions. Each group was collected together with a cover sheet identifying both the file (DEXNON/079/US) and the location (left side, right side or loose papers) from which those documents were obtained. To the best of my recollection, the DEXNON/079/EP1 and DEXNON/079/EP2 files were produced in the same manner as the DEXNON/079/US file. To the best of my recollection, the DEXNON/M733 file and DEXNON computer files were each produced as a single, sequentially numbered group (two groups total) and each group included a cover sheet identifying that file. I do not recall if individual documents within any group were stapled together.

12) Subsequent to Ahlstrom's production of documents to defendants, counsel for defendants requested additional information regarding the documents on Plaintiff's privilege list. A second privilege list was prepared with documents listed in numerical order (Exhibit 3) and sent with an explanatory letter to defendants' counsel on April 29, 2004, together with additional information regarding some of the documents (Exhibit 4). Counsel for defendants also requested redacted copies of a few documents that had been withheld on the grounds of privilege. As a result of this request, I reviewed these documents again, redacted as best I could the parts that were considered to be privileged, and produced them in redacted form. Each of these documents was produced as part of a single group, sequentially numbered starting with the next lowest available number. A letter accompanying these produced documents indicated the relationship between each produced document within this set and the protected document number.

13) I have reviewed the procedures that I followed in connection with this document production and am able to say with confidence that the documents were produced in the same order that they are kept in the usual and ordinary course of business at AYR. To produce these documents in any other order would require that we retrieve all of these files, take them apart and rearrange them in a manner that is not in accordance with our usual office practice.

I declare under penalty of perjury that that the foregoing is true and correct. Executed on this 23rd day of June, 2004.

_____
James E. Piotrowski