## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC, | : |
| | : CASE NO. 3:03-CV-0169(AVC) |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| SCHOELLER & HOESCH, NA, INC., and | : |
| P.H. GLATFELTER COMPANY, | : |
| | : |
| Defendants. | : JULY 9, 2004 |

### DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH THE SUBPOENA OF ALIX, YALE & RISTAS

The Plaintiff's opposition does little more than deflect a legitimate discovery request by attempting to argue the merits of the case. Not only has Plaintiff failed to justify its nondisclosure of the Alix, Yale & Ristas documents, but it underscores the weakness of its position by launching ad hominem attacks against the Defendants. The Court should disregard these continued and wholly unnecessary attacks and diversions, and overrule Plaintiff's meritless opposition to Defendants' motion to compel compliance with the Alix, Yale & Ristas subpoena.

## ARGUMENT

I. **THIS DISCOVERY DISPUTE IS NOT THE PROPER SETTING IN WHICH TO ADDRESS THE ULTIMATE MERITS OF DEFENDANTS' INEQUITABLE CONDUCT DEFENSE.**

Plaintiff fails to offer a compelling reason for this Court to deny Defendants' motion, instead arguing irrelevantly that "There is no reasonable basis for Defendants' contention regarding inequitable conduct, upon which the entire motion rests." (Opp., p. 3.) Plaintiff then spends six pages arguing the merits of Defendants' inequitable conduct defense[1] and how a particular prior art reference, the Yadlowsky Application, cannot support such a defense. (Opp., pp. 3-8.) At the end of this irrelevant diatribe, the Plaintiff concludes that "the evidence relied upon by Defendants' *fails to support Defendants' inequitable conduct assertions*." (Opp., p. 8, emphasis added.)

This argument misses the point. The Defendants are entitled to seek discovery to support their inequitable conduct defense – a defense for which they bear the burden of proof. They need not satisfy this burden <u>in order to be allowed to conduct discovery</u>. The Defendants recognize that they will have to demonstrate Yadlowsky's materiality to substantiate their defense at the time of trial. That time has not yet come, and Plaintiff's resistance to Defendants' legitimate

---

[1] Oddly, Plaintiff continues to insist that the issue of inequitable conduct is not "in the case", but the Plaintiff has yet to deny the fact that as far back as April 18, 2003, Plaintiff itself acknowledged that this defense <u>had</u> been sufficiently pled when Plaintiff wrote in its portion of the Report of Parties Planning Meeting that it intended to seek discovery on "all patent-related defenses advanced by Defendants, e.g., purported patent invalidity and **inequitable conduct**." (emphasis added).

discovery efforts is not the proper vehicle for deciding the "materiality" prong of the inequitable conduct defense.

To the extent the Court does feel it necessary to at least preliminarily hear from the parties at this time regarding the issue of Yadlowsky's materiality, Defendants note the following:

- Plaintiff has never denied that Yadlowsky was identified by the European Patent Office as a "particularly relevant" prior art reference and brought to Plaintiff's attention at least as early as 1994, while the application which led to the '997 Patent was still being prosecuted before the United States Patent and Trademark Office ("USPTO");

- Plaintiff has never denied that it failed to bring Yadlowsky to the attention of the USPTO; and

- Plaintiff has never provided any explanation or reason(s) as to why it chose to withhold Yadlowsky from the USPTO's consideration.

Contrary to what Plaintiff states in its opposition brief, the fact that nearly 10 years after the '997 Patent was prosecuted in the U.S. the European Patent Office's Opposition Division ultimately did not rely upon the Yadlowsky Application in rejecting the claims of Plaintiff's European Counterpart, has absolutely no impact on the question of whether Plaintiff committed inequitable conduct back in 1994 in failing to disclose Yadlowsky to the USPTO. An otherwise material prior art reference does not become "immaterial simply because the claims are eventually deemed by an examiner to be patentable thereover." *Molins PLC v. Textron, Inc.*, 48

F.3d 1172, 1179 (Fed. Cir. 1995). "That the claimed invention may have been superior ... to both the cited and withheld prior art may be a basis for patentability; it cannot serve automatically to render the withheld prior art either cumulative or immaterial." *Merck & Co. v. Danbury Pharmaceutical, Inc.*, 860 F.2d 428, 433 (Fed. Cir. 1989). Therefore, the EPO Opposition Division's recent decision - invalidating Plaintiff's claims directed to tea bag paper on the basis of prior art other than Yadlowsky - is wholly relevant to the issue of whether or not Yadlowsky was a sufficiently material reference such that its withholding from the USPTO in 1994 and 1995 during the prosecution of the '997 Patent constituted inequitable conduct on the part of Plaintiff.

Nor do the changes made to 37 CFR §1.56 in 1992 alter in any way Yadlowsky's materiality, again contrary to what Plaintiff states in its opposition brief. (Opp., p. 7.) Plaintiff quotes in part from the post-1992 version of Section 1.56, but conveniently stops short of the portion which supports the notion that Yadlowsky should have been disclosed to the USPTO:

> [N]o patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct. **The Office encourages applicants to carefully examine: (1) prior art cited in search reports of a foreign patent office in a counterpart application;** ....

37 C.F.R. §1.56(a)(1) (emphasis added).

Moreover, the Manual of Patent Examining Procedure[2] (including the version in effect at the time the '997 Patent was prosecuted) further emphasizes the duty upon patent applicants to disclose to the USPTO prior art cited in foreign counterparts:

> Applicants and other individuals, as set forth in 37 CFR §1.56, have a duty to bring to the attention of the Office any material prior art or other information cited or brought to their attention in any related foreign application. **The inference that such prior art or other information is material is especially strong where it is the only prior art cited or where it has been used in rejecting the same or similar claims in the foreign application.**

MPEP §2001.06(a) (6th ed. 1995)

In the case of the '997 Patent, the Yadlowsky Application was one of only two references cited in the EPO's 1994 Search Report. It was the only reference assigned an "X" designation to indicate it as being "particularly relevant". Moreover, Yadlowsky was subsequently relied upon by the EPO (albeit after the '997 Patent issued) not once but twice as the basis for rejecting claims virtually identical in scope of the claims of the '997 Patent. Therefore, to the extent the Court deems it any way appropriate to entertain Plaintiff's arguments regarding Yadlowsky's relevance now in deciding whether or not to grant the instant Motion to Compel Compliance, Defendants submit Yadlowsky must be viewed as an arguably material reference sufficient to

---

[2] "The MPEP [is] commonly relied upon as a guide to patent attorneys and patent examiners on procedural matters." *Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1439 (Fed. Cir. 1984). While the MPEP does not have the force of law, it is entitled to judicial notice as an official interpretation of statutes or regulations as long as it is not in conflict therewith. *Id.*

allow Defendants the discovery it seeks regarding the reasons for Plaintiff's non-disclosure to the USPTO.

## II. PLAINTIFF FAILS TO ARTICULATE HOW AND WHY ITS WITHHELD DOCUMENTS AND ATTORNEY ALIX'S TESTIMONY ARE PRIVILEGED.

The Plaintiff's recitation of law spanning a variety of attorney-client privilege issues fails to apply the facts of this case to boilerplate law. (Opp., pp. 10-22.) Plaintiff cites 10 pages of law but offers a mere two paragraphs to broadly assert privilege, without foundation, to groups of documents on the entirely non-specific ground that they are "related to" pre-litigation investigations, or "relating to" infringement of Plaintiff's foreign patents, or "related to" potential infringement litigation in the U.S. and Europe. (Opp., p. 21.) Again, as argued in Defendants' moving brief, these sorts of broad-brush, conclusory claims of privilege are insufficient to evaluate Plaintiff's claim. *See Dorf & Stanton Commn's, Inc. v. Molson Breweries*, 100 F.3d 919, 923 (Fed Cir. 1996) (holding language "associated litigation" and "recommended plan of action for pending litigation" inadequate to establish privilege); *see also* Fed. R. Civ. P. 45(d), 1991 Am. Advisory Committee Notes.[3] If merely being "related to" litigation in Europe, for

---

[3] "[Rule 45(d)(2)'s] purpose is to provide a party whose discovery is constrained by a claim of privilege or work product protection with information sufficient to evaluate such a claim and to resist if it seems unjustified. The person claiming a privilege or protection cannot decide the limits of that party's own entitlement.
A party receiving a discovery request who asserts a privilege or protection but fails to disclose that claim is at risk of waiving the privilege or protection. A person claiming a privilege or protection who fails to provide adequate information about the privilege or protection claim to the party seeking the information is subject to an order to show cause why the person should not be held in contempt under subdivision (e)."

example, were a sufficient ground for deeming a particular document privileged, then communications between Plaintiff and the EPO in connection with the Crompton opposition proceeding should qualify for privilege protection. Yet Plaintiff correctly admits that such communications are <u>not</u> be privileged. (Opp., p. 18.)

Plaintiff also makes similar conclusory arguments to justify having instructed Attorney Alix not to answer certain deposition questions on the grounds of attorney-client privilege. Stating simply that the questions asked "clearly relate[d] to confidential client communications regarding a patent prosecution, which is privileged," (Opp., p. 23), Plaintiff fails to provide reasons or information showing that the requested information involved a confidential attorney-client communication soliciting or conveying legal advice.

The fact is that the answers to Defendants' questions are far from "clearly" privileged. At least some questions solicited answers regarding *facts* underlying communications or Attorney Alix's knowledge, <u>not</u> the content of privileged communications with his client. For example, whether Attorney Alix discussed the Yadlowsky reference with his clients is a discoverable fact. *See, e.g., Upjohn Co. v. U.S.*, 449 U.S. 383, 395-96 (1981) (facts underlying legal advice are freely discoverable). What Attorney Alix advised regarding its materiality or impact on the U.S. patent application is arguably privileged. Plaintiff, however, claims privilege

for Alix's answer to whether he even had such a discussion. (Opp., p. 23). This claim exemplifies the reason for Defendants' request for the Court's intervention.

Plaintiff also conflates the issue of Attorney Alix's lack of memory with the issue of whether his assertions of work product and attorney-client privilege were improper. (Opp., p. 22.) Defendants submit that Attorney Alix's lack of memory as to key facts justifies its request for information purportedly protected by the work product doctrine. (Def. Mem. in Support, pp. 13-15.) Contrary to Plaintiff's suggestions, Defendants hardly "complain" about this lack of memory and do not expect a retired attorney in ill health to remember every detail of one patent prosecution that occurred over 10 years ago "as if they took place yesterday." (Opp., p. 22.) However, Attorney Alix's age, health, and lack of memory, underscore the substantial need on the part of Defendants to obtain discovery through other means.

### III. DEFENDANTS' HAVE A SUBSTANTIAL NEED FOR THE ALLEGED "WORK PRODUCT" MATERIALS IDENTIFIED BY PLAINTIFF AND AYR, AND HAVE NO ABILITY TO OBTAIN THE SUBSTANTIAL EQUIVALENT OF THE MATERIALS BY OTHER MEANS.

Clearly Defendants have a substantial need for the information which they seek from Attorney Alix and the AYR firm, namely, information that speaks to the reason(s) why AYR chose not to bring the Yadlowsky Application to the attention of the USPTO. That information impacts directly on the "intent" prong of the inequitable conduct analysis, without which Defendants (and the trier of fact eventually) are left without any explanation whatsoever behind

the AYR firm's failure to cite Yadlowsky. Moreover, by its very nature the information sought is the type which cannot be obtained by any other means. The reasons for the decision to withhold Yadlowsky from the USPTO rest solely and entirely in the hands of the AYR firm. Therefore, to the extent any of the sought-after materials are legitimately characterized as true work product, Defendants are nevertheless entitled to them due to the substantial need for same and the utter inability to obtain them via any other means.

An instructive case is *Environ Products Inc. v. Total Containment Inc.*, 41 U.S.P.Q.2d 1302 (E.D. Pa. 1996), in which the Eastern Pennsylvania District Court denied the patentee's motion for a protective order barring a deposition of an attorney who represented the patentee in connection with reexamination of the patent in suit. The accused infringer alleged that the patent was unenforceable because of inequitable conduct during the reexamination. The patentee contended that the deposition would expose material protected by the attorney-client privilege and the work product doctrine and would "disrupt the professional adversarial relationship between the parties." *Id.* at 1306. The court disagreed:

> The affirmative defense of inequitable conduct makes [the attorney's] mental impressions during the reexamination proceedings an issue in this litigation. A party is entitled to discover relevant, non-privileged information from any individual with access to such information, even when that individual is the opposing party's trial counsel... . **Impressions protected by the work-product doctrine may be discovered when directly relevant to the litigation and when the need for production is**

> **compelling.... Such "compelling need" exists "whenever information is within the exclusive control of the party from whom discovery is sought."** ... [The attorney's] conduct during the reexamination bears on [the accused infringer's] affirmative defense of unenforceability. This conduct is directly an issue in this litigation, and [the attorney's] mental impressions relevant to this issue can only be discovered directly from him.

*Id.*

On the scope of the deposition, the court noted that the accused infringer may "ask [the attorney] for factual information relevant to this litigation which, unlike his mental impressions, are not protected by the work-product doctrine" and "about [his] mental impressions when they are directly relevant to [the accused infringer's] affirmative defense of inequitable conduct and when this information cannot be obtained from another source." *Id.*

## CONCLUSION

Plaintiff's opposition fails to address the real issues before the Court on this discovery motion. It prematurely seeks to address the merits of the inequitable conduct defense, improperly attempts to impugn Defendants' credibility, and fails to add any meat to its bare-bones claims of attorney-client privilege. Accordingly, the Court should grant Defendants' motion to compel compliance with the subpoena of Alix, Yale & Ristas. Defendants reiterate

their belief that an *in camera* review of the withheld documents would be of great benefit in resolving this dispute.

>  Attorneys for Defendants,
>  Schoeller & Hoesch, NA, Inc. and
>  P. H. Glatfelter Company
>
>  By _/s/ Brett Boskiewicz_
>  Dina S. Fisher (ct 14896)
>  dfisher@rc.com
>  Brett J. Boskiewicz (ct 25632)
>  bboskiewicz@rc.com
>  Robinson & Cole LLP
>  280 Trumbull Street
>  Hartford, CT  06103-3597
>  Tel. No.: (860) 275-8200
>  Fax No.: (860) 275-8299
>
>  Marc J. Farrell (ct 24539)
>  farrellmj@bipc.com
>  BUCHANAN INGERSOLL PC
>  213 Market Street, 3rd Floor
>  Harrisburg, PA  17101-2121
>  Tel. No.:  (717) 237-4820
>  Fax No.:  (717) 233-0852

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was served by means of facsimile and the United States mail, first class, postage prepaid, on this the 9th day of July, 2004, upon the following:

Sidney R. Bresnick, Esq.
Yunling Ren, Esq.
Cohen, Pontani, Lieberman & Pavane
551 Fifth Avenue
New York, NY  10176

Basam E. Nabulsi, Esq.
McCarter & English LLP
Four Stamford Plaza
107 Elm Street, 9th Floor
Stamford, CT  06902

Eric E. Grondahl, Esq.
Alexandra Stevens, Esq.
McCarter & English LLP
City Place I
185 Asylum Street, 36th Floor
Hartford, CT  06103-3495

Brett Boskiewicz