UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

AHLSTROM WINDSOR LOCKS LLC,   )
                                     )
                     Plaintiff,  )

v.                           )  CIVIL ACTION NO. 3:03-CV-0169 (AVC)
                                     )
SCHOELLER & HOESCH, N.A., INC. and  )
P.H. GLATFELTER COMPANY,       )
                                     )
                  Defendants.  )

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION FOR PERMISSION TO
WITHDRAW REPLY AND FILE AMENDED REPLY**

Plaintiff, Ahlstrom Windsor Locks LLC ("Plaintiff"), submits this

memorandum of law in opposition to defendants, Schoeller & Hoesch, N.A., Inc. and

P. H. Glatfelter Company (collectively, "Defendants"), Motion for Permission to

Withdraw Reply ("Motion to Withdraw") and Motion for Permission to File an Amended

Reply ("Motion to File Amended Reply") with respect to Plaintiff's Opposition to

Defendants' Motion for Leave to Amend Answer and Counterclaim.

**I.    BACKGROUND OF THE MOTION**

Plaintiff filed this action on January 24, 2003, alleging that Defendants

infringed U. S. Patent No. 5,431,997 ( "the '997 patent") and breached its 1999 settlement

agreement with Plaintiff's predecessor in interest, the Dexter Corporation ("Dexter"). On

March 25, 2003, Defendants answered the complaint and counterclaimed against

Plaintiff, alleging invalidity and noninfringement of the '997 patent. On April 22, 2003,

the Court issued a Scheduling Order setting June 15, 2003, as the deadline for the parties
to amend their pleadings.

On May 13, 2004, Defendants moved for leave to amend their answer and
counterclaims to add an affirmative defense and counterclaim of inequitable conduct on
the ground that Dexter intentionally withheld a material prior art reference from the U.S.
Patent and Trademark Office ("USPTO") during the prosecution of the '997 patent:
European published patent application No. **0 170 461** to Yadlowsky (" the Yadlowsky
application") (Exhibit A).

Plaintiff opposed Defendants' motion to amend on the grounds that (i) its
inequitable conduct pleading was *defective* under Fed.R.Civ.P. 9 (b) for lack of the
requisite particularity and (ii) the proposed amendment was *futile* because the Yadlowsky
application on which Defendants rely neither taught nor suggested the invention claimed
in the '997 patent and, therefore, failed to provide a proper basis on which to allege the
withholding of a material prior art reference sufficient to support the inequitable conduct
claim under Fed.R.Civ.P. 12(b)(6).

To rebut Plaintiff's argument regarding the lack of materiality of the
Yadlowsky reference, Defendants filed a reply memorandum on June 17, 2004 ("Reply"),
in which they referred the Court to a decision of the European Patent Office ("EPO") in
an opposition proceeding ("the EPO Decision") concerning Plaintiff's European
counterpart patent to the '997 patent (" the '997 Counterpart Patent"). The Yadlowski
application was one of three references cited by the opposer (J. R. Crompton, Ltd.) in the
EPO opposition proceeding. Defendants stated as fact in their Reply that the EPO
Decision (Exhibit B), which was rendered two weeks earlier on June 1, 2004, had held

2

that the '997 Counterpart Patent *was invalid over the Yadlowsky application.* Defendants

argued that the "outcome of that proceeding [EPO Decision] highlighted the *substantial*

*materiality* of the Yadlowsky Application as it relates to the invalidity of the claims of

the '997 Patent." (Reply, p.9) (emphasis added).

When Plaintiff demonstrated in its surreply brief on the motion to amend

that the EPO did *not*, in fact, hold that the '997 Counterpart Patent was invalid in light of

the Yadlowsky application; that the Yadlowsky application was not even discussed by the

EPO as a factor with respect to the issue of invalidity of the '997 Counterpart Patent; and

that, quite to the contrary, the EPO had ruled that *the subject matter of the claims of the*

*third auxiliary request* [of the '997 Counterpart Patent] were *novel* over the Yadlowsky

application, Defendants were forced to admit their "misstatements", and move to

withdraw their Reply and file an amended reply ("Amended Reply").

Defendants' Motion to Withdraw and to file an Amended Reply should not

be granted. Defendants' Reply is what it is, and, of course, the Court is free to disregard

it. But it is a matter of record even if disavowed by Defendants. Similarly, Plaintiff's

Surreply on the motion should also remain of record as its statement of the factual

information contained in the EPO Decision. But Defendants should not be permitted to

file an Amended Reply, which includes additional arguments that they could have made

in their earlier submissions on the motion, but did not. To permit the filing of an

Amended Reply under these circumstances would reward Defendants for their

misstatements of fact on a material issue in the case.

3

## II.    ARGUMENT

### A.    Defendants Too Easily Dismiss As "Misstatements" Their Flagrant Misrepresentation Of The Facts Concerning The EPO Decision

Defendants state that they filed the instant motion "[t]o correct an error" in their Reply because they had "misstated the basis for the final decision" of the EPO in connection with an opposition proceeding initiated against Plaintiff's European Patent Counterpart to the '997 Patent at issue in this case." Defendants contend that this "unintentional misstatement occurred due to Defendants' counsel's misreading a 'D2' reference designation in the final decision." (Motion to Withdraw, p.1). By blithely dismissing their "misstatement" of material facts as a simple "error" in reading a reference, as anyone could do, Defendants conveniently ignore the fact that in their Reply they had relied upon these same misstatements to harshly criticize Plaintiff for arguing that the Yadlowsky application was not material to the validity of the '997 patent.

Defendants stated in their Reply (emphasis added *except* where indicated):

- "Defendants feel obligated . . . to point out the *misleading* light in which Plaintiff puts the outcome of the European opposition proceeding" (Reply, page 6, line 15);

- Plaintiff's argument "is *misleading and wrong*" (Reply, page 6, line 20);

- "An analysis of the very claims held unpatentable by the European Patent Office's Opposition Division and the claims as they exist in the '997 Patent, demonstrates that *Plaintiff's characterization of*

Yadlowsky's materiality could not be further from the truth"
(Reply, page 6, line 20);

- "Plaintiff's incorrect characterization of the Yadlowsky Application forces Defendants here to *set the record straight for the Court*" (Reply, page 7, line 1);

- ". . . Claim 1 [of the '997 patent], reads almost verbatim to one of the claims struck down by the EPO as being *unpatentable in light of the Yadlowsky Application*;" (Reply, page 7, line 3) (emphasis in original);

- "Corresponding *Claim Held Invalid* By European Patent Office Due *On The Basis Of The Yadlowsky Application*" (Reply, page 7, column heading);

- "the *invalidating nature of Yadlowsky* on such claim" (Reply, page 8, line 12); and

- [Plaintiff's] . . . "unsuccessful attempts to come up with a set of claims that the EPO would rule as being patentable over Yadlowsky." (Reply, p.8, line 17).

That's pretty strong language to use when you don't have your facts straight! Anyone can make a mistake, but Defendants' misrepresentation of material facts regarding the decision of the EPO with respect to their most important prior art reference is inexplicable. This is particularly inexcusable where Defendants stated purpose was "setting the record straight for the Court!"

Rule 11 of the Federal Rules of Civil Procedure provides:

> (b)    **Representations to Court**. By presenting to the court . . .
> a pleading, written motion, or other paper, an attorney . . . is
> certifying that to the best of the person's knowledge, information,
> and belief, formed after an inquiry reasonable under the
> circumstances,--
>
> (3) the allegations and other factual contentions have
> evidentiary support or, if specifically so identified, are likely to
> have evidentiary support after a reasonable opportunity for further
> investigation or discovery;

Defendants' excuse for their misstatements that they "misread" a D2
designation in the EPO Decision is laughable. The Yadlowsky application (Exh. A) and
its European publication number **0 170 461** was long known to Defendants and *has the
distinction of being the very first document thatDefendants produced in this litigation, as
document No. D 0001-D 0013* (Exh. A). Besides, there is no mystery as to the identity of
the Yadlowsky application in the EPO Decision. It is clear and unambiguous. It is clearly
listed with its publication number "D2" under the heading "Summary of Facts and
Submissions" on page 1 of the "Grounds for decision" (Exh. B) along with two U.S.
patents, as shown below:

D1:    US-A-3 386 834

**D2:    EP-A-0 170 461** and

D3:    US-A-3 616 166

The Yadlowsky application produced by Defendants as document D 0001-
D0013 (Exh. A) bears the same publication number as D2: **0 170 461**. The other two
cited references in the EPO Decision are D1: U.S. patent 3,386,834 to Noiset and D3:
U.S. patent 3,616,166 to Kelley, both of which were considered in detail by the USPTO
during the prosecution of the '997 patent. The *only* foreign reference that appears on this

6

list is D2, the Yadlowsky application, which is hard to miss under the circumstances. Furthermore, Defendants have been closely monitoring developments concerning the European opposition. Markus R. Mueller, Defendant Glatfelter's, corporate counsel, was at the hearing, together with an associate, in which the Opposition Division of the EPO orally rendered its interlocutory decision on May 6, 2004 (Decl. of Totonis, par. 4, Exh. C). Mr. Mueller is very involved in the case at bar and has attended most, if not all, of the depositions that have been taken. How can Defendants now say that were confused as to the basis for the EPO's decision? There is no way.

A finding of inequitable conduct, by its nature, will have the effect of impugning the character of one or more persons associated with Plaintiff or its predecessor, Dexter, whether it be attorney James Alix or others. Before such serious accusations are made, one should, at the very least, get the facts straight. Considering the substantial materiality of the misstatements Defendants presented to the Court in connection with the EPO Decision ("setting the record straight" as Defendants put it), and their use of such misstatements to criticize Plaintiff so harshly for its arguments concerning the lack of materiality of the Yadlowsky application, Defendants' conduct should be considered reckless in nature and subject to sanction by the Court.

### B.    "Colorably Relevant" is Insufficient to Establish the Materiality Necessary to Allege Inequitable Conduct

Defendants have been forced to admit that the EPO Decision failed to find the materiality of the Yadlowsky application as they had said it did. Defendants, having backed off from that false assertion, now say in the "Conclusion" to their motion that "[t]he Yadlowsky Application is at the very least *colorably relevant* to the '997 patent", and that they are "entitled to have the opportunity to prove that it was a material reference

7

and that Plaintiff's failure to disclose it to the USPTO was a *willful attempt to deceive* the

USPTO in order to secure the granting of its application." Clearly, the Yadlowski

application had *no* effect whatsoever on the validity of the '997 Counterpart Patent, as the

EPO Decision made clear. Nevertheless, Defendants persist in contending that it is so

relevant and material that Dexter's failure to disclose it to the PTO constitutes a "willful

attempt to deceive." Defendants have no basis whatsoever for making such a claim.

While the Federal Circuit has not yet ruled on the issue, the federal courts

have consistently held since at least 1994 that the inequitable conduct defense in a patent

case must be pleaded with the particularity required of a pleading of fraud under Rule

9(b) Fed. R.Civ.P. *Environ Products, Inc. v. Total Containment, Inc.*, 951 F. Supp. 57

(E.D. Pa. 1996). *See* also, *Moore U.S.A. Inc. v. The Standard Register Company*, 139 F.

Supp.2d 348, 359 (W.D.N.Y. 2001) ("[T]he great weight of authority in the district courts

holds that Rule 9(b) does in fact apply to claims of inequitable conduct. These courts

have reasoned that Rule 9(b) should apply since inequitable conduct is a form of fraud.").

The court (Lasker, J.) held in *Import Systems International, Inc. v. Lee*, 1992WL 77613

(S.D.N.Y. 1992) at *1: "Lee's motion to dismiss . . . is granted as to those allegations of

fraud on the Patent Office since those allegations do not meet the particularity

requirement of Rule 9(b) of the Federal Rules of Civil Procedure. The allegations do not

specify, as they should, what knowledge the defendants had that their alleged invention

was *unpatentable* because of prior art or obviousness or why they should have had such

knowledge." Similarly, Defendants have not specified here what knowledge Plaintiff had

that the invention disclosed and claimed in the '997 patent was *invalid* because of the

Yadlowsky application.

8

In fact, all indications are that the Yadlowsky application is not material to the patententability of the '997 patent. First, Dexter's European patent application corresponding to the '997 patent was held patentable and issued as European Patent No. EP 0 632 163 (the '997 Counterpart Patent) over the Yadlowsky application, which had been cited and considered by the EPO during its prosecution. When the Yadlowsky application was considered by the EPO in connection with the patentability of the '997 Counterpart Patent in the opposition proceeding it was once again held to be irrelevant to the issue of validity. Having failed to establish the materiality of the Yadlowsky application through its effect in the EPO, Defendants now argue that it is "colorably relevant" to the validity of the '997 patent. Such an allegation does *not* meet the test of materiality required by 37 C.F.R. §1.56, "Duty to disclose information material to patentability."

Proof of inequitable conduct requires that the district court find *clear and convincing evidence* of facts supporting a threshold showing of both materiality with respect to the omitted information and of deceptive intent in the withholding of the information. *Akron Polymer Container Corporation v. Exxel Container, Inc.*, 148 F.3d 1380, 1383 (Fed. Cir. 1998) (citing *Halliburton Co. v. Schlumberger Technology Corp.*, 924 F.2d 1435 (Fed. Cir. 1991)). Defendants have presented no showing of why the Yadlowsky reference is material to the validity of the '997 patent. An allegation that it is "colorably relevant" to the '997 patent fall far below the materiality threshold required for inequitable conduct and, for that reason, the motion should be denied.

9

The following concisely states the Federal Circuit's view of the multitude of inequitable conduct allegations in patent infringement cases, to which nothing more need be added:

> One final word: *the habit of charging inequitable conduct in almost every major patent case has become an absolute plague.* Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps. They get anywhere with the accusation in but a small percentage of the cases, but such charges are not inconsequential on that account. They destroy the respect for one another's integrity, for being fellow members of an honorable profession, that used to make the bar a valuable help to the courts in making a sound disposition of their cases, and to sustain the good name of the bar itself. A patent litigant should be made to feel, therefore, that an unsupported charge of "inequitable conduct in the Patent Office" is a negative contribution to the rightful administration of justice. (emphasis added)
> *Burlington Industries, Inc. v. Dayco Corporation*, 849 F.2d 1418, 1422 (Fed. Cir. 1988).

C.      **Defendants Have Failed to Show Good Cause for The Delay in Amending Their Pleading**

Defendants stated in their proposed Amended Reply that "[t]he issue at bar is *either* whether Defendants have sufficiently pled its defense of inequitable conduct, *or* whether it is too late in the day for the new pleading." (Amended Reply, at 6). Plaintiff agrees, provided that the sufficiency of the inequitable conduct pleading requires Defendants to provide *sufficient facts* to support their claim of inequitable conduct. Here, Defendants have not only failed to plead sufficient facts, but the EPO's decision with respect to Yadlowsky undermines the proposed inequitable conduct claim. Moreover, Defendants' proposed amendment is untimely and they have failed to make a showing of good cause for their delay.

10

It is too late for Defendants' new pleading and Defendants cannot offer any justifiable cause for their delay. This Court has ruled that "[w]here a scheduling order has been entered, ... the lenient standard under Rule 15, which provides that leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) of the Federal Rules of Civil Procedure that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Senich v. American-Republican, Inc.*, 215 F.R.D. 40, 41(D. Conn. 2003), *citing Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003). "A finding of good cause depends on the diligence of the moving party." *Id.*, *citing Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003).

In *Senich*, the Court granted plaintiff's motion for leave to amend its complaint because its position changed due to a Supreme Court decision published after the original complaint was filed, constituting "good cause" to justify the amendment. Unlike *Senich*, in the instant action, there has been no change of law nor has there been any change of facts since the commencement of the action.

This Court's Scheduling Order of April 23, 2003, set June 15, 2003, as the deadline for amending the pleadings. Defendants have failed to amend their pleadings without any reason until now, about one and a half years after the commencement of this action, more than a year after the deadline set in the Scheduling Order, and, most importantly, at the end of the discovery period[1]. Defendants had knowledge of Yadlowsky at least a year prior to their motion for leave to amend, but did nothing. Plaintiff would be unduly prejudiced if the Court were to allow Defendants to pursue discovery on the newly pled inequitable conduct claim beyond the discovery closing date.

---

[1] The Court has ordered that all discovery shall be completed by August 15, 2004. The parties have filed a joint motion to extend the discovery period to October 15, 2004.

Since there is no "good cause" to justify Defendants' amendment of the pleadings, such amendment is not permitted by law. *See, Senich v. American-Republican, Inc., supra.*

### D.    Defendants' Proposed Inequitable Conduct Claim Should Also Be Denied In View of the EPO's Ruling

The sole support provided by Defendants for their inequitable conduct claim is the EPO's search report identifying the Yadlowsky application. Setting aside the merits of Yadlowsky, the mere fact that a reference was considered in the foreign prosecution *per se* is not evidence of the materiality of that reference under United States patent law. *See, ATD Corp. v. Lydall Inc.* 159 F.3d 534, 48 U.S.P.Q.2d 1321, 1330 (Fed. Cir. 1998) ("Although international search reports may contain information material to patentability if they contain closer prior art than that which was before the United States examiner, it is the reference itself, not the information generated in prosecuting foreign counterparts, that is material to prosecution in the United States. The details of foreign prosecution are not an additional category of material information."); *see also Asari v. Zilges*, 1987 WL 123927 8 U.S.P.Q.2d 1117, 1123 (Bd.Pat.App & Interf., 1987) ("We are not convinced that the nondisclosure of a reference which was cited against a related foreign application is necessarily sufficient, per se, to make out a showing of materiality."). As discussed above, the outcome of the EPO prosecution of the '997 counterpart patent negates Defendants' assertion that Yadlowsky is a material reference because the European counterpart of the '997 patent was issued by the EPO and ultimately upheld by the EPO Opposition Division over this reference.

Having admitted their error, Defendants nevertheless insist that the EPO's ruling on Yadlowsky is inapplicable here because it is directed to tea bags, while the

12

claims of the '997 patent are directed to tea bag papers. Ironically, Defendants did not bother to make this fine distinction in their June 17, 2004 Reply brief when they erroneously argued that the EPO's ruling operated in their favor, demonstrating that Defendants themselves do not truly believe that the distinction they now make is material. The EPO clearly stated the reasons why Yadlowsky failed as a material reference with respect to the '997 counterpart patent. That is because Yadlowsky fails to teach the impregnation of a hydrophobic treating system throughout the entire surface area of the infusion packages. If that is true with respect to tea bags, it must also be true with respect to the tea bag paper, since the paper is the same, whether it is in the form of tea bag paper or of tea bags. Therefore, the purported distinction drawn by Defendants between tea bags and tea bag papers is disingenuous and irrelevant with respect to the teachings of Yadlowsky.

In connection with their discussion of Yadlowsky, Defendants cryptically mention that the claims of the European '997 counterpart patent were invalidated by the EPO over the Kelly Patent". (Amended Reply, at 7). However, the "Kelly patent" is irrelevant to Defendants' proposed inequitable conduct claim, since the "Kelly patent" was fully discussed and considered by the USPTO prior to issuance of the '997 patent.

Defendants also mistakenly believe that Plaintiff is asking this Court to address the merits of their proposed inequitable conduct claim (Amended Reply, at 5-8), ignoring the pleading requirements set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962), where the futility of an amendment is a ground for denying the motion to amend. *See also Mar. Admin v. Cont'l. Nat'l Bank*, 889 F.2d 1248, 1254 (2nd Cir. 1989)(citing *Foman*, 371 U.S. 178). "While futility is a valid reason for denying a

13

motion to amend ... this is true only where it is beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *See, Senich v. American-Republican, Inc., supra*, at 41, citing *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999). After more than a year of discovery, which has provided Defendants more than an adequate opportunity to explore this issue, Defendants still could not find a shred of evidence to support their proposed amendment adding an inequitable conduct claim based on Yadlowsky other than the EPO search report and the ruling of the EPO opposition proceeding. But the '997 counterpart patent issued over Yadlowsky in the EPO as did the EPO Opposition Division, which further undermines Defendants' assertion of inequitable conduct.

It should be noted that the standard for establishing an inequitable conduct claim based on a non-disclosed prior art reference is that the alleged reference must be *material*, coupled with the patentee's *intent to deceive* the USPTO. The standard is not merely "potentially relevant" as Defendants now propose (Amended Reply, at 2). *Regents of the Univ. of Cal. V. Eli Lilly & Co.*, 119 F.3d 1559, 1570 (Fed. Cir. 1997); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995). Defendants have not alleged any facts in support their proposed inequitable conduct claim under the correct legal standard, let alone proof of such facts. Thus, Defendants' proposed claim must fail. *See Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd. Cir. 1991) (holding that where a party is unable to allege any facts sufficient to support its claim, complaint should be dismissed with prejudice).

14

### E.    Defendants' Amended Reply Is Untimely

Under D. Conn. L. Civ. R. 7(d), Defendants had 10 days to reply after Plaintiff's opposition to their motion for leave to amend their pleadings was filed on June 3, 2004. Due consideration given to weekend days, Defendants' reply was due on June 17, 2004. However, the proposed Amended Reply was not filed until July 1, 2004. No request for an extension of time to file the reply was made or granted. Thus, Defendants' Amended Reply is untimely and the Court should not allow it.

### III.    CONCLUSION

For the foregoing reasons and the reasons set forth in Plaintiff's Memorandum in Opposition to Defendants' Motion for Leave to Amend Answer and Counterclaims, this Court should deny in all respects Defendants' Motion for Permission to File an Amended Reply and Motion for Leave to Amend Answer and Counterclaims.

Respectfully submitted,

Date:   July 22, 2004                COHEN, PONTANI, LIEBERMAN & PAVANE

By _____
Sidney R. Bresnick, Esq. (ct 16295)
Yunling Ren, Esq. (ct 21078)
551 Fifth Avenue
New York, NY 10176
Tel. 212-687-2770
Fax 212-972-5487
-and-
McCarter & English, LLP
Basam E. Nabulsi, Esq. (ct 20897)
Alexandra Stevens, Esq. (ct 20300)
Four Stamford Plaza
107 Elm Street, 9th Floor
Stamford, CT 06902
Tel. 203-965-0601
Fax 203-323-6513

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Permission to Withdraw Reply and to File Amended Reply has been sent by first class mail, postage prepaid, this 22nd day of July, 2004 to:

> Dina S. Fisher, Esq.
> Robinson & Cole LLP
> 280 Trumbull Street
> Hartford, CT 06103-3597
>       -and-
> Marc J. Farrell, Esq.
> Buchanan Ingersoll PC
> One South Market Square
> 213 Market Street, 3rd Floor
> Harrisburg, PA 17101-2121