IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AHLSTROM WINDSOR LOCKS LLC, | : | |
| Plaintiff | : | CASE NO. 3:03-CV-0169-AVC |
| v. | : | |
| SCHOELLER & HOESCH, NA, INC., | : | |
| and | : | October 8, 2004 |
| P. H. GLATFELTER COMPANY | : | |
| Defendants | : | |

MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON THE BASIS OF PATENT INVALIDITY UNDER 35 U.S.C. §§ 102 AND 103

HART1-1210726-1

## Table of Contents

Table of Citations ........................................................................... iv

I.   INTRODUCTION ..................................................................... 1

II.  OVERVIEW OF UNDISPUTED FACTS ........................................... 2

    A.   Parties ........................................................................... 2

    B.   The Prosecution of the '997 Application Before the USPTO ................ 3

    C.   The European Counterpart to the '997 Application ........................ 3

    D.   Crompton's Opposition to the European Counterpart ..................... 4

    E.   The Invalidating Prior Art ..................................................... 6

III. LEGAL STANDARDS .................................................................. 6

    A.   Summary Judgment Standard ................................................ 6

    B.   Standards Applicable to the Novelty Requirement - 35 U.S.C. § 102 ........ 7

        1.   General Standard ........................................................ 7

        2.   Anticipation by Inherency ............................................... 9

        3.   Summary Judgment is Appropriate to Establish Invalidity ............ 9
            Via Anticipation

    C.   Standards Applicable to the Non-Obviousness Requirement - 35 U.S.C. § 103 . . 10

        1.   General Standard ....................................................... 10

        2.   Summary Judgment is Appropriate to Establish Invalidity ........... 10
            Via Obviousness

IV.  ARGUMENT ......................................................................... 11

    A.   All of the Claims of the Patent-in-Suit are Anticipated by the Kelley Patent ... 13

        1.   The Kelley Patent Anticipates Claim 1 of the Patent-in-Suit .......... 16

        a.        The Kelley Patent Expressly Discloses the *Preamble* .......... 16
and the *First Element* of Claim 1 of the Patent-in-Suit

        b.        The Kelley Patent Expressly Discloses the *Second Element* .... 17
of Claim 1 of the Patent-in-Suit

        c.        The Kelley Patent Expressly Discloses the *Third Element* ......18
of Claim 1 of the Patent-in-Suit

        d.        The Kelley Patent Inherently Discloses the *Properties* ........ 21
of Claim 1 of the Patent-in-Suit

    2.    The Kelley Patent Anticipates Claims 2-9 of the Patent-in-Suit ....... 24

    3.    The Kelley Patent Anticipates Claims 10-16 of the Patent-in-Suit ..... 25

B.    Claims 1, 2, 5, 8-11 and 14-16 of the Patent-in-Suit ...................... 26
are Anticipated by the Yadlowsky Application

    1.    The Yadlowsky Application Anticipates Claim 1 of the Patent-in-Suit ..30

        a.        The Yadlowsky Application Expressly Discloses the ......... 30
*Preamble* and the *First Element* of Claim 1 of the
Patent-in-Suit

        b.        The Yadlowsky Application Expressly Discloses the ......... 30
*Second Element* of Claim 1 of the Patent-in-Suit

        c.        The Yadlowsky Application Expressly Discloses the ......... 31
*Third Element* of Claim 1 of the Patent-in-Suit

        d.        The Yadlowsky Application Inherently Discloses the ......... 34
*Properties* of Claim 1 of the Patent-in-Suit

    2.    The Yadlowsky Application Anticipates Claims 2, .................. 38
5, 8-11 and 14-16 of the Patent-in-Suit

C.    Claims 1, 2, 5, 8-11 and 14-16 of the Patent-in-Suit ...................... 38
are Anticipated by the Noiset Patent

    1.    The Noiset Patent Anticipates Claim 1 of the Patent-in-Suit .......... 42

|   |   |   |   |
|---|---|---|---|
|   |   | a. | The Noiset Patent Expressly Discloses the *Preamble* .......... 42 and the *First Element* of Claim 1 of the Patent-in-Suit |
|   |   | b. | The Noiset Patent Expressly Discloses the *Second Element* .... 42 of Claim 1 of the Patent-in-Suit |
|   |   | c. | The Noiset Patent Expressly Discloses the *Third Element* ...... 44 of Claim 1 of the Patent-in-Suit |
|   |   | d. | The Noiset Patent Either Expressly or Inherently Discloses .... 45 the *Properties* of Claim 1 of the Patent-in-Suit |
|   | 2. |   | The Noiset Patent Anticipates Claims 2, 5, 8-11 and ................. 48 14-16 of the Patent-in-Suit |
|   |   |   |   |
| D. |   |   | To the Extent Not Anticipated Under 35 U.S.C. § 102, the Claims .......... 49 of the Patent-in-Suit are Obvious 35 U.S.C. § 103 in View of the Kelley Patent, the Yadlowsky Application and/or the Noiset Patent |
| V. | CONCLUSION ............................................................. 49 |

## Table of Citations

Statutes/Rules

Federal Rule of Civil Procedure 56(c) .................................................. 6, 7

35 U.S.C. § 102 .......................................... 1, 7, 8, 10, 11, 12, 13, 24, 25, 26, 37, 38, 48, 49

35 U.S.C. § 103 .................................................................... 1, 10, 12, 49

35 U.S.C. § 112 ............................................................................. 19

35 U.S.C. § 154 ............................................................................. 13

35 U.S.C. § 253 .............................................................................. 9

35 U.S.C. § 282 .............................................................................. 9

35 U.S.C. § 285 ............................................................................. 50

35 U.S.C. § 288 .............................................................................. 9

Case Law

*Aerotec Industries of Cal. v. Pacific Scientific Co.*, 381 F.2d 795 (9th Cir. 1967) ........... 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................... 6, 7

*Applera Corp. v. MJ Research, Inc.*, 311 F.Supp.2d 263 (D. Conn. 2004) ................. 7

*Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342 (Fed. Cir. 1999) ........ 8, 9, 35, 36, 37, 44, 47

*Beckson Marine v. NFM Inc.*, 292 F.3d 718 (Fed. Cir. 2002) ............................. 10

*Celeritas Technologies, Ltd. v. Rockwell International Corp.*, ........................... 44
    150 F.3d 1354 (Fed. Cir. 1998), *cert. denied*, 119 S.Ct. 874 (1999).

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................ 7

*Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570 (Fed. Cir. 1994) ............................... 7

*Ecolochem, Inc. v. Southern California Edison Co.*, 863 F.Supp. 1165 (C.D. Cal. 1994), . . . . . 18
   *aff'd in part, rev'd in part*, 91 F.3d 169 (Fed. Cir. 1996) (unpublished),
   *aff'd in part, rev'd in part after remand*, 227 F.3d 1361 (Fed. Cir. 2000),
   *cert. denied*, 121 S.Ct. 1607 (2001)

*Eisele v. St. Amour*, 423 F.2d 135 (6th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ex parte Markush*, 1925 C.D. 126, 340 O.G. 839 (Comm'r Pat. 1924) . . . . . . . . . . . . . . . . . . 18

*Glaxo Group Ltd. v. Apotex, Inc.*, 268 F.Supp.2d 1013 (N.D. Ill. 2003) . . . . . . . . . . . . . . . . . 10

*Honeywell Int'l, Inc. v. Universal Avionics Systems Corp.*, 288 F.Supp.2d 638 . . . . . . . . . . . . 10
   (D. Del. 2003)

*In re King*, 801 F.2d 1324 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Schreiber*, 128 F.3d 1473 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 772 (Fed. Cir. 1983), . . . . . . . . . . . . . . . . . . 48
   *overruled on other grounds, SRI Int'l v. Matsushita Elec. Corp. of Am.*,
   775 F.2d 1107, 1125 (Fed. Cir. 1985) (en banc).

*Key Pharmaceuticals v. Hercon Labs. Corp.*, 161 F.3d 709 (Fed. Cir. 1998) . . . . . . . . . . . . . 8, 9

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) . . . . . . . . . . . . . 7

*Miles Laboratories, Inc. v. Shandon Inc.*, 997 F.2d 870 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . 10

*Monaplastics, Inc. v. Caldor, Inc.*, 264 F.Supp. 57 (D. Conn. 1966), *aff'd*, . . . . . . . . . . . . . . . . 9
   378 F.2d 20 (2d Cir. 1967)

*Monroe Auto Equipment Co. v. Superior Industries, Inc.*, 332 F.2d 473 (9th Cir.), . . . . . . . . . . 9
   *cert. denied*, 379 U.S. 901, 85 S.Ct. 190, 13 L.Ed.2d 175 (1964)

*Pitney Bowes, Inc. v. Sudbury Systems, Inc.*, 128 F.Supp.2d 75 (D. Conn. 2000) . . . . . . . . . . . 8

*Schering Corp. v. Geneva Pharmaceuticals, Inc.*, 339 F.3d 1373 (Fed. Cir. 2003) . . . . . . . . . . 8

*Shelcore, Inc. v. Durham Industries, Inc.*, 745 F.2d 621 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . 12

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349 (Fed. Cir. 2000) . . . . . . . . 10

*Singer Mfg. Co. v. June Mfg.*, 163 U.S. 169 (1896) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316 (Fed. Cir. 2001) .............. 9

*Titanium Metals Corp. of America v. Banner*, ...................... 7, 26, 35, 37, 44, 48, 49
    778 F.2d 775 (Fed. Cir. 1985)

*Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, No. 03-1472, -1473, ................... 12
    2004 WL 1543286 (Fed. Cir. July 12, 2004)

*Xerox Corp. v. 3Com Corp.*, 71 USPQ2d 1462 (W.D.N.Y. 2004) ................ 8, 9, 10, 13

Miscellaneous

THE DICTIONARY OF PAPER (3d ed. 1965) ........................................ 33

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **AHLSTROM WINDSOR LOCKS LLC,** : | |
| : | |
| **Plaintiff** : | CASE NO. 3:03-CV-0169-AVC |
| : | |
| v. : | |
| : | |
| **SCHOELLER & HOESCH, NA, INC.,** : | |
| : | |
| and : | October 8, 2004 |
| : | |
| **P. H. GLATFELTER COMPANY** : | |
| : | |
| **Defendants** : | |

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON THE BASIS OF PATENT INVALIDITY UNDER 35 U.S.C. §§ 102 AND 103**

**I.   INTRODUCTION**

Defendants, Schoeller & Hoesch, NA, Inc. ("S&H NA") and P. H. Glatfelter Company ("Glatfelter," and collectively with S&H NA, "Defendants"), submit this memorandum of law in support of Defendants' Motion for Summary Judgment on the Basis of Patent Invalidity Under 35 U.S.C. §§ 102 and 103 ("102/103 Invalidity Summary Judgment Motion")[1]. The undisputed facts of record reveal that the invention reflected in the patent in suit is not novel and/or is obvious in light of three prior art references. As a result, Defendants are entitled to judgment as a matter of law on their counterclaim seeking a declaratory judgment that all of the claims of Plaintiff's patent are invalid, and judgment as a matter of law on their Third Affirmative Defense to Count I (patent infringement) of Plaintiff's Complaint. Defendants are further entitled to judgment as a matter of law as to Count II (breach of contract), to the extent the parties' 1999 Agreement prohibits Defendants from making, having made, using or selling in the U.S. "fibrous web materials for making infusion packages for brewing beverages as covered by one or more claims of the [patent in suit]."

---

[1]   Defendants reserve the right to seek summary judgment on grounds other than those which form the basis of the instant motion.
HART1-1210726-1

## II. OVERVIEW OF UNDISPUTED FACTS[2]

### A. PARTIES.

Plaintiff, Ahlstrom Windsor Locks LLC ("Ahlstrom" or "Plaintiff"), the successor in interest of the Non-Woven Division of The Dexter Corporation ("Dexter"), is engaged in the business of manufacturing and marketing fibrous web materials for making infusion packages (such as tea bags) for brewing beverages. Plaintiff's Complaint, ("Complaint"), ¶ 1. Ahlstrom alleges that it is the sole owner of U.S. Patent No. 5,431,997 ("the '997 Patent" or "Patent-in-Suit", see Tab A[3]), by way of its acquisition of the assets of Dexter on June 20, 2000 and a confirmatory assignment executed on August 31, 2000. Complaint, ¶ 6. The '997 Patent, entitled "Process of Producing Porous Web Materials Used for Making Infusion Packages for Brewing Beverages and the Web Materials Thus Produced," was issued on July 11, 1995 in the names of inventors Peter C. Scott, Helen Viazmensky and Nicholas Wolcheck, Jr. See Tab A, Patent-in-Suit. It resulted from an application that was filed on July 1, 1993 ("the '997 Application", see Tab B-1[4]) and given U.S. App. Serial No. 08/086,673.

Defendant Glatfelter, through its subsidiaries, is engaged in the business of manufacturing and marketing, *inter alia*, a variety of fibrous web materials for making infusion packages (including tea bags) for brewing beverages. Answer of Defendants, Schoeller & Hoesch, NA, Inc. and P. H. Glatfelter Company, to Plaintiff's Complaint ("Answer"), ¶ 3. The products Plaintiff alleges infringe the '997 Patent are manufactured in Gernsbach, Germany, by non-party Papierfabrik Schoeller & Hoesch GmbH & Co. KG ("S&H Germany"), a subsidiary (through a series of other subsidiaries) of Glatfelter. Deposition of Stanley L. Schreffler, December 5, 2003 ("Schreffler Dep.", see Tab C), at 9:1 through 14:19. Defendant S&H NA, a wholly owned subsidiary of Glatfelter, is the North American sales and marketing arm for products manufactured by S&H Germany. *Id.*

---

[2] Defendants are filing concurrently herewith a more comprehensive Local Rule 56(a)(1) Statement of Material Facts as to Which There Is No Genuine Issue to be Tried.

[3] As used herein, "Tab _" refers to the lettered tabs of the separate Appendix of Exhibits which Defendants have filed concurrently herewith in support of the instant motion. This notation is employed throughout.

[4] A complete copy of the prosecution history or "file wrapper" of the Patent-in-Suit is submitted herewith at Tab B ("File Wrapper"), and select individual items within the prosecution history are indicated with numerical tabs and identified as Tab B-1, Tab B-2, etc.

**B.     THE PROSECUTION OF THE '997 APPLICATION BEFORE THE USPTO.**

Following the filing of the '997 Application on July 1, 1993, Dexter filed an Information Disclosure Statement with the United States Patent and Trademark Office ("USPTO") on September 28, 1993 (the "IDS", *see* Tab B-2). In the IDS, Dexter disclosed patents of which it was aware that it believed "may be material to the examination of the ['997 Application] and in respect of which there may be a duty to disclose in accordance with 37 CFR 1.56." *See* Tab B-2, IDS.[5] As the prosecution history shows, other than what it cited in the IDS, Dexter brought no other prior art to the attention of the USPTO during the prosecution of the '997 Application, nor was any other prior art considered by the USPTO in its examination of the '997 Application. *See* Tab B, File Wrapper. On February 8, 1995, the USPTO issued a Notice of Allowability along with a Notice of Allowance and Issue Fee Due (the "Notice of Allowance", *see* Tab B-5). Dexter paid the issue fee on April 11, 1995, and the '997 Patent issued thereafter on July 11, 1995. *See* Tab B-6.

**C.     THE EUROPEAN COUNTERPART TO THE '997 APPLICATION.**

On May 23, 1994, while the '997 Application was still pending before the USPTO, Dexter filed a counterpart application with the European Patent Office ("EPO") claiming priority to the '997 Application, which counterpart application was given Application No. 94303680.6 and later published as EP 0 632 163 A1 (the "European Counterpart Application", *see* Tab F). On September 23, 1994, *five days before* Dexter filed its IDS in the United States with the USPTO in connection with the '997 Application and *four-and-a-half months before* the USPTO issued the Notice of Allowability, a European Search Report (the "European Search Report", *see* Tab G) was issued by the EPO in connection with its examination of Dexter's European Counterpart Application.

---

[5]  Those patents were U.S. Patent Nos.: 2,852,795 to Hermanson et al.; 3,174,889 to Anderson et al.; 3,183,096 to Hiscock; 3,373,043 to Rubenstein; 3,386,834 to Noiset et al. ("Noiset" or the "Noiset Patent", *see* Tab D); 3,468,696 to Conway; 3,616,166 to Kelley ("Kelley" or the "Kelley Patent", *see* Tab E); 3,881,987 to Benz; 4,289,580 to Elston et al.; 4,902,370 to Dust et al.; and 5,015,513 to Newbold et al. *See* Tab B-2, IDS.

The European Search Report identified two prior art documents which the EPO determined to be relevant to the patentability of Dexter's European Counterpart Application: (1) the Noiset Patent (U.S. Pat. No. 3,386,834); and (2) European Patent Application 85305042.5, filed July 15, 1985 and published February 5, 1986 under Publication No. 0 170 461 A1 in the name of Slawko Yadlowsky and assigned to General Foods Corporation ("Yadlowsky" or the "Yadlowsky Application", see Tab H). The EPO assigned the Yadlowsky Application the letter designation "X", to indicate it as being a "particularly relevant" prior art document standing alone - the highest level of relevance available to the EPO in its categorization system, as shown on the face of the European Search Report. See Tab G, European Search Report. Despite the duty to disclose imposed on all U.S. patent applicants, Dexter never brought the Yadlowsky Application to the attention of the USPTO in connection with the prosecution of the '997 Application, nor was the Yadlowsky Application ever considered by the USPTO in its examination of the '997 Application. See Tab B, File Wrapper.

After several rejections based on the Yadlowsky Application, the EPO eventually granted Dexter's European Counterpart Application, which issued as European Patent No. 0 632 163 B1 on August 29, 2001 (the "European Counterpart Patent", see Tab I). Dexter's European Counterpart Patent issued with 21 claims, including one independent product claim (Claim 1) and 11 claims dependent thereon (Claims 2-11 and 20), along with one independent process claim (Claim 12) and eight claims dependent thereon (Claims 13-19 and 21)[6]. See Tab I, European Counterpart Patent.

The claims of the European Counterpart Patent at the time of its issuance were substantially similar in scope to the claims of the Patent-in-Suit, as shown by the side-by-side comparison of those claims found at Tab T of the Appendix of Exhibits.

### D. CROMPTON'S OPPOSITION TO THE EUROPEAN COUNTERPART.

Following its issuance, an opposition proceeding was instituted against the European Counterpart Patent by J.R. Crompton Limited ("Crompton") on May 29, 2002 (the "Crompton

---

[6] Patent claims are either independent or dependent. An independent claim stands alone. A dependent claim always refers back to, and incorporates the limitations of, an independent claim.

Opposition", *see* Tab J). Crompton is one of the three largest manufacturers of tea bag paper worldwide -- Ahlstrom and Defendants being the others. Deposition of Michele M. Totonis, November 10, 2003 ("Totonis Dep.", *see* Tab W), at 149:12-13. In the opposition proceeding, Crompton sought to have the claims of Ahlstrom's European Counterpart Patent declared invalid.

On June 1, 2004, the Opposition Division of the EPO issued its decision in the Crompton Opposition (the "EPO Opposition Decision", *see* Tab K), in which it declared **all 21 of the claims that were originally granted in the European Counterpart Patent unpatentable due to a lack of novelty vis-à-vis the Kelley Patent**. *See* Tab K, EPO Opposition Decision, pp. 6, 18-20 and 32-33 (of 39). The EPO's Opposition Division also deemed two auxiliary sets of claims submitted by Ahlstrom during the course of the Crompton Opposition as being unpatentable in view of the Kelley Patent, each set directed generally to a "porous fibrous web material of the non-heat seal type suited for making infusion packages," before the EPO ultimately allowed a third set of auxiliary claims directed to a "mechanically sealed infusion package" (not to a "porous fibrous web material"). *Id.* at 6, 7, 20-22 and 34-37 (of 39). The EPO Opposition Decision thereby allowed Ahstrom's European Counterpart Patent to stand, but in a substantially revised form with claims of an entirely different scope (directed essentially to tea ***bags***) replacing the originally-issued claims (which had been directed essentially to teabag ***paper***). *Id.* at 3, 7, 12-13, 22-24 and 38-39 (of 39).

Unlike the revised, post-Crompton-Opposition version of Plaintiff's European Counterpart Patent, the Patent-in-Suit does not contain any claims directed to a "mechanically sealed infusion package" or processes for producing same. Instead, the Patent-in-Suit is limited exclusively to claims substantially similar in scope to the claims struck down by the EPO as being unpatentable in view of the Kelley Patent, namely, claims directed to a "*fibrous web* suited for making infusion packages for brewing beverages" and a "process for producing *porous web materials* for making infusion packages." *See* Tab A, Patent-in-Suit, 7:23 to 8:60[7] (emphasis added); *see also* Tab T.

---

[7] As used herein, the citation "7:23 to 8:60" refers to the portion of the '997 Patent beginning at column 7, line 23 and extending to and including column 8, line 60. This notation is employed throughout this memorandum.

### E.     THE INVALIDATING PRIOR ART.

There are three primary prior art references pertinent to this motion: (1) the *Kelley Patent*, U.S. Pat. No. 3,616,166 (*see* Tab E); (2) the *Yadlowsky Application*, European Publication No. 0 170 461 A1 (*see* Tab H); and (3) the *Noiset Patent*, U.S. Pat. No. 3,386,834 (*see* Tab D). Generally stated, Kelley discloses a binder composition which comprises two components: (1) an aqueous dispersion of a polymer of ethyl acrylate having a low molecular weight ("Component 1"); and (2) an aqueous dispersion of an emulsion polymer having a minimum film-forming temperature ("MFT") of about 50° C or higher ("Component 2"). *See* Tab E, Kelley, 1:36-45. The Yadlowsky Application discloses generally treating an infusion bag with a fluoro-chemical compound in order to prevent the fibers that make up the bag from absorbing flavor oils and aromas given off by the food product (such as tea leaves) enclosed within the bag - the goal being to enable extraction of the oils/aromas primarily, if not entirely, into the liquid during the brewing process (and not partially into the fibers of the bag and partially into the liquid), thereby yielding a higher-quality beverage having a more full-bodied taste. *See* Tab H, Yadlowsky, 1:7-16. The Noiset Patent is directed generally to the treatment of an infusion package (such as a tea bag) with a water-repellent material in order to avoid seam breakage, while at the same time avoiding any decrease in the tea bag's infusion properties. *See* Tab D, Noiset, 1:1-72.

### III.    LEGAL STANDARDS

### A.     SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law," and an issue as to a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of presenting evidence

sufficient to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the party opposing summary judgment may not simply rely on the pleadings or mere denials of the allegations; rather, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotations omitted). The non-moving party may not rely upon their assertions, conclusory allegations, or mere suspicions, and must show more than the existence of a "metaphysical doubt" regarding the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence adduced by the non-movant "is merely colorable or is not significantly probative, summary judgment" is proper. *Anderson v. Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).

Summary judgment is as appropriate in patent cases as in other cases when the requirements of FRCP 56 have been met. *Applera Corp. v. MJ Research, Inc.*, 311 F.Supp.2d 263, 268 (D. Conn. 2004), *citing Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575 (Fed. Cir. 1994).

### B.   STANDARDS APPLICABLE TO THE NOVELTY REQUIREMENT - 35 U.S.C. § 102.

#### 1.   General Standard.

"The patent law imposes certain fundamental conditions for patentability, paramount among them being the condition that what is sought to be patented, as determined by the claims, be new." *Titanium Metals Corp. of America v. Banner*, 778 F.2d 775, 780 (Fed. Cir. 1985). Invalidity determinations of a patent claim for anticipation under 35 U.S.C. § 102 are made in light of patents and printed publications -- "prior art" -- which contain a written description of the claimed invention and which were published more than one year before the filing date of the application which led to the patent whose novelty is in question. Section 102 of Title 35 United States Code provides that a person may not obtain a patent if, *inter alia*:

> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

35 U.S.C. § 102(a), (b).

Pursuant to Section 102, claims of a patent may be determined to be invalid if the invention or inventions set forth in the claims are anticipated by prior art. A patent claim whose limitations have been expressly or inherently disclosed previously in a single prior art patent or publication is not novel, and is invalid pursuant to 35 U.S.C. § 102 because it is "anticipated" by that prior art reference. *Pitney Bowes, Inc. v. Sudbury Systems, Inc.*, 128 F.Supp.2d 75, 78 (D. Conn. 2000) ("A single piece of relevant prior art that contains all the elements of a claimed product, either expressly or inherently, is said to anticipate the claimed product."); *see also Xerox Corp. v. 3Com Corp.*, 71 USPQ2d 1462, 1464 (W.D.N.Y. 2004) (finding two different prior art references each anticipated claims of the patent in suit, thus rendering it invalid), *quoting Schering Corp. v. Geneva Pharmaceuticals, Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). Anticipation of a patent claim occurs when "the claim at issue 'reads on' a prior art reference." *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999). That is, such a prior art reference "must disclose every limitation of the claimed invention, either explicitly or inherently." *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997).

In determining whether or not a patent claim is anticipated (or obvious, see Section C, *infra*) in light of prior art, the court must first construe the claims of the patent at issue, and then compare the construed claims to the prior art. *Xerox*, 71 USPQ2d at 1464, *citing Key Pharmaceuticals v. Hercon Labs. Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998). Each claim of a patent must be compared separately with the identified prior art reference and examined for novelty, as each claim stands or falls on its own. A finding of invalidity as to one claim does not necessarily invalidate the entire