| **WEB DISCLOSED IN PRIOR ART NOISET PATENT**<br><br>*(Noiset issued on June 4, 1968)* | **INVENTION CLAIMED IN '997 PATENT-IN-SUIT**<br><br>*(Patent-in-Suit was filed in 1993, and issued in 1995)* |
|---|---|
| (unless otherwise noted, all column and line references to Tab D, Noiset, emphasis added throughout) | (emphasis added throughout) |
| Noiset Patent (1968):<br><br>"The present invention relates generally to **porous web-like materials** and more specifically is concerned with infusion-type filter papers finding primary use in **infusion packages for brewing beverages,** such as tea, coffee and the like." (1:18-22) | Claim 1 of Patent-in-Suit (1993):<br><br>1. A **fibrous web** suited for making **infusion packages for brewing beverages** |
| Noiset Patent (1968):<br><br>"The webs may be ... of the nonheat-seal variety that require **mechanical fastening** for the formation of the tea bag." (2:46-47)<br><br>"[An] object of the present invention is to provide a generally air and water permeable, infusion-type paper suitable for use in tea bags and the like which facilitates not only the free passage of condensable and noncondensible gases through portions thereof albeit the material is in contact with liquid, but also improves the rate of infusion of the liquid through the paper **while minimizing the possible delamination of the seals provided therein.**" (1:56-65) | Claim 1 of Patent-in-Suit (1993) - continued:<br><br>and exhibiting **improved resistance to the failure of a mechanical seam** therein |
| Noiset Patent (1968):<br><br>"**webs** generally made of **fibrous** materials which ... possess a high degree of **porosity**" (2:19-21)<br><br>"the results given in Table 1 being for tea bags **in which the entire surface area was treated.**" The four samples disclosed in Table 1 of Noiset were treated throughout their entire surface area with a dispersion containing silicone percentages in the amount of **1.0%, 5.0%, 10.0% and 15.0%,** respectively. (4:29-40)<br><br>Additionally, when asked: **Does the Noiset Patent** "discloses examples where the entire surface area of the tea bag is treated?", Peter Scott, one of Plaintiff's named inventors on the Patent-in-Suit, responded: **"Yes, it does."** *See* Ex. S, Scott Dep., Vol. 1, at 210:6-14 (emphasis added). | Claim 1 of Patent-in-Suit (1993) - continued:<br><br>said **web** comprising, a **porous fibrous** sheet material **impregnated throughout its extent with about one percent or more by weight** |

| | |
|---|---|
| Noiset Patent (1968):<br><br>The infuser webs are treated with a "suitable **water repellent** material." (2:69-70)<br><br>"Those materials found most suited for this type of application are the thermosetting resins. More particularly, those thermosetting materials generally categorized as **silicones** have been used with good success" (3:10-14)<br><br>"After treating the infuser web with the silicone, which immediately permeates through the entire thickness of the paper in the treated areas, the paper is then subjected to a thermal or heat **cure** in order to set the **silicone**" (7:42-45) | Claim 1 of Patent-in-Suit (1993) - continued:<br><br>of a **hydrophobic** treating system comprising a **cured hydrophobic** agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, **silicones**, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials, |
| According to the '997 Patent, a web made in accordance with the invention claimed therein would possess the recited physical property of no appreciable water climb. As shown above, a web of identical construction could be made according to the teachings of the Noiset Patent. Such an identical web would necessarily exhibit the same physical water climb property as the claimed web of the '997 Patent. Such property is therefore **inherently disclosed** in the Noiset Patent.<br><br>Noiset Patent (1968):<br><br>Moreover, the Noiset Patent itself does contain various teachings to substantiate this inherency, including for example, disclosure that the silicones, after application to the web and curing, are "insoluble in aqueous solutions and **unaffected by boiling water**" (2:70-71)<br><br>Furthermore, when asked: **"Would paper made according to the Noiset Patent have any water climb?"**, Peter Scott, one of Plaintiff's named inventors on the Patent-in-Suit, responded: **"I don't believe so."** Mr. Scott further testified that if the entire surface of the web was covered, it would be **inherent** that the web would have **no water climb**. *See* Ex. S, Scott Dep., Vol. 1, at 210:15-22 (emphasis added). | Claim 1 of Patent-in-Suit (1993) - continued:<br><br>the impregnated sheet material exhibiting no appreciable water climb when measured using water at a temperature of about 100 degrees C |

| | |
|---|---|
| Noiset Patent (1968): <br><br> The Noiset Patent discloses that the treatment of the fibrous web with a water-repelling silicone compound to achieve the various stated goals pursuant to its invention must be accomplished "**without impairing the over-all strength, porosity** or continuity of the infusion material." (1:66-69) <br><br> "The water repellent [silicone] materials must provide not only a resistance to wetting or aqueous absorption in the treated areas but also **must provide this property without adversely affecting the air permeability of the infuser** throughout the treated areas. Additionally, the water repellent [silicone] materials utilized according to the invention should exhibit an affinity for being absorbed into the fibers of the web **while at the same time substantially retaining the porosity of the web**." (2:71 to 3:9). <br><br> In Table 1 of Noiset, the entire surface area of the Sample 1 tea bag was treated a dispersion containing one percent silicone, and **only a slight decrease (1.60%) in porosity** was observed. (4:30-37) | Claim 1 of Patent-in-Suit (1993) - continued: <br><br> and no substantial loss of infusion characteristics |
| According to the '997 Patent a mechanically-sealed infusion package constructed from a web made in accordance with the invention claimed therein would possess the recited physical property of less than 10 percent failure in the mechanical seam upon exposure to boiling water. As shown above, a web of identical construction could be made according to the teachings of the Noiset Patent. Such an identical web, when fashioned into a mechanically-sealed infusion package, would necessarily exhibit the same physical seam failure property as the claimed web of the '997 Patent. Such property is therefore **inherently disclosed** in the Noiset Patent. <br><br> Noiset Patent (1968): <br><br> Moreover, the Noiset Patent itself does contain various teachings to substantiate this inherency, including for example, the fact that one its principal goals is "minimizing the possible delamination of the seals provided" in infusion packages made from webs treated with water-repellent silicones. (1:63-65) | Claim 1 of Patent-in-Suit (1993) - continued: <br><br> while providing less than 10 percent failure in the mechanical seam upon exposure to boiling water. |

1.     **The Noiset Patent Anticipates Claim 1 of the Patent-in-Suit.**

As shown in the table above, and as explained in more detail below, each of the components of Claim 1 of the '997 Patent are expressly or inherently disclosed in the Noiset Patent.

        a.     **The Noiset Patent Expressly Discloses the *Preamble* and the *First Element* of Claim 1.**

The Noiset Patent "relates generally to porous web-like materials and more specifically is concerned with infusion-type filter papers finding primary use in infusion packages for brewing beverages, such as tea, coffee and the like." *See* Tab D, Noiset, 1:18-22. It states that the webs of Noiset's invention may be "of the nonheat-seal variety that require mechanical fastening for the formation of the tea bag." *Id.* at 2:46-47. The Noiset Patent further states as one of its goals "minimizing the possible delamination of the seals provided" in tea bags. *Id.* at 1:63-65.

Therefore, there is no genuine issue of material fact that the components of the claimed web recited in the Preamble and the First Element of Claim 1 of the Patent-in-Suit -- i.e., "a fibrous web suited for making infusion packages for brewing beverages and exhibiting improved resistance to the failure of a mechanical seam therein, said web comprising a porous fibrous sheet material" -- are expressly disclosed in the Noiset Patent.

        b.     **The Noiset Patent Expressly Discloses the *Second Element* of Claim 1 of the Patent-in-Suit.**

While the *claims* of the Noiset Patent are limited to treatment of a web so that "substantially less than one-half the total area of the paper" is impregnated, the *disclosure* of the Noiset Patent is not so limited. Specifically, Table 1 in column 4 of the Noiset Patent displays porosity measurements for four different sample webs, all of which were treated with one percent or more silicone and all of which consisted of "tea bags *in which the entire surface area was treated.*" *See* Tab D, Noiset, 4:29-31. Thus, the Noiset Patent clearly and unequivocally discloses webs that are impregnated throughout their extent, a fact which not even Peter Scott, one of Plaintiff's named inventors on the Patent-in-Suit, could deny:

Q:  Can you look at line 30 and onward in the Noiset patent, column 4. **Am I right that this patent discloses examples where the entire surface area of the tea bag is treated?** See on line 31.

A:  **Yes, it does.**

Q:  So Table 1 **discloses results when the entire surface area was treated** with a organopolysiloxane, right?

A:  **Yes.**

    *   *   *

Q:  I know that you had said, or at least I believe you said, correct me if I'm wrong, that the embodiment of the Noiset patent was primarily to cover discrete areas of the tea bag surface with hydrophobic or water repellent materials, **but you would agree that the idea of covering the entire surface area is also referenced in the patent; correct?**

A:  **It is referenced in the patent, yes.**

Q:  And it's disclosed in some way in the patent; correct?

A:  There is a reference to it, yes.

Deposition of Peter C. Scott, January 29, 2004 ("Scott Dep., Vol. 1", *see* Tab S), at 210:6-14; 213:12-23 (emphasis added).

  The fact that the claims of the Noiset Patent and additional statements in the specification tend to teach away from complete impregnation[14] does nothing to change the fact that webs having complete impregnation are indeed *expressly disclosed*. It was the Noiset Patent's focus on treating only discrete areas of the web that Plaintiff relied upon heavily during prosecution of the '997 Application in order to overcome the USPTO's initial rejection based on Noiset. Plaintiff argued that "the **teaching** of Noiset [is] . . . that the hydrophobic material should not be used as an impregnant throughout the entire extent of the porous fibrous sheets." *See* Tab B-4, Response, p. 8 (emphasis added). But regardless of what the Noiset Patent teaches or does not teach, what both the USPTO and Plaintiff failed to address was what Noiset *discloses* (i.e., "reveals"). Specifically,

---

[14] *See, e.g.*, the following statement in Noiset: "Above 40.0 percent [coverage of the surface area of the web with the hydrophobic silicones], the porosity of the web tends to decrease....", *see* Tab D, Noiset, 4:75 to 5:1.

-43-

neither the USPTO nor the Plaintiff made even the slightest mention of the four sample webs referred to in Table 1 of Noiset, which could not be clearer in what they reveal: fibrous webs completely impregnated throughout their extent with hydrophobic silicones ("tea bags in which the entire surface area was treated", *see* Tab D, Noiset, 4:29-31). "A reference is no less anticipatory if, after disclosing the invention, the reference then disparages it." *Celeritas Technologies, Ltd. v. Rockwell International Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998), *cert. denied*, 119 S.Ct. 874 (1999). "Thus the question whether a reference 'teaches away' from the invention is inapplicable to an anticipation analysis." *Id.*

Moreover, the Noiset Patent's failure to recognize the purported advantages of webs having complete impregnation does not negate its anticipatory impact on the subject matter recited in Claim 1 of the '997 Patent. *See, e.g., Atlas Powders*, 190 F.3d at 1349 ("an insufficient scientific understanding does not defeat a showing of inherency"). The key issue is whether impregnating a infusion bag material throughout its extent with a hydrophobic substance is new, "which is the essence of the anticipation issue." *Titanium Metals*, 778 F.2d at 780. As in *Titanium Metals*, the "critical question" is: Does the claim element in question "read on or encompass" a feature "which was already known by reason of the disclosure of the [prior art reference]?" *Id.* at 781. The answer in this instance is an unequivocal "yes" -- treatment of the entire web was already known as far back as 1968 by reason of its disclosure by Plaintiff's predecessor in the Noiset Patent at column 4, lines 29-40. *See* Tab D.

Therefore, there is no genuine issue of material fact that the features of the claimed web recited in the Second Element of Claim 1 of the Patent-in-Suit -- i.e., "impregnated throughout its extent with about one percent or more by weight" -- are expressly disclosed in the Noiset Patent.

      c.    **The Noiset Patent Expressly Discloses the *Third Element* of Claim 1 of the Patent-in-Suit.**

The cured hydrophobic agent from the *Markush* group of Claim 1 that is anticipated by the Noiset Patent is "silicones". The '997 Patent itself states that when silicones are chosen as the

hydrophobic treating agent, they "may be any of those materials mentioned in U.S. Pat. No. 3,386,834 [the Noiset Patent], the disclosure of which is incorporated herein by reference." *See* Tab A, Patent-in-Suit, 6:39-42. A more direct correlation between the disclosure of a prior art reference on the one hand, and an element of a later-issued patent claim on the other, is hard to imagine.

If that alone were not evidence enough, the '997 Patent goes on to define the term "hydrophobic" in essentially the same fashion as the Noiset Patent defines "water repellent":

| From the Noiset Patent: | From the '997 Patent: |
|---|---|
| "[A]s used herein the expressions 'water repellent' and 'water repellency' refer to the ability of the material to resist 'wetting'; that is, the passage of liquid water into the structural components of the paper through capillary action." | "As used herein the term 'hydrophobic' refers to the characteristic of the treating system that imparts to the web material a resistance to, or the ability to avoid, wetting with water." "[It] resists the passage of liquid water into the structural components of the paper through capillary action." |
| *See* Tab D, Noiset, 2:23-27. | *See* Tab A, Patent-in-Suit, 3:3-9. |

Therefore, there is no genuine issue of material fact that the components of the claimed web recited in the Third Element of Claim 1 of the Patent-in-Suit -- i.e., "a hydrophobic treating system comprising a cured hydrophobic agent selected from the group consisting of . . . silicones . . ." -- are expressly disclosed in the Noiset Patent.

### d. The Noiset Patent Either Expressly or Inherently Discloses the *Properties* of Claim 1 of the Patent-in-Suit.

Like the Kelley Patent and the Yadlowsky Application, the Noiset Patent does not specifically state whether the disclosed webs possess "no appreciable water climb", or whether mechanically sealed infusion packages made therefrom exhibit "less than 10 percent failure in the mechanical seam." Unlike Kelley and Yadlowsky, however, the Noiset Patent actually *does* expressly disclose the property of "no substantial loss of infusion characteristics."

The Noiset Patent states that the treatment of a fibrous web with a water-repelling silicone compound to achieve the various stated goals pursuant to its invention must be accomplished "without impairing the over-all strength, porosity or continuity of the infusion material." *See* Tab D, Noiset, 1:66-69. Further disclosure that the webs taught by the Noiset Patent exhibit "no substantial loss of infusion characteristics" even after treatment with a water-repellent material is found in the following passage in Noiset:

> The water repellent [silicone] materials must provide not only a resistance to wetting or aqueous absorption in the treated areas **but also must provide this property without adversely affecting the air permeability of the infuser** throughout the treated areas. Additionally, the **water repellent** [silicone] materials utilized according to the invention **should exhibit an affinity for being absorbed into the fibers of the web while at the same time substantially retaining the porosity of the web**.

*Id.* at 2:71 to 3:9 (emphasis added). This is literally identical to the manner in which Plaintiff, twenty-five years later, described the infusion characteristics of webs treated with its hydrophobic agents in the '997 Patent:

> [T]hese **water repellent** agents utilized according to the invention **should exhibit an affinity for being absorbed into the fibers of the web while at the same time substantially retaining the porosity of the web**.

*See* Tab A, Patent-in-Suit, 3:59-62 (emphasis added).

Beyond these non-quantifiable references to infusion characteristics, the Noiset Patent actually discloses expressly that its webs exhibit no substantial loss of infusion characteristics: see Table 1 of Noiset, wherein it is shown that the entire surface area of tea bag Sample 1 was treated with a dispersion containing one percent of a water-repellent silicone, and only a slight decrease (1.60%) in the bag's porosity is observed. *See* Tab D, Noiset, 4:30-37. This figure is of a magnitude similar to the decrease in infusion (2.98%) disclosed in the Patent-in-Suit. *See* Tab A, Patent-in-Suit, 6:26-31.[15] As such, there is no genuine issue of material fact that the Property recited in Claim 1 of

---

[15] The Patent-in-Suit reports that an untreated web (Sample B in Table 1, column 6 of the Patent-in-Suit) exhibited a first color infusion time of 6.7 seconds, versus a treated web (Sample F) which showed a first color infusion time that differed by only 0.2 seconds (0.2 divided by 6.7, multiplied by 100, equals a 2.98% difference in first color infusion time and thus, a 2.98% loss of "infusion characteristics").

the Patent-in-Suit calling for "no substantial loss of infusion characteristics" is expressly disclosed in the Noiset Patent.

With regard to the "water climb" Property, even Plaintiff's own inventor, Peter Scott, admitted in his recent deposition that the completely-impregnated webs disclosed in Table 1 of the Noiset Patent would exhibit no water climb:

> Q: Now, **would paper made according to the Noiset patent have any water climb**.
>
> A: **I don't believe so.**
>
> Q: It would be **inherent** in the chemical properties of the paper; correct?
>
> A: **If it's covering the entire surface, yes.**
>
> Q: It would have **no water climb**?
>
> A: **Yes.**

*See* Tab S, Scott Dep., Vol. 1, at 210:15-22 (emphasis added). In light of the foregoing, there is no genuine issue of material fact that the Property recited in Claim 1 of the Patent-in-Suit calling for "no appreciable water climb" is inherently disclosed in the Noiset Patent.

The final Property, calling for "less than 10 percent seam failure" is likewise inherent in Noiset. It is only logical that the completely-impregnated webs of Noiset would necessarily exhibit seam failure rates of the same magnitude as an identical web constructed according to Claim 1 of the Patent-in-Suit, particularly given (a) Noiset's express disclosure of a web having a construction identical to one embodiment of the web claimed in the '997 Patent, (b) Noiset's express disclosure that completely-impregnated webs display no substantial loss of infusion characteristics, and (c) Inventor Scott's admission that such webs would have no water climb. Thus, the Property limitation calling for "less than 10 percent seam failure" is inherent in Noiset.

As with Yadlowsky, the fact that Noiset does not set forth any specific seam failure test results (in terms of percentages of seams that failed according to the specific seam failure test set forth in the '997 Patent) does not negate their inherency. *See Atlas Powder*, 190 F.3d at 1347, *citing*

-47-

*Titanium Metals*, 778 F.2d at 780, 782. Clearly one of the principal goals of Noiset is "minimizing the possible delamination of the seals provided" in infusion packages made from webs treated with Noiset's water-repellent silicones. *See* Tab D, Noiset, 5:63-65. The test results set forth in Table 3 of the Noiset Patent (measuring the time it took for seams to come apart in untreated webs versus webs treated with a water-repellent silicone material) further substantiate the inherent recognition of the desirability of lower seam failure rates. *Id.* at 5:5-35.

In summary, there can be no denying that, despite its suggestion to treat only a portion of the web, Noiset discloses a web having a construction (complete coverage of the surface area of a porous fibrous web material with a hydrophobic silicone compound) identical to one embodiment of the web according to Claim 1 of the Patent-in-Suit. As the foregoing demonstrates, a web constructed according to what is disclosed in Noiset would "read on" (and thus, infringe) Claim 1 of the Patent-in-Suit. Therefore, upholding the validity of Claim 1 would prevent the public from practicing the Noiset Patent, which necessitates a finding that Claim 1 of the Patent-in-Suit is invalid due to its lack of novelty. *See Titanium Metals*, 778 F.2d at 781.

> The law of anticipation does not require that the reference 'teach' what the subject matter of the patent[-in-suit] teaches.... [I]t is only necessary that the claims under attack, as construed by the court, 'read on' something disclosed in the [prior art] reference.

*Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 772 (Fed. Cir. 1983), *overruled on other grounds*, *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1125 (Fed. Cir. 1985) (*en banc*).

For these reasons, Claim 1 of the Patent-in-Suit is anticipated by Noiset, and must be declared invalid pursuant to 35 U.S.C. § 102.

### 2. The Noiset Patent Anticipates Claims 2, 5, 8-11 and 14-16 of the Patent-in-Suit.[16]

As with the analyses of the anticipatory effect of Kelley and Yadlowsky on the claims of the

---

[16] As with the Yadlowsky Application, the prior art Noiset Patent discloses agents from the *Markush* group recited in Claim 1 of the Patent-in-Suit other than high molecular weight cross-linked acrylic polymers, and thus will not be discussed vis-à-vis those claims of the Patent-in-Suit which specifically require the selection of a high molecular weight cross-linked acrylic polymer as the hydrophobic agent from the *Markush* group.

-48-

Patent-in-Suit other than Claim 1, it would needlessly lengthen this memorandum to present a similar comparison here of the prior art Noiset Patent and each of the remaining claims of the Patent-in-Suit which Noiset invalidates (namely, claims 2, 5, 8-11 and 14-16). Such comparisons are included in the accompanying Statement of Facts (¶¶ 142-150), which clearly show that those claims are not novel in view of Noiset, and thus are invalid pursuant to 35 U.S.C. § 102.

### D. TO THE EXTENT NOT ANTICIPATED UNDER 35 U.S.C. § 102, THE CLAIMS OF THE PATENT-IN-SUIT ARE OBVIOUS UNDER 35 U.S.C. § 103 IN VIEW OF THE KELLEY PATENT, THE YADLOWSKY APPLICATION, AND/OR THE NOISET PATENT.

To the extent any differences are found between any of the claims of the '997 Patent and either of Kelley, Yadlowsky and/or Noiset, such differences would be so small or insignificant as to render them obvious as a matter of law. *See, e.g., Titanium Metals*, wherein the Federal Circuit stated:

> Little more need be said in support of the examiner's rejection of claim 3, affirmed by the board, on the ground that its more specific subject matter would have been obvious at the time the invention was made from the knowledge disclosed in the [prior art] reference. . . . [T]he Russian article discloses two alloys having compositions very close to that of claim 3, which is 0.3% Mo and 0.8% Ni, balance titanium. The two alloys in the prior art have 0.25% MO--0.75% Ni and 0.31% Mo--0.94% Ni, respectively. **The proportions are so close that prima facie one skilled in the art would have expected them to have the same properties.** Appellee produced no evidence to rebut that prima facie case. The specific alloy of claim 3 must therefore be considered to have been obvious from known alloys.

*Titanium Metals*, 778 F.2d at 782-3 (emphasis added).

### V. CONCLUSION

Defendants request that: (1) their Motion for Summary Judgment on the Basis of Patent Invalidity Under 35 U.S.C. §§ 102 and 103 be granted in its entirety; (2) each and every claim of U.S. Patent No. 5,431,997 be declared invalid as anticipated by, and/or obvious in view of U.S. Patent No. 3,616,166 (the "Kelley Patent"), European Publication No. 0 170 461 A1 (the "Yadlowsky Application"), and/or U.S. Patent No. 3,386,834 (the "Noiset Patent"); (3) Count I of Plaintiff's Complaint be dismissed with prejudice, and judgment entered in favor of Defendants and

against Plaintiff thereon; (4) Count II of Plaintiff's Complaint be dismissed with prejudice, and judgment entered in favor of Defendants and against Plaintiff thereon, to the extent the parties' 1999 Agreement prohibits Defendants from making, having made, using or selling in the U.S. "fibrous web materials for making infusion packages for brewing beverages as covered by one or more claims of the [patent in suit]"; and (5) Defendants be awarded their costs of suit in this matter, including reasonable attorney's fees pursuant to 35 U.S.C. § 285.

Defendants, Schoeller & Hoesch, NA, Inc.
and P. H. Glatfelter Company

By _____
Dina S. Fisher (ct 14896)
dfisher@rc.com
Brett J. Boskiewicz (ct 25632)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299

Marc J. Farrell (ct 24539)
farrellmj@bipc.com
BUCHANAN INGERSOLL, P.C.
One South Market Square
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121
Tel. No.: (717) 237-4820
Fax No.: (717) 233-0852

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was mailed via first class mail, postage prepaid, on this the 8th day of October, 2004, to the following counsel of record:

Sidney R. Bresnick, Esq.
Yunling Ren, Esq.
Cohen, Pontani, Lieberman & Pavane
551 Fifth Avenue
New York, NY 10176

Basam E. Nabulsi, Esq.
Alexandra Stevens, Esq.
McCarter & English LLP
Four Stamford Plaza
107 Elm Street, 9th Floor
Stamford, CT 06902

Eric E. Grondahl, Esq.
Alexandra Stevens, Esq.
McCarter & English LLP
City Place I
185 Asylum Street, 36th Floor
Hartford, CT 06103-3495

_____
Brett Boskiewicz