UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SCHOELLER & HOESCH, N.A., INC. and )<br>P.H. GLATFELTER COMPANY, )<br>)<br>Defendants. ) | CIVIL ACTION NO. 3:03-CV-0169 (AVC) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR IN CAMERA REVIEW OF WITHHELD DOCUMENTS**

Plaintiff, Ahlstrom Windsor Locks LLC ("Plaintiff"), submits this Memorandum of Law in opposition to defendants, Schoeller & Hoesch, N.A., Inc. and P.H. Glatfelter Company (collectively "Defendants") Motion for In Camera Review of Withheld Documents on the grounds that Defendants' motion is entirely unsupported by the law.

**I.    Preliminary Statement**

Defendants have moved the Court to conduct an *in camera* review of documents that have been withheld from production by Plaintiff on the grounds of privilege. The documents in question together with a privilege log identifying them and the grounds on which they were withheld were sent to the Court on October 13, 2004, pursuant to the Court's instructions.

The documents for which *in camera* review has been requested come from the files of the law firm of Alix, Yale & Ristas, the attorneys that prepared and prosecuted the patent application that issued as U. S. patent No. 5,431,997 ("the '997 Patent") in suit. Defendants claim to need these documents, *whether or not they are privileged*, to "determine whether any . . .

speak to Plaintiff's intent" in not citing the Yadlowsky Reference[1] ("Yadlowsky") to the PTO during the prosecution of the '997 Patent. (Defendants' brief at 1). Defendants argue that they "are entitled to discovery as to Plaintiff's knowledge of, and intent in withholding, material prior art during prosecution of the '997 patent." (Defendants' brief at 2). The object of Defendants' request, therefore, is plain: to seek discovery of Plaintiff's privileged documents which, *they hope*, would enable them to prove inequitable conduct in the prosecution of the '997 Patent.

In making this request for an *in camera* review and production of privileged documents, Defendants have overlooked or misinterpreted two very important principles in the law:

1)  The distinction between "inequitable conduct" in the U. S. Patent and Trademark Office ("PTO"), which is *not* sufficient to pierce the attorney-client privilege, and the crime-fraud exception to the attorney-client privilege, which is sufficient; and

2)  The standard under which a request for an *in camera* review of privileged documents is appropriate.

On neither of these two principles have the Defendants established the appropriate basis for an *in camera* review of Plaintiff's privileged documents or for their production.

## II. The Requested Documents Are Protected By The Attorney-Client Privilege

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege protects a client's confidential communications to an attorney in order to obtain effective legal counseling. *Id.* (stating "[t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends

---

[1] Yadlowsky European published application No. 0 170 461.

upon the lawyer's being fully informed by the client); *see also In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) [hereinafter *Spalding Sports*].

Patent prosecution and communications between the attorney and client in furtherance of prosecuting a patent are "within the scope of subject matter that is subject to the attorney-client privilege." *In re the Regents of the University of California*, 102 F.3d 1386, 1391 (Fed.Cir. 1996); *see also Spalding Sports*, 203 F.3d at 805 (holding that an invention record constitutes a privileged communication); *Sanofi-Synthelabo v. Apotex Inc.*, 299 F. Supp.2d 303, 307 (S.D.N.Y. 2004) (stating that communications relating to the prosecution of a patent is considered to be seeking legal advice and therefore within the scope of the privilege); *Astra Aktiebolag v. Andrx Pharmaceuticals Inc.*, 208 F.R.D. 92, 104-105 (S.D.N.Y. 2002).

## III. Defendants Have Failed To Make A *Prima Facie* Showing Of The Crime Fraud Exception To The Attorney-Client Privilege

The attorney-client privilege can be pierced by the crime-fraud exception whereby the party challenging the privilege must make a *prima facie* showing that the communication was made in furtherance of a crime or fraud. "To invoke the crime-fraud exception, a party challenging the attorney-client privilege must make a *prima facie* showing that the communication was made in furtherance of a crime or fraud." *Spalding Sports*, 203 F.3d at 807; *In re John Doe, Inc.*, 13 F.3d 633, 636 (2nd Cir. 1994). A "party seeking to invoke the crime-fraud exception must at least demonstrate that there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof." *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995). Therefore, "the crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud." *Id.* "Instead, the exception applies only when the court

*determines* that the client communication ... in question was itself in furtherance of the crime or fraud." *Id.* (emphasis added).

The courts engage in a two-step process to determine whether the moving party has demonstrated a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime. *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997). "First, the proposed factual bases must strike a prudent person as constituting a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *Id.* (citation and quotation omitted). If the moving party can make a showing of a factual basis, the court exercises its discretion in deciding whether to engage in an *in camera* review. *Id.* "Second, if and when there has been an *in camera* review, the district court exercises its discretion again to determine whether the facts are such that the exception applies." *Id.* The party seeking to vitiate the attorney-client privilege bears the burden of showing a *prima facie* case of fraud. *Glaxo, Inc. v. Novopharm Ltd.*, 148 F.R.D. 535, 542 (E.D.N.C. 1993); *Mui v. Union of Needletrades, Industrial and Textile Employees, AFL-CIO*, 1998 WL 915901 at *2 (S.D.N.Y.).

The Defendants have failed to make any showing that would satisfy the requirements of the crime-fraud exception. Accordingly, the attorney-client privilege must be maintained.

## IV. Inequitable Conduct As Alleged By Defendants Does Not Rise To The Level Of Crime-Fraud As An Exception To The Attorney-Client privilege

The Defendants have not argued that the crime-fraud exception applies herein in attempting to pierce the attorney-client privilege. Instead, they argue, incorrectly, that Plaintiff's alleged *inequitable conduct* is sufficient to obtain both an *in camera* review and discovery of the withheld documents. Defendants thus ignore the distinction between common law or "*Walker*

4

*Process*"[2] fraud and inequitable conduct. These two types of misconduct are distinct. *Spalding Sports*, 203 F.3d at 807 (citing *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1069 (Fed.Cir. 1998)). In *Nobelpharma AB*, the Court of Appeals for the Federal Circuit explained that, "[i]nequitable conduct in fact is a lesser offense than common law fraud, and includes types of conduct less serious than knowing and willful fraud." *Nobelpharma AB*, 141 F.3d at 1069 (citing to cases which "explicitly distinguished inequitable conduct from 'fraud' "). "A finding of *Walker Process* fraud requires higher threshold showings of both intent and materiality than does a finding of inequitable conduct." *Spalding Sports*, 203 F.3d at 807 (quoting *Nobelpharma AB*, 141 F.3d at 1070-71).

The "mere failure to cite a reference to the PTO will not suffice" to establish *Walker Process* fraud. *Spalding Sports*, 203 F.3d at 807 (quoting *Nobelpharma AB*, 141 F.3d at 1071). Consequently, Defendants entire argument is completely eviscerated as it is based on a finding of inequitable conduct, not *Walker Process* fraud (or even common law fraud).[3] "Moreover, unlike a finding of inequitable conduct, a finding of *Walker Process* fraud may not be based upon an equitable balancing of lesser degrees of materiality and intent." *Spalding Sports*, 203 F.3d at 807 (quoting *Nobelpharma AB*, 141 F.3d at 1071).

The Defendants focus most of the rest of their argument on the alleged relevancy of Yadlowsky. However, the Defendants' argument is incorrect and misplaced, for the relevance of the communication is not the proper inquiry nor are they allowed to engage in a "groundless fishing expedition", *United States v. Zolin*, 491 U.S. 554, 571 (1989), in a search for evidence. *In re Richard Roe, Inc.*, 68 F.3d at 40-41. ("Because a simple finding of relevance does not demonstrate a criminal or fraudulent purpose, it does not trigger the [crime-fraud] exception.").

---

[2] *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965).
[3] Notably, none of Defendants' cited cases stand for the proposition that the attorney-client privilege can be abrogated on the basis of an omission to the PTO.

Whether or not the prosecution documents are relevant is not the issue, because the applicability of the attorney-client privilege protects relevant communications from discovery. *Zolin*, 491 U.S. at 562 (recognizing that the privilege has the effect of withholding relevant information); *In re Shargel*, 742 F.2d 61, 62 (2d Cir. 1984) ("the privilege prevents disclosure of relevant evidence"). The courts have decided that the sound rationale for the privilege outweighs the principles of discovering relevant communications. *Zolin*, 491 U.S. at 562; see also *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 188 F.R.D. 189, 200 (S.D.N.Y. 1999) ("The privilege cannot be overridden because a tribunal determines that the need for disclosure in a particular case outweighs the need for confidentiality."). This district court has recognized that although certain documents may be relevant, they are protected from discovery by the attorney-client privilege. *General Electric Capital Corp. v. DirecTV, Inc.*, 184 F.R.D. 32, 36 (D.Conn. 1998). The Defendants do not cite nor is Plaintiff aware of any support for the proposition that simply because a communication may be relevant this is sufficient to vitiate the attorney-client privilege.

In order for the Defendants to carry their burden of showing *Walker Process* fraud they must show the following factors: "(1) a representation of a material fact; (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation." *Spalding Sports*, 203 F.3d at 807 (quoting *Nobelpharma AB*, 141 F.3d at 1069-70). Defendants have not nor could they carry their burden of showing *Walker Process* fraud.

For an omission such as a failure to cite prior art to support a finding of *Walker Process* fraud, there must be evidence of *fraudulent intent* in withholding the reference. *Spalding Sports*, 203 F.3d at 808 (stating that the parties failure to provide any evidence of fraudulent intent led to the conclusion that the crime-fraud exception did not apply). A finding of common law fraud "must be based on independent and clear evidence of deceptive intent together with a clear showing of reliance." *Spalding Sports*, 203 F.3d at 807 (quoting *Nobelpharma AB*, 141 F.3d at 1071). There is a "strong emphasis on [the client's] intent, [as] the crime fraud exception applies only when there is probable cause to believe that the communications with counsel were intended in some way to facilitate or to conceal the criminal [or fraudulent] activity." *Jacobs*, 117 F.3d at 88. "When examining intent to deceive, a court must weigh all the evidence, including evidence of good faith." *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed.Cir. 2001). Furthermore, intent to deceive cannot be inferred "solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed.Cir. 1996). Defendants fail to allege any facts or circumstances that would allow this court to infer intent to deceive. Consequently, Defendants have failed to establish the requisite element of intent.

V. **A Factual Basis Adequate To Support *In Camera* Review Has Not Been Shown By Defendants**

In *United States v. Zolin*, the Supreme Court expressed its concern with allowing *in camera* review as a matter of course. *Zolin*, 491 U.S. at 571 ("A blanket rule allowing in camera review as a tool for determining the applicability of the crime-fraud exception ... would place the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk"). The Supreme Court also noted the due process implications of routine use of *in camera* proceedings and the burdens *in camera* review places upon the district courts. *Id.*

"Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person, that *in camera* review of the materials may reveal evidence to establish that the crime-fraud exception applies." *Id.* at 572. If the moving party can make this necessary showing, then the court decides whether to engage in *in camera* review. *Id.* The decision to employ *in camera* review should be made in light of the facts and circumstances of the case, including, among other things, the volume of materials to be reviewed, the relative importance of the privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply. *Id.*

"Only non-privileged material may be used to make the threshold determination that triggers *in camera* review." *In re John Doe, Inc.*, 13 F.3d at 636. "An *in camera* submission deprives one party to a proceeding of a full opportunity to be heard on an issue, and its use is justified only by a compelling interest." *Id.*

"[I]n camera review is generally disfavored and a court should not conduct such a review solely because a party begs it to do so." *Newport Pacific Inc. v. County of San Diego*, 200 F.R.D. 628, 633 (S.D.Cal. 2001). District Courts have not hesitated to decline to conduct an *in camera* review. See, *e.g.*, *Newport Pacific*, 200 F.R.D. at 633-35; *Payless Shoesource, Inc. v. 174-176 Canal Street, L.P.*, 1996 WL 185712 at *1 (S.D.N.Y.).

This Court should not indulge the Defendants' fishing expedition by engaging in an *in camera* review. The Defendants' argument is entirely based on a finding of inequitable conduct or the alleged relevancy of Yadlowsky. However, in order to abrogate the attorney-

8

client privilege a showing of *fraud* is necessary. The Defendants have shown no legal basis or authority which would permit an *in camera* review in this case.

## VI.     Conclusion

For the foregoing reasons, Plaintiffs respectfully request this Court to deny the Defendants' motion in all respects. Defendants have not met their burden of establishing the *prima facie* showing of fraud necessary to pierce the attorney-client privilege. Furthermore, the necessity of an *in camera* review of the documents has not been shown as there is no factual basis adequate to support a good faith belief by a reasonable person that the review may reveal evidence to establish that the crime-fraud exception applies.

Respectfully submitted,

October 29, 2004

Cohen, Pontani, Lieberman & Pavane

By /s/ Sidney R. Bresnick
Sidney R. Bresnick, Esq. (ct 16295)
Yunling Ren, Esq.
David P. Badanes, Esq.
551 Fifth Avenue
New York, NY 10176
Tel. 212-687-2770
Fax 212-972-5487
         -and-
McCarter & English, LLP
Basam E. Nabulsi, Esq. (ct 20897)
Four Stamford Plaza
107 Elm Street, 9th Floor
Stamford, CT 06902
Tel. 203-965-0601
Fax 203-323-6513

Attorneys for Plaintiff,

## CERTIFICATE OF SERVICE

    This is to certify that a copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for In Camera Review of Withheld Documents has been sent by first class mail, postage prepaid, this 29th day of October, 2004 to:

> Dina S. Fisher, Esq.
> Robinson & Cole LLP
> 280 Trumbull Street
> Hartford, CT 06103-3597
>     -and-
> Marc J. Farrell, Esq.
> Buchanan Ingersoll PC
> One South Market Square, 3rd Floor
> Harrisburg, PA 17101-2121

_____
Sidney R. Bresnick