IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC, | : |
| Plaintiff | : CASE NO. 3:03-CV-0169-AVC |
| v. | : |
| SCHOELLER & HOESCH, NA, INC., | : |
| and | : |
| P. H. GLATFELTER COMPANY, | : |
| Defendants | : NOVEMBER 30, 2004 |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE
TO TAKE DEPOSITION OF DEFENDANT GLATFELTER
THROUGH ITS SUBSIDIARY SCHOELLER & HOESCH**

Defendants, Schoeller & Hoesch N.A., Inc. and P.H. Glatfelter Company (collectively "Defendants"), hereby object to the motion filed by Plaintiff, Ahlstrom Windsor Locks LLC ("Plaintiff") on November 9, 2004, seeking to take repeated despositions of Schoeller & Hoesch personnel at its Gernsbach, Germany plant ("S&H Germany"). Despite abundant rhetoric from the Plaintiff regarding recently-produced documents, Plaintiff's Motion for Leave to Take Deposition of Defendant Glatfelter ("Plaintiff's Motion") offers no sound basis for revisiting topics it has already covered in over eight days of deposition of S&H personnel.

I.  **PLAINTIFF HAS FAILED TO PARTICULARIZE THE INFORMATION SOUGHT, BUT INSTEAD RELIES ON GENERAL ASSERTIONS THAT ARE NOT BASED IN FACT.**

Plaintiff's Motion, at its core, is empty rhetoric containing no specific justification for the burden and expense of repeated depositions. Asserting that "[a] deposition is needed to explain the results shown on the recently produced documents and to fully understand the basis for the

**ORAL ARGUMENT REQUESTED**

tests and the test results," Plaintiff fails to express the precise nature of the information that it claims it now seeks, and fails to acknowledge that it had the opportunity to inquire to the same topics while in Gernsbach for four days of deposition in January 2004. Plaintiff states:

> Most of the newly produced documents require explanation and testimony from the personnel at S&H's Main Lab. They are not self-explanatory. For example, even after translations of the German language documents have been obtained, testimony as to the test methodology and results must be determined by taking the depositions of the responsible persons at the Main Lab where the tests were conducted.

<u>Plaintiff's Motion</u>, p. 5. [1]

However, Plaintiff fails to identify any <u>specific</u> documents that it claims need clarification. Plaintiff has not provided a list of the *specific* test results that it believes are not self-explanatory (and why if feels they are not self-explanatory). It would be instructive if Plaintiff were to identify the precise types of questions Plaintiff would contemplate posing to a deponent if the Court were to grant its Motion. The Plaintiff has offered no such specific basis for its motion, and has not identified any list of the *specific* testing methodologies that in Plaintiff's view are not self-evident from the documents themselves (again, explaining for each such instance precisely what remains to be answered).

Defendants respectfully submit that in its reply to this opposition memorandum, Plaintiff should offer such a listing identifying each of the documents that contain unclear test results

---

[1] It is important to note that Plaintiff has not been deprived of the opportunity to speak to personnel of Defendants in Germany having knowledge of test results and methodologies. While there is no dispute that Messrs. Grauer and Slawik do not work in the "Main Lab" at S&H Germany, they nevertheless were both able to testify during the course of a combined eight days of testimony as to the meaning of various test results as well as explain in detail a number of the testing methodologies employed by S&H Germany, including the most relevant tests having to do with water climb and bag bursting (a.k.a., "seam failure"). See, by way of example only, <u>Deposition of Gerhard Slawik</u>, February 18, 2004, at pp. 20-26 (attached hereto as Exhibit 1) (testifying as to the numerical values obtained for water climb, wettability and bag burst, and the testing methods used to measure such values); <u>Deposition of Guenter Grauer</u>, January 16, 2004, at pp. 145-152 (attached hereto as Exhibit 2) (testifying as to how the quality control test related to bag bursting was performed at S&H Germany). Numerous other instances of similar testimony could be specifically identified, but have not been. Without such substantiation, Plaintiff's motion lacks all merit.

and/or methodologies not just by Bates Number, but should also including an identification of the *exact* result and/or methodology within each such document with enough specificity so that it is clear to all concerned – including the Court as well as Defendants – precisely which ones Plaintiff is referring to. Such a listing for each document in question should identify the following information:

1. Bates No. of Defendants' Document in Question
2. Test Result(s) Within Above Document That Require(s) Deposition Testimony
3. Why Such Testimony is Required? (I.e., what additional information would Plaintiff be looking to obtain as to this particular result?)
4. Test Methodology(ies) Within Above Document That Require(s) Deposition Testimony.
5. Why? (I.e., what additional information would Plaintiff be looking to obtain as to this particular methodology?)

Certainly Plaintiff should have provided this type of information to justify a request that in effect would result in at least six (6) attorneys (three for each side) having to fly 4,000 miles to Germany, spend one or more days there in depositions, and then fly 4,000 miles back to the United States.[2] It may be that Plaintiff can articulate questions that are narrow and specific, such that they could just as easily be answered via a much less costly, much more focused means (perhaps, for example, by way of interrogatories). As it stands at this point, however, the Court has nothing to go on other than generalized statements from Plaintiff claiming that it does have what it supposedly needs to make its case. Until such time as Plaintiff is able to make this specific type of showing, the unsubstantiated (and often erroneous) statements made in its

---

[2] Plaintiff has requested that the deposition take place "in Gernsbach, Germany or a suitable location nearby." Plaintiff's Motion, p. 1. As the parties know full well from past experience, conducting depositions in Germany would be prohibitively expensive. Plaintiff conducted the depositions of four S&H Germany employees in mid-January 2004 in Baden-Baden, Germany. The travel expenses alone for Defendants' counsel exceeded $10,000. To subject Defendants again to what would likely be a similar level of expenses, in what has already been an exceedingly costly case, is yet one more reason why Plaintiff's motion should be denied.

motion simply do not provide a sufficient basis to justify the burden and extraordinary measures sought.

Moreover, Defendants have already spent inordinate amounts of time identifying for Plaintiff, document by document, items that had already been produced to Plaintiff but which Plaintiff nevertheless insisted had not been produced. Defendants should not have to continue to go through that exercise simply on Plaintiff's unsupported assertions along the lines of "Defendants haven't given us any [fill in the category of documents]." This is an abuse of the discovery process, and has already cost Defendants substantial sums in attorney time as well as many hours of Defendants' employees' time devoted to pointing out for Plaintiff its oversights.

Defendants strongly urge the Court to prevent the Plaintiff from unfairly burdening the Defendants with unnecessary and duplicative expenses and discovery efforts. If the Court were to sit down with counsel for the parties at the courthouse in Hartford with the entirety of the documents produced by Defendants and go through each of Plaintiff's allegations one-by-one, the Court would see the unnecessary and duplicative nature of Plaintiff's request for additional depositions in Germany. It would be nearly impossible and certainly tedious for the Court for Defendants to list here in detail the myriad documents which Defendants have produced that Plaintiff asserts in its Motion have never been previously produced. Defendants submit that only through a direct review with the Court can a full appreciation be obtained of exactly what has been produced, and the reasons for Defendants' position that the allegations made in Plaintiff's Motion are entirely without merit and the relief sought wholly unnecessary and inappropriate.

II.  **THE DOCUMENTS RECENTLY PRODUCED BY DEFENDANTS WERE NOT IN FACT IMPROPERLY WITHHELD.**

Although Plaintiff's Motion ostensibly seeks leave to conduct a deposition, much of Plaintiff's Motion focuses on the documents recently produced by Defendants. Plaintiff utilizes an accusatory tone throughout its Motion in an attempt to mislead the Court into believing that

Defendants are somehow guilty of improper discovery practices (with repeated statements such as "[Defendants] admitted that they had withheld some pre-1999 quality control documents"; "Defendants should have produced all of the relevant documents in the first place"; etc.). The fact is, however, that Defendants' position regarding pre-9/24/99 documents has always been clear – and in fact was the subject of a prior, now abandoned, agreement. Since at least as early as July 22, 2003, Defendants have made their position regarding pre-9/24/99 discovery quite clear. *See* Letter from Marc Farrell to Myron Cohen dated July 22, 2003, attached hereto as Exhibit 3 (relevant portions having been highlighted for the Court's convenience).

More importantly, as Plaintiff's Motion fails to point out, <u>there was an agreement</u> between counsel as to these documents, according to which it was understood that Defendants were not going to produce pre-9/24/99 documents. Contrary to the accusations in Plaintiff's motion, which it uses to justify a return trip to Gernsbach, Germany, Defendants have never made any secret of the fact that there were additional documents in existence which fell within the scope of Plaintiff's overly-broad requests, but which Defendants were not turning over for one legitimate reason or another (including, most significantly, the agreement among counsel which limited the categories of pre-9/24/99 documents to which Plaintiff was entitled – an agreement to which Plaintiff has since attempted to give a severely distorted interpretation, going directly against the plain language of the agreement itself as well as the circumstances which led to it being entered into in the first place).

In sum, contrary to Plaintiff's claims of discovery abuse, the Defendants have been forthcoming and accommodating in the conduct of discovery. Such claims of "withholding documents" is nothing more than a red herring.

### III. THE DOCUMENTS RECENTLY PRODUCED ARE NOT OF A NATURE WHICH IS ANY DIFFERENT FROM NUMEROUS OTHER DOCUMENTS PREVIOUSLY PRODUCED BY DEFENDANTS.

In its Motion, Plaintiff makes the following statement that is entirely false:

> Newly produced documents (Exh. E, pages D1274-1276) reveal, **for the first time**, the extent of the competitive testing that was performed at the Main Lab on Dexter paper, S&H paper, including the grades covered by the 1999 Settlement Agreement between the parties (212/LEUT and 012/RL-T), and paper produced for Unilever (Lipton) and Teekanne (Redco Foods). These documents refer to such relevant test parameters as water climb according to the Dexter method ('997 patent) the amount of acronal (binder) and alphenate (surfactant), diffusion, [sp] These documents also refer to the Dexter patent (in suit) (D 1286). **They are, in short, the type of documents that Plaintiff has been seeking to obtain from Defendants throughout this discovery period, but have just now been able to obtain.**

Plaintiff's Motion, p. 3 (emphasis added). Those statements go to the very heart of Plaintiff's request, and yet they could not be further from the truth.

If Defendants have never before produced the type of information shown on pages D1274-1276, then how does Plaintiff explain Defendants' previous production of, for example, documents SH0228, SH0253, SH0319, SH0324, SH0353-0354, SH0364 and SH0425[3] on January 12, 2004 (copies of which are attached hereto as Exhibit 4)?[4] Even a cursory visual comparison quickly reveals that the nature of the content (and in some cases the actual content itself) included within the newly-produced documents is exactly the same as that of the documents produced ten months ago in Germany. Similarly, if Defendants have never until just recently

---

[3] Each of these documents was located in the 432-page notebook maintained by Defendants' primary technical specialist in the area of infusion paper, Mr. Grauer, which he kept over the course of a six-year period from 1997 until 2003. The Grauer Notebook was turned over in its entirety to Plaintiff just prior to the January 2004 depositions in Germany. In an effort to make newly-discovered information available to Plaintiff as soon as they became aware of it, counsel for Defendants did not even take the opportunity to review the Grauer Notebook before it was produced - further demonstrating that Plaintiff's portrayal of Defendants as discovery abusers is not at all deserved or accurate.

[4] Plaintiff failed to bring to the Court's attention the October 29, 2004 cover letter that accompanied Defendants' production of documents D1272-1298, in which Defendants make this precise point, i.e., that while Defendants were now producing additional documents, they had in fact previously produced documents of the exact same nature. That letter is attached hereto as Exhibit 5 for the Court's reference.

produced documents that refer to the Dexter patent, how then would Plaintiff characterize, by way of example only, Defendants documents D0074-D0077, produced 15 months ago in August 2003 (attached hereto as Exhibit 6)? These pages mention the Dexter Patent by name (*see* D00077), an Ahlstrom product by specific grade number ("12014", *see* D0076), and clearly show the results of water climb tests performed according to the method set forth in the Dexter Patent (*see* D0074-0076), as evidence by the notations indicating "water climb" (in German, "saughöhe"), conducted for 400 seconds in both hot (95°C) and cold (23°C) water, in the cross ("quer") and machine directions ("MD" or "längs"), the precise test parameters called for in the Dexter patent.

This is not the first time Plaintiff has accused Defendants of failing to produce documents when they in fact were already produced. An example is a letter written by Attorney Marc Farrell to Attorney Sidney Bresnick, dated January 8, 2004 (attached hereto as Exhibit 7), which was sent in response to various allegations by Plaintiff as to "no documents" having been produced in a variety of categories. As shown in the aforementioned letter, Defendants were able to point to a multitude of documents which had in fact been produced and which fell squarely within the categories of documents for which Plaintiff claimed none had been produced. (It should be noted that the accuracy of the January 8 letter was never contested by the Plaintiff.) Another example is on page 2, ¶¶ 4-7, and page 3, ¶¶ 1 of the aforementioned January 8, 2004 letter (Exhibit 7). As this demonstrates, Plaintiff has consistently failed to take the time to thoroughly review the documents produced by Defendants before complaining that documents have been withheld, a practice which is evidenced even in the instant Motion.[5] This should not result in Defendants' having to sustain even greater discovery expenses and burdens.

---

[5] For example, Plaintiff erroneously states: "[D]ocument D 1251 (Exh. C) is a comparison sheet including data on Dexter paper and the **two** paper grades subject to the Settlement agreement between Dexter and Defendants." Plaintiff's Motion, p. 5 (emphasis added). This is not correct. In fact, D 1251 refers to one of the so-called prohibited grades that was the subject of the 1999 Agreement, 212/LEUT. The other grade of Defendants referred to on that page, 012/RL, is not one of the two prohibited grades. There is no dispute that Defendants are and have always been fully permitted to sell Grade 012/RL.

## IV. FROM THE BEGINNING OF THIS CASE, PLAINTIFF HAS SOUGHT TO OVEREXTEND THE REACH OF RELEVANT DISCOVERY.

While Defendants do not wish to re-hash prior disagreements that have arisen between the parties during the course of this case over the permissible scope of discovery, several of them are important to note because they provide an important context for appreciating Plaintiff's Motion.

Virtually from the start of this lawsuit, Plaintiff has stretched the boundaries of discovery to seek information that has no possible relevance to the issues of the case. For example, early in the case, Plaintiff sought discovery from Defendants (notably, one of only two major competitors of Plaintiff in the worldwide tea bag paper market) to obtain documents having to do not just with non-heatsealable tea bag papers which are the subject of this lawsuit, *but also* heatsealable papers[6] -- an area of subject matter that would have easily more than doubled the volume of documents and work that has been required from Defendants. *See* E-Mail from Yunling Ren to Marc Farrell, dated August 7, 2003, attached hereto as Exhibit 8. It was only after substantial disagreement and discussion between the parties (*see, e.g.*, Letter from Marc Farrell to Yunling Ren dated October 8, 2003, p. 1, attached hereto as Exhibit 9) that Plaintiff eventually conceded and acknowledged the relevance only of non-heatsealable tea bag papers. The point here is that had Defendants not resisted and instead simply allowed Plaintiff to have its way, Defendants would have ended up turning over thousands upon thousands of pages of highly confidential documents -- documents which even Plaintiff now admits would have been totally irrelevant.

Even within the category of non-heatsealable tea bag papers, Plaintiff was adamant that it be provided with information relating not just to binder-containing non-heatsealable tea bag papers (despite an express limitation in the claims of the '997 Patent) but to all non-heatsealable

---

[6] This despite the fact that the claims of the '997 Patent include an explicit limitation requiring infusion packages which have a "mechanical seam", as well as express statements in the '997 Patent such as "[t]he webs are of the nonheat-seal variety and require mechanical fastening, i.e., folding and crimping, for the formation of the tea bag."

tea bag papers, including those that contained no binder – this again despite Defendants' repeated insistence that binder-free papers were not relevant to this case. *See* Exhibit 9, October 8, 2003 Letter, p. 2. Only after many hours of time and effort had been invested and several hundreds of pages of documents related to binder-free papers produced did Plaintiff eventually limit its focus to just binder-containing non-heatsealable tea bag papers.[7]

Plaintiff's latest Motion is yet one more attempt on its part to obtain discovery that is far beyond what is relevant to the issues in this case. Defendants respectfully request that the Court put an end to this abuse, before Defendants are subjected to yet additional fruitless, costly discovery on issues that are either wholly irrelevant or have already been addressed in the thousands of pages of documents that have been produced and the extensive deposition testimony that has been taken.[8]

## V. DEFENDANTS HAVE SEARCHED FOR AND PRODUCED ALL RELEVANT PRE-9/24/99 DOCUMENTS, INCLUDING QUALITY CONTROL DATA.

Plaintiff continues to insist -- without even the slightest foundation in support thereof -- that there must be many, many more documents which Defendants are purportedly withholding: "These [latest] documents are believed to be just the tip of the iceberg in terms of what has been called for but withheld from production by Defendants." Plaintiff's Motion, p. 4. If Plaintiff knows something that Defendants apparently do not, it would certainly save this Court and all parties concerned a lot of additional wasted time and effort if Plaintiff would simply share it.

---

[7] This is yet another example of the cooperative and forthcoming manner in which Defendants have conducted discovery. Given that Plaintiff has since dropped its focus on binder-free non-heatsealable tea bag paper, it is clear that Defendants would have had a legitimate basis to resist *any* discovery related to binder-free papers. Nevertheless that was not what Defendants chose to do. In the interests of conserving the parties' and the Court's resources from having to deal with yet another discovery dispute, Defendants agreed to provide a substantial amount of highly confidential information regarding its binder-free non-heatsealable tea bag papers -- information which now turns out to have been completely useless (as Defendants had been insisting all along), and which amounted to a total waste of time in terms of the efforts required to cull those documents, the time spent during depositions discussing those documents, etc.

[8] Plaintiff has deposed nine different individuals in 17 separate sessions: Gerhard Slawik (5 sessions); Guenter Grauer (4); Douglas Farrell of Redco Foods, Inc. (2); and one session with each of Glen Bonetti, William Alverson, Stanley Schreffler, Horst Dannhauser, Fabrice Werner and Markus Mueller.

The simple fact of the matter is Defendants have exhausted their search and production efforts. There are no additional pre-9/24/99 quality control documents to produce related to the two prohibited grades that became the subject of the '99 Agreement.

Plaintiff states that "the current request for a deposition is based on documents produced since" the Court's recent decisions resolving the various outstanding discovery motions. Plaintiff's Motion, p. 6. Yet earlier in its Motion, Plaintiff admits that the current request for a deposition is in a form substantially similar to the deposition notice and request for documents served by Plaintiff on May 19, 2004 (Plaintiff's Motion, p. 1) -- *before* the Court's rulings on the various discovery motions. These two positions are obviously inconsistent with one another.

In reality, Plaintiff's current request does seek virtually the exact same subject matter that was sought over six months ago. Plaintiff hopes to persuade the Court into thinking the documents recently produced by Defendants have somehow altered the issues, when in fact that is simply not the case. As mentioned above, there is nothing at all different about the nature or content of the recently-produced documents as compared to those previously produced by Defendants, and certainly nothing which would make the need for depositions in Germany any more or any less compelling.

Plaintiff asserts that the requested deposition is necessary "if Plaintiff is to complete discovery on the critical issues relating to patent infringement and breach of contract." Plaintiff's Motion, p. 2. As to the former, this issue boils down to determining whether or not Defendants sold or offered for sale into the United States after September 24, 1999 a product which reads onto at least one claim of the '997 Patent. As to the latter, the issue is whether or not, since September 24, 1999, Defendants have sold or offered for sale the papers that were the subject of the '99 Agreement, either under the then-existing designations 012/RL-T and 212/LEUT, or some other designation.

Pre-9/24/99 discovery is wholly irrelevant to the first issue, patent infringement. There is

no amount of pre-9/24/99 documents or testimony, even if available and not already produced to Plaintiff, that would impact in any way what the universe of products is that Defendants have in fact sold or offered for sale into the U.S. after 9/24/99, not alter what those products actually consisted of in terms of their ingredients, their properties, etc. If a particular product that was shipped to the U.S. after 9/24/99 contained 20.8% Acronal, for example, or exhibited a water climb of 22 millimeters, nothing that occurred prior to 9/24/99 (or for that matter, after 9/24/99) is going to change the fact that those values were what they were.

To decide the second issue, breach of contract, the only level of pre-9/24/99 discovery that is relevant is that which would allow a determination to be made as what the two prohibited grades consisted of -- their ingredients, their physical characteristics, and their other performance properties (and then determine whether papers those exact same ingredients, physical characteristics and other performance properties were sold or offered for sale into the U.S. after 9/24/99).

In that regard, Defendants respectfully submit that the following has been established in discovery and cannot be disputed:

1. There was only one making or "run" of each of the prohibited grades, 012/RL-T and 212/LEUT, that led to U.S. shipments prior to the '99 Agreement.

2. Plaintiff has been provided with the specific ingredients (identified by chemical name and by amount) used to make the paper in each of those runs (found in the instructions or "laufkarte"), as well as the actual production minutes for each of those makings.

3. Plaintiff has been provided with quality control documents which show in great detail the various physical properties and performance characteristics of the paper which resulted from each of those makings.

4. Plaintiff has been provided with a detailed analysis, via interrogatory responses, comparing the ingredients, physical properties, and other performance characteristics of (i)

11

prohibited Grade 212/LEUT to allegedly-infringing grade 212/RL-TA, (ii) prohibited Grade 212/LEUT to allegedly-infringing Grade 212/L-TA, (iii) prohibited Grade 012/RL-T to allegedly-infringing Grade 212/RL-TA, and (iv) prohibited Grade 012/RL-T to allegedly-infringing Grade 212/L-TA.

## V.  CONCLUSION

Defendants submit that several issues are clear. First, that Plaintiff appears bent on litigating the issue of whether or not the two prohibited grades infringed the '997 Patent *prior to 9/24/99*, in spite of the fact that this issue has long been rendered moot by the parties' 1999 Agreement. Second, Defendants have already provided an abundance of highly confidential, proprietary information to Plaintiff, in an effort to comply with its obligations under discovery. Divulging this sort of information is particularly undesirable and dangerous to Defendants' business where, as here, there are only three significant worldwide "players" in the industry, two of which are at odds in this suit. From the start, Plaintiff has done everything in its power to obtain as much of this proprietary information as possible, no matter how relevant.

Finally, Defendants have gone to considerable, extraordinary expense in traveling to Germany, producing the requested witnesses for long days of depositions, and bringing two of the German S&H employees to the United States for an <u>additional</u> week of depositions. Plaintiff's Motion for Leave to Take Deposition of Defendant Glatfelter is simply another last-ditch attempt to delve into highly confidential information that is totally irrelevant to the this case. The improper tactic employed by Plaintiff in this particular instance is to portray Defendants as being guilty of discovery improprieties, with a number of outright misstatements both big and small. Defendants respectfully urge the Court to ignore Plaintiff's unnecessary and misplaced finger-pointing, and take the time to look closely at the details of this discovery

dispute. Upon examination of the documents already produced in this case, the Court will see that the requested deposition is duplicative, overly burdensome, and will not lead to the discovery of any additional evidence relevant to the issues in this case.

Accordingly, Defendants respectfully submit that Plaintiff should not be granted the extraordinary and unduly expensive relief sought.

Attorneys for Defendants,
Schoeller & Hoesch, NA, Inc. and
P. H. Glatfelter Company

By _____
Dina S. Fisher (ct 14896)
280 Trumbull Street
Brett J. Boskiewicz (ct 25632)
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
dfisher@rc.com

Marc J. Farrell (ct 24539)
BUCHANAN INGERSOLL PC
One South Market Square
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121
Tel. No.: (717) 237-4820
Fax No.: (717) 233-0852
farrellmj@bipc.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served by means of facsimile (without attachments) and first class mail, postage prepaid, on this the 30th day of November, 2004, upon the following:

Sidney R. Bresnick, Esquire
Cohen, Pontani, Lieberman & Pavane
551 Fifth Avenue
New York, NY 10176


Basam E. Nabulsi, Esquire
McCarter & English LLP
Four Stamford Plaza
107 Elm Street, 9th Floor
Stamford, CT 06902

Eric E. Grondahl, Esquire
McCarter & English LLP
City Place I
185 Asylum Street, 36th Floor
Hartford, CT 06103-3495


/s/ Brett J. Boskiewicz
Brett J. Boskiewicz

Counsel for Defendants,
Schoeller & Hoesch, NA, Inc., and
P. H. Glatfelter Company