**EXHIBIT 5**

# Buchanan Ingersoll
ATTORNEYS

One South Market Square
213 Market Street, 3rd Floor
Harrisburg, PA 17101-2121

P.O. Box 12023
Harrisburg, PA 17108-2023

Marc J. Farrell
Direct Phone: (717) 237-4820
Email: farrellmj@bipc.com

T 717 237 4800
F 717 233 0852

www.buchananingersoll.com

October 29, 2004

**VIA FACSIMILE: (212) 972-5487**
**AND U.S. FIRST CLASS MAIL**

Sidney P. Bresnick, Esquire
Cohen, Pontani, Lieberman & Pavane
551 Fifth Avenue
New York, NY 10176

Re:   Ahlstrom Windsor Locks v. Schoeller & Hoesch and P. H. Glatfelter Company
      Our File No.: 50781-000003

Dear Mr. Bresnick:

As you know, as a result of our telephone conference with Judge Covello on October 13, 2004, Defendants agreed to produce certain additional documents in its possession that pre-date the parties' 1999 Agreement. It is our understanding that the reason Judge Covello ordered such additional production had to do with Plaintiff's breach of contract claim and your assertions that Defendants had not produced information sufficient to allow Plaintiff to determine whether or not any of the binder-containing non-heatsealable tea bag paper sold or offered for sale by the Defendants in the U.S. since the Agreement was S&H Grade 012/RL-T, S&H Grade 212/LEUT, or either of those grades under a different designation.

As you have learned, the sales and/or offers for sale of Grade 212/LEUT into the U.S. that ultimately resulted in the 1999 Agreement prohibiting Defendants from selling that paper in the U.S., emanated from a single "making," Anfertigung ("Preparation") No. 3045. The same is true for the pre-Agreement sales/offers for sale into the U.S. of Grade 012/RL-T, which resulted from Anf. No. 3309.

While Defendants are producing additional pre-9/24/99 documents herewith, I must first point out once again that Defendants long ago produced documents and other information - including quality control documents - that identify in great detail the ingredients, properties and other characteristics of the two grades that were shipped to the U.S. in 1998 and became the subject of the parties' 1999 Agreement. For example, Defendants have already produced at least the following pre-9/24/99 *quality control* documents:

Mr. Sidney P. Bresnick
October 29, 2004
Page 2

| Defendants' Document No. | Untersuchungsprotokoll Nr. (translated literally, "investigation minutes") | Date |
|---|---|---|
| SH 0425 | 3119-3 | 4/21/97 |
| SH 0364 | 3119-4 | 6/11/97 |
| SH 0353-0354 | 3119-5 | 7/4/97 |
| SH 0319, 0324 | 3119-6 | 9/19/97 |
| SH 0228, 0253 | 3119-8 | 4/22/98 |
| SH 0414 | 3156 | 9/24/96 |
| SH 0413 | 3162 | 10/2/96 |
| SH 0426, 0428 | 3224 | 4/21/97 |
| SH 0292 | 3224/2 | 2/11/98 |
| SH 0423 | 3225 | 4/23/97 |
| SH 0412 | 3228 | 5/6/97 |
| SH 0395 | 3230 | 5/12/97 |
| SH 0366 | 3234 | 6/4/97 |
| SH 0367 | 3235 | 6/9/97 |
| SH 0323 | 3254 | 8/28/97 |
| SH 0291 | 3318 | 2/16/98 |
| SH 0242-0244 | 3357-1<br>3357-2 | 5/15/98 |

Mr. Sidney P. Bresnick
October 29, 2004
Page 3

     Of course, these are not the only documents and information Defendants have already produced which relate to the ingredients and properties of the two prohibited grades. Moreover, I remind you of Defendants' Supplemental Responses to Plaintiff's Interrogatories 10-23, and specifically Nos. 10-13, which provide a very specific, very data-intensive comparison of the make-up and other characteristics of the two prohibited grades versus current grades 212/L-TA and 212/RL-TA.

     It continues to be Defendants' position that the quality control documents you seek prior to the 1999 Agreement do not fall within one of the three areas of pre-9/24/99 discovery upon which we previously agreed. Nevertheless, in light of the October 13 telephone conference with Judge Covello, Defendants are hereby producing the following additional pre-9/24/99 documents:

| Defendants' Document No. | Untersuchungsprotokoll Nr. | Date |
|---|---|---|
| D 1272 | 3119-1 | 6/28/96 |
| D 1273 | 3119-2 | 10/26/96 |
| D 1274 | 3119-7 | 12/19/97 |
| D 1275 | 3119-9 | 4/27/99 |
| D 1276 | 3119-10 | 5/14/99 |
| D 1277 | 3227 | 5/5/97 |
| D 1278 | 3349-1 | 4/20/98 |
| D 1279 | 3349-2 | 6/24/98 |
| D 1280 | 3349-3 | 9/14/98 |
| D 1281 | 3351 | 4/27/98 |
| D 1282 | 3384 | 11/12/98 |
| D 1283 | 3384- | 8/17/98 |
| D 1284 | 3384-1 | 8/17/98 |
| D 1285 | 3384-2 | 12/22/98 |

Mr. Sidney P. Bresnick
October 29, 2004
Page 4

| D 1286 | 3384-3 | 12/22/98 |
| --- | --- | --- |
| D 1287 | 3384-S | 11/23/98 |
| D 1288 | 3394 | 9/18/98 |
| D 1289 | 3396 | 9/29/98 |
| D 1290 | 3398 | 10/5/98 |
| D 1291 | 3401 | 10/5/98 |
| D 1292 | 3413 | 10/20/98 |
| D 1293 | 3497 | 5/14/99 |
| D 1294 | 3542-5 | 9/1/99 |
| D 1295 | 3542-5-1 | 9/1/99 |
| D 1296 | 3542-5a | 8/25/99 |
| D 1297 | 3542-5b | 8/25/99 |
| D 1298 | 3542-5c | 8/25/99 |

Lest there be any further doubt that Defendants have not produced quality control documents which show the various properties and other characteristics of the two prohibited grades, that information is summarized hereinbelow for your benefit:

Mr. Sidney P. Bresnick
October 29, 2004
Page 5

### S&H Grade 212/LEUT (Anf. Nr. 3045)

#### "Recipe"

The exact ingredients and the amounts used for this specific making of 212/LEUT have already been provided to you in the form of the laufkarte used to make the paper and the production minutes from that run (D 1146 - D 1169), including the size press mix used for the binder treatment (found in the middle of page D1148).

#### "Properties/Characteristics"

| Property/Characteristic | Amount/Percentage | Document No(s). |
|---|---|---|
| Basis Weight | 12.9 g/m$^2$ | SH 0253 |
| Thickness | 44.9 $\mu$m | SH 0253 |
| Density | 0.29 g/cm$^3$ | SH 0253 |
| Tensile Strength Dry (MD) | 14.2 N/15 mm | SH 0253 |
| Tensile Strength Dry (CD) | 6.1 N/15 mm | SH 0253 |
| Tensile Strength Wet (CD) | 2.6 N/15 mm | SH 0253 |
| Air permeability | 2222 l/m$^2$·s | SH 0253 |
| Whiteness | 58.2% | SH 0253 |
| Sand fallout | (9.5%) | SH 0253 |
| Humidity | 6.3% | SH 0253 |
| Wetting time | 44 seconds | SH 0253 |
| Water climb MD/CD (10 minutes) | 0 mm/0 mm | D 1275 |
| Water climb (Dexter), 95°C, 400 seconds | 3 mm/3 mm | D 1275 |

Mr. Sidney P. Bresnick
October 29, 2004
Page 6

### S&H Grade 012/RL-T (Anf. Nr. 3309)

#### "Recipe"

The exact ingredients and the amounts used for this specific making of 012/RL-T have already been provided to you in the form of the laufkarte used to make the paper and the production minutes from that run (D 1227 - D 1234), including the size press mix used for the binder treatment (found in the middle of page D 1230).

#### "Properties/Characteristics"

| Property/Characteristic | Amount/Percentage | Document No(s). |
|---|---|---|
| Basis Weight | 12.3 g/m$^2$ | D 1276 |
| Thickness | 42.5 µm | D 1276 |
| Density | 0.29 g/cm$^3$ | D 1276 |
| Tensile Strength Dry (MD) | 13.9 N/15 mm | D 1276 |
| Tensile Strength Dry (CD) | 5.4 N/15 mm | D 1276 |
| Tensile Strength Wet (CD) | 2.5 N/15 mm | D 1276 |
| Air permeability | 2348 l/m$^2$·s | D 1276 |
| Whiteness | 69.6% | D 1276 |
| Sand fallout | 15.6% | D 1276 |
| Wetting time | 58 seconds | D 1276 |
| Water climb MD/CD (10 minutes) | 0 mm/0 mm | D 1276 |
| Water climb (Dexter), 95°C, 400 seconds | 3 mm/2 mm | D 1276 |

Mr. Sidney P. Bresnick
October 29, 2004
Page 7

      You now have all of the pre-9/24/99 quality control documents that relate to the two grades of paper that are the subject of the 1999 Agreement.

      I would assume, given Plaintiff's assertion of the patent-in-suit against Defendants in 1998, that Plaintiff has in its possession testing data and the like regarding the two prohibited grades. I trust that any and all such documents will be produced to us promptly.

Very truly yours,

BUCHANAN INGERSOLL PC

By
Marc J. Farrell


Enclosures

cc:   Basam E. Nabulsi, Esquire (via facsimile, w/encls.)
      Eric E. Grondahl, Esquire (via facsimile, w/encls.)
      Dina S. Fisher, Esquire (via facsimile, w/encls.)

**EXHIBIT 6**

**EXHIBIT 6 FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 7**

# ReedSmith

Reed Smith LLP
213 Market Street
9th Floor
P.O. Box 11844
Harrisburg, PA 17108-1844
717.234.5988
Fax 717.236.3777

Marc J. Farrell
Direct Phone: 717.257.3044
Email: mfarrell@reedsmith.com

January 8, 2004

**VIA FACSIMILE: (212) 972-5487**

Sidney R. Bresnick, Esquire
Cohen, Pontani, Lieberman & Pavane
551 Fifth Avenue
New York, NY 10176

Re: Glatfelter 30(b)(6) Designees – Germany Depositions
Ahlstrom Windsor Locks v. Schoeller & Hoesch, NA, Inc. and P. H. Glatfelter Co.
Our File No.: 861266-20096

Dear Mr. Bresnick:

This letter is in response to your facsimile dated January 5, 2004, as well as your facsimile dated December 24, 2003.

To answer the first question posed in your January 5 letter, Mr. Dannhauser remains a 30(b)(6) designee.

For many months now, we have told you that we have given you everything we have in terms of responsive documents, and that if you did not believe us, you were certainly free to depose whomever you felt necessary in order to explore the issue. As you have explained it, that is one of the very purposes of our trip to Germany for next week's depositions. However, you appear intent on building some kind of "record," I suppose, of having put us on notice that you believe Defendants' document production to have been incomplete. That is the only explanation I can figure for your repeated - and I should note, groundless - accusations.

In any event, I must now set the "record" straight.

As an initial point, it is interesting to note that you would choose to base your accusations of incompleteness at least in part on sheer volume of documents. If Defendants' "grand total of 587 pages worth" is paltry, what then does that say about the mere 315 pages worth of documents Plaintiff has produced (there being two different documents each bearing AWL 00303)? I suppose that makes Plaintiff's production nearly half as deficient as you accuse Defendants' of being.

LONDON ♦ NEW YORK ♦ LOS ANGELES ♦ SAN FRANCISCO ♦ WASHINGTON, D.C. ♦ PHILADELPHIA ♦ PITTSBURGH ♦ OAKLAND ♦ PRINCETON
FALLS CHURCH ♦ WILMINGTON ♦ NEWARK ♦ MIDLANDS, U.K. ♦ CENTURY CITY ♦ RICHMOND ♦ HARRISBURG ♦ LEESBURG ♦ WESTLAKE VILLAGE

reedsmith.com

HBGLIB-0050300.01-MJFARREL
January 8, 2004 5:47 PM

Sidney R. Bresnick, Esquire
January 8, 2004
Page 2

**ReedSmith**

Nor am I certain how Glatfelter being, in your words, a "large international manufacturing company," necessarily has anything to do with the volume of documents one would expect to exist in this case (let alone that Glatfelter's size means there ought to specifically be "many thousands of pages of documents"). Under that theory then, I suppose, your client – also a "large international manufacturing company," and one which is likely three times as large as Glatfelter – ought to have many, many thousands of pages of documents.

We can disagree on whether or not your theory has any merit. But shouldn't your theory at least apply equally to Plaintiff as well as Defendants? Certainly, like your description of Plaintiff's discovery requests, Defendants' requests likewise call for "many types of technical and business records." Further, there is nothing peculiar about the party in the position of plaintiff/patent holder in a patent case that should somehow automatically result in its production of dramatically fewer documents than the party in the position of defendant/accused infringer.

Moreover, as explained in more detail below, I wonder – in light of your December 24 letter – whether or not we are talking about the same set of documents, D 0001 to D 0587?

You accuse Defendants of having produced no "documents, memoranda, correspondence, etc. describing or detailing [Defendants'] tea bag manufacturing processes" nor any "research and development documents concerning tea bag paper." How, then, would you categorize, for example, the 150 pages worth of documents consisting of D 0415–0565? (Have you even bothered to have those documents translated? That is the only conclusion I can draw from your apparent classification of these as non-manufacturing and non-R&D documents.

Nor do I understand the basis for your question "Where are the manufacturing documents from the German paper mill?" I am equally puzzled as to how you reached the conclusion that "[Defendants] have produced documents from Cascadec, but not Schoeller & Hoesch's Gernsbach facility." Is it because D 0415–0565 bear the "Cascadec" name and logo in the top left corner? Did you notice that the documents also contain the "Schoeller & Hoesch" logo in the top right corner? Regardless, the fact of the matter is that these documents were gathered and produced by personnel at the Gernsbach facility, so your allegations are incorrect.

You also accuse Defendants of having produced nothing in the way of "Fabrice Werner's marketing plans for 'Dynacrimp'." What about documents D 0018, D 0022-0061, and D 0114–0173? It could not be any clearer that those are the precise documents you seek. D 0114, for example, is a Post-It note which bears the handwritten notation "Internal Document prepared by Fabrice Werner." The ensuing 22 pages consist of a detailed PowerPoint presentation, the first page of which (D 0115) bears the title "Dynacrimp Binder Paper for North America – Marketing Business Plan." Do you disagree? Or are you instead saying that those 101 pages worth of marketing plans are not enough, because you somehow know there to be additional Fabrice Werner marketing plans that were not produced? If so, I would greatly appreciate being made aware of the information you purport to possess.

It is also beyond me how you can possibly say Defendants have produced no "communications with customers such as Redco Foods, Lipton, etc." Defendants' production is replete with such documents, all of which are very readily identifiable, but just so we are clear, I direct your attention to, for example, D 0179-0180, D 0191, D 0218, D 0228-0229, D 0239, D 0256, D 0258, D 0264, D 0278, D 0288-0289, D 0293-0297, D 0299-0301, D 0307, D 0330, D 0343, and D 0353-0355. Do you not agree that those documents are, plain and simple, "communications with customers," including numerous communications with Redco Foods among others? Do you have information that leads you to believe there are additional communications?

Sidney R. Bresnick, Esquire							**ReedSmith**
January 8, 2004
Page 3

You indicate that you find all of this "very hard to believe" and that you "think the Court will too." While I do not purport to know what the Court would think on any given issue, one wonders how the Court would feel about your accusation that Defendants have produced "no communications between Mr. Dannhauser and Mr. Bonetti" when I show the Court, for example, documents D 0200-0201, D 0203, D 0206, D 0208, D 0219, D 0222-0225, D 0230-0236, D 0255, D 0257, D 0266, D 0308-0309, D 0312, D 0320, D 0325, and D 0333-0334. A similar exercise would be interesting with regard to your accusation that Defendants have produced "no communications by and between Alverson, Dannhauser, Werner, Ruckenbrod et al." in light of, for example, documents D 0177, D 0184-0190, D 0194-0198, D 0211, D 0241-0245, D 0260, D 0263, D 0265, D 0267-0268, D 0290-0292, D 0306, D 0317-0318, D 0323, D 0328-0329, D 0331-0332, D 0336-0337, D 0345-0352, and D 0356-0372.

Nearly one year has passed since Plaintiff filed its Complaint in this case, and Plaintiff still has yet to even specify what its claims of infringement are, let alone provide a shred of information to support any such claims. Nor has Plaintiff come forth with any documents for the four-plus years that have passed since the execution of the 1999 Agreement (with the exception of AWL 00213-00214, two wholly irrelevant pages). Astonishingly, Plaintiff insists that the sole document in its possession, custody or control related to the Yadlowsky European patent application is a copy of the application itself. This would mean that Plaintiff does not have a single document commenting on the Yadlowsky reference, a single document addressing its relevance (or lack thereof) as prior art, or for that matter even a single document *mentioning* the Yadlowsky reference. Perhaps even more difficult to comprehend is how Plaintiff could have NO documents related to the opposition proceeding initiated by The Crompton Company against Plaintiff's European patent corresponding to the '997 patent. Surely such documents would be relevant to numerous of Defendants' discovery requests, yet none have been produced.

In stark contrast, Defendants have produced nearly twice as many documents as Plaintiff, including over 60 actual sheets of Defendants' non-heatsealable tea bag papers, representing all six of the grades available in the U.S. This includes four grades which have absolutely no relevance to the present litigation, but which Plaintiff nevertheless insisted upon (and which were produced by Defendants in the spirit of cooperation and to avoid a needless waste of the parties' and the Court's resources contesting Plaintiff's threatened motion to compel). We are confident that any reasonable, objective observer could easily identify which party has been more than forthcoming, and which party has been quite the opposite. Perhaps that further explains why you feel it necessary to continue to point fingers in Defendants' direction.

I am hopeful that after the depositions next week the focus will be on supposed discovery deficiencies that at least have some basis in fact. For example:

- *Where is the supplemental response to Defendants' interrogatories which Michele Totonis indicated at her deposition nearly two months ago would be forthcoming?* (See pages 19-21 and 92 of her transcript.)

- *What is the status of the left-over samples, purportedly corresponding to papers that originated with Defendants, the existence of which Ms. Totonis testified to at her deposition,* namely, the two sheets given to Ms. Totonis by Ahlstrom salespeople (one by Brian Koesher, and the other by Richard Clist), and the two tea bag products that were purportedly purchased at a Big Y grocery store in Connecticut? Defendants requested nearly two months ago that portions of these samples be produced (ignoring, for now, the fact that they should have been already produced long before that request was made). <u>Why have they not yet been produced?</u> (See page 109 of her transcript.)

Sidney R. Bresnick, Esquire  
January 8, 2004  
Page 4

**ReedSmith**

These are just a few of the discovery issues which I will be raising in the coming weeks.

Very truly yours,

Reed Smith LLP

By *(signature)*  
Marc J. Farrell

mjf

cc:   Dina S. Fisher, Esquire (via facsimile)  
      Basam E. Nabulsi, Esquire (via facsimile)