152

### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

AHLSTROM WINDSOR LOCKS LLC,          )
                                     )
                Plaintiff,           )
        vs.                          )   CIVIL ACTION NO. 3:03-CV-0169 (AVC)
                                     )
SCHOELLER & HOESCH, N.A., INC. and   )
P.H. GLATFELTER COMPANY,             )
                Defendant.           )
                                     )
_____)

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   SUMMARY STATEMENT OF ARGUMENT ...................................................... 2

III.  SUMMARY OF DISPUTED FACTS ...................................................................... 4

   A.  THE INVENTION IN THE '997 PATENT ......................................................................... 4
   B.  THE FILE HISTORY OF THE '997 PATENT ................................................................... 5
   C.  THE EUROPEAN COUNTERPART TO THE '997 APPLICATION ...................................... 6
   D.  THE EUROPEAN OPPOSITION PROCEEDING ................................................................ 8
   E.  THE PRIOR ART REFERENCES .................................................................................... 9

IV.   ARGUMENT .......................................................................................................... 9

   A.  DEFENDANTS' BURDEN OF PROOF ON SUMMARY JUDGMENT .................................. 9
      1.  United States patents are presumed valid, a presumption that does not change, and one
      attacking validity has the burden of proving facts supporting such a conclusion by clear and
      convincing evidence ................................................................................................ 10
      2.  On summary judgment the evidence of the non-movant is to be believed and all
      justifiable inferences must be drawn in his favor ..................................................... 11
      3.  Defendants have the additional burden of overcoming the deference due to the PTO
      with respect to both the Noiset and Kelley patents .................................................. 12
      4.  Anticipation requires that each element of a claim must be found in a single reference;
      if a claim element is argued to be inherent, then the "inherent" element must necessarily be
      present in the prior art each and every time ............................................................. 14
      5.  The invention must be enabled ......................................................................... 15
   B.  NONE OF THE CITED PATENT REFERENCES ANTICIPATES THE '997 PATENT ............ 17
      1.  Defendants have improperly construed the '997 patent claims to render certain
      elements  inoperative or inconsequential to cover their absence from the cited prior art
      references ................................................................................................................ 17
         a)  The Defendants have improperly divided and/or grouped the '997 patent claims to
         suit their purpose in finding anticipation ............................................................... 17
         b)  Each of the so-called "properties" is a separate claim limitation that must be found in
         each of the references ............................................................................................ 20
         c)  None of the prior art references are directed to folded and crimped materials and
         none refers to the water climb, seam failure or infusion characteristics of the '997 patent
         22
      2.  The Kelley patent .............................................................................................. 23
         a)  The Kelley patent is directed to adhesives for heat sealable, not folded and crimped
         sealed materials .................................................................................................... 23
         b)  The Kelley patent discloses a "polyblend" of both low and high molecular weight
         components, whereas the '997 patent requires high molecular weight materials only ..... 25
         c)  There is nothing in the prosecution of Plaintiffs European counterpart patent that
         adversely affects the validity of the '997 patent ..................................................... 26
         d)  U.S. Courts do not give much weight to foreign decisions on patent validity ......... 27
      3.  The Noiset patent .............................................................................................. 29
      4.  The Yadlowsky application ............................................................................... 32

# TABLE OF CONTENTS

Page

5.   Dr. Malcolm's Comparison of the claims of the '997 patent with the cited references  33

C.   NO CASE FOR SUMMARY JUDGMENT BASED ON OBVIOUSNESS UNDER 35 U.S.C. § 103 HAS EITHER BEEN ATTEMPTED OR PROVED ........................................................................... 37

V.   CONCLUSION ........................................................................................................ 38

## TABLE OF AUTHORITIES

Page

FEDERAL CASES

86 S.Ct. 684, 693-94 (1966)....................................................................................... 37

*Abbott Laboratories v. Syntron Bioresearch, Inc.*, 334 F.3d 1343 (Fed. Cir. 2003) .............. 11, 13

*Alco Standard Corp. v. Tenn. Valley Auth.*, 808 F.2d 1490 (Fed. Cir. 1986)............................... 11

*Allen v. Howmedica Leibinger, Inc.*, 197 F. Supp 2d 101 (D. Del. 2002).................................... 29

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350 (Fed. Cir. 1984)............... 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 254 S.Ct. 2505) ................................................11, 12

*Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031 (Fed. Cir. 2001) ............................................. 11

*Bayer AG v. Schein Pharmaceutical, Inc.*, 129 F. Supp.2d 705 (D. N.J. 2001) ........................... 13

*Bristol-Myers Squibb Co. v. Ben Venue Labs. Inc.*, 246 F.3d 1368 (Fed.Cir. 2001)................... 21

*Cantor v. Detroit Edison Co.*, 428 U.S. 579 (1976) ..................................................................... 11

*Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542 (Fed.Cir. 1983)............................................... 10

*Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264 (Fed. Cir. 1991)......................... 14, 15, 37

*Crown Operations International, Ltd. v. Solutia, Inc.*, 289 F.3d 1367 (Fed. Cir. 2002)............. 11

*Dayco Products, Inc., v. Total Containment, Inc.*, 329 F.3d 1358 (Fed. Cir. 2003)..................... 15

*Donohue, In re* 766 F.2d 531 (Fed. Cir. 1985)............................................................................ 16

*Dulberg, In re* 472 F.2d 1394 ................................................................................................28, 29

*Elan Pharmaceuticals, Inc. v. Mayo Foundation For Medical Education And Research,*
    346 F.3d 1051 (Fed. Cir. 2003) ........................................................................................ 15

*Electro Med. Sys. S.A. v. Cooper Life Sciences*, 34 F.3d 1048 (Fed. Cir. 1994) ......................... 14

*Graham v. John Deere Co.*, 383 U.S. 1 ........................................................................................ 37

# TABLE OF AUTHORITIES

**Page**

*Heidelberger Druckmaschinen AG v. Hantscho Commercial Products, Inc.,* 21 F.3d 1068 (Fed. Cir. 1994)................................................................................................ 28

*Larsen, In re* 292 F.2d 531 CCPA 711 (1961)........................................................................ 28

*Loctite Corp. v. Ultraseal, Ltd.,* 781 F.2d 861 (Fed Cir. 1985)............................................ 11

*Medtronic, Inc. v. Daig Corporation,* 789 F.2d 903 (Fed. Cir. 1986)................................. 28

*Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.,* 347 F.3d 1367 (Fed. Cir. 2003) ............ 21

*Merck & Company v. Teva Pharmaceuticals USA, Inc.,* 288 F. Supp. 2d 601 (D. Del. 2003) .................................................................................................................. 29

*Monaplastics, Inc. v. Caldor, Inc.,* 264 F. Supp. 57 (D. Conn. 1966)................................. 10

*Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH,* 139 F.3d 877 (Fed. Cir. 1998)............. 11

*Monroe Auto Equipment Co. v. Superior Industries, Inc.,* 332 F.2d 473 (9th Cir. 1964) ........... 10

*Polaroid Corporation v. Eastman Kodak Company,* 789 F.2d 1556 (Fed. Cir. 1986)................. 13

*Poller v. Columbia Broad. Sys., Inc.,* 368 U.S. 464 (1962)................................................... 11

*Poly-America, L.P. v. GSE Lining Technology, Inc.,* 383 F.3d 1303 (Fed. Cir. 2004) .......... 18, 19

*Richardson v. Suzuki Motor Co.,* 868 F.2d 1226 (Fed.Cir. 1989) ....................................... 21

*Ryko Manufacturing Co. v. Nu-Star, Inc.,* 950 F.2d 714 (Fed. Cir. 1991) ......................... 37

*Schumer v. Laboratory Computer Systems, Inc.,* 308 F.3d 1304 (Fed. Cir. 2002)................. 11, 15

*Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565 (Fed. Cir. 1991) ............ 14

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.,* 225 F.3d 1349 (Fed.Cir. 2000) ................... 11

*Stash, Inc. v. Palmgard International, Inc.,* 937 F. Supp. 531 (D. Md. 1996) ............................ 13

*Toro Company v. Deere & Company,* 355 F.3d 1313 (Fed. Cir. 2004) ...................................... 16

*Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270 (Fed. Cir. 1995) ...................................... 11

*Trintec Industries, Inc. v. Top-U.S.A. Corporation,* 295 F.3d 1292 (Fed. Cir. 2002) .................. 14

## TABLE OF AUTHORITIES

**Page**

*Union Oil Company of California v. Atlantic Richfield Company,* 208 F.3d 989 (Fed. Cir. 2000) ................................................................................................................................ 21, 22

*Uniroyal, Inc. v. Rudkin-Wiley Corporation,* 837 F.2d 1044 (Fed. Cir. 1988) ............................ 10

*Verdegaal Bros., Inc. v. Union Oil Co.,* 814 F.2d 628 (Fed. Cir. 1987) ...................................... 14

## FEDERAL STATUTES

35 U.S.C. § 102 ........................................................................................................................... 38
35 U.S.C. § 103 ............................................................................................................... 28, 37, 38
35 U.S.C. §102 ............................................................................................................................... 1
35 U.S.C. §102(b) ....................................................................................................................... 14
35 U.S.C. §103 ............................................................................................................... 1, 12, 13
35 U.S.C. §282 ............................................................................................................................ 10
35 U.S.C. §§ 102 ......................................................................................................................... 40

## FEDERAL RULES

Fed.R.Civ.P. 56(c) ...................................................................................................................... 11

## OTHER AUTHORITIES

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NO. 3:03-CV-0169 (AVC) |
| | ) |
| SCHOELLER & HOESCH, N.A., INC. and | ) |
| P.H. GLATFELTER COMPANY, | ) |
| Defendant. | ) |
| | ) |
| | ) |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.    PRELIMINARY STATEMENT

Plaintiff, Ahlstrom Windsor Locks LLC ("Ahlstrom" or "Plaintiff"), hereby opposes defendants', Schoeller & Hoesch, N.A., Inc. ("S&H") and P. H. Glatfelter Company ("Glatfelter") (collectively, "Defendants"), motion for summary judgment of invalidity of Plaintiff's U. S. patent No. 5,431,997 ("the '997 patent") (**Tab A**) for anticipation under 35 U.S.C. §102 and for obviousness under 35 U.S.C. §103.

Defendants' motion for summary judgment of invalidity under both 35 U.S.C. §102 and 35 U.S.C. §103 is based on three prior art references: U.S. patent No. 3,386,834 to Noiset et al. ("the Noiset patent" or "Noiset") (**Tab B**), U.S. patent No 3,616,166 to Kelley ("the Kelley patent" or "Kelley") (**Tab C**), and European patent application No. 0 170 461 to Yadlowsky ("the Yadlowsky application" or "Yadlowsky") (**Tab D**). None of the three prior art references cited by Defendants anticipate the '997 patent and, further, that the '997 patent is not rendered obvious thereby. Indeed, none of the three references are even concerned with the problem solved by Plaintiff's '997 patent,

namely to reduce seam failure in a folded and crimped seam of a tea bag. Moreover, the motion must also fail on the ground that there are genuine issues of material fact that preclude summary judgment on either of the two grounds of invalidity asserted by Defendants (anticipation and obviousness).

## II.    SUMMARY STATEMENT OF ARGUMENT

The invention disclosed and claimed in the '997 patent is a porous fibrous web that has been treated with a hydrophobic binder to provide enhanced seam integrity when it is *sealed* (by a *folded and crimped seam*, not heat sealed, to make a tea bag and used in the environment for which it is intended, i.e., boiling water. The invention was prompted by customer demand for a folded and crimped sealed tea bag whose seams did not open and spill tea leaves into the cup upon contact with boiling water. This was accomplished by impregnating the entire bag material with a hydrophobic binder, which will resist water penetration of the folded and crimped seam, which often leads to seam failure. The hydrophobic binder of the invention must be impregnated *throughout the entire surface* of the web in an amount that will provide enhanced seam protection to the tea bag when it is exposed to boiling water, but which will *not* result in a substantial loss of infusion characteristics (tea brewing). This is, after all, a commercial product intended for use in the real world. Therefore, the invention parameters of water climb, seam failure and infusion are essential to the practice of the invention because they are determinative of the effective amount of hydrophobic treating agent to be added to the web. If too little of the hydrophobic agent is added, enhanced seam protection will not be achieved; too much and there will be a substantial loss of infusion characteristics. Neither of these results is commercially acceptable.

---

[1] "Tab" refers to an exhibit in Plaintiff's Appendix of Exhibits.

It is important to note that *none* of the prior art references cited by the Defendants (Kelley, Noiset and Yadlowsky) relate to infusion webs for tea bags with folded and crimped seams. All of the patent references cited by Defendants relate to *heat sealed* or *pressure sealed* webs. This important distinction, which has been ignored by Defendants in their motion for summary judgment, and others will be discussed in detail below and in the Declaration of Dr. Earl W. Malcolm submitted herewith. Defendants have relied upon patent references that are different in kind from and relate to the solution of different problems than that addressed in the '997 patent. They have compounded their misconstruction of the argument by picking, choosing and rearranging snippets of text from these references to create a mosaic for each, which, they argue, discloses *almost* all of the elements of the claims of the '997 patent. Then they make yet a further argument based on a combination of these references despite the fact that none of the references suggests any combination with any of the other references. Those missing elements that they were not able to glean from the prior art Defendants claim to be *inherent* therein. But Defendants have presented *no evidence*, such as testing, to *prove* that the missing elements are *necessarily present* in the prior art upon each and every usage as required by law. Under the patent law, to establish inherency it must be proved that the feature asserted as inherent must occur each and every time. Lawyers' arguments are not evidence and Defendants' arguments regarding the inherency of certain features of the '997 patent are insufficient under the patent law to prove anticipation.

The Defendants' request for summary judgment based on obviousness is an add-on, comprising less than one-half page of discussion in a 50 page brief. It doesn't even begin to cover the issues relevant to an obviousness analysis. Obviousness is a question of law based on underlying questions of fact, such as (1) the differences between the prior art and the claimed invention; (2) the level of ordinary skill in the art at the time the invention was made; and (3) the factual basis for the

legal conclusion that those differences would be obvious to a person of ordinary skill in the art. These factual analyses were not made nor were they even discussed in Defendants' memorandum. This ground for summary judgment should be given as little consideration by the Court as Defendants have given to its presentation.

## III.    SUMMARY OF DISPUTED FACTS

### A.    THE INVENTION IN THE '997 PATENT

Tea bag papers generally fall into two categories: heat sealable and non-heat sealable. Heat-sealable papers require heat and pressure to form a strong seal around the edges of a tea bag. Non-heat sealable papers require some form of mechanical fastening to prevent the tea leaves from coming out of the bag during brewing. Among the common forms of mechanical seals is a multiple folded and crimped seal to keep the bag together during brewing.  Other types of mechanical seals include stitching or stapling.  Whatever the method used, the seam must have adequate strength to withstand the forces encountered when boiling water is poured over the bag during the initial part of the brewing process. (Malcolm Decl. Para. 16).

The '997 patent is directed specifically to paper for tea bags having folded and crimped seams. (Tab A., col. 3, lines 27-32). The invention includes producing a tea bag paper that will yield a folded and crimped tea bag seal that will not fail under normal home-brewing conditions and still provide other features required in a tea bag, such as infusion properties that give the desirable brew of tea. This object is achieved by treating the entire web with a sufficient amount of hydrophobic agent to prevent or retard wetting of the folded and crimped seal, and provide less than 10% seam failure, but not enough to result in a substantial loss of infusion characteristics in boiling water. (*Id.*, claim 1).

**B.    THE FILE HISTORY OF THE '997 PATENT**

The '997 patent contains two independent claims, claim 1 and claim 10, and 14 dependent

claims. The independent claims 1 and 10, as filed, read:

> 1.     A fibrous web suited for making infusion packages for brewing beverages
> and exhibiting improved resistance to the failure of a mechanical seam therein,
> said web comprising a porous fibrous sheet material impregnated throughout its
> extent with about one percent or more by weight of *a hydrophobic treating
> system*, the impregnated sheet material exhibiting no appreciable water climb
> when measured suing water at a temperature of about 100 °C and no substantial
> loss of infusion characteristics while providing less than 10 percent failure in the
> mechanical seam upon exposure to boiling water. ('997 Patent File History)
> **(Tab E)**

> 11[2].A process for process for producing porous web materials for making infusion
> packages having enhanced mechanical seam integrity comprising the steps of
> providing a porous absorbent web material suited for use as an infusion package,
> treating the entire web material with *a hydrophobic treating system* to provide a
> treated web that exhibits no appreciable water climb when measured using water
> at a temperature of about 100 °C and less than 10 percent failure in a mechanical
> seam therein when exposed to boiling water. *(Emphasis added)* ('997 Patent File
> History) (Tab E)**.**

During the prosecution of the '997 patent, the Examiner specifically considered two prior

art references, i.e., the Kelley patent and the Noiset patent, in rejecting the claims as obvious over

these two references. In response to the Examiner's rejection, the applicants amended the claims,

*inter alia,* by specifically defining the term "hydrophobic treating system" recited in the original

claims 1 and 11. In the amended claims, the term "hydrophobic treating system" is either further

defined by adding the phrase "*a hydrophobic treating system comprising a cured hydrophobic

agent selected from the group consisting of high molecular weight cross-linked acrylic polymers,

silicones, fluorohydrocarbons, paraffins, alkyl ketene dimmers and stearylated materials*", (Tab

A. claim 1), or changed to a more definite term "*a hydrophobic agent selected from the group*

consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimmers and stearylated materials". (*Id*. Claim 10). In addition, the applicants pointed out that the preferred hydrophobic agent described in the specification was in fact a high molecular weight acrylic polymers having molecular weight well in excess of 500,000; the polymer lattices were not blends of two adhesive binders, but were *single* copolymers, in distinguishing their invention from the teaching of the Kelley Patent. (Tab E, pages 50-52, 1/14/1994 Amendment, pages 7 and 9). The amended claims were allowed without any further rejections.

The Noiset patent was also discussed and distinguished in the specification of the '997 patent. (See Tab A, column 1, line 55 to column 2, line 2).

C.   THE EUROPEAN COUNTERPART TO THE '997 APPLICATION

The European counterpart application to the '997 application was filed on May 23, 1994 and granted on August 29, 2001. The claims of the European patent as issued are similar to the claims of the '997 application as filed but substantially different in scope to the claims of the '997 patent. In particular, the scope of the claims in the European patent is broader than that in the '997 patent with respect to the element of hydrophobic treating system. A side-by-side comparison of the independent claims of the two patents is shown below[3]:

| Claims of the '997 Patent | Corresponding claim in the European Counterpart Patent |
|---|---|
| Claim1: <br><br> A fibrous web suited for making infusion packages for brewing beverages and exhibiting improved resistance to the failure of a mechanical | Claim 1: <br><br> A porous fibrous web material, suited for making infusion packages which are for brewing beverages and which exhibit improved resistance to the |

---

[2] Claim 10 in the '997 patent was originally filed as claim 11.

[3] Material differences are emphasized.

seam therein, said web comprising a porous fibrous sheet material impregnated throughout its extent with about one percent or more by weight of *a hydrophobic treating system comprising a cured hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimmers and stearylated materials*, the impregnated sheet material exhibiting no appreciable water climb when measured suing water at a temperature of about 100 °C and no substantial loss of infusion characteristics while providing less than 10 percent failure in the mechanical seam upon exposure to boiling water.

failure of a mechanical seam therein, said web material being impregnated throughout its extent with one percent or more by weight of *a hydrophobic treating system*, the impregnated web exhibiting a water climb of not more than 0.5 inch (13 mm) over a period of 400 seconds when measured using water at a temperature of a bout 100 °C and no substantial loss of infusion characteristics as measured by first-colour infusion time while providing less than 10 percent failure in the mechanical seam of tea bags constructed from the said web material upon exposure to boiling water.

Claim 10:

A process for process for producing porous web materials for making infusion packages having enhanced mechanical seam integrity comprising the steps of providing a porous absorbent web material suited for use as an infusion package, treating the entire web material with an aqueous emulsion of *a hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimmers and stearylated materials* to provide a treated web that exhibits no appreciable water climb when measured using water at a temperature of about 100 °C and less than 10 percent failure in a mechanical seam therein when exposed to boiling water.

Claim 12:

A process for process for producing porous web materials for making infusion packages having enhanced mechanical seam integrity comprising the steps of providing a porous absorbent web material suited for use as an infusion package, and treating the entire web material with *a hydrophobic treating system* to provide a treated web that exhibits a water climb of not more than 0.5 inch (13 mm) over a period of 400 seconds when measured using water at a temperature of about 100 °C and less than 10 percent failure in a mechanical seam of tea bags constructed from the said web material when exposed to boiling water.

### D.    THE EUROPEAN OPPOSITION PROCEEDING

An issue raised in the Opposition to Plaintiff's European counterpart patent is whether or not the claims in the European patent, as initially issued, lack novelty over the Kelley patent. As shown above, the scope of the claims in the initial European patent is substantially different from that in the '997 patent, i.e., the hydrophobic agent for treating the web in the European patent is not limited to a member of the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials.

Plaintiff submitted a Written Submission to the Opposition Division of EPO (Donnan Decl., Exh. E), where Plaintiff asserted that, *inter alia*, (1) there is no disclosure in Kelley of a web material of the non-heat seal type impregnated throughout its extent with a hydrophobic treating system, nor is there a disclosure of a mechanically sealed infusion package made from such a web material; (2) there are no grounds for stating that the Kelley process will inevitably lead to a material as defined in the European patent. Therefore, there is no teaching or suggestion that a fibrous web material treated with the adhesive binder of Kelley will satisfy the limits placed on the water climb performance and on the mechanical seam failure rate in the '997 patent. (See Plaintiff's Written Submission, Donnan Decl., Exh. E, paras. 41 and 44).

During the oral argument, however, the only issue regarding the Kelley patent raised before the EPO is whether the claims in the European patent encompass the Kelley's heat sealable type of web. (See Donnan Decl., Pars. 7-8) Plaintiff did not admit that the only difference between Kelley and the subject matter in the European patent is a heat sealable web verses a mechanical sealable web. (Donnan Decl.).

8

The Opposition Division's decision is now on appeal. Plaintiff's positions on appeal are basically the same as those presented to the Opposition Division. (Statement of Ground of Appeal, Pars. 10 and 15).

### E.    THE PRIOR ART REFERENCES

None of the prior art references, i.e. the Kelley patent, the Yadlowsky application and the Noiset patent, teaches a fibrous web suited for making *mechanically sealed* (non-heat sealable and folded and crimped) sealed tea bags exhibiting improved mechanical seam strength in boiling water, whereas all product claims of the '997 patent are directed to a fibrous web suited for making mechanically sealed tea bags exhibiting improved mechanical seams in boiling water.

These prior art references all focus on *heat sealable* webs, which differ in kind from non-heat sealable webs. These two types of materials are not interchangeable and have never been used interchangeably. (See Malcolm Decl. Pars. 22-23; also see e-mail from M. Farrell, Esq. To Y. Ren, Esq. (Tab F))

None of the prior art references discloses in any way the properties of the fibrous web for making mechanically sealed tea bags having improved folded and crimped seams, let alone any teaching on how to achieve those properties, whereas all claims of the '997 patent specifically recite the properties of the inventive web material. In particular, the claims of the '997 patent refer to the properties of the tea bag in boiling water and require that the hydrophobic agent treated tea bag paper exhibits no appreciable water climb, no substantial loss of infusion characteristics and less than 10% mechanical seam failure. (Malcolm Decl. para. 24).

## IV.    ARGUMENT

### A.    DEFENDANTS' BURDEN OF PROOF ON SUMMARY JUDGMENT

1.     **United States patents are presumed valid, a presumption that does not change, and one attacking validity has the burden of proving facts supporting such a conclusion by clear and convincing evidence**

35 U.S.C. §282 provides in pertinent part:

A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim.

This presumption of validity *does not change,* nor is it weakened or dissipated, even with respect to prior art that was *not* considered by the U. S. Patent and Trademark Office ("PTO"). Defendants, however, have cited (Def. Mem., page 9) the case of *Monaplastics, Inc. v. Caldor, Inc.,* 264 F. Supp. 57, 62 (D. Conn. 1966), citing *Monroe Auto Equipment Co. v. Superior Industries, Inc.,* 332 F.2d 473, 481 (9th Cir. 1964), and quoted at length from that case its holding that the presumption of validity of a United States patent "is *weakened* where the relevant prior art was not considered by the Patent Office. * * * [and that] one pertinent example of unconsidered prior art is not only sufficient basis to *dissipate* the presumption of validity, but may render the patent invalid." Defendants know better. To reach back 40 years to a long discredited and overruled 9th Circuit case to buttress their argument is inexcusable.

The *Monroe Auto Equipment Co.* decision with respect to the presumption of validity has not been good law for over 20 years, if it ever was. The presumption of validity of a United States patent does *not* change and rests on the party asserting invalidity. *Uniroyal, Inc. v. Rudkin-Wiley Corporation,* 837 F.2d 1044, 1050 (Fed. Cir. 1988). The burden of proof required to overcome the presumption (*clear and convincing evidence*) is *not* reduced even when prior art, which was *not* considered by the PTO, is presented to the court. *Id.*; *Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1549 (Fed.Cir. 1983); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350,

1360 (Fed. Cir. 1984); *Loctite Corp. v. Ultraseal, Ltd.*, 781 F.2d 861, 872 (Fed Cir. 1985); *Abbott Laboratories v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1357 (Fed. Cir. 2003) ("The presumption of validity remains the same whether or not the art relied upon at trial was before the examiner. (citing *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355-56 (Fed.Cir. 2000)). ("However, the fact that a skilled examiner passed upon that very reference during prosecution may be a negative factor in determining whether the challenger has met the clear and convincing evidence burden. *Id*"). *(citing Alco Standard Corp. v. Tenn. Valley Auth.*, 808 F.2d 1490, 1497 (Fed. Cir. 1986)). *Schumer v. Laboratory Computer Systems, Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002) (citing *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1036 (Fed. Cir. 2001).

### 2.    On summary judgment the evidence of the non-movant is to be believed and all justifiable inferences must be drawn in his favor

"Summary judgment is appropriate when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed.R.Civ.P. 56(c)" *Crown Operations International, Ltd. v. Solutia, Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325-36 (1986)). "On summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, (citing *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962), with doubts resolved in favor of the nonmovant" (citing *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 582 (1976); *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1274 (Fed. Cir. 1995). *Id.* "In rendering a decision on a motion for summary judgment, a court must 'view the evidence presented through the prism of the substantive evidentiary burden' that would inhere at trial." *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 880 (Fed. Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 254, 106 S.Ct. 2505), "On summary judgment, all justifiable inferences are

made in favor of the nonmovant," (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

       **3.**      **Defendants have the *additional* burden of overcoming the deference due to the PTO with respect to both the Noiset and Kelley patents**

While the burden on Defendants remains that of clear and convincing evidence, the burden is even *higher* than that with respect to the Noiset and Kelley patents, two of the references cited by Defendants as anticipating the '997 patent. Both of these references were cited by the '997 patent applicants in an Information Disclosure Statement ("IDS") filed in the PTO (Tab E, page 38), and both were considered by patent examiner, James Bell, on September 29, 1994, during the prosecution of the '997 patent. The Noiset patent, moreover, was incorporated by reference into the '997 patent ('997 patent, col. 6, lines 39-42) and made a part thereof. During prosecution of the '997 patent, claims were rejected by the PTO over a combination of the Noiset and the Kelley patents on the basis of *obviousness* under 35 U.S.C. §103 (not anticipation) in an office action, dated October 11, 1994 (Tab E, page 40). Following the '997 patent applicants' response of January 11, 1994 to the office action and the submission of an amendment to the claims (Tab E, page 44), the '997 patent was allowed to issue. The Noiset and Kelley patents were discussed in detail in the response, the claims were amended to include the term "high molecular weight," and a letter from B. F. Goodrich, the manufacturer of the Hycar binder products referred to in the '997 patent, was submitted, which described these products as being "highly crosslinked" and having an average molecular weight of greater than 500,000. The PTO office action and the response thereto contained detailed and thoughtful analysis of the application claims and the prior art. The PTO examiner thereafter allowed the claims and the '997 patent issued.

As to the Kelley and Noiset patent references, therefore, the Defendants must carry "the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." *American Hoist & Derrick Company, supra,* at 1359; *Bayer AG v. Schein Pharmaceutical, Inc.,* 129 F. Supp.2d 705, 713-14 (D. N.J. 2001) ("The case law seems to suggest that this presumption is even stronger when the governmental determination was made by an agency like the PTO whose examiners are presumed to have expertise in the subject matter of the patents they examine."); *See also, Polaroid Corporation v. Eastman Kodak Company,* 789 F.2d 1556, 1560 (Fed. Cir. 1986) ("[t]he '821 patent was among the references disclosed to the Examiner, and was fully discussed in Polaroid's remarks during prosecution. Kodak's burden in establishing invalidity is thus heavier. . ."); *Abbott Laboratories v. Syntron Bioresearch Inc.,* 334 F.3d 1343, 1357 (Fed. Cir. 2003) ("[T]he fact that a skilled examiner passed upon that very reference during prosecution may be a factor in determining whether the challenger has met the clear and convincing evidence burden."). In accordance with these cases, the burden that Defendants must carry with respect to any evidence of invalidity based on the Noiset and Kelley patents is even greater than "clear and convincing."

The Yadlowsky application, unlike the Noiset and Kelley patents, was *not* considered by the PTO during the prosecution of the '997 patent. "However, whether or not the PTO considered the art upon which the party asserting invalidity relies, the burden upon that party of proving invalidity by clear and convincing evidence remains the same." *Stash, Inc. v. Palmgard International, Inc.,* 937 F. Supp. 531, 539 (D. Md. 1996) (*American Hoist & Derrick Company, supra,* at 1359-60; *See also, Abbott Laboratories, supra,* 334 F.3d at 1357). Therefore, the burden of proof imposed on

Defendants in connection with this motion for summary judgment may be summarized as follows: Clear and convincing with respect to the Yadlowsky application and clear and convincing *plus* with respect to the Noiset and Kelley patents.

> 4. **Anticipation requires that each element of a claim must be found in a *single* reference; if a claim element is argued to be inherent, then the "inherent" element must *necessarily be present* in the prior art each and every time**

Anticipation under 35 U.S.C. §102(b) requires the disclosure in a *single* piece of prior art of each and every element of a claimed invention. *Electro Med. Sys. S.A. v. Cooper Life Sciences,* 34 F.3d 1048, 1052 (Fed. Cir. 1994). Whether such prior art is anticipating is a question of fact. *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed. Cir. 1991). "A single prior art reference anticipates a patent claim if it expressly or inherently describes each and every limitation set forth in the patent claim." *Trintec Industries, Inc. v. Top-U.S.A. Corporation,* 295 F.3d 1292, 1295 (Fed. Cir. 2002) (citing *Verdegaal Bros., Inc. v. Union Oil Co.,* 814 F.2d 628, 631 (Fed. Cir. 1987). The Defendants *concede* in their motion for summary judgment that *none* of the three prior art references cited as anticipating the '997 patent contains a full and complete disclosure, by itself, of *all* of the limitations or elements of the claims of the patent. Defendants rely upon the principle of inherency to supply the necessary elements that are missing in the references.

It is clear that a prior art reference may anticipate without disclosing a feature of the claimed invention if that missing feature is *necessarily present* each and every time. *Continental Can Co. v. Monsanto Co.,* 948 F.2d 1264, 1268 (Fed. Cir. 1991). The inquiry, therefore, is whether the missing feature is *necessarily* present each and every time. "To serve as an anticipation when the reference is silent about the asserted inherent characteristic, such gap in` the reference may be filled with recourse to extrinsic evidence. *Such evidence must make clear that the missing descriptive matter is*

*necessarily present in the thing described in the reference*, and that it would be so recognized by persons of ordinary skill." *Continental Can Co. v. Monsanto Co.*, 948 F.2d at 1268 (emphasis added). It is also clear that mere probabilities or possibilities of the presence of the "inherent" element are insufficient to supply the missing feature.

> Inherency . . . may not be established by probabilities or possibilities. The mere fact that a certain thing *may* result from a given set of circumstances is not sufficient. . . . If, however, the disclosure is sufficient to show that the natural result flowing from the operation as taught would result in the performance of the questioned function, it seems to be well settled that the disclosure should be regarded as sufficient."

(*Continental Can, supra*, at 1269.)

"Typically, testimony concerning anticipation must come from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference." *Dayco Products, Inc., v. Total Containment, Inc.*, 329 F.3d 1358, 1369 (Fed. Cir. 2003) (citing *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002)). Nowhere in their copious submission have Defendants made such a showing, as is required to establish inherency.

### 5.     The invention must be enabled

"To serve as an anticipating reference, the reference must enable that which it is asserted to anticipate. . . . 'To anticipate a claim, a reference must disclose every element of the challenged claim and enable one skilled in the art to make the anticipating subject matter.'" *Elan Pharmaceuticals, Inc. v. Mayo Foundation For Medical Education And Research*, 346 F.3d 1051, 1054 (Fed. Cir. 2003). "Enablement requires that 'the prior art reference must teach one of ordinary skill in the art to make or carry out the claimed invention without undue experimentation.'" *Id.* What this means is that "[I]t is insufficient to name or describe the desired subject matter, if it cannot be produced without undue experimentation." *Id.* at 1055. The criteria for enablement were discussed

in *In re Donohue*, 766 F.2d 531 (Fed. Cir. 1985), in which the Court held that the prior art "must sufficiently describe the claimed invention to have placed the public in possession of it." The Court held that "[s]uch possession is effected if one of ordinary skill in the art could have combined the publication's description of the invention with his own knowledge to make the claimed invention. Accordingly, even if the claimed invention is disclosed in a printed publication, that disclosure will not suffice as prior art if it is not enabling." *Id.* at 533.

The Court of Appeals for the Federal Circuit recently vacated a summary judgment of anticipation by inherency in *Toro Company v. Deere & Company*, 355 F.3d 1313 (Fed. Cir. 2004) for, among other reasons:

> "First, the district court never expressly construed limitation (c) of the '168 patent [in suit]. . . . Second, the district court did not address a critical question for inherent anticipation: whether, as a matter of fact, practicing the '516 invention [prior art] necessarily featured or resulted in limitation (c) of the '168 patent [in suit]. . . . *Deere did not present any direct evidence of the necessary features or results of '516 [prior art] embodiments, such as testing results*. . . . the critical question will be whether the '516 [prior art] patent sufficiently describes and enables one or more embodiments -- whatever the settings of their operational features -- that necessarily include or result in the subject matter of limitation (c)." (emphasis added).

Defendants herein have presented no evidence in the way of testing or testimony of experts or persons skilled in the art to support any of the conclusions that they have asserted with respect to the scope and content of the prior art. Instead, they base their motion strictly upon the argument of counsel. This hardly meets the heightened standard of clear and convincing evidence required when asserting invalidity of a United States patent. Moreover, Defendants have not presented any evidence that the alleged inherent features are *necessarily present* in the alleged invalidating prior art and that they would produce the same result each and every time. As a result, the arguments

presented by Defendants are legally flawed and utterly fail to support their claims of inherency with evidence. Defendants' request for summary judgment must be denied.

**B.     NONE OF THE CITED PATENT REFERENCES ANTICIPATES THE '997 PATENT**

    **1.     Defendants have improperly construed the '997 patent claims to render certain elements inoperative or inconsequential to cover their absence from the cited prior art references**

        **a)     The Defendants have improperly divided and/or grouped the '997 patent claims to suit their purpose in finding anticipation**

The Defendants, in their Statement of Material Facts, have grouped the '997 patent claims into a "preamble," first, second and third elements, and a "properties" group. In the Statement their so-called preamble reads: "A fibrous web suited for making infusion packages for brewing beverages and *exhibiting improved resistance to the failure of a mechanical seam* therein, said web comprising". (emphasis added). In their Memorandum, Defendants have broken down the '997 patent claims in a claim chart so that the so-called "preamble" now reads: "A fibrous web suited for making infusion packages for brewing beverages". The next element of the claim in Defendants' claim chart reads: "and *exhibiting improved resistance to the failure of a mechanical seam* therein". (emphasis added). In doing so, Defendants have divided what is a unitary concept, i.e., a fibrous web for brewing beverages having improved seam strength, into two parts. Thus, Defendants were able to find the first part in one place in the Kelley patent, while finding the second part in another.

If one looks at the Kelley patent where Defendants have indicated finding improved seam strength in their claim chart, one will see that Kelley notes that "[b]ecause of the pressure-sensitive character of the *adhesive*, various surfaces and materials to be bonded with the polyblend