UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:03-CV-0169 (AVC) |
| | ) |
| SCHOELLER & HOESCH, N.A., INC. and P. H. GLATFELTER COMPANY, | ) ) |
| | ) |
| Defendants. | ) |
| | ) |

### DECLARATION OF MICHAEL J. DONNAN

I, Michael J. Donnan, declare as follows:

1. I hold a BSc(Hons) degree in chemistry awarded by the University of Manchester, United Kingdom. I am qualified as a Registered Patent Agent in the United Kingdom and was elected a Fellow of the Chartered Institute of Patent Agents in the United Kingdom in 1977. I am also a European Patent Attorney and am on the list of professional representatives before the European Patent Office. I have been employed since 1969 by the firm of Carpmaels & Ransford, 43-45 Bloomsbury Square, London WC1A 2RA, United Kingdom.

2. European Patent No. 0 632 163, the registered proprietor of which is Ahlstrom Windsor Locks LLC (hereinafter "the patent proprietor"), has been opposed by J R Crompton Limited (hereinafter "the opponent") under Article 99 of the European Patent Convention ("EPC"). Following the filing of the opponent's Notice of Opposition and the filing of the patent proprietor's observations in response thereto, the parties were summoned to oral proceedings before the Opposition Division, which proceedings took place on 6th May 2004. I attended those oral proceedings in my capacity as authorised representative of the patent proprietor. The European patent attorney acting on behalf of the opponent had given prior notice that the opponent would not be represented at those oral proceedings.

3. I have been asked to comment on an entry in section 4 of the minutes of the oral proceedings, which entry reads:

> iii) The proprietor admits that subject-matter of claim 1 differs from the disclosure of D3 only in that the web is suitable for making mechanical seals whereas the web according to D3 is not.

I enclose as Exhibit A a copy of those minutes and the annexes thereto. The annex entitled "Documents for the maintenance of the patent as amended", as provided with the official communication dated 01.06.2004 (i.e. 1st June 2004), was puzzling to me in that it referred to the main request and auxiliary requests 1 and 2 (which do not form the basis of the amended patent as upheld by the Opposition Division) and to an auxiliary request 4 (when

only auxiliary requests 1-3 were filed). I therefore have attached a copy of an online version, which appears to me to be the correct version.

4.   The reference to D3 in the said entry of the minutes is a reference to US Patent No. 3 616 166 (Kelley), a copy of which is attached as Exhibit B.

5.   The taking of minutes is governed by Rule 76 EPC. Rule 76(1) requires that minutes of oral proceedings and of the taking of evidence shall be drawn up containing the essentials of the oral proceedings or of the taking of evidence, the relevant statements made by the parties, the testimony of the parties, witnesses or experts and the result of any inspection. A copy of Rule 76 EPC is attached as Exhibit C. The said rule does not require the minutes to be an exact transcript of the proceedings.

6.   I am also enclosing herewith, as Exhibit D, a copy of the interlocutory decision in the opposition proceedings. As stated on the front page of that document, the Opposition Division decided that:

> Account being taken of the amendments made by the patent proprietor during the opposition proceedings, the patent and the invention to which it relates are found to meet the requirements of the Convention.

7.   Attached to the decision is an Annex (Sheets 1-9) headed (at the very top of each sheet) "Grounds for the decision". This annex is in two parts, the first part headed "Summary of Facts and Submissions" and a second part headed "Reasons for the Decision". On sheets 3 to 5 (items 4.1 to 4.3), there is presented the Opposition Division's reasoning regarding the relevance of document D3 to the main request. On sheet 4, lines 8-10 of item 4.2, there is a sentence reading:

> Thus the subject-matter of claim 1 would differ from the porous web of D3 in that it is suited for making infusion packages with mechanical seams.

As I interpret that sentence, it does not state that the subject matter of claim 1 would differ from the porous web of D3 "only" in that it (i.e. the claimed subject matter) is suited for making infusion packages with mechanical seams.

8.   It would, I believe, have been inconsistent to have presented the distinction alluded to in the above extract from the minutes as the only difference, since I had already filed a response to the opponent's Notice of Opposition, which response had urged what I consider to be other, additional points of distinction. As corroboration, I attach hereto, as Exhibit E, a copy of the patent proprietor's observations dated 14th January 2003 as filed at the European Patent Office. Pages 7-8, in particular paragraphs 39-44, contain a discussion of the Kelley US patent (referred to as 'D3'). In paragraph 41 it was argued that there is no teaching or suggestion that a fibrous web material treated with the binder of D3 will satisfy the limits placed on the water climb performance and on the mechanical seam failure rate prescribed by claim 1 and claim 12 of the European patent. Furthermore, as summarised in paragraph 43 of that document, it was argued that D3 teaches that the binder should not be applied across the entire area of the web material, and therefore teaches away from the present invention, as claimed in claim 1 of the European patent, which requires the web material to be impregnated throughout its extent with the hydrophobic treating system.

9.   An appeal has been filed by the patent proprietor against the Opposition Division's rejection of the claims of the European patent as granted. The arguments contained in Exhibit E, to which reference has been made above, have been maintained, albeit in an augmented version, in the patent proprietor's Statement of Grounds of Appeal. As

corroboration, I enclose, as Exhibit F, a copy of that Statement, of which paragraphs 8-15 discuss the Kelley US patent (referred to as 'D3').

10.   I have no contemporaneous notes recording the statements I made during the discussion of D3 at the oral proceedings before the Opposition Division and, given the time that has elapsed since the oral proceedings, the statements below are based upon my current recollection of the proceedings.

11.   The Opposition Division comprised a chairperson, a first member and a second member. I was not aware of any sound recording apparatus being used in the oral proceedings on 6th May 2004 or of any official stenographer to take down a verbatim report. To the best of my knowledge, the minutes of the oral proceedings in question were compiled in the customary manner from notes taken down during the proceedings by the second member. The minutes (Exhibit A) identify the minute-writer as Goers B, who is named as the 2nd member of the opposition division.

12.   I do not recall stating during those oral proceedings that the subject matter of claim 1 of the European patent differs from the disclosure of D3 only in that the web according to the European patent is suitable for making mechanical seals whereas the web according to D3 is not suitable for making mechanical seals.

   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on   29th November 2004

(Signature)

M. J. Dorman