A

STATEMENT DUE: 01.10.04



| | | | |
|---|---|---|---|
| ✉ EPA/EPO/OEB<br>D-80298 München<br>☎ +49 89 2399-0<br>TX 523 656 epmu d<br>FAX +49 89 2399-4465 | **Europäisches<br>Patentamt**<br><br>Generaldirektion 2 | **European<br>Patent Office**<br><br>Directorate General 2 | **Office européen<br>des brevets**<br><br>Direction Générale 2 |

Mercer, Christopher Paul
Carpmaels & Ransford
43, Bloomsbury Square
London WC1A 2RA
ROYAUME-UNI

EXHIBIT A



RECEIVED
- 9 JUN 2004
CARPMAELS & RANSFORD
ACTIONED ..................

| Application No. / Patent No. | Ref. | Date |
|---|---|---|
| 94 303 680.6 - 2113 / 0632163 / | P12227EP | 01.06.2004 |
| Proprietor<br>Ahlstrom Windsor Locks LLC | | |

**Provision of a copy of the minutes in accordance with Rule 76(4) EPC**

The attached copy of the minutes of the oral proceedings is sent to you in accordance with Rule 76(4) EPC.



Meyer, C
**Formalities Officer**
Tel. No.: +49 89 2399 - 8134

Enclosure(s):    Copy of the minutes (Form 2309)

| Europäisches Patentamt | European Patent Office | Office européen des brevets |
|---|---|---|
| GD2-Einspruch | DG2 - Opposition | DG2 - Opposition |

Application No.: | 94 303 680.6 |

Patent No.:     EP-B-0632163

## Minutes of the oral proceedings before the OPPOSITION DIVISION

The proceedings were public.

**Proceedings opened** on   06.05.2004   at   9:00   hours

**Present as members of the opposition division:**

Chairman:       CONNOR M T
1st member:     PERSICHINI C
2nd member:     GOERS B

Minute writer:  GOERS B

**Present as or for the party or parties:**

- For the Proprietor(s):     Ahlstrom Windsor Locks LLC

    DONNAN M J (representative)
    TOTONIS M M (Intellectual property officer),
    VIAZMENSKY H (inventor, technical expert)

- For the Opponent 1:        J. R. CROMPTON LIMITED

The identity of the person/s (as well as, if applicable, that of the witness or witnesses) and, where necessary, the authorisation to represent/authority to act were checked.

The chairman confirmed that ATKINSON P B (representative of the Opponent) who had not appeared had been duly summoned.

Essentials of the discussion and possible relevant statements of the parties:

| Bescheid/Protokoll (Anlage) | Communication/Minutes (Annex) | Notification/Procès-verbal (Annexe) |
|---|---|---|
| Datum/Date/Date 01.06.2004 | Blatt/Sheet/Feuille 1 | Anmelde-Nr.:/Application No.:/Demande n°: 94 303 680.6 |

1. The chairman noted that the Opponent who was duly summoned was not present as informed in its letter dated 30.04.04. The oral proceedings took place pursuant to Rule 71(2) EPC.

2. The Patent Proprietor maintained all requests, i.e. the Main Request (MR: patent as granted) and Auxiliary Requests 1-3 (AR1-AR3).

3. The Patent Proprietor was informed that the Opposition Division has no objections under Article 83 and 123(2) EPC concerning the main request.

4. Novelty of the MR over the disclosure of D3 was discussed.

   The Opposition division referred to D3 which discloses a web material impregnated with a "polyblend" material over the entire surface (col. 5, ll. 18-21) in a range of 20-100 wt. % comprising e.g. ethyl and butyl acrylate polymer, thus anticipating all the features of claim 1 (MR).

   The Patent Proprietor presented the following arguments:
   i) The disclosure of D3 is focused on a pressure sensitive adhesive material (cf. D3 col. 4, ll 38-46 and 58-65).
   ii) Although D3 teaches the fabrication of e.g. tea bags from material coated with the adhesive, this teaching is exclusively focused on heat sealable tea bags but not on mechanically sealable ones (col. 5, ll 64-68).
   iii) The proprietor admits that subject-matter of claim 1 differs from the disclosure of D3 only in that the web is suitable for making mechanical seals whereas the web according to D3 is not.
   iv) The technical expert alleged, that the material according to D3 and heat sealable materials in general may not be mechanically sealed as problems with the processing of the heat sealing material would occur (e.g. soiling of the equipment with adhesive). According to the technical expert, the processing of tea bags using heat sealable webs necessarily requires the presence of a "barrier layer" not disclosed in D3. It was further suggested that the disclosure of D3 could not be carried out because of the absence of any such barrier layer.

| Bescheid/Protokoll (Anlage) | Communication/Minutes (Annex) | Notification/Procès-verbal (Annexe) |
|---|---|---|
| Datum Date Date 01.06.2004 | Blatt Sheet Feuille 2 | Anmelde-Nr.: Application No.: 94 303 680.6 Demande n°: |

5   Break 9:25-9:40

6   The Opposition Division announced the following decision: The subject matter of claim 1 (MR) does not fulfil the requirements of Article 54(1)&(2) EPC in view of the disclosure of document D3.

7   The basis of claims 1 and 12 (AR1) in the original disclosure according to Article 123(2) EPC was discussed.

Interrogated on the meaning of the wording "web material of the non-heat seal type", the Patent Proprietor stated that
i)   the expression in claim 1 (AR1) "web material of the non heat-seal type" refers to the final product (i.e. after impregnation) and not the starting material. The basis in the originally filed application was given on p. 3, ll. 32-34 ("webs are of the non heat-seal variety"). The Patent Proprietor failed to give any further basis.
ii)  the ethyl and butyl acrylate polymers ("polyblend") according to D3 form a thermoplastic material with specific properties, which the ethyl and butyl acrylate polymers according to the patent in suit do not have.

The Opposition Division raised the following points:
i)   On p. 3, ll 29-32 of the originally filed application, the term "webs" refers to the non impregnated (prior art) web materials.
ii)  The subject matter of claim 12 defines a process, wherein a "web material of the non-heat seal type" is subsequently impregnated and thus defines the starting material.

8   Break: 9:55 - 10:10

9   The Opposition Division announced the following decision: The subject matter of claim 1 (AR1) does not fulfil the requirements of Article 123(2) EPC.

The Opposition Division further draws the Patent Proprietors attention to the fact that the same objection applies for claim 1 (AR2) since it comprises the same wording as AR1.

| Bescheid/Protokoll (Anlage) | Communication/Minutes (Annex) | Notification/Procès-verbal (Annexe) |
|---|---|---|
| Datum/Date: 01.06.2004 | Blatt/Sheet/Feuille: 3 | Anmelde-Nr./Application No./Demande n°: 94 303 680.6 |

10  Break: 10:15 - 10:20

11  The Patent Proprietor maintained the AR2 without giving further arguments.

12  The Opposition Division announced the following decision: The subject matter of claim 1 (AR2) does not fulfil the requirements of Article 123(2) EPC.

13  The Opposition division did not raise any objection against AR3. The Patent Proprietor was asked to adapt the description to the subject matter of AR3.

14  Break: 10:25 - 11:25

15  The Patent Proprietor submitted amended description pages 2, 3 and 5 and an amended title (both annexed to the minutes).

   The Opposition Division announced the following decision: The subject matter of claims 1-21 (AR3) fulfills the requirements of Article 54, 56, 83 and 123(2) EPC.

   The amended description fulfils the requirements of Article 123(2) EPC.

Sheet 2/1                                                                  Application No.: 94 303 680.6

After deliberation of the opposition division,

- the chairman announced the following **decision**:

"**Account being taken of the amendments made by the patent proprietor during the opposition proceedings, the patent and the invention to which it relates are found to meet the requirements of the European Patent Convention. The currently valid documents are those according to the Claims of auxiliary request 3.**

The party/parties was/were informed that the minutes of the oral proceedings and a written reasoned decision (including an indication of the possibility of appeal) will be notified to him/them as soon as possible.

The chairman **closed the oral proceedings** on   06.05.2004   at   11:30   hours.



signed:                                                                    signed:

CONNOR M T                                                          GOERS B
. . . . . . . . . . . . . . . . .                                         . . . . . . . . . . . . . . . . .
Chairman                                                                Minute Writer

Enclosure(s):
Amended Title (1 page), amended description (3 pages)
Form 2339.4

Annex to the minutes   Page   1   Application No.: 94 303 680.6

## Documents for the maintenance of the patent as amended

**Main Request**

**Description, Pages**

2-5                           of the patent specification

**Claims, Numbers**

1-21                          of the patent specification

**Auxiliary Request 1**

**Description, Pages**

4                             of the patent specification
2, 3, 5                       filed during Oral proceedings on 06.05.2004

**Claims, Numbers**

1-21                          received on 17.01.2003 with letter of 14.01.2003

**Auxiliary Request 2**

**Description, Pages**

2-5                           of the patent specification

**Claims, Numbers**

1-16                          received on 17.01.2003 with letter of 14.01.2003

**Auxiliary Request 3**

**Description, Pages**

4                             of the patent specification

Annex to the minutes   Page   2   Application No.: 94 303 680.6

| | |
|---|---|
| 1+, 2, 3, 5 | filed during Oral proceedings on 06.05.2004 |

**Claims, Numbers**

| | |
|---|---|
| 1-21* | received on 17.01.2003 with letter of 14.01.2003 |

**Auxiliary Request 4**

**Description, Pages**

| | |
|---|---|
| 2-5 | of the patent specification |

**Claims, Numbers**

| | |
|---|---|
| 1-16 | received on 17.01.2003 with letter of 14.01.2003 |

(19) Europäisches Patentamt
European Patent Office
Office européen des brevets

(11) **EP 0 632 163 B1**



(12) **EUROPEAN PATENT SPECIFICATION**

(45) Date of publication and mention of the grant of the patent:
29.08.2001 Bulletin 2001/35

(51) Int Cl.7: **D21H 27/08, B65D 81/00**

(21) Application number: 94303680.6

(22) Date of filing: 23.05.1994

(54) ~~Process of producing porous web materials used for making~~ Infusion packages for brewing beverages ~~and the web materials thus produced~~ and process for making such packages

~~Verfahren zur Herstellung von porösen Geweben für Aufgussbeutel, und hergestellte Gewebe~~

Procédé de fabrication de feuilles poreuses ~~utilisées~~ pour des emballages d'infusion, et feuilles ainsi produites

(84) Designated Contracting States:
DE FR GB

(30) Priority: 01.07.1993 US 86673

(43) Date of publication of application:
04.01.1995 Bulletin 1995/01

(73) Proprietor: THE DEXTER CORPORATION
Windsor Locks, CT 06096 (US)

(72) Inventors:
• Scott, Peter C.
  Enfield, Connecticut 06082 (US)
• Viazmensky, Helen
  South Windsor, Connecticut 06074 (US)
• Wolcheck, Nicholas, Jr.
  Suffield, Connecticut 06078 (US)

(74) Representative: Mercer, Christopher Paul et al
Carpmaels & Ransford
43, Bloomsbury Square
London WC1A 2RA (GB)

(56) References cited:
EP-A- 0 170 461    US-A- 3 386 834

Remarks:
The file contains technical information submitted after the application was filed and not included in this specification

notice to the European Patent Office of opposition to the European patent granted. Notice of opposition shall be filed in a written reasoned statement. It shall not be deemed to have been filed until the opposition fee has been paid. (Art. 99(1) European Patent Convention).

Printed by Jouve, 75001 PARIS (FR)

EP 0 632 163 B1

Description

## BACKGROUND OF THE INVENTION

[0001] The present invention relates generally to ~~fibrous web materials and more specifically is concerned with a process of producing porous web materials used for making~~ mechanically sealed infusion packages for brewing beverages, such as tea, coffee and the like ~~and with the web materials thus produced~~, and to a process for making such infusion packages.

[0002] It has generally been the practice in making individual cups of tea to either place the bag of tea or the like in a cup containing boiling water, or alternatively, to place the bag in an empty cup and subsequently add the boiling water. In either event, the tea bag generally tends to inflate and float to the top of the water for a time despite the high porosity of the infusion paper utilized in making the tea bags. This inflation or "ballooning effect" is generally attributable to entrapped gases and vapors within the bag that are unable to escape due to a very thin film of water surrounding the bag. The entrapped gases, both condensible and non-condensible, tend to build up a positive pressure within the bag, frequently causing opening of the seams of mechanically sealed bags, thus undesirably discharging the tea leaves into the brew and defeating the purpose of using the bag. In the mechanically sealed tea bags, the edges of the web material are brought together, folded a number of times, and the multiple fold is crimped to provide a mechanical seam securing the two edges of the web material. The mechanically sealed bags are to be distinguished from heat sealed bags where a heat seal material, usually present within the web, is subject to heat and pressure to form a heat sealed seam.

[0003] Although seam failure and leakage of tea leaves has been evidenced for some time, it has been noticed that the incidence of failure was higher when certain strength imparting binder systems were used in the infusion web material. For example, increased seam failure has been noted with binder systems using carboxy methyl cellulose (CMC) and a reaction product of epichlorohydrin and a polyamide sold under the trade name Kymene as compared with the viscose (cellulose xanthate) bonding system widely used prior thereto. Changing the binder to latex binder materials that impart comparable tensile strength to the web material, such as ethyl vinyl acetate, cross linked polyvinyl alcohol or polyvinyl chloride, appear to provide no improvement in seam integrity and may even result in significantly higher instances of seam failure and leakage.

[0004] The treatment of infusion web material in discontinuous areas with water repellent material is disclosed by Noiset et al in U.S. Patent 3,386,834 as one way of minimizing the ballooning effect. The repellent treated areas are isolated spots covered from 0.1 to 40 percent of the surface of the infuser material. Additionally, Elston et al in U.S. Patent 4,289,580 achieved improved infusion in heat seal tea bags when using synthetic pulp as the heat seal phase, provided that the heat seal phase is disrupted over 10 to 75 percent of the total exposed surface area. That patent notes the disadvantages with respect to infusion properties when the hydrophobic synthetic pulp phase is not disrupted. The permeability of the web material is reduced together with its wettability, and the infusion is substantially retarded or inhibited.

## SUMMARY OF THE INVENTION

[0005] ~~In accordance with one aspect of the present invention,~~ It has been found that the above and related disadvantages can be avoided and mechanical seam integrity can be enhanced by treating the entire web material with a latex dispersion of a hydrophobic agent to provide a porous tea bag material which exhibits an extremely low absorbency and wettability as measured by standard water climb test procedures coupled with a retention of its infusion characteristics. The use of such material prevents the buildup of differential pressures on opposite sides of the web and facilitates the passage therethrough of condensible and noncondensible gases without adversely affecting the ability of such material to confine the dispersion of fine solid particles. The present invention achieves these characteristics by employing a hydrophobic treatment system that saturates and completely impregnates the entire web material. Although the use of a hydrophobic agent on the entire web material intended for use as an infusion material may be contra-indicated, as set forth in Elston et al U.S. Patent 4,289,580, it has been found in accordance with the present invention that infusion is not adversely impacted and resistance to mechanical seam failure is significantly enhanced.

[0006] Other features and advantages of the present invention will be in part pointed out more in detail hereinafter.

[0007] These and related advantages are achieved by utilizing an infusion web exhibiting improved resistance to the failure of a mechanically-crimped seam therein. Specifically, the present invention provides, in one aspect thereof, a ~~porous fibrous web material, suited for making~~ infusion packages which infusion package is made from a porous fibrous web material, for brewing beverages and which exhibits improved resistance to the failure of a mechanical seam therein, said web material being impregnated throughout its extent with one percent or more by weight of a hydrophobic treating system, in particular a hydrophobic agent, preferably comprising a strength imparting hydrophobic binder, the impregnated web exhibiting a water climb of not more than 0.5 inch (13 mm) over a period of 400 seconds when measured using water at a temperature of about 100°C and no

2

failure (and preferably no failure whatsoever) in the mechanical seam of tea bags constructed from the said web material upon exposure to boiling water. A latex dispersion of the hydrophobic agent preferably is applied to the entire web as a saturating solution.   <−>

[0008]  A better understanding of the invention will be obtained from the following detailed disclosure of the article and the desired features, properties, characteristics, and the relation of elements as well as the process steps, one with respect to each of the others, as set forth and exemplified in the description and illustrative embodiments.

DESCRIPTION OF A PREFERRED EMBODIMENT

[0009]  Broadly, the present invention ~~comprises~~ *utilizes* a continuous, infuser web material impregnated throughout its extent with a hydrophobic agent, preferably in the form of a latex binder system. In order that the invention may be more clearly understood and for purposes of simplicity and brevity of discussion, the present invention will be discussed with relation to its use as tea bags and the like. The infuser tea bag webs are generally made of fibrous materials that are free from perforations or punctures yet possess a high degree of porosity and particularly are those wet laid fibrous materials made on conventional papermaking machines.

[0010]  As used herein the term "hydrophobic" refers to the characteristic of the treating agent that imparts to the web material a resistance to, or the ability to avoid, wetting with water. The hydrophobic material imparts an aversion to or lack of affinity for water and resists the passage of liquid water into the structural components of the paper through capillary action. Since the absorbent character of the fibrous web material is best measured by its "water climb", the absence of such water climb is a primary indicator of its hydrophobic character. The water climb is a measure of the rate at which the web material absorbs water by capillary action, that rate being a relationship between distance and time. The rate is reported in units of time, such as seconds, needed to travel a fixed distance, such as one inch (25.4 mm). Also, since hot water typically is used to brew tea, the water climb is given for both hot and cold water, with the hot water value being particularly relevant for this application.

[0011]  The present invention in its application to tea bags permits the use of commercially available, self-supporting infuser webs. These webs are generally soft, tissue-thin fibrous materials characterized by light weight but, when used as described hereinbefore, possess the disadvantage of somewhat limited seam integrity in boiling water. The webs are of the nonheat-seal variety and require mechanical fastening, i.e., folding and crimping, for the formation of the tea bag. Typical are the loosely formed, low density papers made of long natural fibers as described in Osborne U.S. Patents 2,045,095 and 2,045,096.

[0012]  The fibers utilized in these webs may be of any of the well-known papermaking fibers or mixtures thereof. They should be those approved for use in food and beverage applications and may include natural fibers such as jute, bleached or unbleached kraft, abaca, sisal, and other wood fibers as well as lesser amounts of approved synthetic fibers.

[0013]  A variety of infuser webs may be made from these fibers and utilized in accordance with the present invention; however, for purposes of discussion, the invention will be described ~~in its application~~ *with reference to* commercially available infuser web materials. It will be appreciated that such materials, while being extremely porous and highly wettable, are generally free from perforations and will not permit the fine dust particles of the tea to filter through the bags made therefrom.

[0014]  According to the ~~preferred aspect of the~~ present invention, the continuous infuser webs are treated throughout their entire extent with a suitable hydrophobic agent which, when set or cured, is insoluble in aqueous solutions and unaffected by boiling water. The hydrophobic agents utilized must provide not only a resistance to wetting or aqueous absorption as measured by water climb, but also must provide this property without adversely affecting the infusion characteristics of the web throughout the treated areas. Additionally, these water repellent agents utilized according to the invention should exhibit an affinity for being readily absorbed into the fibers of the web while substantially retaining the porosity of the web. Accordingly, they are distinguished from materials which form solid films over the treated area.

[0015]  Those materials found most suited for this type of application are strength imparting binders used in place of the binder systems employed heretofore or as supplemental treatments in addition to the conventional binder. When employed as substitutes for prior binders, they also must be effective to provide the strength imparting characteristics of the conventional binder systems. Those found to be particularly effective as hydrophobic binders are the materials generally categorized as acrylic polymers and, more particularly, as latex dispersions or emulsions of alkyl acrylate polymers and copolymers. These materials are preferred due to their ability to substantially permeate the filaments or fibers of the infuser web without blocking or interfering with the porous openings between the fibers. Although various alkyl acrylates, including mixtures thereof, may be utilized, those used must be hydrophobic and prevent the treated web from exhibiting absorptive water climb in both hot and cold water. The preferred materials are alkyl acrylates such as ethyl acrylate and butyl acrylate polymers, copolymers and interpolymers, such as the ethyl acrylate copolymer and butyl acrylate copolymer sold by B.F. Goodrich Company under the respective trade name designations HYCAR 26-315 and 26-373 as well as the copolymer of ethyl acrylate and butyl acrylate sold by Rohm & Haas under the designation

<// In another aspect, the invention provides a process for making infusion packages having enhanced mechanical seam integrity, being a process as defined in claim 12. >>

EP 0 632 163 B1

TABLE I

| | Binder | Water Climb | | | | Seam Failure (%) |
|---|---|---|---|---|---|---|
| | | Cold Water | | Hot Water (100° C) | | |
| | | MD | CD | MD | CD | |
| A. | Viscose | 191 | 400+ | 72 | 262 | 30 |
| B. | Kymene/CMC | 35 | 69 | 46 | 70 | 50 |
| C. | Polyvinyl chloride | ½"* | ½"* | 292 | 370 | 75 |
| D. | Ethyl vinyl acetate | ½"* | ½"* | 303 | 400+ | 50 |
| E. | Ethyl acrylate copolymer | NA | NA | ¼"* | ½"* | 0 |
| F. | Butyl acrylate copolymer | NA | NA | NA | NA | 0 |
| G. | Copolymer of ethyl and butyl acrylate | NA | NA | NA | NA | 0 |

* Extent of water climb in 400 seconds (½" = 12.7 mm ; ¼" = 6.35 mm) NA = no absorption

[0022] When the web material made with binder G was further treated with a surfactant, water climb values of 10 to 20 seconds were obtained coupled with 10 percent seam failures, thus indicating that the hydrophobic character of the binder as measured by the water climb was the significant factor in the seam failure results.

[0023] Measurements were also made to compare the time for the first color to appear in a tea brew using web materials with different binders. When samples B and F were compared, the first color infusion time varied by only 0.2 seconds with sample B having an infusion first color time of 6.7 seconds.

[0024] As mentioned, the hydrophobic agent used to treat the web material may also be applied to a prebonded sheet to achieve the beneficial result of the present invention. In accordance with this embodiment of the invention, the hydrophobic treating agent may be any of a number of fluid-repellent materials, such as silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers, stearylated materials and the like. The silicones may be any of those materials mentioned in U.S. Patent 3,386,834. The silicone pick up varies from 10-30 percent by weight. Where a fluorochemical treating agent is employed, it should, of course, meet the standards for use with foods and beverages and preferably should be in the form of an aqueous emulsion for ease of application. A typical aqueous emulsion formulation contains about 0.7 to 1.5 parts by volume of a fluorohydrocarbon for each hundred parts of water and may employ materials such as the Scotchban treating agent sold by Minnesota Mining and Manufacturing under the designation "FC-809" or "FX-845". Other fluorohydrocarbon materials that can be employed include the DuPont material designated Zonyl RP or NF. The paraffin and stearylated materials include those sold by Sequa Chemicals Company under the trade name Sequapel, such as Sequapel 414 and 417, while the alkyl ketene dimers are exemplified by Hercon 70 sold by Hercules Chemical Company.

[0025] Where a material using viscose binder, as shown in sample A of Table I, was saturated with a solution containing 0.3 percent of a fluorohydrocarbon, the water climb values for both hot and cold water were comparable to samples F and G, namely no absorption. A similar situation was evidenced when a web containing binder B of Table I was saturated with an emulsion containing 25 percent silicone (a mixture of methyloxy-polydimethyl siloxane and polydimethyl siloxane supplied by General Electric under the name Silicone II). The same result is achieved when the web material using binder B is treated with a fluorohydrocarbon at a fluorocarbon treatment level of 0.3 percent. This material also exhibits no seam failures although the appearance of first color is slightly slower.

[0026] As will be appreciated, the repellent may be added as a separate treatment to a bonded web material or may be added to the conventional binder to be applied simultaneously therewith to the web material.

[0027] As can be seen from the foregoing, the present invention utilizes infuser web material possessing improved mechanical seam integrity as a result of impregnating the web with a hydrophobic treating material in a latex dispersion. The latex may be used as a replacement for binder systems used heretofore or as a supplement thereto.

5

*Auxiliary Request 3*

EP 0 632 163 B1

Claims

1. A ~~porous fibrous web material, suited for making~~ *mechanically sealed* infusion packages which ~~are~~ *is* for brewing *a* beverage~~s~~ and which exhibit~~s~~ improved resistance to the failure of a mechanical seam therein, *‹—›* said web material being impregnated throughout its extent with one percent or more by weight of a hydrophobic treating system, the impregnated web exhibiting a water climb of not more than 0.5 inch (13 mm) over a period of 400 seconds when measured using water at a temperature of about 100°C and no substantial loss of infusion characteristics as measured by first-colour infusion time while providing less than 10 percent failure in the mechanical seam of tea bags constructed from the said web material upon exposure to boiling water.

2. The ~~web material~~ *infusion package* of claim 1 wherein the hydrophobic treating system includes a latex emulsion of a hydrophobic agent that completely impregnates the entire web material and is comprised of at least 3 percent by weight of a strength imparting binder.

3. The ~~web material~~ *infusion package* of claim 1 wherein the hydrophobic treating system includes an alkyl acrylate hydrophobic binder.

4. The ~~web material~~ *infusion package* of claim 3 wherein the hydrophobic binder is selected from the group consisting of ethyl acrylate and butyl acrylate polymers and copolymers.

5. The ~~web material~~ *infusion package* of claim 1 wherein the hydrophobic treating system comprises up to 12 percent by weight of a hydrophobic agent and the mechanical seam failure of the web is less than one percent.

6. The ~~web material~~ *infusion package* of claim 1 wherein the hydrophobic treating system includes a strength imparting hydrophobic binder comprising a butyl acrylate copolymer.

7. The ~~web material~~ *infusion package* of claim 3 wherein the hydrophobic treating system includes a latex emulsion of the hydrophobic binder completely impregnating the entire web material and imparting sufficient resistance to wetting to eliminate the water climb of the fibrous web material, the latex emulsion of the hydrophobic binder exhibiting an affinity for being readily absorbed into the fibers of the web.

8. The ~~web material~~ *infusion package* of claim 1 wherein the fibrous web material contains a strength imparting binder and the hydrophobic treating system comprises a hydrophobic agent.

9. The ~~web material~~ *infusion package* of claim 8 wherein the hydrophobic agent is selected from the group consisting of silicones, fluorohydrocarbons, paraffin, alkyl ketene dimers and stearylated materials.

10. The ~~web material~~ *infusion package* of claim 8 wherein the amount of the hydrophobic agent is from 0.3 to 30 percent by weight.

11. The ~~web material~~ *infusion package* of claim 7 wherein the hydrophobic treating system is heat cured or otherwise insolubilised.

12. A process for ~~producing porous web materials for~~ making infusion packages having enhanced mechanical seam integrity comprising the steps of providing a porous absorbent web material suited for use as an infusion package, ~~and~~ treating the entire web material with a hydrophobic treating system to provide a treated web that exhibits a water climb of not more than 0.5 inch (13 mm) over a period of 400 seconds when measured using water at a temperature of about 100°C and less than 10 percent failure in a mechanical seam of tea bags constructed from the said web material when exposed to boiling water, *‹‹—››*

13. The process of claim 12 wherein the hydrophobic treating system includes a latex dispersion of a hydrophobic agent that exhibits an affinity for being readily absorbed into the fibers of the web, the dispersion completely impregnating the web material, and subsequently insolublizing the agent on the web.

14. The process of claim 12 wherein the hydrophobic treating system completely impregnates the web material and is comprised of a strength imparting hydrophobic binder that imparts resistance to aqueous absorption as measured by water climb, the hydrophobic agent exhibiting an affinity for being readily absorbed into the fibers of the web, the binder being a latex dispersion applied as a saturating treatment and subsequently dried.

15. The process of claim 14 wherein the binder is a latex dispersion of an alkyl acrylate, the latex binder being present in an amount sufficient to provide a binder pick up by the web of at least 3 percent by weight.

‹ which infusion package is made from a porous fibrous web material, ›

‹‹ and making mechanically sealed infusion packages from the treated web material. ››

EP 0 632 163 B1

16. The process of claim 12 wherein the fibrous sheet material is soft, tissue weight material, the process including the step of treating the web with a binder in addition to the hydrophobic treating system, said system being comprised of a hydrophobic agent that exhibits an affinity for being readily absorbed into the fibers of the web, said hydrophobic agent being applied as a latex dispersion in an amount sufficient to impart a hydrophobic agent pick up of 0.3 to 30 percent by weight.

17. The process of claim 12 wherein the hydrophobic treating system includes a hydrophobic agent selected from the group consisting of silicones, fluorohydrocarbons, paraffin, alkyl ketene dimers and stearylated materials.

18. The process of claim 12 wherein the fibrous sheet material is a prebonded, light weight, highly wettable material and the hydrophobic treating system includes a hydrophobic agent that imparts complete resistance to wetting as measured by water climb, the hydrophobic agent exhibiting an affinity for being readily absorbed into the fibers of the web and being applied by a size press.

19. The process of claim 12 wherein the hydrophobic treating system completely impregnates the web material as the web material is being treated with a strength imparting binder.

20. The web material of claim 1 wherein the hydrophobic treating system comprises a hydrophobic strength-imparting binder selected from acrylic polymers and copolymers.

21. The process of claim 12 wherein the hydrophobic treating system comprises a hydrophobic strength-imparting binder selected from acrylic polymers and copolymers.

Patentansprüche

1. Poröses Fasergewebematerial, geeignet zur Herstellung von Aufgussbeuteln, die zum Aufbrühen von Getränken bestimmt sind und einen verbesserten Widerstand gegen Schäden an deren mechanischer Naht zeigen, wobei das Gewebematerial über seine ganze Erstreckung mit 1 Gew.-% oder mehr eines hydrophoben Behandlungssystems imprägniert ist, und wobei das imprägnierte Gewebe einen Wasseranstieg von nicht mehr als 0,5 Inch (13mm) über eine Zeitdauer von 400 Sekunden bei einer Messung unter Verwendung von Wasser bei einer Temperatur von ungefähr 100°C und keinen wesentlichen Verlust von Aufgusscharakteristika aufweist, wie durch die Anfangsfarbenaufgusszeit gemessen, während weniger als 10 % Versagen in der mechanischen Naht der dem kochenden Wasser ausgesetzten aus dem genannten Gewebematerial konstruierten Teebeutel vorgesehen auftritt.

2. Das Gewebematerial nach Anspruch 1, worin das hydrophobe Behandlungssystem eine Latexemulsion eines hydrophoben Agens beinhaltet, das das gesamte Gewebematerial vollständig imprägniert und aus wenigstens 3 Gew.-% eines Stärke verleihenden Binders besteht.

3. Das Gewebematerial nach Anspruch 1, worin das hydrophobe Behandlungssystem einen hydrophoben Alkylacrylatbinder beinhaltet.

4. Das Gewebematerial nach Anspruch 3, worin der hydrophobe Binder aus der Gruppe bestehend aus Acrylacrylat und Butylacrylatpolymeren und Copolymeren gewählt ist.

5. Das Gewebematerial nach Anspruch 1, worin das hydrophobe Behandlungssystem bis zu 12 Gew.-% eines hydrophoben Agens umfasst und der mechanische Nahtschaden des Gewebes geringer als 1 % ist.

6. Das Gewebematerial nach Anspruch 1, worin das hydrophobe Behandlungssystem eine Stärke verleihenden hydrophoben Binder mit einem Butylacrylatcopolymer beinhaltet.

7. Das Gewebematerial nach Anspruch 3, worin das hydrophobe Behandlungssystem eine Latexemulsion des hydrophoben Binders beinhaltet, der das gesamte Gewebematerial vollständig imprägniert und genügend Widerstand gegen Befeuchtung verleiht, um den Wasseranstieg des Fasergewebematerials abzubauen, wobei die Latexemulsion des hydrophoben Binders eine Affinität aufweist, leicht in die Fasern des Gewebes absorbiert zu werden.

File copy

Annex to the minutes  Page 1                                          Application No: 94 303 680.6

## Documents for the maintenance of the patent as amended

Text for the Contracting States:
DE FR GB

**Description, pages:**

| | | |
|---|---|---|
| 4 | of the patent specification | |
| 1+,2,3,5 | during oral proceeding on | 06.05.2004 |

**Claims, No.:**

| | | | | |
|---|---|---|---|---|
| 1-21* | as received on | 17.01.2003 | with letter of | 14.01.2003 |

**Comments:**

+ The title was amended
* Auxiliary request 3 (AR3)

ON-LINE VERSION
AS AT 21 JUNE 04

EPO Form 2339.4 11.93CSX