STATEMENT DUE: 01.10.04    VMD



✉ EPA/EPO/OEB
D-80298 München

☎ +49 89 2399-0
TX 523 656 epmu d
FAX +49 89 2399-4465

**Europäisches Patentamt**    **European Patent Office**    **Office européen des brevets**

Generaldirektion 2    Directorate General 2    Direction Générale 2

Mercer, Christopher Paul
Carpmaels & Ransford
43, Bloomsbury Square
London WC1A 2RA
ROYAUME-UNI

EXHIBIT D



RECEIVED
0 7 JUN 2004
CARPMAELS & RANSFORD
ACTIONED...



| Application No. / Patent No. | Ref. | Date |
|---|---|---|
| 94 303 680.6 - 2113 / 0632163 / | P12227EP | 01.06.2004 |
| Proprietor | | |
| Ahlstrom Windsor Locks LLC | | |

**Interlocutory decision in Opposition proceedings (Articles 102(3) and 106(3) EPC)**

The Opposition Division - at the oral proceedings dated 06.05.2004 - has decided:

**Account being taken of the amendments made by the patent proprietor during the opposition proceedings, the patent and the invention to which it relates are found to meet the requirements of the Convention.**

The reasons for the decision are enclosed.

Documents for the maintenance of the patent as amended:

**Description, Pages**

2-5                      filed during Oral proceedings on 06.05.2004

**Claims, Numbers**

1-21                     received on 17.01.2003 with letter of 14.01.2003

**Possibility of appeal**
This decision is open to separate appeal according to Article 106(3) EPC. Attention is drawn to the attached text of Articles 106 to 108 EPC.

Registered letter with advice of delivery



Date 01.06.2004 　　　　Sheet 2 　　　　Application No.: 94 303 680.6

**Opposition Division:**

| | |
|---|---|
| **Chairman:** | CONNOR M T |
| **2nd Examiner:** | GOERS B |
| **1st Examiner:** | PERSICHINI C |



Meyer, C
**Formalities Officer**
Tel. No.: +49 89 2399-8134

Enclosure(s):   9  page(s) reasons for the decision (Form 2916)
Wording of Articles 106 - 108 (Form 2019)
Documents relating to the amended text
☒ Minutes of oral proceedings
Annex I, Annex II

to EPO postal service: 26.05.04

**Registered letter with advice of delivery**

| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum Date Date 01.06.2004 | Blatt Sheet Feuille 1 | Anmelde-Nr.: Application No.: 94 303 680.6 Demande n°: |

## Summary of Facts and Submissions

I. The grant of European Patent No. 0 632 163, based upon European Patent Application No. 94 303 680.6, filed on 23/05/1994 and claiming priority of 01/07/1993 (US86673), was published on 29/08/2001 in Bulletin 2001/35.
Present proprietors of the patent are **Ahlstrom Windsor Locks LLC**, Windsor Locks (USA).
The set of claims as granted is attached to this decision as **Annex I**.

II. Opposition was lodged against the patent by **J R Crompton Limited**, Manchester (GB) with the notice of opposition received on 29/05/2002. The opponents requested revocation of the patent in its entirety on the grounds of Art. 100(a), (b) and (c) EPC, i.e. for lack of novelty (Art. 54(1),(2) EPC), lack of inventive step (Art. 56 EPC), for lack of clear and complete disclosure (Artr. 100(b) EPC) and because of introduction of subject-matter not having been originally disclosed (Art. 123(2) EPC). In support of the request they cited documents

D1: US-A-3 386 834,
D2: EP-A-0 170 461 and
D3: US-A-3 616 166.

Subsidiarily, oral proceedings were requested.

III. In response the proprietors requested to maintain the patent in unamended form (main request) since none of the arguments brought up by the opponents were pertinent. In case this request could not be granted, the patent should be maintained on basis of the claims according to first to third auxiliary requests.
The sets of claims according to the three auxiliary requests are attached to this decision as **Annex II**.
Subsidiarily, the proprietors, as well, requested oral proceedings.

IV. The oral proceedings were scheduled and took place on 06/05/2004.
As announced with letter of 30/04/2004 the oral proceedings were not attended by the opponents.

V. Concerning further details, attention is directed to the minutes of the oral proceedings and to the content of the file.

| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum<br>Date  01.06.2004<br>Date | Blatt<br>Sheet  2<br>Feuille | Anmelde-Nr.:<br>Application No.: 94 303 680.6<br>Demande n°: |

## Reasons for the Decision

1. The opposition is admissible because it meets all the requirements of Arts. 99 (1) and 100 and of Rules 1(1) and 55 EPC.

2. Objection under Art. 100(b) EPC:

2.1 The opponents object that the patent specification does not disclose the invention in a manner sufficiently clear and complete for it to be carried out by a person skilled in the art. In particular, they express, that not enough information would be provided to the skilled person to determine whether or not a porous fibrous web material meets the criteria expressed in the independent claims and in the description, namely to provide "less than 10 percent failure in the mechanical seam of tea bags constructed from the said web material upon exposure to boiling water". Indispensable indications such as the exact nature of the seam, the manner in which it is formed, the size of the tea bag and the amount of tea contained therein, are not mentioned in the specification. Consequently, the patent is to be revoked under Art. 100(b) EPC.

2.2 The opposition division cannot share this view for the following reasons.
The requirements of Art. 100(b) are complied with, when the specification discloses any feature essential for carrying out the invention in sufficient detail to render it apparent to the skilled person how to put the invention into practice. These requirements are unambiguously fulfilled in the present case. As correctly expressed by the proprietors, the specification gives clear indications of how to obtain the claimed impregnated porous fibrous web material. It explicitly specifies the starting web material and fibres that can be used (see paragraphs 11 to 13 of the patent), the hydrophobic agents (paragraphs 14, 15), the methods of applying the agents to the web material, suitable solution concentrations and web pick-up amounts (paragraphs 16 to 18).
No indication is given - and the opponents could also not provide any evidence - that the porous fibrous web material which is defined in the patent is not suitable for achieving the result indicated in the description and the claims, namely for the construction of tea bags the mechanical seams of which exhibit less than 10 percent failure upon exposure to boiling water.



| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum / Date / Date: 01.06.2004 | Blatt / Sheet / Feuille: 3 | Anmelde-Nr.: / Application No.: / Demande n°: 94 303 680.6 |

3. Objection under Art. 100 (c) EPC

3.1 The opponents object that the feature "water climb of not more than 0.5 inch (13mm) over a period of 400 seconds" in the independent claims is not originally not have been disclosed in the present context. Particularly the value of 0.5 inch is "disclosed in the application as filed as a specific value only, using water at 100°C, for the water climb in Cross Direction (CD) for the particular product of Example E.

3.2 Again the opposition division cannot share the opponents' opinion and must agree to the proprietors' argumentation: table I of the application shows how the water climb in the web material is correlated to the seam failure. It can be clearly deduced therefrom that, regardless of the binder material, a water climb of 0.5 inch over a period of 400 seconds when measured using water at a temperature of about 100°C constitutes the maximum value for which no seam failure occurs. Consequently, the introduction of these values into the claims does not contravene the requirements of Art. 123(2) EPC.

4. Main request

4.1 Document D3 discloses a porous fibrous web which is suitable for making infusion packages for brewing beverages (D3, column 5, lines 64 to 66) and which is impregnated throughout its extent with more than one percent by weight (D3: column 5, lines 18 to 21) of a binder composition comprising a polymer of ethyl acrylate (D3, column 1, lines 36 to 42) ie with a "hydrophobic treating system" within the context of the patent in suit.
According to D3, up to 100 percent of a polyblend (D3, column 2, lines 27 to 29) containing up to 90 percent of ethyl acrylate polymer binder (D3, column 5, lines 18 to 21) may be picked up. This results in a pick up level of 90 percent by weight of ethyl acrylate binder. Since it is expressed in the patent (see claim 1 in context with page 3, lines 54, 55 indicating ethyl acrylate polymer to constitute a preferred hydrophobic treating system), that a pick up level of 1 percent and more of an acrylate polymer binder "will be effective to provide improved seam integrity" (see also paragraph [0018] of the patent), it can be taken as read that this pick up level of up to 90 percent inevitably results in a porous web exhibiting "less than 10 percent failure in the mechanical seam of tea bags constructed from the said material upon exposure to boiling water". Also the water climb which is correlated to the

| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum<br>Date 01.06.2004<br>Date | Blatt<br>Sheet 4<br>Feuille | Anmelde-Nr.:<br>Application No.: 94 303 680.6<br>Demande n°: |

failure rate (see table I of the patent) inevitably meets the conditions expressed in claim 1 (ie not more than 0.5 inch over a period of 400 seconds when measured using water at a temperature of about 100°C). Finally, the relative and vague feature of claim 1 that "no substantial loss of infusion characteristics as measured by first-colour infusion time" also applies for the web of D3 since this web shall also be for forming eg tea bags and must, consequently, offer good infusion properties. Therefore, the opposition division is of the opinion that document D3 discloses a porous web exhibiting all the features of claim 1 and equally a process for making the web exhibiting all the features of claim 12.

4.2 According to the proprietors, since the polyblend binder used in D3 is a pressure sensitive adhesive (D3, column 4, lines 39 to 65), the porous webs impregnated with this polyblend binder would exclusively be suited for heat seal applications (D3, column 4, lines 46 to 49 and column 5, lines 66 to 71), since heat sealable webs in general are not suitable for forming mechanical seams (this expression is interpreted to mean seams which are formed by folding and crimping). Processing heat seal type webs in a technical machine for forming mechanical seams would inevitably create problems. Thus the subject-matter of claim 1 would differ from the porous web of D3 in that it is suited for making infusion packages with mechanical seams. Further, the proprietors asserted that the web of D3 would not even be suitable to produce heat sealed infusion packages as for processing a web in a heat sealing machine an integral barrier layer must be provided on one side of the web which barrier layer is not present in the web of D3.
The opposition division is not persuaded by these allegations. In fact, it is said in D3 that the webs are heat sealable (D3, column 4, lines 46 to 49) and the infusion packages are made by heat sealing the web (column 5, lines 66 to 71). This does not, however, exclude that it is also possible to use the webs for producing infusion packages with mechanical seams (ie seams which are formed by folding and crimping; other mechanically sealed seams produced without heat application are anyway disclosed in D3, column 4, lines 60 to 62).
The binder compositions utilized according to the patent may consist exclusively of ethyl acrylate polymer (see patent in suit, page 3, lines 54, 55 where ethyl acrylate polymer is declared without restriction of any kind to be particularly effective as hydrophobic binder). According to D3 the binder composition contains 60 to 90 percent by weight of ethyl acrylate polymer (D3, column 2, line 28) to which 40 to 10 percent by weight of a second compound is admixed (D3, column 2, lines 30, 31) in order to reduce the tackiness of the binder composition (D3, column 2, lines

| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum Date Date 01.06.2004 | Blatt Sheet Feuille 5 | Anmelde-Nr.: Application No.: 94 303 680.6 Demande n°: |

63 to 69). As explained in D3 (column 2, lines 63 to 71) the tackiness, the adhesiveness and the adaptation of the porous fibrous web material to be heat sealed is just due to the ethyl acrylate polymer content.

The type of web to be impregnated according to D3 (column 5, lines 1 to 10) differs neither from the type of web disclosed in the patent (paragraph [0011]), nor from the amount of the hydrophobic substance present on the web.

Thus it cannot be seen why the porous web of the patent in suit which may be impregnated with a binder consisting exclusively of ethyl acrylate polymer should be less adhesive and less heat sealable and consequently more apt for the production of mechanical seams than the porous web of D3. If the web as defined in claim 1 of the opposed patent is suited to be processed in a machine for forming mechanical seams, then so should the web of D3. No difference can be seen between the two webs.

4.3 Consequently, the subject-matter of independent claims 1 and 12 according to the main request is not novel. These claims do not meet the requirements of Art. 54(1),(2) EPC.

5. First auxiliary request

5.1 Claim 1 of the first auxiliary request defines the porous fibrous web material to be of the non-heat seal type. The proprietors explicitly confirmed this formulation to characterize the final product after treatment. This means that the treated and impregnated web does not contain any fusible fibers or tacky compounds. However, this property of the porous fibrous web material is neither in consistency with what is expressed in independent process claim 12 of the first auxiliary request nor is it disclosed in the originally filed application documents.

According to claim 12 of the first auxiliary request the porous web material is produced by "providing a porous absorbent web material of the non-heat seal type and" treating this material in order to arrive at the final product. The thus defined process does not exclude the final web material to be heat-sealable.

The same follows from page 3, lines 29 to 34 of EP-A-0 632 163 (corresponding to paragraph [0011] of the patent in suit) which is the only passage the proprietors could indicate in support of the amendments introduced to the independent claims of the first auxiliary request. It is said in this passage that the present invention in its application to tea bags permits the use of commercially available, self-supporting infuser webs [which] are of the nonheat-seal variety and require mechanical

| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum Date Date 01.06.2004 | Blatt Sheet Feuille 6 | Anmelde-Nr.: Application No.: 94 303 680.6 Demande n°: |

fastening". This passage does not define the final web to be of the non-heat seal type but merely expresses that usual webs of the non heat seal variety when treated according to the patent, can be formed into tea bags with improved integrity of their mechanical seams. This does not exclude the final web to be heat-sealable.

5.2  As in the discussion of novelty of the independent claims according to the main request (see item 4.2 of this decision) the proprietors insist that heat seal type web material could not be used for producing packages exhibiting mechanical seams. Therefore, the mere declaration in the originally filed application documents that the web material is suitable for tea bags having mechanical seams, implicitly discloses that the final web material is of the non-heat seal type.
However, on account of similar grounds as brought forward under item 4.2 of this decision, the opposition division cannot accept this argumentation: no difference can be seen between the binder compositions which are utilized in document D3 (a composition containing up to 90 percent ethyl acrylate) and which may be utilized according to the patent in suit (a composition containing up to 100 percent ethyl acrylate), so that the adhesiveness and the ability to be heat sealed of at least some of the final webs according to the patent may be comparable with the adhesiveness and ability to be heat sealed of the web disclosed in document D3, which web is designated to be a heat-seal type web.

5.3  The opposition division is further of the opinion that if a heat seal seam can be formed only with a heat seal type web, a mechanical seam, on the other hand, can be formed with both a non-heat seal type web and a heat seal type web.

5.4  Thus no basis can be found in the originally filed documents for amending claim 1 such to define the final web to be of the non-heat seal type. Claim 1 according to the first auxiliary request does not meet the requirements of Art. 123(2) EPC.

6.  Second auxiliary request
On account of the same reasons as explained for claim 1 according to the first auxiliary request, claim 1 of the second auxiliary request does not meet the requirements of Art. 123(2) EPC, either.

7.  Third auxiliary request

| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum<br>Date  01.06.2004<br>Date | Blatt<br>Sheet  7<br>Feuille | Anmelde-Nr.:<br>Application No.: 94 303 680.6<br>Demande n°: |

7.1 According to the third auxiliary request, claim 1 as granted is restricted to a mechanically sealed infusion package. Accordingly, independent process claim 12 concerns the manufacturing of such an infusion package.
The formal admissibility under Art. 84 and 123 EPC of the amended claims is not disputed. The amendments can be directly deduced from the original wording of the claims where it is expressed that the fibrous web is suited for making infusion packages with mechanical seams and from the description (see eg paragraphs [0001] to [0003]).

7.2 Novelty (Art. 54(1),(2) EPC)

The infusion package disclosed in document D3 (see column 5, lines 64 to 68) exhibits heat sealed seams. Consequently, the subject-matter of the independent claims according to the third auxiliary request is novel over the disclosure of D3.

Document D1 - as the contested patent - addresses the avoidance of the rupture of the seams of infusion packages due the "ballooning effect". D1 mainly addresses heat sealed tea bags (see D1, eg column 1, line 42; column 2, line 43; column 4, line 10 etc) but also mentions webs "of the nonheat-seal variety" (D1, column 2, line 46). Thus, the main difference between the claimed packages and the packages disclosed in D1 is, that according to D1 the surface area of the infusion packages is impregnated only in discrete sections (see eg D1, claim 1), whereas the contested patent defines the web material of the infusion packages to be impregnated throughout its extent with the hydrophobic substances.

D1 additionally discloses an example where the entire surface area of tea bags is treated by a hydrophobic substance, but this example serves solely to show how the concentration of the hydrophobic compound utilized in the treating dispersion influences the porosity of the treated web. Although it is not explicitly said which type of seal the tea bags of this example exhibit, the description of D1 (see column 3, line 70 to column 4, 31, especially column 4, line 10) strongly indicates that heat-seal tea bags are employed. Thus, the tea bags of this example differ from the packages of the patent at least in the seam.
Thus, the subject-matter of the independent claims according to the third auxiliary request is novel over the disclosure of D1.

Document D2 mainly concerns the treatment of an infusion package material with



| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum / Date / Date: 01.06.2004 | Blatt / Sheet / Feuille: 8 | Anmelde-Nr.: / Application No.: / Demande n°: 94 303 680.6 |

a sizing agent (which does not constitute a hydrophobic treating system; D2, page 8, lines 3 to 5) in order to prevent sorption of flavour oil by this material. This document mentions the application of an hydrophobic compound to the infusion bag material only incidentally and exclusively with reference to D1 (see D2, page 8, lines 5 to 9 and page 2, lines 22 to 26). Consequently, although the sizing agent is distributed uniformly throughout the infusion package material (D2, page 6, lines 6 to 8), it can be excluded that the hydrophobic compound is applied other than in accordance with the teaching of D1, ie the surface area of the infusion packages is impregnated only in discrete sections.

The subject-matter of the independent claims according to the third auxiliary request is novel over the disclosure of D2.

7.3  Inventive step (Art. 56 EPC)

The closest prior art is represented by document D1 which also concerns the avoidance of the rupture of the seams of infusion packages due the "ballooning effect".

In view of the general teaching of D1, which teaches away from impregnating the web material of an infusion package throughout its extent but instead teaches to cover at most 40%, preferably less than 15% of the complete area with the hydrophobic substance (D1, column 4, lines 71 to column 5, line 4), the above mentioned example of D1 (see item 7.2) cannot be contemplated when assessing inventive step. Consequently, the subject-matter of the independent claims according to the third auxiliary request differs from the main teaching of document D1 (see above, item 7.2) in that the web material of the infusion package is impregnated throughout its extent with the hydrophobic substances.

The treatment of the entire area of a web is a much more convenient operation than treatment of only discrete regions thereof (see also notice of opposition, item 4.1.1 (iv) (c)).

Neither the disclosure of document D3 which deals with overcoming the problems arising from the resilience and springiness of a porous fibrous web material impregnated with an ethyl acrylate binder, when the web is formed into a package by heat sealing (see D3, column 1, lines 17 to 28), nor of document D2 which mainly addresses the treatment of an infusion package material with a sizing agent in order to prevent sorption of flavour oil by this material, can conduct the skilled person to disregard the main teaching of document D1.

Thus, the subject-matter of the independent claims according to the third auxiliary



| Entscheidungsgründe (Anlage) | Grounds for the decision (Annex) | Motifs de la décision (Annexe) |
|---|---|---|
| Datum/Date/Date 01.06.2004 | Blatt/Sheet/Feuille 9 | Anmelde-Nr.:/Application No.:/Demande n°: 94 303 680.6 |

request is based on an inventive step.

8. Consequently, the patent can be maintained in amended form, ie on basis of the claims according to the third auxiliary request and the correspondingly adapted description (Art. 102(3) EPC).

9. The opponents did not submit any written comments to the claims according to the auxiliary requests (on file since 17/01/2003), nor did they, although duly summoned, attend the oral proceedings (on 06/05/2004). Thus, they deliberately deprived themselves of the opportunity to produce further comments as provided by Art. 113(1) EPC. Since no new facts or evidence were dealt with during the oral proceedings, the opposition division could give the decision orally pursuant to Rule 68(1) EPC at the end of the oral proceedings, to maintain the contested patent in amended form in accordance with the third auxiliary request of the patentee submitted more than one year before the oral proceedings. Under these circumstances, the application of R. 58(4) EPC could also be dispensed with (G1/88, T446/92).

**Article 106**
**Decisions subject to appeal**

(1) An appeal shall lie from decisions of the Receiving Section, Examining Divisions, Opposition Divisions and the Legal Division. It shall have suspensive effect.

(2) An appeal may be filed against the decisions of the Opposition Division even if the European patent has been surrendered or has lapsed for all the designated States.

(3) A decision which does not terminate proceedings as regards one of the parties can only be appealed together with the final decision, unless the decision allows separate appeal

(4) The apportionment of costs of opposition proceedings cannot be the sole subject of an appeal.

(5) A decision fixing the amount of costs of opposition proceedings cannot be appealed unless the amount is in excess of that laid down in the Rules relating to Fees.

**Article 107**
**Persons entitled to appeal and to be parties to appeal proceedings**

Any party to proceedings adversely affected by a decision may appeal. Any other parties to the proceedings shall be parties to the appeal proceedings as of right.

**Article 108**
**Time limit and form of appeal**

Notice of appeal must be filed in writing at the European Patent Office within **two months** after the date of notification of the decision appealed from. The notice shall not be deemed to have been filed until after the fee for appeal has been paid. Within **four months** after the date of notification of the decision, a written statement setting out the grounds of appeal must be filed.

**Further information concerning the filing of an appeal**

(a) The appeal is to be filed with the European Patent Office either at its seat in Munich, at its branch at The Hague or at its Berlin sub-office. The postal addresses are as follows:

(i) European Patent Office
D-80298 Munich
Germany
(Telex: 523656 epmu d)
(Fax: +49 89 2399-4465)

(ii) European Patent Office
Branch at The Hague
Patentlaan 2
Postbus 5818
NL-2280 HV Rijswijk (ZH)
Netherlands
(Telex: 31651 epo nl)
(Fax: +31 70 340-3016)

(iii) European Patent Office
Berlin sub-office
D-10958 Berlin
Germany
(Fax: +49 30 25901-840)

(b) The notice of appeal must contain the name and address of the appellant in accordance with the provisions of Rule 26(2)(c) EPC, and a **statement** identifying the decision which is impugned and the extent to which amendment or cancellation of the decision is requested (see Rule 64 EPC). The notice of appeal and any subsequent submissions stating the grounds for appeal must be signed.

(c) Notice of appeal must be **filed in writing** (typewritten or printed (Rule 36(2) EPC), by telegram, telex or fax (Rule 36(5) EPC; OJ EPO 6/89, 219-225; OJ EPO 9/89, 396)).

(d) The fee for appeal is laid down in the Rules relating to Fees. The equivalents in the national currencies in which the fee for appeal can be paid are regularly published in the Official Journal of the European Patent Office under the heading "Guidance for the payment of fees, costs and prices".