E

# CARPMAELS & RANSFORD

CHARTERED PATENT ATTORNEYS   EUROPEAN PATENT ATTORNEYS   TRADE MARK ATTORNEYS

| | | |
|---|---|---|
| TELEPHONE | 020-7242 8692 | |
| FACSIMILE | 020-7405 4166 | |
| | 020-7831 8501 | |
| WEBSITE | www.carpmaels.com | |
| E-MAIL | email@carpmaels.com | |

43 BLOOMSBURY SQUARE
LONDON WC1A 2RA

AND AT MUNICH

ALAN J JONES*          PAUL N HOWARD*†
N KEITH HOWICK*†       ANNE WONG†
ADRIAN J FISHER*†      ANTHONY C W P JAMES*
CHRIS P MERCER*†       BRUCE R COCKERTON*
HUW G HALLYBONE*†      CAMERON J MARSHALL*
RICHARD E JACKSON*†    HUGH R GOODFELLOW*

MICHAEL J DONNAN*      SUSAN E KIRSCH*
PETER M JOHNSTON*      ROBERT M C CARPMAEL*
R DUDLEY HAWKINS*      ALMUT S ELEND†
B PATRICIA B HARRIS†   GARY J SMALL*
SUSAN M THOMAS*        HEIDI F ASTON‡
JANDAN M ALISS†

JOHN A MURPHY (MANAGER)

CONSULTANTS

CHRISTOPHER S TUNSTALL*

DEREK G R GRUNDY       STEPHEN J COLGAN
S DAVID VOTIER OBE     JOHN W M CARPMAEL
IAN B P de M DEVAUX

* CPA and EPA     ‡ EPA     † TMA

European Patent Office
Erhardtstrasse 27
D-80298 Munich
GERMANY

YOUR REF 94303680.6-2113/0632163

OUR REF O002977EP: CPM/MJD/KTU

**BY FACSIMILE**

14th January 2003

Dear Sirs,

Re:   European Patent No. 0 632 163 (Application No. 94303680.6) –
      The Dexter Corporation – Opposition by J.R. Crompton Limited

By way of a response to the Official Communication dated 4th July 2002, and having regard to the Opponent's Notice of Opposition, I present below:

**The Patentee's Observations.**

## The Patentee's Requests

*The Main Request*

1.   The claims as granted constitute the Patentee's Main Request.

*Auxiliary Request 1*

2.   I am enclosing herewith a set of claims labelled "Auxiliary Request 1" ("AR1"), with the request that these claims be considered in the event that the Opposition Division declines to uphold the Main Request.

3.   In Auxiliary Request 1, the independent claims (claims 1 and 12) have been amended by stipulating that the porous fibrous web material is of the non-heat seal type. It is submitted that this amendment is fully supported by the original disclosure. In paragraph 0011 of the opposed patent, it is stated that the "webs are of the nonheat-seal variety", which statement is also found in the application as filed (please see page 5, line 4, of the original typescript, corresponding to page 3, line 32, of EP-A-0 632 163). As stated in paragraph 0011 of the patent, such webs required mechanical fastening for the formation of the tea bag. Mechanically sealed bags are to be distinguished from heat-sealed bags, as stated in the last sentence of paragraph 0002 of the patent (which

statement is also to be found on page 1, lines 31-35, of the original typescript, corresponding to page 2, lines 16-18, of EP-A-0 632 163).

4. Furthermore, the amendments do not extend the scope of the claims. Accordingly, the amendments presented in Auxiliary Request 1 do not offend against Article 123(2) or (3) EPC.

*Auxiliary Request 2*

5. I am also enclosing a set of claims labelled "Auxiliary Request 2" ("AR2"). It is requested that these claims be considered if the Opposition Division declines to uphold the patent on the basis of the Main Request or Auxiliary Request 1.

6. Auxiliary Request 2 is based on Auxiliary Request 1 but, in effect, limits the hydrophobic treating system specified in claim 1 to the systems recited in claims 9 and 20 of the patent as granted. The amendments find complete support in the application as filed. Thus, claim 9 of the patent as granted correspond to claim 9 of the application as filed. Claim 20 of the patent as granted was introduced during the examination procedure but is fully supported by the disclosure on page 6, lines 11-15, of the original typescript (corresponding to page 3, lines 55-57, of EP-A-0 632 163). That passage refers to acrylic polymers but, in view of the particular examples thereof, makes it abundantly clear to the reader skilled in the art that copolymers are also included. Plainly, the amendments do not introduce any subject matter extending beyond the content of the application as filed, an observation which is not affected by the omission in the amended claim 1 of silicones from the list of hydrophobic agents specified in claim 9 of the patent as granted.

7. Analogous amendments have been effected in the independent process claim (now claim 10 in this auxiliary request) by incorporating into claim 12 as granted the features recited in the original claims 17 and 21 (again with the omission of the reference to silicones).

8. Furthermore, the amendments do not extend the scope of the independent claims. Accordingly, the amendments submitted in Auxiliary Request 2 do not offend against Article 123(2) or (3) EPC.

*Auxiliary Request 3*

9. I am also enclosing a set of claims labelled "Auxiliary Request 3" ("AR3"). It is requested that these claims be considered if the Opposition Division declines to uphold the patent on the basis of the Main Request, Auxiliary Request 1 or Auxiliary Request 2.

10. In Auxiliary Request 3, claim 1 has been limited, from being directed to a porous fibrous web material for making infusion packages having a mechanical seam therein, to being directed to the infusion packages made from such a web material. The independent claim 12 has simply been amended in order to direct it to a process for making infusion packages having an enhanced mechanical seam integrity, that independent claim thereby being rendered consistent with the amended claim 1. Since the claim to the web material would also have been infringed by infusion packages made from that material, the amendments constitute a legitimate narrowing of scope and therefore do not offend against article 123(3) EPC. Furthermore, the patent and the

application upon which it was granted are replete with references to infusion bags, for example tea bags, manufactured from the porous web material of the invention. Accordingly, the amendments do not introduce subject matter extending beyond the content of the application as filed and hence do not offend against article 123(2) EPC. It may be added that the manufacture of mechanically sealed tea bags and other infusion packages from porous web materials may be carried out by techniques that are very well known in the art; accordingly, the patent specification provides sufficient teaching to enable the invention as claimed in Auxiliary Request 3 to be carried out by the person skilled in the art; accordingly, the amendments do not give rise to any objection under Article 83 EPC.

## The Objection Raised under Article 100 (c) EPC (Article 123 (2) EPC)

11.  It is submitted that, contrary to the objection raised in Item 1 of the Notice of Opposition, claims 1 and 12 do not involve the addition of subject matter extending beyond the content of the application as filed.

12.  The independent claims in the application as filed – namely claims 1 and 11 – required the impregnated sheet material to exhibit no appreciable water climb when measured using water at a temperature at about 100°C. The application, as filed, discloses a test by means of which the water climb may be ascertained; please see page 8, lines 6-28, of the original typescript, corresponding to page 4, lines 37-48, of EP-A-0 632 163. The disclosure states quite clearly that the test is stopped at 400 seconds if the water front has not advanced sufficiently to complete the one-inch (= 25.4mm) climb on the specimen. Thus, the period of 400 seconds constitutes a cut-off point for *all* embodiments.

13.  Table 1 in the application, as filed, records the results of tests on seven specimens, which differ in the nature of the binder used. The results fall into two distinct groups: a group, comprising specimens E, F and G, that is distinguished by the use of a binder stated to be preferred (please see page 6, lines 22-36, of the original typescript, corresponding to page 4, lines 3-10, of EP-A-0 632 163), by a 0% seam failure and by no appreciable water climb in the hot-water test (that is to say the water front had not advanced sufficiently to complete the 1-inch climb by the end of the 400-second period), and another group, comprising specimens A-D, which are characterised by substantial seam failure (30% or higher) and a rapid water-climb in the hot-water test.

14.  Specimen E in Table 1 exhibited a water climb of not more than 0.5 inch, in the cross direction (CD). The water climb for the same material in the machine direction (MD) was lower, as were the results for specimens F and G in both the CD and the MD. This provides ample justification for adopting the requirement of "not more than 0.5 inch (13mm) over a period of 400 seconds" as a requirement in claim 1 for the 100°C water climb test.

15.  The Opponent objects, in Item 1.2, that there "is no basis in the application as originally filed that the range quoted in [Item 1.1] is applicable across the entire scope of the invention". However, the objection is misconceived. Table 1 in the application, as filed, showed clearly that a water climb of not more than 0.5 inch over a period of 400 seconds, when measured using water at a temperature of about 100°C, is attainable by means of the present invention. The Applicant, therefore, was perfectly justified in

adopting that feature as part of the definition of the fibrous web material according to the present invention.

## The Objection Under Article 100(b) EPC (Article 83 EPC)

16. The Opponent has objected that the patent does not disclose the invention in a manner sufficiently clear and complete for it to be carried out by a person skilled in the art. It is submitted that the objection is clearly untenable. With regard to the patent specification, paragraphs 11-13 disclose web materials and fibres that can be used. Paragraphs 14 and 15 disclose hydrophobic agents that can be used. Paragraphs 16-18 disclose methods of applying the hydrophobic agent to the web material and paragraph 18 further discloses suitable solution concentrations and web pick-up amounts that can be used in the practice of the invention. Paragraphs 19 and 20 disclose test procedures for determining the remaining characteristics of the web material according to the invention.

17. In Items 2.2 and 2.3 of the Notice of Opposition, it is alleged, in particular, that the patent specification is insufficient with regard to the requirement that there be less than 10% failure in the mechanical seam upon exposure to boiling water. However, the seam failure test is disclosed in some detail in paragraph 20 of the patent. This employs a tea bag of known type (the flow through type) and the precise orientation of the bag (with the "W" fold oriented upward and the head fold oriented downward), the amount of boiling water (400ml) and the duration of pouring (3 seconds) are all described, as are the criteria with regard to failure or non-failure of the seam (see the conditions recited on page 5, lines 2-5, of the patent as published). It is worth recalling that the addressee of the patent specification is the person skilled in the art: such a person would know the size, construction (including the manner in which the seam is formed) and tea content of a standard tea bag of the known flow through type.

## The Objection of Lack of Novelty Under Article 100 (a) EPC (Articles 52 (1) and 54 EPC)

18. It is submitted that the present invention is not disclosed in any of the cited documents, the Patentee's comments on which are as follows:

*D1: US-A-3 386 834 (Noiset et al)*

19. This discloses an infuser material for use in making packages for brewing beverages, which material comprises a continuous, prebonded fibrous web (D1, column 5, lines 51-53). The web has a plurality of discrete water-repellent gas-release zones which, upon immersion in water, will allow the free passage of gases therethrough. The gas-release zones consist essentially of fibres impregnated with a water-repellent material, the total water-repellent area of the web constituting less than one-half the total area of the web (D1, column 5, lines 55-65), the water-repellent areas generally constituting from 0.1 to 40% of the total surface area (D1, column 4, lines 45-51 and 70-73, and column 6, line 1).

20. The water-repellent material with which the fibres in the water-repellent, gas-release zones are impregnated is a thermosetting resin, in particular a thermosetting resin within the category of silicones (D1, column 3, lines 11-14).

21. The upper limit on the surface area constituted by the water-repellent, gas-release zones is justified by a technical effect, whereby the porosity of the web tends to decrease when the said zones constitute more than 40% of the surface area (D1, column 4, line 71, to column 5, line 4). In contrast, the present invention, as claimed in claim 1, requires the porous fibrous sheet material to be impregnated *throughout its extent* with 1% or more by weight of a hydrophobic treating system.

22. Furthermore, the objection of lack of novelty is not justified by the passage in D1, column 4, lines 27-40, being the passage to which attention is drawn in item 3.1.3 of the Notice of Opposition. This passage discloses tea bags in which the entire surface area was treated with a silicone in dispersion, the amount of silicone in that dispersion ranging from 1 to 15%. It should be carefully noted that the said percentages relate to the amount of silicone in the *dispersion* and not in the tea bag material itself. There is no disclosure of the pick-up or rate of application of the silicone dispersion and thus there is no disclosure of a tea bag in which the entire surface area has been treated such that the treating agent is present in an amount of 1% by weight or more.

23. The discussion in items 3.1.3-3.1.5 of the Notice of Opposition fails to make good the deficiency noted in the preceding paragraph herein. Since factors other than resin concentration in an emulsion will determine the resin pick up by a non woven web material, the opponent's statements regarding the presumed pick-up of silicone resin in the samples of Table 1 of D1 must be regarded as purely speculative. Such other factors having an influence on binder pickup of a nonwoven sheet include the pressure applied to the web by the press rolls of the size press, the type of press roll in terms of covering and fill, and the line speed, which will affect the residence time of the web in the dispersion and between the rollers. The passage in D1, column 4, lines 27-40, is silent with regard to such factors. There are therefore no grounds for presuming that the samples disclosed in Table 1 of D1 will inherently fall within the terms of claim 1 of the patent in suit.

24. The tea bags employed in the tests described in D1 were of the heat-seal type (column 5, lines 9-11). There is no disclosure of a web material of the non-heat-seal type impregnated throughout its extent with a hydrophobic treating system, as claimed in Auxiliary Request 1 and in Auxiliary Request 2. There is also in D1 no disclosure of a porous fibrous web material impregnated throughout its extent with a hydrophobic treating system as defined in the independent claims of Auxiliary Request 2. Nor is there in D1 a disclosure of a mechanically sealed infusion package made from a web material impregnated throughout its extent with a hydrophobic treating system, as claimed in Auxiliary Request 3.

*D2: EP-A-0 170 461 (General Foods Corp.)*

25. This discloses an infusion bag, for example a tea bag or coffee bag, which has been treated with a water-soluble fluoro-chemical sizing agent to prevent sorption of flavour oils by the bag material (D2, page 3, lines 13-17, and page 8, lines 10-18). The treatment of the infusion bag material may be effected by immersing it in an aqueous solution of the sizing agent for a sufficient period, followed by curing of the agent (D2, page 7, lines 11-19). The infusion bag material can be any non-toxic, relatively tasteless, insoluble natural material having sufficient porosity for extraction of the food material within the bag, particularly a natural fibre material such as cotton gauze (D2, page 5, lines 4-17).

26. The fluoro-chemical sizing agent is an anionic material and it is stated that, in order internally to bond the sizing agent to infusion bag materials, which are also anionic, the addition of cationic retention aids is necessary (D2, page 6, lines 11-15). In order to promote the uniform distribution of the sizing agent throughout the infusion bag material, it may be desirable initially to add a low molecular weight cationic retention aid and later to add a high molecular weight retention aid (D2, page 6, lines 25-30). Other additives that are mentioned include a wetting agent and a defoaming agent (D2, page 7, lines 27-32).

27. The fluoro-chemical sizing agent in D2 does not constitute a hydrophobic treating system as specified in the present claim 1, for at least the following two reasons.

28. First, the treatment levels of the fluoro-chemical sizing agent in the infusion bag material are generally from 0.05 to 0.6% by weight, typically only from 0.1 to 0.3% (D2, page 7, lines 19-22). In contrast, the present claim 1 requires the porous fibrous sheet material to be impregnated throughout its extent with 1% or more by weight of the hydrophobic treating system.

29. Second, it is explicitly stated in D2 that the fluoro-chemical sizing agent does not provide increased water-repellency to the infusion bag substrate (D2, page 8, lines 1-5), whereas the present claim 1 requires the hydrophobic treating system to impart sufficient water-repellency such that there is no appreciable water climb when measured using water at a temperature of about 100°C.

30. In item 3.2.1 of the Notice of Opposition, it is asserted that, even though the fluoro-chemical sizing agent of D2 does not itself provide increased water-repellency, D2 teaches that silicone compounds, such as are disclosed in D1, may be employed in conjunction with the fluoro-chemical sizing agent to achieve an increased water repellency (D2, page 8, lines 5-9).

31. The Opponent has argued, in effect, that the expression "in conjunction with" means that the silicone compound (i.e. the hydrophobic agent) would be applied to the web of D2 at the same time, and in the same way, as the fluoro-chemical sizing agent. Since the fluoro-chemical sizing agent may be applied by immersing the infusion bag material in an aqueous solution of the sizing agent, the Opponent appears to argue that inclusion of the silicone hydrophobic agent in that solution would result in the web material being impregnated *throughout* with the silicone hydrophobic agent. The Opponent then declares that the hydrophobic agent so incorporated would amount to more than 1% by weight.

32. It is respectfully submitted, however, that the analysis presented by the Opponent - which analysis depends entirely on a tendentious construction of the expression "in conjunction with" on page 8, line 7, of D2 - does not withstand scrutiny. The following four observations are appropriate.

33. First, it may be noted that the wording in D2, at page 8, line 7, is not "applied in conjunction with" but "employed in conjunction with" and should therefore be construed as meaning no more than that not only the fluoro-chemical sizing agent but also a silicone compound may be present in the final product, in order to impart water repellency to that product.

34. Second, the passage in D2, at page 8, lines 5-9, ought to be considered together with the passage in D2, at page 2, lines 22-26, which indicates that the silicones of D1 are used as a water repellent for the purpose of improving gas release from within the infusion bag. Accordingly, the notional person skilled in the art, who according to established case law is a rather unimaginative spirit (see Decision T127/82 [1979-1985] EPOR, vol. B,587, at page 589, item 5), would apply the silicone, if at all, in accordance with the teaching in D1, that is to say by ensuring that the silicone is applied to less than 50%, and preferably less than 40%, of the web surface area.

35. Third, and in support of the preceding submission, it may be recalled that the reason for limiting the surface area over which the silicone is applied, according to D1, is that the porosity of the web would otherwise tend to decrease. The person skilled in the art is taught by D2, at page 3, lines 28-34, that the porosity of the infusion bag material should not be diminished, so as not to impede the flow of the extracted material. Thus, D2 itself strengthens the technical motivation, already apparent from D1, to restrict the surface area that is treated with the silicone, so as to achieve the benefits of the silicone treatment without impairing porosity.

36. Fourth, the notional person skilled in the art is deemed to be aware of US-A-4,289,580 (Elston *et al*), which indicates that a uniform hydrophobic phase reduces the permeability of a web and hence will retard any infusion through it.

37. The passage in column 4, lines 27-40, of D1 does not alter the conclusion, which may be drawn from the above discussion, that the present invention does indeed involve an inventive step over the cited art. The said passage in D1 relates only to an illustration of the proposition that a decrease in the porosity of the web will occur as the percentage of the silicone in the dispersion is increased. The said passage does not illustrate the invention that is disclosed in D1, the teaching of which is consistently that the total water-repellent area of the paper should be less than one half of the total area of the paper, preferably no more than 40% of the total surface area.

38. There is no disclosure in D2 of the inventions claimed in the Auxiliary Requests filed herewith; in particular, there is no disclosure of a web material of the non-heat seal type impregnated throughout its extent with a non-silicone hydrophobic treating system, as required by Auxiliary Request 2.

*D3: US-A-3 616 166 (Kelley)*

39. D3 discloses an adhesive binder composition that comprises (1) an aqueous dispersion of a polymer of ethyl acrylate having a low molecular weight, and (2) an aqueous dispersion of an emulsion polymer having an MFT (minimum film-forming temperature) of at least 50°C (column 1, lines 36-45). Preferably, component (1) is a linear polymer of ethyl acrylate having an MFT not above room temperature and a molecular weight of 150,000 to 300,000 (viscosity average) obtained by emulsion polymerisation using 0.2 to 5% by weight, based on the total monomer weight of a chain-transfer agent, and component (2) is a polymer containing units of vinyl chloride, methyl methacrylate, styrene, vinyl toluene or acrylonitrile, which polymer has an MFT of at least 50°C, the polymers being present in a proportion of 60-90% by weight of component (1) and 40-10% by weight of component (2) (see claim 1 and claim 3).

40. The binder composition is intended for use as a binder for non-woven fabrics; in particular, it is said to provide a binder that is adapted to be heat sealed, whether or not the bonded fabric is in a state of rest (e.g. when it is lying flat) or in a state of tension (e.g. resulting from the bending or flexing of the sheet into, for example, a closed sleeve or tube) (column 1, lines 29-35). D3 states that the bonded non-woven webs may be formed into "all sorts of packaging or wrapping materials which may be of various porosity in respect to liquids and/or gases including air" (column 5, lines 55-58). Amongst many other possible uses, D3 mentions the "packing of tea, coffee or similar beverage solids in unit parcels such as the well-known tea bags in which two of the nonwoven webs are placed one above and one below the parcel of powder and is then heat-sealed around the periphery of the superimposed webs" (column 5, lines 64-68).

41. Contrary to the statement in Item 3.3.3 of the Notice of Opposition, there are no grounds for stating that the procedure of D3 will inevitably lead to a material as defined in claim 1 of the opposed patent. Thus, there is no teaching or suggestion that a fibrous web material treated with the adhesive binder of D3 will satisfy the limits placed on the water climb performance and on the mechanical seam failure rate prescribed by claim 1 and claim 12 of the opposed patent.

42. D3, at column 5, lines 58-61, states that the treated fabric remains "highly porous to liquids and also *somewhat porous* to gases" (emphasis added). There are no grounds for asserting that a web material saturated with the binder composition according to D3 and which is only somewhat porous to gases could prevent the buildup of differential pressures on opposite sides of the web and facilitate the passage therethrough of condensible and non-condensible gases (see page 2, lines 43-44, of the opposed patent) and substantially improve the seam integrity of mechanically sealed infusion packages.

43. D3 goes on to state (column 5, lines 61-64) that "this porosity to both gases and liquids can be increased by applying the binder to preselected areas leaving interstitial areas provided with no binder". D3 therefore teaches, in common with D1, that the binder should not be applied across the entire area of the web material. Thus, D3, in common with D1, teaches *away* from the present invention, which requires the web material to be impregnated throughout its extent with the hydrophobic treating system.

44. There is no disclosure in D3 of a web material of the non-heat seal type impregnated throughout its extent with a hydrophobic treating system, as claimed in Auxiliary Request 1 or 2; nor is there in D3 a disclosure of a mechanically sealed infusion package made from a web material impregnated throughout its extent with a hydrophobic treating system, as claimed in Auxiliary Request 3.

<u>The Objection of Lack of Inventive Step under Article 100 (a) EPC (Articles 52 (1) and 56 EPC).</u>

45. It is submitted that the present invention is not at all obvious from any of D1, D2 and D3, or from any combination thereof.

*The Objection Based on D1*

46. Contrary to the statements in Item 4.1.1. (i) and (ii) of the Notice of Opposition, D1 does not deal with the same problem as the patent in suit. Although there is a

passing reference in D1 to the use of webs of the non heat-seal variety that require mechanical fastening for the formation of the tea bag (column 2, lines 46-47), D1 appears to recognise a problem of the opening of the seams due to "ballooning" only in respect of heat-sealed bags (see column 1, lines 40-45; column 4, lines 7-10; column 5, lines 9-12; and column 6, lines 6-9).

47. In Item 4.1.1 (iv), the Opponent offers some "reasons" which purport to show that it would have been obvious to apply the technique of D1 to the entire area of the web material. These "reasons" are quite contrived and do not outweigh the very clear teaching in D1 that the web is *not* to be treated over its entire area. Attention may be drawn to the following statements in D1:

Column 2, lines 8-10 – "Broadly, the present invention comprises a continuous, infuser web material provided with *small* water repellent and air permeable zones or areas ..." (emphasis added).

Column 3, lines 8-10 – "... Accordingly, they [i.e., the water repellent materials] are distinguished from material which form solid films over the entire treated area".

Column 4, lines 45-51 – " ... According to the present invention, it has been found that the water repellent zones comprising an area *as small as about 0.1% of the total surface area of each tea bag* will function effectively and at the same time give an improved infusion rate without decreasing the porosity of the material. ... " (emphasis added).

Column 4, lines 71-75 – "Generally, gas release zones covering from 0.5-40.0% of the total area of each tea bag have been found quite satisfactory; however, the preferred range of area covered by these zones is from about 1.0 to 15.0% of the total surface area of each tea bag".

Column 5, lines 63-65 – "... the total water repellent area of the paper constituting *substantially* less than one-half of the total area of the paper" (emphasis added).

48. Clearly, D1 does not even suggest a treated area of as much as 50%, let alone areas approaching 100%. Furthermore, as noted above, the restriction on the surface area is taught for a stated technical reason. The Opponent has failed to adduce any serious reason why the person skilled in the art would have considered the said stated technical reason to be outweighed by the "reasons" set forth in item 4.1.1 (iv) of the Notice of Opposition.

*The Objection Based on D2*

49. The objection in Item 4.2.1 of the Notice of Opposition is, in essence, a repetition of the objection of lack of novelty expressed in Item 3.2.1, which latter objection also relied upon a combination of D2 with D1. (It is assumed that the reference to D2 in line 4 of Item 4.2.1 was intended to be a reference to D1.) It is submitted, however, that if the skilled person were to employ the silicone compound of D1, he or she would also take into account the teaching given in D1 regarding the manner in which the silicone compound is to be used. It follows that the person skilled in the art would not have considered using the silicone compound to impregnate the web material throughout its extent; on the contrary, following the teaching in D1 would lead the person skilled in the

art to use the silicone compound over an area of less than 50% of the total surface area (see D1, column 5, lines 63-65).

50.  It is worth adding that D2 is concerned with the problem of increasing the level of flavour and aromas into a food extract obtained by percolation, steeping or other brewing technique (D2, page 1, lines 7-16). This is a quite different problem from the one addressed by the invention claimed in the opposed patent.

*The Objection Based on D3*

51.  One has to state, with the utmost respect, that the statement in Item 4.3.1 does not even constitute an argument, let alone a proper analysis of the question of inventive step using the problem-and-solution approach prescribed by the Boards of Appeal.

52.  The problem addressed by D3, as indicated above, is the provision of a binder that can be heat sealed irrespective of whether the bonded fabric is in a state of rest or in a state of tension (D3, column 1, lines 29-35). There appears to be no recognition in D3 of the problem addressed by the opposed patent, namely the problem of seam failure due to the "ballooning" effect in *mechanically* sealed tea bags and the like.

Relief Sought

53.  It is requested that the Opposition be dismissed and that the patent be upheld on the basis of the Main Request, i.e. the claims as granted.

54.  If the Opposition Division finds itself unable to uphold the Main Request, it is respectfully requested that the patent be upheld on the basis of one of the Auxiliary Requests filed herewith, or on the basis of any other request that may be filed during the course of these proceedings.

Oral Proceedings

55.  If the Opposition Division is minded not to uphold the patent on the basis of the Main Request, it is respectfully requested that Oral Proceedings be instituted in order that the Opposition Division's concerns may be directly addressed.

. . . . . . . . . .

A copy of this letter and of the stated enclosures is being filed herewith for transmission to the Opponent, in accordance with Rule 36(4) EPC.

A copy of this letter and of the Auxiliary Requests is being filed by facsimile.

Yours truly,

*M. J. Donnan*

DONNAN, MICHAEL JOHN
(Carpmaels & Ransford Professional Association No. 182)
<u>Authorised Representative of the Patent Proprietor</u>


Encs. Auxiliary Request 1
      Auxiliary Request 2
      Auxiliary Request 3
      Copy of Letter and enclosures for transmission to Opponent.

EP 0 632 163 B1

Claims

1. A porous fibrous web material [of the non-heat seal type] suited for making infusion packages which are for brewing beverages and which exhibit improved resistance to the failure of a mechanical seam therein, said web material being impregnated throughout its extent with one percent or more by weight of a hydrophobic treating system, the impregnated web exhibiting a water climb of not more than 0.5 inch (13 mm) over a period of 400 seconds when measured using water at a temperature of about 100°C and no substantial loss of infusion characteristics as measured by first-colour infusion time while providing less than 10 percent failure in the mechanical seam of tea bags constructed from the said web material upon exposure to boiling water.

2. The web material of claim 1 wherein the hydrophobic treating system includes a latex emulsion of a hydrophobic agent that completely impregnates the entire web material and is comprised of at least 3 percent by weight of a strength imparting binder.

3. The web material of claim 1 wherein the hydrophobic treating system includes an alkyl acrylate hydrophobic binder.

4. The web material of claim 3 wherein the hydrophobic binder is selected from the group consisting of ethyl acrylate and butyl acrylate polymers and copolymers.

5. The web material of claim 1 wherein the hydrophobic treating system comprises up to 12 percent by weight of a hydrophobic agent and the mechanical seam failure of the web is less than one percent.

6. The web material of claim 1 wherein the hydrophobic treating system includes a strength imparting hydrophobic binder comprising a butyl acrylate copolymer.

7. The web material of claim 3 wherein the hydrophobic treating system includes a latex emulsion of the hydrophobic binder completely impregnating the entire web material and imparting sufficient resistance to wetting to eliminate the water climb of the fibrous web material, the latex emulsion of the hydrophobic binder exhibiting an affinity for being readily absorbed into the fibers of the web.

8. The web material of claim 1 wherein the fibrous web material contains a strength imparting binder and the hydrophobic treating system comprises a hydrophobic agent.

9. The web material of claim 8 wherein the hydrophobic agent is selected from the group consisting of silicones, fluorohydrocarbons, paraffin, alkyl ketene dimers and stearylated materials.

10. The web material of claim 8 wherein the amount of the hydrophobic agent is from 0.3 to 30 percent by weight.

11. The web material of claim 7 wherein the hydrophobic treating system is heat cured or otherwise insolubilised.

12. A process for producing porous web materials [of the non-heat seal type and] for making infusion packages having enhanced mechanical seam integrity comprising the steps of providing a porous absorbent web material suited for use as an infusion package, and treating the entire web material with a hydrophobic treating system to provide a treated web that exhibits a water climb of not more than 0.5 inch (13 mm) over a period of 400 seconds when measured using water at a temperature of about 100°C and less than 10 percent failure in a mechanical seam of tea bags constructed from the said web material when exposed to boiling water.

13. The process of claim 12 wherein the hydrophobic treating system includes a latex dispersion of a hydrophobic agent that exhibits an affinity for being readily absorbed into the fibers of the web, the dispersion completely impregnating the web material, and subsequently insolublizing the agent on the web.

14. The process of claim 12 wherein the hydrophobic treating system completely impregnates the web material and is comprised of a strength imparting hydrophobic binder that imparts resistance to aqueous absorption as measured by water climb, the hydrophobic agent exhibiting an affinity for being readily absorbed into the fibers of the web, the binder being a latex dispersion applied as a saturating treatment and subsequently dried.

15. The process of claim 14 wherein the binder is a latex dispersion of an alkyl acrylate, the latex binder being present in an amount sufficient to provide a binder pick up by the web of at least...

EP 0 632 163 B1

16. The process of claim 12 wherein the fibrous sheet material is soft, tissue weight material, the process including the step of treating the web with a binder in addition to the hydrophobic treating system, said system being comprised of a hydrophobic agent that exhibits an affinity for being readily absorbed into the fibers of the web, said hydrophobic agent being applied as a latex dispersion in an amount sufficient to impart a hydrophobic agent pick up of 0.3 to 30 percent by weight.

17. The process of claim 12 wherein the hydrophobic treating system includes a hydrophobic agent selected from the group consisting of silicones, fluorohydrocarbons, paraffin, alkyl ketene dimers and stearylated materials.

18. The process of claim 12 wherein the fibrous sheet material is a prebonded, light weight, highly wettable material and the hydrophobic treating system includes a hydrophobic agent that imparts complete resistance to wetting as measured by water climb, the hydrophobic agent exhibiting an affinity for being readily absorbed into the fibers of the web and being applied by a size press.

19. The process of claim 12 wherein the hydrophobic treating system completely impregnates the web material as the web material is being treated with a strength imparting binder.

20. The web material of claim 1 wherein the hydrophobic treating system comprises a hydrophobic strength-imparting binder selected from acrylic polymers and copolymers.

21. The process of claim 12 wherein the hydrophobic treating system comprises a hydrophobic strength-imparting binder selected from acrylic polymers and copolymers.

Patentansprüche

1. Poröses Fasergewebematerial, geeignet zur Herstellung von Aufgussbeuteln, die zum Aufbrühen von Getränken bestimmt sind und einen verbesserten Widerstand gegen Schäden an deren mechanischer Naht zeigen, wobei das Gewebematerial über seine ganze Erstreckung mit 1 Gew.-% oder mehr eines hydrophoben Behandlungssystems imprägniert ist, und wobei das imprägnierte Gewebe einen Wasseranstieg von nicht mehr als 0,5 Inch (13mm) über eine Zeitdauer von 400 Sekunden bei einer Messung unter Verwendung von Wasser bei einer Temperatur von ungefähr 100°C und keinen wesentlichen Verlust von Aufgusscharakteristika aufweist, wie durch die Anfangsfarbenaufgusszeit gemessen, während weniger als 10 % Versagen in der mechanischen Naht der dem kochenden Wasser ausgesetzten aus dem genannten Gewebematerial konstruierten Teebeutel vorgesehen auftritt.

2. Das Gewebematerial nach Anspruch 1, worin das hydrophobe Behandlungssystem eine Latexemulsion eines hydrophoben Agens beinhaltet, das das gesamte Gewebematerial vollständig imprägniert und aus wenigstens 3 Gew.-% eines Stärke verleihenden Binders besteht.

3. Das Gewebematerial nach Anspruch 1, worin das hydrophobe Behandlungssystem einen hydrophoben Alkylacrylatbinder beinhaltet.

4. Das Gewebematerial nach Anspruch 3, worin der hydrophobe Binder aus der Gruppe bestehend aus Acrylacrylat und Butylacrylatpolymeren und Copolymeren gewählt ist.

5. Das Gewebematerial nach Anspruch 1, worin das hydrophobe Behandlungssystem bis zu 12 Gew.-% eines hydrophoben Agens umfasst und der mechanische Nahtschaden des Gewebes geringer als 1 % ist.

6. Das Gewebematerial nach Anspruch 1, worin das hydrophobe Behandlungssystem eine Stärke verleihenden hydrophoben Binder mit einem Butylacrylatcopolymer beinhaltet.

7. Das Gewebematerial nach Anspruch 3, worin das hydrophobe Behandlungssystem eine Latexemulsion des hydrophoben Binders beinhaltet, der das gesamte Gewebematerial vollständig imprägniert und genügend Widerstand gegen Befeuchtung verleiht, um den Wasseranstieg des Fasergewebematerials abzubauen, wobei die Latexemulsion des hydrophoben Binders eine Affinität aufweist, leicht in die Fasern des Gewebes absorbiert zu werden.

AUXILIARY REQUEST 2

EP 0 632 163 B1

**Claims**

1. A porous fibrous web material *of the non-heat seal type* suited for making infusion packages which are for brewing beverages and which exhibit improved resistance to the failure of a mechanical seam therein, said web material being impregnated throughout its extent with one percent or more by weight of a hydrophobic treating system, the impregnated web exhibiting a water climb of not more than 0.5 inch (13 mm) over a period of 400 seconds when measured using water at a temperature of about 100°C and no substantial loss of infusion characteristics as measured by first-colour infusion time while providing less than 10 percent failure in the mechanical seam of tea bags constructed from the said web material upon exposure to boiling water. (A)- p.7  (B)- p.6

2. The web material of claim 1 wherein the hydrophobic treating system includes a latex emulsion of a hydrophobic agent that completely impregnates the entire web material and is comprised of at least 3 percent by weight of a strength imparting binder.

3. The web material of claim 1 wherein the hydrophobic treating system includes an alkyl acrylate hydrophobic binder.

4. The web material of claim 3 wherein the hydrophobic binder is selected from the group consisting of ethyl acrylate and butyl acrylate polymers and copolymers.

5. The web material of claim 1 wherein the hydrophobic treating system comprises up to 12 percent by weight of a hydrophobic agent and the mechanical seam failure of the web is less than one percent.

6. The web material of claim 1 wherein the hydrophobic treating system includes a strength imparting hydrophobic binder comprising a butyl acrylate copolymer.

7. The web material of claim 3 wherein the hydrophobic treating system includes a latex emulsion of the hydrophobic binder completely impregnating the entire web material and imparting sufficient resistance to wetting to eliminate the water climb of the fibrous web material, the latex emulsion of the hydrophobic binder exhibiting an affinity for being readily absorbed into the fibers of the web.

~~8. The web material of claim 1~~ wherein the fibrous web material contains a strength imparting binder and the hydrophobic treating system comprises a hydrophobic agent, (B)

~~9. The web material of claim 8 wherein the hydrophobic agent is~~ selected from the group consisting of ~~silicones~~, fluorohydrocarbons, paraffin, alkyl ketene dimers and stearylated materials.

8. (~~10.~~) The web material of claim 1 (~~8~~) wherein the amount of the hydrophobic agent is from 0.3 to 30 percent by weight.

9. (~~11.~~) The web material of claim 7 wherein the hydrophobic treating system is heat cured or otherwise insolubilised.

10. (~~12.~~) A process for producing porous web materials for making infusion packages having enhanced mechanical seam integrity comprising the steps of providing a porous absorbent web material *< of the non-heat seal type and >* suited for use as an infusion package, and treating the entire web material with a hydrophobic treating system to provide a treated web that exhibits a water climb of not more than 0.5 inch (13 mm) over a period of 400 seconds when measured using water at a temperature of about 100°C and less than 10 percent failure in a mechanical seam of tea bags constructed from the said web material when exposed to boiling water. (C)- p.7  (D)- p.7

11. (~~13.~~) The process of claim 10 (~~12~~) wherein the hydrophobic treating system includes a latex dispersion of a hydrophobic agent that exhibits an affinity for being readily absorbed into the fibers of the web, the dispersion completely impregnating the web material, and subsequently insolublizing the agent on the web.

12. (~~14.~~) The process of claim 10 (~~12~~) wherein the hydrophobic treating system completely impregnates the web material and is comprised of a strength imparting hydrophobic binder that imparts resistance to aqueous absorption as measured by water climb, the hydrophobic agent exhibiting an affinity for being readily absorbed into the fibers of the web, the binder being a latex dispersion applied as a saturating treatment and subsequently dried.

13. (~~15.~~) The process of claim 12 (~~14~~) wherein the binder is a latex dispersion of an alkyl acrylate, the latex binder being present

6

EP 0 632 163 B1

16. [14] The process of claim [10] wherein the fibrous sheet material is soft, tissue weight material, the process including the step of treating the web with a binder in addition to the hydrophobic treating system, said system being comprised of a hydrophobic agent that exhibits an affinity for being readily absorbed into the fibers of the web, said hydrophobic agent being applied as a latex dispersion in an amount sufficient to impart a hydrophobic agent pick up of 0.3 to 30 percent by weight.

17. ~~The process of claim 12~~ [15] wherein the hydrophobic treating system includes a hydrophobic agent selected from the group consisting of ~~silicones,~~ fluorohydrocarbons, paraffin, alkyl ketene dimers and stearylated materials. (D)

18. The process of claim 12 wherein the fibrous sheet material is a prebonded, light weight, highly wettable material and the hydrophobic treating system includes a hydrophobic agent that imparts complete resistance to wetting as measured by water climb, the hydrophobic agent exhibiting an affinity for being readily absorbed into the fibers of the web and being applied by a size press.

19. [16] The process of claim 12 wherein the hydrophobic treating system completely impregnates the web material as the web material is being treated with a strength imparting binder.

20. ~~The web material of claim 1~~ wherein the hydrophobic treating system comprises a hydrophobic strength-imparting binder selected from acrylic polymers and copolymers, or (A)

21. ~~The process of claim 12~~ wherein the hydrophobic treating system comprises a hydrophobic strength-imparting binder selected from acrylic polymers and copolymers, or (C)

Patentansprüche

1. Poröses Fasergewebematerial, geeignet zur Herstellung von Aufgussbeuteln, die zum Aufbrühen von Getränken bestimmt sind und einen verbesserten Widerstand gegen Schäden an deren mechanischer Naht zeigen, wobei das Gewebematerial über seine ganze Erstreckung mit 1 Gew.-% oder mehr eines hydrophoben Behandlungssystems imprägniert ist, und wobei das imprägnierte Gewebe einen Wasseranstieg von nicht mehr als 0,5 Inch (13mm) über eine Zeitdauer von 400 Sekunden bei einer Messung unter Verwendung von Wasser bei einer Temperatur von ungefähr 100°C und keinen wesentlichen Verlust von Aufgusscharakteristika aufweist, wie durch die Anfangsfarbenaufgusszeit gemessen, während weniger als 10 % Versagen in der mechanischen Naht der dem kochenden Wasser ausgesetzten aus dem genannten Gewebematerial konstruierten Teebeutel vorgesehen auftritt.

2. Das Gewebematerial nach Anspruch 1, worin das hydrophobe Behandlungssystem eine Latexemulsion eines hydrophoben Agens beinhaltet, das das gesamte Gewebematerial vollständig imprägniert und aus wenigstens 3 Gew.-% eines Stärke verleihenden Binders besteht.

3. Das Gewebematerial nach Anspruch 1, worin das hydrophobe Behandlungssystem einen hydrophoben Alkylacrylatbinder beinhaltet.

4. Das Gewebematerial nach Anspruch 3, worin der hydrophobe Binder aus der Gruppe bestehend aus Acrylacrylat und Butylacrylatpolymeren und Copolymeren gewählt ist.

5. Das Gewebematerial nach Anspruch 1, worin das hydrophobe Behandlungssystem bis zu 12 Gew.-% eines hydrophoben Agens umfasst und der mechanische Nahtschaden des Gewebes geringer als 1 % ist.

6. Das Gewebematerial nach Anspruch 1, worin das hydrophobe Behandlungssystem eine Stärke verleihenden hydrophoben Binder mit einem Butylacrylatcopolymer beinhaltet.

7. Das Gewebematerial nach Anspruch 3, worin das hydrophobe Behandlungssystem eine Latexemulsion des hydrophoben Binders beinhaltet, der das gesamte Gewebematerial vollständig imprägniert und genügend Widerstand gegen Befeuchtung verleiht, um den Wasseranstieg des Fasergewebematerials abzubauen, wobei die Latexemulsion des hydrophoben Binders eine Affinität aufweist, leicht in die Fasern des Gewebes absorbiert zu werden.

EP 0 632 163 B1

REQUEST 3

Claims

1. A ~~porous fibrous web material, suited for making~~ mechanically sealed infusion package which ~~are~~ is for brewing a beverage and which exhibits improved resistance to the failure of a mechanical seam therein, said web material being impregnated throughout its extent with one percent or more by weight of a hydrophobic treating system, the impregnated web exhibiting a water climb of not more than 0.5 inch (13 mm) over a period of 400 seconds when measured using water at a temperature of about 100°C and no substantial loss of infusion characteristics as measured by first-colour infusion time while providing less than 10 percent failure in the mechanical seam of tea bags constructed from the said web material upon exposure to boiling water.

2. The ~~web material~~ infusion package of claim 1 wherein the hydrophobic treating system includes a latex emulsion of a hydrophobic agent that completely impregnates the entire web material and is comprised of at least 3 percent by weight of a strength imparting binder.

3. The ~~web material~~ infusion package of claim 1 wherein the hydrophobic treating system includes an alkyl acrylate hydrophobic binder.

4. The ~~web material~~ infusion package of claim 3 wherein the hydrophobic binder is selected from the group consisting of ethyl acrylate and butyl acrylate polymers and copolymers.

5. The ~~web material~~ infusion package of claim 1 wherein the hydrophobic treating system comprises up to 12 percent by weight of a hydrophobic agent and the mechanical seam failure of the web is less than one percent.

6. The ~~web material~~ infusion package of claim 1 wherein the hydrophobic treating system includes a strength imparting hydrophobic binder comprising a butyl acrylate copolymer.

7. The ~~web material~~ infusion package of claim 3 wherein the hydrophobic treating system includes a latex emulsion of the hydrophobic binder completely impregnating the entire web material and imparting sufficient resistance to wetting to eliminate the water climb of the fibrous web material, the latex emulsion of the hydrophobic binder exhibiting an affinity for being readily absorbed into the fibers of the web.

8. The ~~web material~~ infusion package of claim 1 wherein the fibrous web material contains a strength imparting binder and the hydrophobic treating system comprises a hydrophobic agent.

9. The ~~web material~~ infusion package of claim 8 wherein the hydrophobic agent is selected from the group consisting of silicones, fluorohydrocarbons, paraffin, alkyl ketene dimers and stearylated materials.

10. The ~~web material~~ infusion package of claim 8 wherein the amount of the hydrophobic agent is from 0.3 to 30 percent by weight.

11. The ~~web material~~ infusion package of claim 7 wherein the hydrophobic treating system is heat cured or otherwise insolubilised.

12. A process for ~~producing porous web materials for~~ making infusion packages having enhanced mechanical seam integrity comprising the steps of providing a porous absorbent web material suited for use as an infusion package, ~~and~~ treating the entire web material with a hydrophobic treating system to provide a treated web that exhibits a water climb of not more than 0.5 inch (13 mm) over a period of 400 seconds when measured using water at a temperature of about 100°C and less than 10 percent failure in a mechanical seam of tea bags constructed from the said web material when exposed to boiling water, << -- >>

13. The process of claim 12 wherein the hydrophobic treating system includes a latex dispersion of a hydrophobic agent that exhibits an affinity for being readily absorbed into the fibers of the web, the dispersion completely impregnating the web material, and subsequently insolublizing the agent on the web.

14. The process of claim 12 wherein the hydrophobic treating system completely impregnates the web material and is comprised of a strength imparting hydrophobic binder that imparts resistance to aqueous absorption as measured by water climb, the hydrophobic agent exhibiting an affinity for being readily absorbed into the fibers of the web, the binder being a latex dispersion applied as a saturating treatment and subsequently dried.

15. The process of claim 14 wherein the binder is a latex dispersion of an alkyl acrylate, the latex binder being present

< which infusion package is made from a porous fibrous web material, >

<< and making mechanically sealed infusion packages from the treated web material. >>

EP 0 632 163 B1

16. The process of claim 12 wherein the fibrous sheet material is soft, tissue weight material, the process including the step of treating the web with a binder in addition to the hydrophobic treating system, said system being comprised of a hydrophobic agent that exhibits an affinity for being readily absorbed into the fibers of the web, said hydrophobic agent being applied as a latex dispersion in an amount sufficient to impart a hydrophobic agent pick up of 0.3 to 30 percent by weight.

17. The process of claim 12 wherein the hydrophobic treating system includes a hydrophobic agent selected from the group consisting of silicones, fluorohydrocarbons, paraffin, alkyl ketene dimers and stearylated materials.

18. The process of claim 12 wherein the fibrous sheet material is a prebonded, light weight, highly wettable material and the hydrophobic treating system includes a hydrophobic agent that imparts complete resistance to wetting as measured by water climb, the hydrophobic agent exhibiting an affinity for being readily absorbed into the fibers of the web and being applied by a size press.

19. The process of claim 12 wherein the hydrophobic treating system completely impregnates the web material as the web material is being treated with a strength imparting binder.

20. The web material of claim 1 wherein the hydrophobic treating system comprises a hydrophobic strength-imparting binder selected from acrylic polymers and copolymers.

21. The process of claim 12 wherein the hydrophobic treating system comprises a hydrophobic strength-imparting binder selected from acrylic polymers and copolymers.

Patentansprüche

1. Poröses Fasergewebematerial, geeignet zur Herstellung von Aufgussbeuteln, die zum Aufbrühen von Getränken bestimmt sind und einen verbesserten Widerstand gegen Schäden an deren mechanischer Naht zeigen, wobei das Gewebematerial über seine ganze Erstreckung mit 1 Gew.-% oder mehr eines hydrophoben Behandlungssystems imprägniert ist, und wobei das imprägnierte Gewebe einen Wasseranstieg von nicht mehr als 0,5 Inch (13mm) über eine Zeitdauer von 400 Sekunden bei einer Messung unter Verwendung von Wasser bei einer Temperatur von ungefähr 100°C und keinen wesentlichen Verlust von Aufgusscharakteristika aufweist, wie durch die Anfangsfarbenaufgusszeit gemessen, während weniger als 10 % Versagen in der mechanischen Naht der dem kochenden Wasser ausgesetzten aus dem genannten Gewebematerial konstruierten Teebeutel vorgesehen auftritt.

2. Das Gewebematerial nach Anspruch 1, worin das hydrophobe Behandlungssystem eine Latexemulsion eines hydrophoben Agens beinhaltet, das das gesamte Gewebematerial vollständig imprägniert und aus wenigstens 3 Gew.-% eines Stärke verleihenden Binders besteht.

3. Das Gewebematerial nach Anspruch 1, worin das hydrophobe Behandlungssystem einen hydrophoben Alkylacrylatbinder beinhaltet.

4. Das Gewebematerial nach Anspruch 3, worin der hydrophobe Binder aus der Gruppe bestehend aus Acrylacrylat und Butylacrylatpolymeren und Copolymeren gewählt ist.

5. Das Gewebematerial nach Anspruch 1, worin das hydrophobe Behandlungssystem bis zu 12 Gew.-% eines hydrophoben Agens umfasst und der mechanische Nahtschaden des Gewebes geringer als 1 % ist.

6. Das Gewebematerial nach Anspruch 1, worin das hydrophobe Behandlungssystem eine Stärke verleihenden hydrophoben Binder mit einem Butylacrylatcopolymer beinhaltet.

7. Das Gewebematerial nach Anspruch 3, worin das hydrophobe Behandlungssystem eine Latexemulsion des hydrophoben Binders beinhaltet, der das gesamte Gewebematerial vollständig imprägniert und genügend Widerstand gegen Befeuchtung verleiht, um den Wasseranstieg des Fasergewebematerials abzubauen, wobei die Latexemulsion des hydrophoben Binders eine Affinität aufweist, leicht in die Fasern des Gewebes absorbiert zu werden.