Please amend claim 7 as follows:

7.    The infusion web of claim 1 wherein the hydrophobic <u>agent is</u> [treating system includes a latex emulsion of] a hydrophobic strength imparting binder completely impregnating the entire web material and imparting sufficient resistance to wetting to eliminate the water climb of the fibrous sheet material, [the latex emulsion of] the hydrophobic binder exhibiting an affinity for being readily absorbed into the fibers of the web, the binder being <u>a high molecular weight cross-linked</u> [an] alkyl acrylate polymeric material.

Please amend claim 8 as follows:

8.    The infusion web of claim 1 wherein the fibrous sheet material contains a strength imparting binder <u>other than the</u> [and the hydrophobic treating system comprises a] hydrophobic agent.

Please cancel claim 9.

Please amend claim 11 as follows:

11.    A process for producing porous web materials for making infusion packages having enhanced mechanical seam integrity comprising the steps of providing a porous absorbent web material suited for use as an infusion package, treating the entire web material with <u>an aqueous emulsion of</u> a hydrophobic [treating system] <u>agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials</u> to provide a treated web that exhibits no appreciable water climb when measured using water at a temperature of about 100° C and less than 10 percent failure in a mechanical seam therein when exposed to boiling water.

46

Please amend claim 12 as follows:

12. The process of claim 11 wherein the aqueous emulsion of the [hydrophobic treating system includes a latex dispersion of a] hydrophobic agent [that] exhibits an affinity for being readily absorbed into the fibers of the web[, the dispersion and completely impregnating the web material,] and the process includes the step of subsequently insolublizing the agent on the web.

Please amend claim 13 as follows:

13. The process of claim 11 wherein the hydrophobic agent is a cross-linked high molecular weight acrylic polymer which also acts as [treating system completely impregnates the web material and is comprised of] a strength imparting hydrophobic binder, the hydrophobic agent imparting [that imparts] resistance to aqueous absorption as measured by water climb and[, the hydrophobic agent] exhibiting an affinity for being readily absorbed into the fibers of the web, [the binder being a latex dispersion] the treating step comprising [applied as] a saturating treatment and the process includes the step of subsequently drying the treated web material [dried].

Please amend claim 15 as follows:

15. The process of claim 11 wherein the fibrous sheet material is soft, tissue weight material, the process including the step of treating the web with a binder in addition to the hydrophobic treating [system] agent, said agent exhibiting [system being comprised of a hydrophobic agent that exhibits] an affinity for being readily absorbed into the fibers of the web, said hydrophobic agent being applied as a latex dispersion in an amount sufficient to impart a hydrophobic agent pick up of about 0.3 to 30 percent by weight.

47

Please cancel claim 16.

Please amend claim 17 as follows:

17. The process of claim 11 wherein the fibrous sheet material is a prebonded, light weight, highly wettable material and the [hydrophobic treating system includes a] hydrophobic agent [that] imparts complete resistance to wetting as measured by water climb, the hydrophobic agent exhibiting an affinity for being readily absorbed into the fibers of the web and being applied by a size press.

Please amend claim 18 as follows:

18. The process of claim 11 wherein the hydrophobic treating agent [system] completely impregnates the web material as the web material is being treated with a strength imparting binder.

## REMARKS

Reconsideration of the rejections set forth in the office action dated October 11, 1994 is respectfully requested in view of the foregoing amendments and following remarks.

As requested in the first paragraph on page 2 of the office action, an abstract of the disclosure is attached hereto as a separate sheet.

Claim 1 - 18 have been rejected under § 112, second paragraph, as being indefinite with respect to the meaning of the expression "hydrophobic treating system". That language has been clarified by incorporating into the independent claims an indication that the system comprises a cured hydrophobic agent selected from the designated materials. As a result, claims 9 and 16 have been canceled since

5

the language set forth in those claims has now been incorporated into the independent claims and additional language has been added to the Markush group.

The office action opines that the language refers to a combination of a latex emulsion of a hydrophobic agent and a hydrophobic binder. However, the term "system" refers principally to a hydrophobic agent that may also act as a strength-imparting binder. Alternatively, the hydrophobic agent may be employed in addition to a second binder where the agent itself does not provide a binding function. However, the system does not consist of both a hydrophobic agent and a hydrophobic binder. Rather, as stated on page 3 of the specification, it has been found that mechanical seam integrity can be enhanced by treating the entire web material with a latex dispersion of a hydrophobic agent to provide a porous tea bag material which exhibits an extremely low absorbency and wettability as measured by standard water climb test procedures coupled with retention of its infusion characteristics. Again, as stated in the specification at pages 6 and 7, the system is described as comprising a latex or aqueous emulsion of a suitable hydrophobic agent which, when cured, is insoluble in aqueous solutions and unaffected by boiling water. The hydrophobic agents should exhibit an affinity for being readily absorbed into the fibers of the base web material while substantially retaining the porosity of the web. The materials found most suitable for this type of application are strength-imparting binders used in place of the binder systems employed heretofore, namely, as substitutes for the prior binder system. Alternatively, the hydrophobic agent may be a supplemental treatment in addition to the conventional binder. The preferred hydrophobic agents are the alkyl

acrylates sold by B.F. Goodrich under the trade name designation, HYCAR 26-315,

6

49

and 26-373. These materials are self-curing high molecular weight acrylic polymers. However, heat curing of the material may be employed. As indicated in the December 16, 1994 letter (copy attached) to one of the applicants by Mr. Pravin K. Shah of the B.F. Goodrich Company, the preferred materials are highly cross-linked polymers having an average molecular weight well in excess of 500,000. These polymer latices are not blends of two adhesive binders, but are single copolymers.

As set forth on pages 12 - 13 of the specification, the hydrophobic agent may be used in connection with a prebonded sheet. In that instance, the hydrophobic agent may be a silicone, fluorocarbon, paraffin, etc., such as the "Scotchban" treating material sold by 3M under the designations "FC-809" or "FX-845". Those hydrophobic materials do not act as binders, but are used with a prebonded material or with a separate binder material. Accordingly, as mentioned, the hydrophobic treating system consists of a hydrophobic agent that may be used in conjunction with a binder or may itself be a strength-imparting binder material so long as it provides all of the requisite properties set forth within the application for the hydrophobic agent.

In view of the foregoing, it is believed that the indefiniteness noted in the office action has been clarified and withdrawal of the rejection under § 112, second para-graph, is earnestly solicited.

Claim 1 - 18 also have been rejected under 35 U.S.C. § 103 as being unpatentable over the combination of the Noiset et al patent and the patent to Kelley. Either reference may be used as the primary reference supplemented by the other reference. The office action indicates that Noiset et al discloses a porous web coated with an aqueous emulsion of the hydrophobic agent in discreet areas, but Noiset et

7

50

al fails to disclose impregnation throughout the paper.  Kelley, on the other hand,

discloses a composition referred to as a "polyblend" that is applied over the entire area

of the porous web.  It also may be applied in preselected area for use in infusion-type

packaging.  The office action contends it would be obvious in view of the teachings

of Kelley to impregnate the porous web of Noiset et al over the entire area if so

desired, or, conversely, it would be obvious to employ the polysiloxane taught by

Noiset as the aqueous emulsion agent in Kelley.

The conclusions set forth in the office action are not supported by a careful

analysis of the references relied upon.  Noiset does disclose a porous web coated with

an aqueous emulsion of an organosiloxane in discreet areas for use with infusion type

paper.  However, as noted in the office action, Noiset et al purposely refrains from

applying the material throughout the paper.  The Noiset et al patent was fully dis-

cussed in the specification of this application. The Examiner's attention is directed to

the paragraph beginning in the middle of page 2 of the specification.  As stated

therein, Noiset et al treats from 0.1 to 40 percent of the surface of the infusion

material.  The subsequent patent to Elston et al, mentioned at the same location in the

instant specification, clearly also teaches the disadvantages with respect to infusion

properties when the hydrophobic material is informally dispersed throughout the

porous web material.  In fact, Elston et al requires that the hydrophobic synthetic pulp

be disrupted over 10 to 70 percent of the total exposed surface area.  Thus, the

Elston et al patent appears to confirm the teaching of Noiset et al to the effect that

the hydrophobic material should not be used as an impregnant throughout the entire

8

51

wettability reduced, but the infusion characteristics are substantially retarded or even fully inhibited. Thus, the teaching of Noiset et al, as confirmed by Elston et al, is clear and unambiguous. A treatment of the web material throughout its entire extent with a hydrophobic agent should not be employed since it will adversely impact the infusion characteristics of the fibrous web material.

The Kelley patent, on the other hand, is concerned with heat-sealable fibrous webs and clearly states, at column 1, lines 5 - 28, that high molecular weight acrylic binders having a molecular weight ranging from 500,000 to several million had previously been employed on fibrous sheet materials. Such materials have a resilience and springiness that exert a tension along the bonding line and tend to pull the bond apart after removal of the pressure of the heat seal jaws or rollers. Accordingly, Kelley wishes to avoid the use of such high molecular weight acrylic polymers and teaches the use of a two component binder adapted for heat sealing the nonwoven web material. This two component binder is referred to as a "polyblend" and consists of (1) an aqueous dispersion of the ethyl acrylate polymer of low molecular weight and (2) an aqueous dispersion of an emulsion polymer having a minimum film-forming temperature (MFT) of about 50°C or higher. The first component should have an MFT of room temperature or lower and should exhibit a molecular weight in the range of about 150,000 - 300,000. The patent states, at column 2, lines 64 - 66, that if the first component were to be used alone, it would be undesirably tacky in bonded nonwoven products, thus requiring that it be blended with the second component in order to overcome the tackiness. The second component of the polyblend should have a minimum film-forming temperature within the range of 60°C to 150°C. While

9

52

the polyblend may be formulated to provide varying results, it is noted from Tables I and II that the use of only a single component results in a tacky material as shown in Examples 11 and 13. Applicant's hydrophobic agent is not a low molecular weight material and does not exhibit the tacky characteristics mentioned in the Kelley patent.

The Kelley patent further states, at column 4, lines 40 *et seq*, that the material is pressure sensitive as well as thermoplastic and is employed to adhesively join many things such as wood to plastic, plastic to metals, etc. The patent further states that, because of the pressure sensitive character of the material, it will provide adhesion, without resorting to heated platens, by simply pressing the adhesive coated surfaces together. (See column 4, lines 60 - 62.)

Finally, the Kelley patent indicates that when the polyblend is distributed over the entire area of the web, it remains porous to liquids and porous to gases. "However, this porosity to both gases and liquids can be increased by applying the binder to preselected areas leaving interstitial area provided with no binder", (col. 5, lines 61 - 64). In other words, in order to provide a high level of porosity, it is necessary to provide less than full coverage of the fabric by the polyblend material. Indirectly, this states that the application of the polyblend material would decrease the porosity when the polyblend is distributed over the entire area of the nonwoven web material. Such a teaching is in conformity with the findings of Noiset et al and Elston et al, but is not in keeping with the findings of the present invention.

As indicated in the instant application, the present invention provides for treating a sheet material throughout its entire extent with a hydrophobic agent to provide improved resistance to the failure of the mechanical seam crimped in the paper

10

53

coupled with a retention of the infusion characteristics of that material. The treatment of the entire web with a hydrophobic agent is contraindicated by the prior art, yet, in accordance with the present invention, has been surprisingly found to not only maintain the infusion characteristics of the material, but also to significantly enhance the resistance of the material to mechanical seam failure. These features are neither described nor suggested by the prior art relied upon in the office action.

As the Examiner has admitted in the office action, the Noiset et al patent fails to disclose impregnation throughout the entire extent of the fibrous web material. The Kelley patent requires the use of a polyblend having two components, the first of which must have a molecular weight between 150,000 and 300,000. The Kelley patent clearly states that preselected areas must remain untreated in order to provide increased porosity to both gases and liquids. It would seem that both Noiset et al and Kelley indicate that treatment of the entire area of porous webs should not be employed and Kelley further teaches that one should not use a high molecular weight material. These facts fly in the face of the conclusion set forth in the office action that it would be obvious in view of the teachings of Kelley to impregnate the porous web of Noiset et al over the entire area. The clear teaching from the prior art is to the contrary.

The office action further states that it would be obvious to employ the polysiloxane of Noiset et al as the aqueous emulsion agent in Kelley. There is no suggestion whatsoever that a siloxane should be used in the Kelley system. Kelley mentions numerous chemicals that may be incorporated into that polyblend system, but applicant fails to find the suggestion for a siloxane or anything similar thereto

11

54

Accordingly, the suggestion, if any, appears to come from the instant application. Further, as the Examiner appreciates, applicant uses the siloxane with a prebonded web material. Such a system also is not disclosed or suggested by any combination of the Kelley and Noiset et al references.

In summary, a new abstract has been provided, the indefiniteness noted by the Examiner has been corrected, and the art has been discussed in detail showing that it teaches away from, rather than toward, the invention set forth in the specification and claims of this application. Accordingly, it is believed the application is now in condition for allowance, and prompt favorable action thereon is earnestly solicited.

Respectfully submitted,

P.C. Scott et al

BY James E. Alix
Registration No. 20,736
Chilton, Alix & Van Kirk
Attorney for Applicant

Date:  January 11, 1994
750 Main Street
Hartford, CT 06103
(203) 527-9211
Our Ref:  DEXNON/079/US
JEA/ras

12

55

086623

### Abstract of the Disclosure

A porous web material for making infusion packages having enhanced mechanical seam integrity is obtained by treating the entire fibrous web material with an aqueous emulsion of a hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials. The hydrophobic agent, which may also act as a strength imparting binder, is preferably applied as a saturating treatment. The treated web is subsequently dried to insolublize the agent on the web. The web exhibits no appreciable water climb when measured using water at a temperature of about 100° C and no substantial loss of infusion characteristics while providing less than 10 percent failure in a mechanical seam therein when exposed to boiling water.

MAIL ROOM JAN 17 1995 PAT. & TRADEMARK OFF.

56

**BFGoodrich**



The BFGoodrich Company
Research & Development Center
9921 Brecksville Road
Brecksville, Ohio 44141
216-447-5000

December 16, 1994

Helen Viazmensky

Dear Helen:

The polymer description of binders you used in tea bag formulations: Hycar 26315 and 26373.

♦ The above two polymers are highly crosslinked and thus it is not possible to measure the molecular weight. Only a portion of these polymers are soluble in good solvents like THF or a mixture of THF and methanol. The weight average molecular weight of only the soluble portion is >500,000.

♦ Hycar 26315 and 26373 are single copolymers. They are not the blend of two adhesive binders.

Sincerely,

Pravin K. Shah
THe BFGoodrich Company

PKS:cas



MAIL ROOM
JAN 17 84 1995
PAT. & TRADEMARK OFF.

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re patent application of P.C. Scott, H. Viazmensky and N. Wolchack, Jr.

Serial No. 08/086,673                                Examiner: Bell, J.

Filing Date: 07/01/93                                Group Art Unit: 1504

For: Process of Producing Porous Web Materials Used for Making Infusion Packages
for Brewing Beverages and the Web Materials Thus Produced

RECEIVED
JAN 26 1995
GROUP 1500

Commissioner of Patents and Trademarks
Washington, DC 20231

Sir:

Transmitted herewith is an amendment in the above-identified application.

( )    A small entity statement was previously submitted in this application.
( )    A small entity statement is enclosed.
(XX)   A filing fee for extra claims does not appear required.
( )    A filing fee for extra claims is calculated below:

|  | No. of Claims Remaining After Amendment | Highest No. of Claims Previously Paid For | No. of Extra Claims | Fee For Small Entity Rate | Fee | Fee For Other Than Small Entity Rate | Fee |
|---|---|---|---|---|---|---|---|
| Total | 16 | 20 | 0 | x $11 = $ | | x $22 = | $ 0 |
| Indep. | 2 | 3 | 0 | x $38 = $ | | x $76 = | $ 0 |
| ( ) | First Presentation of Multiple Dependent Claims | | | + $120 = $ | | + $240 = | $ |
| | | | | TOTAL = $ | | TOTAL = | $ 0 |

(XX)   It is hereby petitioned that any required extension of time be granted for filing the amendment. An
extension of ____ month(s) having a fee of $____ appears required.

( )    A check in the amount of $____ is attached. Please credit any overpayment to Deposit Account
16-2563 of Chilton, Alix & Van Kirk.

The Commissioner is hereby requested and authorized to charge Deposit Account 16-2563 of Chilton, Alix
& Van Kirk for any fee, not enclosed herewith, due for any reason in connection with the amendment or
this or any other document accompanying the amendment, including (a) any filing fees under 37 CFR 1.16
for the presentation of extra claims and (b) any patent application processing fees under 37 CFR 1.17. A
duplicate copy of this sheet is attached.

James E. Alix, Reg. No. 20,736
Chilton, Alix & Van Kirk
750 Main Street
Hartford, CT 06103-2708
(203) 527-9211

Attorney's Ref: DEXNON/079/US

I hereby certify that this correspondence is being deposited on the date below with the United States
Postal Service as first class mail in an envelope addressed to "Commissioner of Patents and Trademarks,
Washington, DC 20231."

Signature: _James E. Alix_    Reg. No. _20,736_    Date _January 11, 1995_

58



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re patent application of P.C. Scott, H. Vlazmensky and N. Wolchack, Jr.

Serial No. 08/086,673                        Examiner: Bell, J.

Filing Date: 07/01/93                        Group Art Unit: 1504

For: Process of Producing Porous Web Materials Used for Making Infusion Packages
       for Brewing Beverages and the Web Materials Thus Produced

Commissioner of Patents and Trademarks
Washington, DC 20231

RECEIVED

JAN 26 1995

GROUP 1500

Sir:

      Transmitted herewith is an amendment in the above-identified application.

(   )   A small entity statement was previously submitted in this application.
(   )   A small entity statement is enclosed.
(XX)  A filing fee for extra claims does not appear required.
(   )   A filing fee for extra claims is calculated below:

|  | No. of Claims Remaining After Amendment | Highest No. of Claims Previously Paid For | No. of Extra Claims | Fee For Small Entity Rate | Fee | Fee For Other Than Small Entity Rate | Fee |
|---|---|---|---|---|---|---|---|
| Total | 16 | 20 | 0 | x $11 = | $ | x $22 = | $ 0 |
| Indep. | 2 | 3 | 0 | x $38 = | $ | x $76 = | $ 0 |
| ( ) First Presentation of Multiple Dependent Claims | | | | + $120 = | $ | + $240 = | $ |
|  |  |  |  | TOTAL = | $ | TOTAL = | $ 0 |

(XX)  It is hereby petitioned that any required extension of time be granted for filing the amendment. An extension of _____ month(s) having a fee of $_____ appears required.

(   )   A check in the amount of $_____ is attached. Please credit any overpayment to Deposit Account 16-2563 of Chilton, Alix & Van Kirk.

The Commissioner is hereby requested and authorized to charge Deposit Account 16-2563 of Chilton, Alix & Van Kirk for any fee, not enclosed herewith, due for any reason in connection with the amendment or this or any other document accompanying the amendment, including (a) any filing fees under 37 CFR 1.16 for the presentation of extra claims and (b) any patent application processing fees under 37 CFR 1.17. A duplicate copy of this sheet is attached.

                                  *James E. Alix*
                                    James E. Alix, Reg. No. 20,736
                                    Chilton, Alix & Van Kirk
                                    750 Main Street
                                    Hartford, CT 06103-2708
                                    (203) 527-9211

Attorney's Ref: DEXNON/079/US

I hereby certify that this correspondence is being deposited on the date below with the United States Postal Service as first class mail in an envelope addressed to "Commissioner of Patents and Trademarks, Washington, DC 20231."

Signature: *James E. Alix*      Reg. No. 20,736      Date January 11, 1995
           James E. Alix

59

60

**5**



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/086,673 | 07/01/93 | SCOTT | P    DEXNON079US |

EXAMINER

BELL, J

| ART UNIT | PAPER NUMBER |
|---|---|
| 1504 | |

15N1/0208

CHILTON, ALIX & VAN KIRK
750 MAIN STREET
HARTFORD, CT 06103-2708

DATE MAILED:

02/08/95

## NOTICE OF ALLOWABILITY

**PART I.**

1. ☒ This communication is responsive to _____ Amendment of 01-17-95 _____.

2. ☒ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.

3. ☒ The allowed claims are _____ 1-8, 10-15, 17-18 _____.

4. ☐ The drawings filed on _____ are acceptable.

5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [...] been received. [...] not been received. [...] been filed in patent application Serial No. _____ filed on _____.

6. ☐ Note the attached Examiner's Amendment.

7. ☐ Note the attached Examiner Interview Summary Record, PTOL-413.

8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.

9. ☐ Note the attached NOTICE OF REFERENCES CITED, PTO-892.

10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

**PART II.**

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

2. ☐ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.

   a. ☐ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. _____. CORRECTION IS REQUIRED.

   b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED.

   c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.

   d. ☐ Formal drawings are now REQUIRED.

-------------------------------------------------------------------

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

**Attachments:**
- Examiner's Amendment
- Examiner Interview Summary Record, PTOL-413
- Reasons for Allowance
- Notice of References Cited, PTO-892
- Information Disclosure Citation, PTO-1449

- Notice of Informal Application, PTO-152
- Notice re Patent Drawings, PTO-948
- Listing of Bonded Draftsmen
- Other

JAMES J. BELL
PRIMARY EXAMINER
ART UNIT



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

15N1/0208

CHILTON, ALIX & VAN KIRK
750 MAIN STREET
HARTFORD, CT 06103-2708

**NOTICE OF ALLOWANCE**
**AND ISSUE FEE DUE**

☐ Note attached communication from the Examiner
☐ This notice is issued in view of applicant's communication filed _____

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
| 08/086,671 | 07/01/93 | 016 | 0611 | 05/08/95 |

First Named Applicant

TITLE OF INVENTION

PROCESS OF PRODUCING POROUS WEB MATERIAL USED FOR MAKING INFUSION PACKAGES FOR BREWING BEVERAGES AND THE WEB MATERIALS THUS PRODUCED

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| 1 | NEXTHOUO 7919 | 428-288.000 | 122 | UTILITY | NO | $1,210.00 | 05/08/95 |

**THE APPLICATION IDENTIFIES ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.**
**PROSECUTION ON THE MERITS IS CLOSED.**

**THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.**

**HOW TO RESPOND TO THIS NOTICE:**

I. Review the SMALL ENTITY Status shown above.
   If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

   A. If the status is changed, pay twice the amount of the FEE DUE shown above and notify the patent and Trademark Office of the change in status, or
   B. If the Status is the same, pay the FEE DUE shown above.

If the SMALL ENTITY is shown as NO:
A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with, pay of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE. Even if the ISSUE FEE has already been paid by charge to deposit account, Part B should be completed and returned. If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number. Please direct all communication prior to issuance to Box ISSUE FEE unless advised to contrary.

RTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
fees when due.

PTOL-85 (REV. 12-93) (0651-0033)    PATENT AND TRADEMARK OFFICE COPY

1210/142 B

**PART B—ISSUE FEE TRANSMITTAL**

**MAILING INSTRUCTIONS:** This form should be used for transmitting the ISSUE FEE. Blocks 2 through 6 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advance orders and notification of maintenance fees will be mailed to addressee entered in Block 1 unless you direct otherwise, by: (a) specifying a new correspondence address in Block 3 below; or (b) providing the PTO with a separate "FEE ADDRESS" for maintenance fee notifications with the payment of Issue Fee or thereafter. See reverse for Certificate of Mailing.

| 1. CORRESPONDENCE ADDRESS |
|---|

15N1/0208

CHILTON, ALIX & VAN KIRK
750 MAIN STREET
HARTFORD, CT 06103-2708

| 2. INVENTOR(S) ADDRESS CHANGE (Complete only if there is a change) |
|---|
| INVENTOR'S NAME |
| Street Address |
| City, State and ZIP Code |
| CO-INVENTOR'S NAME |
| Street Address |
| City, State and ZIP Code |
| ☐ Check if additional changes are on reverse side |

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 08/086,673 | 07/01/93 | 016 | BELL, J. | 1504 | 02/08/95 |

| First Named Applicant | SCOTT, | PETER C. |
|---|---|---|

TITLE OF
INVENTION PROCESS OF PRODUCING POROUS WEB MATERIALS USED FOR MAKING INFUSION
PACKAGES FOR BREWING BEVERAGES AND THE WEB MATERIALS THUS PRODUCED

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| 1 | DEXNON079US | 428-288.000 | 172 | UTILITY | NO | $1210.00 | 05/08/95 |

| 3. Correspondence address change (Complete only if there is a change) | 4. For printing on the patent front page, list the names of not more than 3 registered patent attorneys or agents OR, alternatively, the name of a firm having as a member a registered attorney or agent. If no name is listed, no name will be printed. |
|---|---|
| | 1 Chilton, Alix & Van Kirk |
| | 2 _____ |
| | 3 _____ |

**DO NOT USE THIS SPACE**

050 MH 04/26/95 08086673

1 142    1,210.00 CK

5. ASSIGNMENT DATA TO BE PRINTED ON THE PATENT (print or type)

(1) NAME OF ASSIGNEE:
The Dexter Corporation

(2) ADDRESS (CITY & STATE OR COUNTRY)
Windsor Locks, Connecticut

A. ☐ This application is NOT assigned.

☒ Assignment previously submitted to the Patent and Trademark Office.

☐ Assignment is being submitted under separate cover. Assignments should be directed to Box ASSIGNMENTS.

**PLEASE NOTE:** Unless an assignee is identified in Block 5, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

6a. The following fees are enclosed:
☒ Issue Fee   ☐ Advance Order - # of Copies

6b. The following fees should be charged to:
DEPOSIT ACCOUNT NUMBER _16-2563_
(ENCLOSE PART C)
☐ Issue Fee   ☐ Advance Order - # of Copies
☒ Any Deficiencies in Enclosed Fees

The COMMISSIONER OF PATENTS AND TRADEMARKS is requested to apply the Issue Fee to the application identified above.

(Authorized Signature) _____   (Date)
James E. Alix                    4-11-95

**NOTE:** The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in assignment.

**TRANSMIT THIS FORM WITH FEE—CERTIFICATE OF MAILING ON REVERSE**

PTOL-85 (REV.12-93)(0651-0033)

63

## Certificate of Mailing

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to:

Box ISSUE FEE
Commissioner of Patents and Trademarks
Washington, D.C. 20231

on ___April 11, 1995___

(Date)

___James E. Alix___

(Name of person making deposit)

(Signature)

___April 11, 1995___

(Date)

Note: If this certificate of mailing is used, it can be used to transmit the Issue Fee. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing.

Burden Hour Statement: This form is estimated to take .2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Office of Information Systems, Patent and Trademark Office, Washington, D.C. 20231, and to the Office of Information and Regulatory Affairs, Office of Management and Budget, (Project 0651-0033), Washington, D.C. 20503. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner of Patents and Trademarks, Box Issue Fee, Washington, DC 20231.

REVERSE PTOL-85B (REV. 12-93)(0651-0033)

**6**

65



PTO UTILITY GRANT

Paper Number_____

### The Commissioner of Patents and Trademarks

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

### United States Patent

*Grants to the person or persons having title to this patent the right to exclude others from making, using or selling the invention throughout the United States of America for the term of seventeen years from the date of this patent, subject to the payment of maintenance fees as provided by law.*

*Commissioner of Patents and Trademarks*

*Attest*

PTO-1584

66

| PATENT APPLICATION FEE DETERMINATION RECORD | | | Application or Docket Number |
|---|---|---|---|
| Effective October 1, 1992 | | | 086673 |

**CLAIMS AS FILED - PART I**

| | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| FOR | | | RATE | FEE | | RATE | FEE |
| BASIC FEE | | | | $355.00 | OR | | $710.00 |
| TOTAL CLAIMS | 18 | minus 20 = * | x$11= | | OR | x$22= | |
| INDEPENDENT CLAIMS | 3 | minus 3 = * | x 37= | | OR | x 74= | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | +115= | | OR | +230= | |
| | | | TOTAL | | OR | TOTAL | 710 |

* If the difference in column 1 is less than zero, enter "0" in column 2

**CLAIMS AS AMENDED - PART II**

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| **AMENDMENT A** | Total | * 18 | Minus | ** 20 | = | x$11= | | OR | x$22= | |
| | Independent | * 3 | Minus | *** 3 | = | x 37= | | OR | x 74= | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | +115= | | OR | +230= | |
| | | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT B** | Total | * | Minus | ** | = | x$11= | | OR | x$22= | |
| | Independent | * | Minus | *** | = | x 37= | | OR | x 74= | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | +115= | | OR | +230= | |
| | | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE | ADDI-TIONAL FEE | OR | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT C** | Total | * | Minus | ** | = | x$11= | | OR | x$22= | |
| | Independent | * | Minus | *** | = | x 37= | | OR | x 74= | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | +115= | | OR | +230= | |
| | | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

67



ISSUE CLASSIFICATION SLIP

STAPLE AREA

* U.S. GOVERNMENT PRINTING OFFICE 1981—341/584

PATENT NUMBER

APPLICATION SERIAL NUMBER
086693

APPLICANT'S NAME (PLEASE PRINT)
SCott ET AL

IF REISSUE, ORIGINAL PATENT NUMBER

ORIGINAL CLASSIFICATION

| CLASS | SUBCLASS |
|-------|----------|
| 428 | 240 |

CROSS REFERENCE(S)

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | |
|-------|-----|-----|-----|-----|
| 206 | .5 | 84 | | |
| 426 | 77 | 311.1 | 311.7 | 30616 |
| 428 | 308.8 | 311.1 | 446 | 5114 |
| | | | | |
| | | | | |

INTERNATIONAL CLASSIFICATION

| B | 3 | 2 | B | 27/00 |
|---|---|---|---|-------|
| | | | / | |
| | | | / | |

GROUP
ART UNIT
1504

ASSISTANT EXAMINER (PLEASE STAMP OR PRINT FULL NAME)

PRIMARY EXAMINER (PLEASE STAMP OR PRINT FULL NAME)
JENNI J BELL

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

PTO-270
(REV. 5-91)

68

TITLE OF INVENTION

ATTORNEY REGISTRATION NUMBERS

CORRESPONDENCE NAME AND ADDRESS

APPLICANT/INVENTOR DATA

AUTHORITY CODE

FAMILY NAME

GIVEN NAME

CITY

NAME SUFFIX

STATE/CTRY CODE

AUTHORITY CODE

FAMILY NAME

GIVEN NAME

CITY

NAME SUFFIX

STATE/CTRY CODE

MORE

69