UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC,<br><br>Plaintiff,<br><br>v.<br><br>SCHOELLER & HOESCH, N.A., INC. and<br>P. H. GLATFELTER COMPANY,<br><br>Defendants. | )<br>)<br>)<br>)<br>) CIVIL ACTION NO. 3:03-CV-0169 (AVC)<br>)<br>)<br>)<br>)<br>) |

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO TAKE THE DEPOSITION OF DEFENDANT
GLATFELTER THROUGH ITS SUBSIDIARY SCHOELLER & HOESCH**

Plaintiff, Ahlstrom Windsor Locks LLC ("Plaintiff"), hereby replies to Defendants', P. H. Glatfelter Company ("Glatfelter") and Schoeller & Hoesch, NA, Inc. ("S&H, NA"), opposition to Plaintiff's motion to take the deposition of Glatfelter through its subsidiary, Papierfabrik Schoeller & Hoesch GmbH, Gernsbach, Germany ("S&H Germany"), pursuant to a notice of deposition under Rule 30 (b)(6), Fed.R.Civ.P. The notice requests documents and testimony from knowledgeable personnel at S&H Germany's "Main Lab" relating to quality control and competitive testing of tea bag paper and customer specifications therefor. The grounds for the motion are stated in the memorandum in support of Plaintiff's motion.

1. **The Requested Discovery is Neither Duplicative nor Irrelevant**

Defendants oppose the requested discovery, at least in part, on the basis that it is duplicative of discovery that has already been taken by Plaintiff. This is patently false. Plaintiff has presented to the Court in its memorandum in support of the motion the

reasons why the requested discovery is needed and why it is not duplicative. The fact that Defendants have produced additional relevant documents[1] in response to Plaintiff's repeated requests-- and the Court's intervention -- indicates the need for, and indeed, the effectiveness of, a robust discovery effort in the face of stubborn resistance to legitimate discovery requests.

    Defendants repeatedly refer to the prior depositions of certain witnesses in Germany as demonstrating the burdensomeness of the current discovery requests. But it should be noted that essentially all of the information relevant to infringement in this case has come from and relates to the activities of S&H Germany. Glatfelter has had very limited connection with the alleged infringing activity, except that it is the parent company of both S&H, NA and S&H Germany. S&H, NA is a one or two person sales operation in North Carolina (Dep. of Glen A. Bonetti, p. 89).[2] S&H, NA is, in effect, an order taker for tea bag paper manufactured by S&H Germany or its sister company in France (Dep. of Bonetti, pp 25, 29). Tests on crimp seam strength were performed in Germany (Dep. of Bonetti, p. 75); comparative tests were performed in Germany (Dep. of Bonetti, p. 88); comparative tests are used by S&H NA as a "sales tool" (Dep. of Bonetti, p. 89); infusion tests were performed in Germany (Dep. of Bonetti, p. 130); and S&H Germany made a proposal to Teekanne in Europe (the parent of Redco Foods in the U.S.) that it would supply an "equivalent paper to that of the Dexter Latex Paper." (Dep. of Bonetti, p. 157).

    Guenter Grauer and Gerhard Slawik, who are knowledgeable on the subject of manufacture of tea bag paper at S&H Germany and whose depositions were

---

[1] See, for example, exhibits C and E attached to Plaintiff's memorandum in support of the motion.
[2] Deposition of Glen A. Bonetti, S&H NA's sales manager for long fiber sales in North America, attached hereto as exhibit A.

taken first in Germany and later in the U. S., had no knowledge as to the activities of the "Main Lab" at S&H Germany. In view of the fact that the Main Lab is where much of the testing of the infringing product and customers' and competitors' products is performed, it is not seen how an inquiry into this subject can be duplicative, irrelevant or even unduly burdensome. The test for discovery under the Federal Rules of Civil Procedure is an extremely liberal one, as determined by the courts of the Second Circuit and this district. In *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2nd Cir. 2003), the Second Circuit held:

> The deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which courts have long "accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts [need not] be carried on in the dark." *Schlagenhauf v. Holder,* 379 U.S. 104, 114-15 (1964) (quoting *Hickman v. Taylor,* 329 U.S. 495, 501, 507 (1947) (internal quotation marks omitted)). Indeed, the rules provide for the taking of discovery, including by oral depositions, "regarding *any* matter, not privileged, that is relevant to the claim or defense of *any* party" and that "[r]elevant information need not be admissible." *See* Fed.R.Civ.P. 26(b)(1) (emphasis added). Moreover, the rules generally do not place any initial burden on parties to justify their deposition and discovery requests. *See, e.g.,* Fed.R.Civ.P. 30(a)(1) ("A party may take the testimony of *any person* ... by deposition upon oral examination without leave of court.") (emphasis added); Fed.R.Civ.P. 26(c) (permitting courts to issue a protective order upon "good cause shown" by the party *opposing* discovery).

It is important to note, as the Second Circuit does, that the rules do not place any initial burden on parties to justify their deposition and discovery requests. Defendants, in what can only be described as a presumptuous conceit, have suggested that it would be "instructive if Plaintiff were to identify the precise types of questions [that it] would contemplate posing to a deponent if the Court were to grant its Motion," and have even set forth a list of instructions for Plaintiff to answer for each of the documents that it is interested in examining the witnesses on. This stands the Federal Rules of Civil Procedure on its head and is entirely contrary to the interpretation that the courts in this

3

district have placed on the rules.

We need go no further than the case of *Omega Engineering, Inc. v. Omega, S.A.*, 2001 WL 173765 (D. Conn. 2001) at *2, where this Court held:

> A party may object to a request if it is "overly broad" or "unduly burdensome." 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2174, at 297 (2d ed. 1994). To assert a proper objection on this basis, however, one must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984). Instead, the objecting party must "show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by *submitting affidavits or offering evidence* revealing the nature of the burden." *Id.* (internal citations and quotation marks omitted). The objecting party may not leave it to the court to "sift each interrogatory to determine the usefulness of the answer sought." *Id.* To the contrary, the detail in the complaint defines the liberal guidelines for determining the relevance of the discovery requests, and the burden is on the party resisting discovery to clarify and explain its objections and to provide support for those objections. *Id.* (emphasis added)

Defendants have provided no evidence of any kind to show that, "despite the broad and liberal construction afforded the federal discovery rules," the requested discovery is "overly broad, burdensome or oppressive by *submitting affidavits or offering evidence* revealing the nature of the burden." (emphasis added). All that they have offered to the Court are lawyers' arguments. Nor have they established that any of the discovery requested is irrelevant. In fact that would be impossible. What could be more relevant than testing performed on "new" allegedly infringing products and the products that they are intended to copy? *See, Ahern v. Trans Union LLC Zale Corporation*, 2002 WL 32114492 (D. Conn. 2002) at * 1. *See also, In re Pe Corporation Securities Litigation*, 221 F.R.D. 20, 23 (D. Conn. 2003), in which Magistrate Judge Smith ruled as follows:

> Courts have broad discretion in determining that which is relevant to the claim or defense of any party. *Herbert v. Lando*, 441 U.S. 153 (1979).

4

However, that discretion is not unfettered; where a court "denies discovery of facts necessary to a fair presentation of the case," it has abused that discretion. 6 James Wm. Moore, *Moore's Federal Practice* § 26.41[7][b] (3d ed. 2002).

\* \* \*

Moreover, relevance, in discovery matters, is broadly and liberally construed. *Herbert*, 441 U.S. at 177 ("the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials"); *Cox v. McClellan*, 174 F.R.D. 32, 34 (W.D.N.Y. 1997). "Relevant evidence", as that term is defined in the Federal Rules of Evidence, means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. In discovery, relevance is even broader: information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery. *See Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991); *Morse/Diesel, Inc. v. Fid. & Deposit Co.*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988). Additionally, "whether a specific discovery request seeks information relevant to a claim or defense will turn on the specific circumstances of the pending action...." 6 James Wm. Moore, et al., *Moore's Federal Practice* § 26.41[6][c] (3d ed. 2002)(citing Fed.R. Civ.P. 26(b)(1) advisory committee's note (2000)).

The fact that the Defendants have produced *additional* comparative testing documents since this request for a Rule 30(b)(6) deposition was first served back in May clearly indicates that they intended all along to stonewall on this issue. They have employed the tactic of obstruct and delay throughout. As stated in Plaintiff's memorandum in support of this motion, Defendants produced 20 additional pages of test documents on September 17, 2004 and, following a telephone conference with the Court, produced an additional 26 pages of quality control and test documents on October 29. These 46 additional pages, which are clearly relevant, had to be squeezed out of Defendants over a period of 5 months. If those 46 additional documents are relevant, so are any additional quality control and comparative testing documents kept at the Main

5

Lab at S&H Germany. If Defendants are representing that no additional documents exist, let them say so, in which event Plaintiff should be entitled to examine the keepers of those records at S&H Germany to confirm that. Moreover, Plaintiff should be entitled to depose the persons at the Main Lab who ran the tests that are reported on those 46 documents. They are not self explanatory and they are certainly not self authenticating, at least as to the results recorded thereon.

As shown in Exhibit B, attached hereto, the type of documents that Defendants have recently produced are extremely relevant to the issues in the case. Document No. 1251 is exemplary of a testing document from the Main Lab in which Dexter paper is compared with the so-called prohibited grade 212-LEU/T. Why weren't these documents produced earlier? Plaintiff has been requesting their production since the inception of this case. Document No. 1259 is a tea diffusion study comparing Dexter paper with another grade of paper. Documents Nos. 1265-66 relate to tests that S&H Germany was to perform on paper for Unilever, a customer of Plaintiff. Comparisons were to be made with Dexter's paper and that of S&H Germany. The documents are from the files of or were sent by Gerhard Slawik and Horst Dannhauser. Which begs the question: Why weren't these documents produced to Plaintiff earlier so they could be used at the depositions of those witnesses? Document No. 1280 is a tea diffusion study performed at the Main Lab in which Dexter paper is compared with the two prohibited grades of S&H Germany's paper. All of these documents and more should have been produced much earlier by Defendants. Plaintiff should be entitled to fully explore this remaining issue in the case to the fullest extent required and depositions of the persons who conducted the teats and recorded their results should be produced for deposition to explain their test

protocols and results.

2. **Limitation of Request**

Despite its firm belief that it is entitled to all of the discovery requested in the notice of deposition that is the subject of this motion, Plaintiff has reviewed its requests and is prepared to limit them as follows in an effort to resolve this matter:

A. **Place of Deposition**: Any place in the United States that is convenient to the German witnesses and to counsel for both sides.

B. **Areas of Inquiry**: Limited to categories 1, 2, 3, 5, 6, 7.

C. **Customer Specifications**: Limited to category 1.

D. **Document Production**: Limited to categories 1(further limited to non-heat seal binder paper), 2, 3, 5 (further limited to non-heat seal binder paper). The documents are to be produced at least 10 days prior to the date of the depositions.

3. **Conclusion**

The requested discovery is both relevant and material to the issues of patent infringement and breach of contract. The Federal Rules of Civil Procedure provide for liberal discovery absent evidence that would preclude the granting of such discovery. The Defendants have provided no such evidence. The Plaintiff has made a good faith effort to reach a compromise in limiting its requested discovery. For these reasons, the Court is respectfully requested to grant the motion to allow the limited discovery requested herein.

Respectfully submitted,

December 16, 2004          COHEN, PONTANI, LIEBERMAN & PAVANE

By_____

7

Sidney R. Bresnick, Esq. (ct 16295)
Yunling Ren, Esq. (ct 21078)
551 Fifth Avenue
New York, NY 10176
Tel. 212-687-2770
Fax 212-972-5487
    -and-
McCarter & English, LLP
Basam E. Nabulsi, Esq. (ct 20897)
Four Stamford Plaza
107 Elm Street, 9th Floor
Stamford, CT 06902
Tel. 203-965-0601
Fax 203-323-6513

*Attorneys for Plaintiff,*
Ahlstrom Windsor Locks LLC

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Reply to Defendants' Opposition to Plaintiff's Motion for Leave to Take the Deposition of Defendant Glatfelter Through its Subsidiary Schoeller & Hoesch has been mailed, postage prepaid, this 16th day of December, 2004 to:

>Dina S. Fisher, Esq.
>Robinson & Cole LLP
>280 Trumbull Street
>Hartford, CT 06103-3597

>-and-

sent by first class mail, postage prepaid, to:

>Marc J. Farrell, Esq.
>Buchanan Ingersoll PC
>One South Market Square, 3rd Floor
>Harrisburg, PA 17101-2121

_/s/ Sidney R. Bresnick_