UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| AHLSTROM WINDSOR LOCKS LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                                                        ) | CIVIL ACTION NO. 3:03-CV-0169 (AVC) |
| ) | |
| SCHOELLER & HOESCH, N.A., INC. and ) | |
| P.H. GLATFELTER COMPANY,             ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MOTION TO STRIKE DEFENDANTS'
LOCAL RULE 56(a)(1) STATEMENT, MEMORANDUM
OF LAW IN SUPPORT THEREOF, AND OPPOSITION
TO DEFENDANTS' MOTION FOR SANCTIONS**

Plaintiff, Ahlstrom Windsor Locks LLC ("Ahlstrom" or "Plaintiff"), hereby moves the Court for an order striking the statements made by defendants, Schoeller & Hoesch, N.A., Inc. ("S&H") and P.H. Glatfelter Company ("Glatfelter") (collectively "Defendants") pursuant to D. Conn. L. Civ. R. 56(a)(1) (the "Rule 56(a)(1) Statement") in support of Defendants' motion for summary judgment of invalidity of U.S. Patent No. 5,431,997 (the "'997 patent"). The basis for this motion is that Defendants have failed to comply with the requirements of Local Rule 56(a)(3) by failing to provide sufficient evidence to substantiate their Rule 56(a)(1) Statements. Accordingly, Defendants' unsupported Rule 56(a)(1) Statements should be struck.

**I.   INTRODUCTION**

On October 8, 2004, Defendants filed a motion for summary judgment asserting that the '997 patent is invalid under 35 U.S.C. §§ 102 and/or 103 (the "Summary Judgment Motion"), as being anticipated, or in the alternative rendered obvious, by each

of three prior art references: (i) Yadlowsky European published patent application No. 0 170 461 ("the Yadlowsky application" or "Yadlowsky"), (ii) Noiset U. S. patent No. 3,386,834 ("the Noiset patent" or "Noiset") and (iii) Kelley U. S. patent No. 3,616,166 ("the Kelley patent" or "Kelley") ("Opposition, Malcolm S/J Decl. Tab. D")[1].

Defendants' Summary Judgment Motion is accompanied by a Rule 56(a)(1) Statement in which Defendants set forth 150 paragraphs of "material facts as to which there is no genuine issue to be tried." (*see,* Defendants' Rule 56(a)(1) Statement). A large portion of Defendants' purportedly undisputed facts are directed to the prosecution of the European counterpart to the '997 patent (Rule 56(a)(1) Statement, pars. 27-35) and the European Opposition Proceeding on the European counterpart of the '997 patent (Rule 56(a)(1) Statement, pars. 36-43), which are totally irrelevant, let alone material, to any issue of validity. Defendants also dedicated a substantial portion of their Rule 56(a)(1) Statement to *their* interpretation of the claims of the '997 patent (Rule 56(a)(1) Statement, pars. 62-76) and the prior art references (Rule 56(a)(1) Statement, pars.77-113) without providing any evidentiary basis therefor. Defendants also offered three claim charts, claiming that the claims of the '997 patent are anticipated by the prior art references (Rule 56(a)(1) Statement, pars. 118-150). It is undisputed that claim construction is a question of law and prior art references must be interpreted by a person of ordinary skill in the art. *Poly-America, L.P. v. GSE Lining Technology, Inc.*, 383 F.3d 1303, 1309 (Fed. Cir. 2004); *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 295, 1299-1300 (Fed. Cir. 2004).

---

[1] Reference to the Declaration of Earl W. Malcolm, submitted in opposition to Defendants' motion for summary judgment.

Plaintiff filed a memorandum of law in opposition to Defendants' summary judgment motion (the "Opposition") together with a response to Defendants' Rule 56(a)(1) Statement and a statement of disputed material facts, pursuant to D. Conn. L. Civ. R. 56(a)(2)[2] (the "Rule 56(a)(2) Statement"), notwithstanding Defendants' erroneous and unsupported assertions. Plaintiff also provided a declaration of Dr. Earl W. Malcolm in support of its Opposition.

On December 23, 2004, Defendants moved for sanctions on the ground that Plaintiff had failed to provide citations to certain of its denials to Defendants' Rule 56(a)(1) Statement. Of particular relevance are Plaintiff's denials to Defendants' Rule 56(a)(1) Statement, pars. 19, 22, 42, 43, 65, 67, 86, 92, 103, 108, 111, and 118-150. Plaintiff hereby moves the Court to strike these Rule 56(a)(1) Statements.

## II.   **ARGUMENT**

Defendants' Rule 56(a)(1) Statement, pars. 19, 22, 42, 43, 65, 67, 86, 92, 103, 108, 111, and 118-150, must be disregarded as they are merely assertions of Defendants' counsel and not supported by any admissible evidence, as required by Local Rule 56(a)(1). Since Defendants have failed to meet their initial burden of providing the Court with admissible evidence to support of their factual assertions, Defendants' motion for sanctions must be denied, for Plaintiff is not required to answer any unsupported factual assertions. *Giannullo v. City of New York*, 322 F.3d 139, 140-41 (2d Cir. 2003):

> It is the movant's burden to show that no genuine factual dispute exists, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and all reasonable inferences must be drawn in the non-movant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Of particular relevance here, where the movant "fail[s] to fulfill its initial burden" of providing admissible evidence of the material facts entitling it to summary judgment,

---

[2] Plaintiff's Rule 56(a)(2) Statement is attached as Exhibit A.

summary judgment must be denied, " 'even if no opposing evidentiary matter is presented,' " *for the non-movant is not required to rebut an insufficient showing. Adickes,* 398 U.S. at 158, 160, 90 S.Ct. 1598 (quoting Fed.R.Civ.P. 56(e) Advisory Committee note (1963)). [FN2]
(emphasis added)

### a. Defendants' Erroneous Or Unsupported Rule 56(a)(1) Statements Must Be Disregarded And Plaintiff Is Not Required To Respond To Defendants' Insufficient Showing

A party moving for summary judgment bears the initial burden of establishing by *evidence* that there is no triable issue of fact. *See* Fed. R. Civ. P. 56(c), (e). In considering a summary judgment motion, the courts first examine the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. *Vermont Teddy Bear Company, Inc. v. Beargram Company,* 373 F.3d 241, 244 (2d Cir. 2004), citing *Amaker v. Foley,* 274 F.3d 677, 680 (2d Cir. 2001). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied *even if no opposing evidentiary matter is presented." Id.* The Second Circuit also noted that the "non-movant is not required to rebut an insufficient showing" (citing *Giannullo,* 322 F.3d at 141):

> Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, *the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.* It must be satisfied that the citation to evidence in the record supports the assertion. *Giannullo,* 322 F.3d at 143 n.5 (stating that not verifying the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts." (emphasis added)

*Vermont Teddy Bear Company,* 373 F.3d at 244.

In the instant case, Defendants have failed to comply with Local Rule 56(a)(3). Indeed, none of Defendants' Rule 56(a)(1) Statements, pars. 19, 22, 42, 43, 65, 67, 86, 92, 103, 108, 111, and 118-150, is supported by any admissible evidence such as affidavits, deposition testimony, responses to discovery requests or other documents containing such evidence. The citations provided by Defendants are also misleading or irrelevant to the statements themselves. The deficiencies of these contested statements will be addressed individually.

<u>Defendants' Statement 19</u>
It was in response to the Office Action that Plaintiff first interjected the term "high molecular weight," via an Amendment it filed with the USPTO on January 11, 1994 (the "Response," see Tab B-4, p.11).

The statement that the term "high molecular weight" was *first* introduced in an amendment is *not supported by the cited document*. Contrary to Defendants' assertion, this term was introduced implicitly or inherently when the application for the '997 patent was initially filed as understood by a person of ordinary skill in the art. (*See* "Opposition", Tab E, page 57). The Examiner never objected the use of this claim term.

<u>Defendants' Statement 22</u>
At no time during the prosecution of the '997 application did the USPTO make mention of the following statement in the Kelley Patent:

> It is known that emulsion polymers made from acrylic esters such as ethyl acrylate by the usual polymerization procedures yield polymers of high molecular weight such as about 500,000 to several million. It has been suggested theretofore to use such a high molecular weight polymer of ethyl acrylate as a binder for nonwoven fabrics.

*See* Tab E, Kelley, 1:5-10.

Defendants cited nothing to support their assertion that the USPTO never mentioned the Kelley statement. Further, Defendants' statement is erroneous because the

USPTO specifically indicated that the Kelley Patent was considered in its entirety. (*See* "Opposition", Tab E, page 38).

> Defendants' Statement 42
> Unlike the revised, post-Crompton-Opposition version of Plaintiff's European Counterpart Patent, the Patent-in-Suit does not contain any claims directed to a "mechanically sealed infusion package" or processes for producing same. *See* Tab A, Patent-in-Suit.
>
> Defendants' Statement 43
> Instead, the Patent-in-Suit is limited exclusively to claims directed to a "*fibrous web* suited for making infusion packages for brewing beverages" and a "process for producing *porous web materials* for making infusion packages. *See* Tab A, Patent-in-Suit, 7:23 to 8:60 (emphasis added); *see also* Tab T.

Defendants cited nothing to support their interpretation of the claims of the '997 patent. Both statements are, in fact, wrong because the claim language makes clear that the "mechanically sealed infusion package" is within the scope of the claims by limitations referring to infusion characteristics and seam failure rate. Moreover, these are not factual assertions as claim interpretation is a question of law. They are, therefore, improper.

> Defendants' Statement 65
> The Third Element of Claim 1 -- "a hydrophobic treating system comprising a cured hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials" -- constitutes what is known as a "Markush group."

This is a misstatement of a long standing legal principle, since a "Markush group" recites "members as being 'selected from the group consisting of A, B, and C.' *See Ex parte* Markush, 125 C.D. 126 (Comm'r. Pat. 1925)." MPEP 2173.05(h) (attached as Exhibit B). Thus, the correct Markush group in this claim is "a cured hydrophobic agent selected from the group consisting of: high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated

6

materials." This is not *per se* a hydrophobic system. The Markush group includes a number of chemical substances, each of which may be a hydrophobic agent in the hydrophobic system, but the recited Markush group, does not of itself constitute an element of the '997 patent claim.

> Defendants' Statement 67
> With regard to the claim term "high molecular weight" in the Markush portion of the "Third Element" of Claim 1, Plaintiff's Claim Construction does not suggest any specific numeric value or range of molecular weights that it would construe to be "high" (*see* Tab V, Plaintiff's Claim Construction); nor is that term defined anywhere in the Patent-in-Suit itself. *See* Tab A, Patent-in-Suit.

Defendants again ignore the teaching of the '997 patent. The term is implicitly or inherently defined in the '997 patent as initially filed by referring to a specific commercial product. (*See* "Opposition", Malcolm S/J Decl. Tab A, '997 patent, col. lines 15-25). Defendants also misrepresented the fact that the term "high molecular weight" was indeed given a numerical value of over 500,000 in Plaintiff's Claim Construction (*See* Exh. C, page 6)[3].

> Defendants' Statement 86
> Kelley further discloses that materials bonded with its composition can be sealed by mechanical means ("surfaces .. can be ... lightly sealed, tacked"), i.e., without the application of heat ("or adhered without resorting to heated platens by simply pressing the adhesive-covered surfaces together"). *Id.* at 4:59-62.

Defendants pick and choose some phrases and words out of context, ignore the true teaching of the Kelley patent, and cite nothing to support their *interpretation* of the Kelley patent. Nowhere in the Kelley patent is the described "sealing method" referred to as a folding and crimping type of mechanical sealing[4]. It is clear to a person of ordinary skill in the art that Kelley teaches only heat sealable (adhesive) material even if the application of heat is sometimes unnecessary. (*See* "Opposition",

---

[3] The Malcolm Claim Construction report is attached hereto as Exhibit C.
[4] Any other mechanical sealing will be irrelevant to the '997 patent.

7

Malcolm S/J Decl. Par. 29). When read in its entirety, the Kelley patent offers an entirely different teaching from what Defendants suggest.

> Defendants' Statement 92
> The Yadlowsky Application further discloses that sealing of infusion bags pursuant to his invention is not limited solely to heat-sealable means but includes mechanical means as well: "Enclosure of the food product may be accomplished by heat sealing the infusion bag material as by the use of heat sealable binders and/or heat sealable fibers, or films, or stitches, or any other method as is known in the art." *Id.* at 4:13-17.

Defendants cite nothing to support their *interpretation* of the Yadlowsky patent. The Yadlowsky defines "mechanical means" as "stitching" or the like. If Yadlowsky intended to include "folding and crimping", he would have so stated. Having failed to do so, neither Yadlowsky nor Defendants can now broaden the "mechanical means" to include "folding and crimping". (*See* "Opposition", Malcolm S/J Decl. Par. 44).

> Defendants' Statement 103
> More specifically, the Noiset Patent discloses treating "webs generally made of fibrous materials which ... possess a high degree of porosity" with a "suitable water repellent material" such as "thermosetting resins," including "thermosetting materials generally categorized as silicones". *Id.* at 2:19-21; 2:69-70; 3:10-14.

Defendants cite nothing to support their *interpretation* of the Noiset patent. Defendants' generalized statement is misleading because the Noiset patent teaches the treatment of a porous fibrous web material with silicone only *in particular areas*. (*See* "Opposition", Malcolm S/J Decl. Par. 36).

> Defendants' Statement 108
> The Noiset Patent states that the treatment of a fibrous web with a water-repelling silicone compound to achieve its various stated goals must be accomplished "without impairing the over-all strength, porosity or continuity of the infusion material." *Id.* at 1:66-69. In this regard, Noiset further states:

8

> The water repellent [silicone] materials must provide not only a resistance to wetting or aqueous absorption in the treated areas but also must provide this property without adversely affecting the air permeability of the infuser throughout the treated areas. Additionally, the water repellent [silicone] materials utilized according to the invention should exhibit an affinity for being absorbed into the fibers of the web while at the same time substantially retaining the porosity of the web.

Id. at 2:71 to 3:9.

Defendants deliberately take the teaching of the Noiset patent out context by omitting the first sentence of the quoted portion, which reads: "According to the preferred aspect of the present invention, the continuous infuser webs are treated *only in particular areas or zones* of the web with a suitable water repellent material which, when set, is insoluble in aqueous solutions and unaffected by boiling water." (*See* "Opposition", Malcolm S/J Decl. Tab C, Noiset, col. 2, lines 67-71, *emphasis added*). Defendants also leave out the last sentence of the quoted portion, which states: "Accordingly, *they are distinguished from materials which form solid films over the entire treated area.*" (*See* Noiset, col. 3, lines 8-10, *emphasis added*). When the cited paragraph is read as a whole, it offers an entirely different teaching from what Defendants suggest.

Defendants' Statement 111
Table 3 in the Noiset Patent sets forth test results showing that seams in webs treated with a water-repellent silicone material took longer to come apart than comparable untreated webs. Id. at 5:5-35.

Defendants again take the Noiset teaching out of context, avoiding the fact that Table 3 in the Noiset patent addresses only heat sealed seams, and the tested heat sealable web material was treated with silicone only in particular areas, as opposed to throughout the entire web as in the '997 patent. (*See* Noiset, col. 5, lines 5-35). When Table 3 is read in context, it offers an entirely different teaching from what Defendants suggest.

9

Defendants' Statements 118-150 consist of three claim charts, which include nothing but Defendants' conclusory assertions that the claims of the '997 patent are anticipated by the three prior art references, namely, the Kelley patent, the Yadlowsky application and the Noiset patent. Paragraphs, phrases or words taken out of context from the three references are set forth in the left-hand column and the text of the claims of the '997 patent are set forth in the right-hand column for comparison. Defendants thus reconstitute the three references in an effort to elicit an impression that the references indeed disclose each and every element of the claims. However, Defendants have overlooked a basic principle of the patent law that prior art references must be interpreted by a person of ordinary skill in the art. *See In re Inland Steel Co.* 265 F.3d 1354, 60 USPQ2d 1396, 1401 (Fed. Cir. 2001), *citing In re Boe*, 355 F.2d 961, 148 USPQ 507, 510 (CCPA 1966) ("All of the disclosures in a reference must be evaluated for what they fairly teach one of ordinary skill in the art."). Defendants provided *no* support for their interpretation of these references. Moreover, Defendants have acknowledged that some of the claim elements could *not* be found in the express teaching of these references despite the reconstitution of the references. Therefore, they have relied on a theory that the missing elements are inherently taught in the references. However, whether or not the references inherently teach the missing elements is a question of fact, requiring proof. Defendants have offered nothing but lawyer's arguments to establish their "facts." Thus, Defendants claim charts are baseless and do not constitute factual assertions. Defendants' claim charts have also been controverted by Plaintiff's expert Dr. Earl Malcolm. (*See* "Opposition", Malcolm S/J Decl. Par. 51-53).

In *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2nd Cir. 2001), the court held that "allegations of uncontested fact cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement". "Where there are no citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." *Id.*, at 74. The Second Circuit also noted: "Allowing a Local Rule 56.1 statement to substitute for the admissibility requirement set forth in Fed.R.Civ.P. 56(e) 'would be tantamount to the tail wagging the dog.'" *Id.*, at 74. The court further stated: "The local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Id.*, at 74.

As set forth above, the contested Rule 56(a)(1) Statements are erroneous and unsupported. Thus, the Court should disregard these statements, and Plaintiff is not required to rebut an insufficient showing. *Giannullo*, 322 F.3d at 141.

    **b.**    **Sanctions Based On Plaintiff's Alleged Non-compliance with Local Rule 56(a)(3) Is Unwarranted and Contrary to Second Circuit Law**

In *Vermont Teddy Bear Co.*, 373 F.3d 241, 244-45 (2nd Cir. 2004), *supra*, the Second Circuit held that summary judgment motions do not embrace default judgment principles so that *even when a motion for summary judgment is unopposed*, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law. *Id.* at 242. "Instead, the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." *Id.* at

244; *see also, Giannullo*, 322 F.3d at 143, n5 (holding that the Rule 56.1 statement of material facts does not absolve the district court of checking to see whether the citations support the assertions, since such an approach "would derogate the truth-finding functions of the judicial process by substituting convenience for facts.")

Of particular relevance in the present case is the Second Circuit's statement in *Holtz*, 258 F.3d at 73, as follows:

> We have a second reason to look past Holtz's failure to file a Local Rule 56.1 statement. RCI's allegations of uncontested fact cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement. Local Rule 56.1(d) provides that "[e]ach statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible" as required by Fed.R.Civ.P. 56(e). Interpreting the predecessor to the current Local Rule 56.1, we held that "[a] Rule 9(g) statement by counsel on a motion for summary judgment cannot be a substitute for an affidavit as to the facts."

In the present case, it is Plaintiff that has filed a declaration of Earl W. Malcolm in opposition to the motion for summary judgment. Defendants' unsupported Rule 56(1)(1) Statement can not overcome this.

This Court has denied a motion for sanctions under Local Rule 56(a)(3), in a case where the non-movant failed to include citations to affidavits or admissible evidence to support any of its denials. *Ungerleider v. Fleet Mortgage Group of Fleet Bank*, 329 F.Supp.2d 343 (D. Conn. 2004). In that case, the Court noted that sanctions were not warranted because the Court's search of the record, guided by citations provided by both parties, was sufficient to decide a motion for summary judgment. *Id.* at 364. In the present case the Plaintiff responded in good faith to each and every one of Defendants' Statements. The Statements on which Defendants base their motion are, as noted above, improper as unsupported by any admissible evidence. The Statements are

nothing more than attorneys' arguments as to the content of patent disclosures and claim constructions. Moreover, many of the Statements are taken out of context, rendering them almost impossible of citation (proving something *isn't* there that Defendants say is there or that something is *inherent*).

This Court has also declined to impose a sanction where the non-movant failed to file a Local Rule 56(a)(2) Statement. *Securities and Exchange Commission v. Global Telecom Services L.L.C.*, 325 F.Supp.2d 94 (D. Conn. 2004). The Court took the non-movant's memorandum of law into consideration in deciding the summary judgment motion despite the party's failure to provide the Statement. The Court noted: "In determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's [Local] Rule 56[ ] statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Id.*, at 109, n2 (citing *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 243, (2d Cir. 2004).

Defendants' proposed sanctions are unwarranted in the instant case for at least three reasons. First, all of the contested Rule 56(a)(1) Statements set forth above are improper conclusions of law, improper interpretations of patent claims and prior art references, or incorrect facts unsupported by evidence. They do not comply with Local Rule 56(a)(1) and should be disregarded by the Court. Second, notwithstanding, Plaintiff has provided responses in good-faith to all of Defendants' Statements. Plaintiff's responses are mostly self-evident even without citations, accompanied by Plaintiff's Statement of Disputed Facts, the expert's declaration and the memorandum of law, all of

13

which support Plaintiff's denials to Defendants' Statements. Third, the Court should rely on the evidence in the record, not solely on Defendants' Rule 56(a)(1) Statement, to decide whether Defendants have fulfilled their burden and are entitled to summary judgment. *Vermont Teddy Bear Company, Inc.*, 373 F.3d 241 (2d Cir. 2004); *Giannullo*, 322 F.3d 139 (2d Cir. 2003); *Holtz*, 258 F.3d 62 (2d Cir. 2001); *Ungerleider*, 329 F.Supp.2d 343 (D. Conn. 2004); *Global Telecom Services LLC*, 352 F. Supp 2d 94 (D. Conn. 2004).

### III.   CONCLUSION

For the forgoing reasons, Plaintiff's motion to strike Defendants' unsupported Rule 56(a)(1) Statements should be granted and Defendants' motion for sanctions should be denied.

Respectfully submitted,

January 12, 2005

COHEN, PONTANI, LIEBERMAN & PAVANE

By _/s/ Sidney R. Bresnick_
Sidney R. Bresnick, Esq. (ct 16295)
Yunling Ren, Esq. (ct 21078)
551 Fifth Avenue
New York, NY 10176
Tel. 212-687-2770
Fax 212-972-5487
          -and-
McCarter & English, LLP
Basam E. Nabulsi, Esq. (CT 20897)
Four Stamford Plaza
107 Elm Street, 9th Floor
Stamford, CT 06902
Tel. 203-965-0601
Fax 203-323-6513

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Plaintiff's Motion To Strike Defendants' Local Rule 56(a)(1) Statement, Memorandum Of Law In Support Thereof, And Opposition To Defendants' Motion For Sanctions has been sent by **Federal Express**, this 12th day of January, 2005 to:

>Dina S. Fisher, Esq.
>Robinson & Cole LLP
>280 Trumbull Street
>Hartford, CT 06103-3597
>    and
>Marc J. Farrell, Esq.
>Buchanan Ingersoll PC
>One South Market Square, 3rd Floor
>Harrisburg, PA 17101-2121
>Tel. 717-237-4820

/s/ Sidney R. Bresnick