UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

AHLSTROM WINDSOR LOCKS LLC,    )
                               )
                    Plaintiff, )
                               )
        v.                     )    CIVIL ACTION NO. 3:03-CV-0169 (AVC)
                               )
SCHOELLER & HOESCH, N.A., INC. and )
P. H. GLATFELTER COMPANY,      )
                               )
                    Defendants. )

## PLAINTIFF'S LOCAL RULE 56(a)(2) STATEMENT
## IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Pursuant to D. Conn. L. Civ. R. 56(a)(2), Plaintiff, Ahlstrom

Windsor Locks LLC ("Plaintiff" or "Ahlstrom"), submits this statement of material facts

requiring trial in opposition to Defendants', P. H. Glatfelter Company and Schoeller &

Hoesch, N.A., Inc. ("Defendants") motion for summary judgment. The responses in the

following numbered paragraphs correspond to those in Defendants' Local Rule 56(a)(1)

Statement.

I.          **Responses To Defendants' Statement Of Material
            Facts As To Which There Is No Genuine Issue**

1.          Admitted.

2.          Admitted.

3.          Admitted.

4.          Admitted.

5.          Admitted that S&H Germany is a wholly owned subsidiary of Glatfelter.

6.          Admitted, but incomplete, as the evidence indicates that the alleged

infringing product is also manufactured at S&H's sister company, Cascadec in France

(Bonetti Depo., page 61).

7.        Admitted that S&H, NA is a wholly owned subsidiary of Glatfelter and, as

such, is the North American sales and marketing arm for products manufactured by S&H

Germany, Glatfelter's wholly owned subsidiary. (Bonetti Depo., pages 23, 29-30)

8.        Admitted.

9.        Admitted.

10.       Admitted that the parties entered into an agreement in 1999. The

Agreement provides in Paragraph 2 in its entirety (Complaint, Exh. B):

        "In return for the release granted below, S&H agrees that until the Dexter

Patent expires or is held invalid or unenforceable by a court of competent jurisdiction, it

will not make, have made, use or sell in the United States of America

        (a) "S&H Grade 012/RL-T" and/or "S&H Grade 212/LEUT" products,

either under the present designation or any other designation; or

        (b) fibrous web materials for making infusion packages for brewing

beverages as covered by one or more claims of the Dexter Patent."

11.       Admitted.

12.       Admitted.

13.       Admitted.

14.       Admitted.

15.       Admitted.

16.       Admitted that Dexter brought no other prior art to the attention of the PTO

other than what it cited in its IDS, but denies that the examiner at the PTO considered no

2

other prior art during his examination of the '997 Application and leaves S&H to its proofs thereof.

17.          Denied. While the words "high molecular weight" did not appear in the specification or claims of the '997 application as filed, the '997 application disclosure fully disclosed to the person of ordinary skill the use of a group of polymers, all of which are high molecular weight  The examiner agreed with this and withdrew his objection to the use of the term "high molecular weight".('997 Patent, col. 3, lines 49-53; col. 4, lines 4-8, 15-23; col. 6, lines 35-39).

18.          Admitted, but subsequently the Examiner withdrew the rejection and allowed the claims.

19.          Denied. As a matter of law high molecular weight was always in the application. Applicant added to the description of the listed polymers the term "high molecular weight" as a convenient generic term for the group, and the added term was ultimately accepted by the Examiner because it added no new matter to the application.

20.          Admitted that the quoted portion of the response is correct.

21.          Denied. The molecular weight of the second component of the polyblend of Kelley is implicitly referred to by comparison with the reference to the low molecular weight of the first component. (Kelley patent, col. 1, lines 36-46; col. 2, lines 57-62)

22.          Denied.

23.          Apart from a minor error in the quoted portion, the statement is admitted.

24.          Denied. Despite Noiset's reference to tea bags in col. 4, line 30, all of the so-called samples referred to in Table 1 are for papers in which the "entire surface was treated." Such papers were not useful in tea bags according to Noiset, see Noiset, col. 3,

lines 27-29.

25.        Admitted.

26.        Admitted.

27.        Admitted.

28.        While the facts as presented are accurate, there is no evidence that

Dexter's U.S. attorney learned of or saw the European Search Report prior to the filing of

the IDS in the PTO.

29.        It is admitted that the Noiset Patent and the Yadlowsky Application were

cited in the European Search Report. Yadlowsky was cited in the report as category "X",

meaning "particularly relevant if taken alone" and the Noiset patent was cited as

categories "A" and "D", meaning, respectively, "technological background" and

"document cited in the application." Nevertheless, the EPO allowed the Dexter European

counterpart patent to issue and the EPO Opposition Division ruled that the European

patent remained in force with amended claims.

30.        Admitted only that the Yadlowsky reference was classified as "X", but this

was effectively overruled by the EPO, which issued a patent thereon.

31.        Admitted that Dexter never brought the Yadlowsky Application to the

attention of the USPTO, but Plaintiff has no information as to whether the examiner ever

saw or considered it.

32.        Denied. There were two rejections based on several grounds, including a

combination of Yadlowsky and Noiset.

33.        Admitted.

34.        Admitted that the chart at Tab T purports to list the subject patent claims.

35.         Objected to. The statement has selectively quoted only a "portion" of the claim as being directed to the claimed "properties," while omitting others.

36.         Admitted.

37.         Admitted.

38.         Denied.

39.         Denied. The Opposition Division did not reject the auxiliary sets of claims as being anticipated or obvious in view of Kelley.

40.         Admitted that claims to tea bags being made from Ahlstrom paper were allowed.

41.         Denied. See declaration of Michael Donnan submitted herewith. Also objected to as inadmissible hearsay.

42.         Denied. The claims of the '997 Patent must be taken as a whole and read in their entirety, not taken out of context. One cannot read the claims of the '997 patent without recognizing that they must be read with the understanding that they relate to tea bags with folded and crimped seals.

43.         Denied. The '997 Patent is limited to the claims as issued. Those claims must be taken as a whole and read in their entirety, not taken out of context. One cannot read the claims of the '997 patent without recognizing that they must be read with the understanding that they relate to tea bags with folded and crimped seals.

44.         Admitted to the extent that it refers to S&H Germany, but incomplete in failing to include infringing product manufactured for Defendants by Cascadec in France.

45.         Admitted.

(46 - 61).    Objected to as a group and individually on the ground that Defendants

5

have mischaracterized the claim elements by arbitrarily determining what is and what is not a claim element and by categorizing certain language as "properties," and not claim elements. Furthermore, the so-called "preamble" actually comprises an element or elements of the claim and must as a matter of law be considered as such when making an anticipation analysis. Subject to the foregoing objection, Plaintiff states:

(46-54).    Admitted subject to the foregoing objection and with reference to the bolded type only.

(55-61).    Objected to as a group and individually on the ground that Defendants have mischaracterized the claim elements by arbitrarily determining what is and what is not a claim element and by including certain language "properties," and not claim elements. Furthermore, the so-called "preamble" actually comprises an element or elements of the claim and must be considered as such when making an anticipation analysis. Subject to the foregoing objection, Plaintiff states:

(55-61).    Admitted subject to the foregoing objection and with reference to the bolded type only.

(62 - 74).    Objected to as a group and individually on the ground that Defendants have mischaracterized the claim elements by arbitrarily determining what is and what is not a claim element and by identifying certain claim elements as "properties". Moreover, the statements are misleading in omitting relevant passages from the quoted portions. Furthermore, the so-called "preamble" actually comprises an element or elements of the claim and must be considered as such when making an anticipation analysis.

62.    Denied as misleading in omitting the next sentence which reads: The webs are of the nonheat-seal variety and require mechanical fastening, i.e., folding and

6

crimping, for the formation of the tea bag."

65.         Denied. In addition to the group objection, the statement is incorrect. The

correct Markush group is that of a "cured hydrophobic agent selected from the group

consisting of high molecular weight cross-linked acrylic polymers, silicones,

fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials."

67.         Denied.

75.         Admitted.

76.         Denied that the calculation made in this statement has any validity or

meaning in the context of the '997 Patent.

77.         Admitted.

78.         Admitted.

79.         Denied. The quoted portion is incomplete and misleading and reads in full:

"The *adhesive* is particularly valuable as a binder for nonwoven webs or fleeces of fibers

or filaments and also as a saturant for paper." (emphasis added).

80.         Admitted that the quoted portions are found where indicated in the Kelley

Patent.

81.         Admitted that the quoted portions are found where indicated in the Kelley

Patent.

82.         Admitted that the quoted portions are found where indicated in the Kelley

Patent.

83.         Admitted that the quoted portions are found where indicated in the Kelley

Patent.

84.         Objected to. The quoted portions are incomplete and misleading and fail to

include a following sentence of the paragraph, which reads: Examples of uses include the

packaging of tea, coffee, or similar beverage solids in unit parcels such as the well known

tea bags in which two of the nonwoven webs are placed one above and one below the

parcel of powder and then is *heat sealed* around the periphery of the superimposed

webs." (emphasis added) Thus, the inference is attempted to be falsely drawn that this

portion of Kelley applies to folded and crimped seals, which it does not.

85.          Admitted that the Kelley patent discloses the use of non-woven webs

treated with Kelley's mixture of polymers (copolymers), but only in heat or pressure

adhesive sealed tea bags. There is no suggestion of employing a folded and crimped seal.

86.          Denied that the Kelley Patent contemplates sealing by mechanical means

such as by folding and crimping. All Kelley contemplates is lightly sealed, tacked or

pressure adhered without resorting to heated platens.

87.          Admitted that the quoted portions are found where indicated in the Kelley

Patent. But this has nothing to do with the reliability of a folded and crimped seal. It

deals with the treated paper itself disintegrating upon immersion in water or acid.

88.          Denied. The quote in context deals with a tea bag seam in which two

layers of treated paper are overlapped and heat sealed (See Kelley, col. 5, lines 64-68;

col. 9, lines 1-6). There is no suggestion of Kelley's paper being useful in a tea bag with

a folded and crimped seam.

89.          Admitted.

90.          The statement is generally correct, but not found in Yadlowsky where

indicated in the statement and the nature of the Yadlowsky treatment is not to impart

hydrophobicity to the fabric like the '997 patent but to prevent absorption of flavor oils

and aromas.

91.        Admitted.

92.        Denied that the specification contemplates or includes the use of folded and crimped seams.

93.        Admitted that the quoted portions are found where indicated in the Yadlowsky Application, but deny that Yadlowsky has any relevance to reducing failure in a folded and crimped seam of a tea bag.

94.        Denied. The referenced passage does not mention tea leaves or brewing tea.

95.        Admitted that the quoted portion is found where indicated in the Yadlowsky Application, but is silent about reducing seam failure in folded and crimped seams.

96.        Admitted that the quoted portion is found where indicated in the Yadlowsky Application. The quoted passage is wholly irrelevant to the '997 patent which uses no sizing agent. It is also misleading in omitting the following sentence: "A fluoro-chemical sizing agent is subsequently added to the furnish at a level ranging from about 0.05 to 0.6% fluoro-chemical sizing agent to dry furnish, and typically from about 0.1 to about 0.3% fluoro-chemical sizing agent to dry furnish by weight."

97.        Admitted that the quoted portions are found where indicated in the Yadlowsky Application.

98.        Admitted that the quoted portions are found where indicated in the Yadlowsky Application, but deny that the stated increase of water repellency is suggested for the purpose of preventing failure of folded and crimped seams..

99.    Admitted that the quoted portions are found where indicated in the
Yadlowsky Application but deny that they have any relevance to the subject matter of the
'997 patent..

100.    Admitted.

101.    Admitted that the quoted portions are found where indicated in the Noiset
Patent, but deny that the quoted portions or any other portion of Noiset deal with the
reduction in failure rate of folded and crimped seams.

102.    Denied. (See Noiset, col. 1, lines 1-72)..

103.    Denied. Noiset is concerned only with treating specific areas for the
purpose of controlling gases and liquids through the paper. There is no suggestion of
treating all of the paper in order to reduce seam failure in a folded and crimped seal.

104.    Admitted that the quoted portions are found where indicated in the Noiset
Patent, but deny that the quoted portions or any other portion of Noiset deal with the
reduction in failure rate of folded and crimped seams.

105.    Assuming the portion quoted should have been referenced at Noiset (col.
3, lines 42-45), it is admitted that the quoted portions are found in the Noiset Patent, but
deny that the quote portions or any other portion of Noiset deal with the reduction in
failure rate of folded and crimped seams.

106.    Admitted that the quoted portions are found where indicated in the Noiset
Patent, but deny that the quoted portions or any other portion of Noiset deal with the
reduction in failure rate of folded and crimped seams.

107.    Admitted that the quoted portions are found where indicated in the Noiset
Patent, but deny that the quoted portions or any other portion of Noiset deal with the

reduction in failure rate of folded and crimped seams.

108.        Denied.

109.        Admitted that the quoted portions and silicone percentages are found where indicated in the Noiset Patent, but deny that the quoted portions or any other portion of Noiset deal with the reduction in failure rate of folded and crimped seams.

110.        Admitted that Table 1 reports a decrease in porosity of 1.60% for sample 1, but deny that any sample tested was disclosed for use in tea bags or to reduce failure of folded and crimped tea bag seams.

111.        Denied.

112.        Admitted that the portion of the testimony is accurately quoted..

113.         There is no statement No. 113.

114.        Admitted that the portion of the testimony is accurately quoted.  But the question was ambiguous and, therefore, the answer is meaningless.

114 (second occurrence).   Admitted that the quoted portions are found where indicated in U.S. Patent 4,564,552.

115.        Admitted that the quoted portions are found where indicated in U.S. Patent 5,281,507.

116.        Admitted that example 11, which appears in U.S. Patent 4,429,162 at the place referenced in the statement, refers to an internal fluorochemical sizing agent for paper pulp.

117.        Admitted that the quoted portions are found where indicated in U.S. Patent 4,740,495.

118.        Denied. The quoted portion of the Kelley Patent, while apparently

intended to serve as a comparison with Claim 2 of the '997 Patent, is taken out of context and ignores the fact that Claim 2 also contains all of the limitations included in Claim 1 as well. None of those limitations are included in the Statement. Therefore, the comparison is invalid. The Statement is also objected to in that no specific feature alleged to be inherently disclosed in the Kelley Patent is identified in the Statement with the particularity required to admit or deny. Moreover, Local Civil Rule 56 (a)(3) requires that every statement of material fact must be followed by a citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. No testimony or evidence of any kind (such as tests, etc.) has been proferred to support the theory of inherency in this Statement.

119.        Denied and objected to as to Claim 3 of the '997 Patent on the grounds asserted in response to Statement No. 118.

120.        Denied and objected to as to Claim 4 of the '997 Patent on the grounds asserted in response to Statement No. 118.

121.        Denied and objected to as to Claim 5 of the '997 Patent on the grounds asserted in response to Statement No. 118.

122.        Denied and objected to as to Claim 6 of the '997 Patent on the grounds asserted in response to Statement No. 118.

123.        Denied and objected to as to Claim 7 of the '997 Patent on the grounds asserted in response to Statement No. 118.

124.        Denied and objected to as to Claim 8 of the '997 Patent on the grounds asserted in response to Statement No. 118.

125.        Denied and objected to as to Claim 9 of the '997 Patent on the grounds

asserted in response to Statement No. 118.

126.      Denied. The quoted portion of the Kelley Patent, while apparently intended to serve as a comparison with Claim 10 of the '997 Patent, is taken out of context and, therefore, invalid. The Statement is also objected to in that no specific feature alleged to be inherently disclosed in the Kelley Patent is identified in the Statement with the particularity required to admit or deny. Moreover, Local Civil Rule 56 (a)(3) requires that every statement of material fact must be followed by a citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. No testimony or evidence of any kind (such as tests, etc.) has been proffered to support the theory of inherency in this Statement. As a matter of law, to establish inherency, the party asserting inherency must establish that what is inherent necessarily flows from the machine or method each and every time.

127.      Denied and objected to as to Claim 11 of the '997 Patent on the grounds asserted in response to Statement No. 126.

128.      Denied and objected to as to Claim 12 of the '997 Patent on the grounds asserted in response to Statement No. 126.

129.      Denied and objected to as to Claim 13 of the '997 Patent on the grounds asserted in response to Statement No. 126.

130.      Denied and objected to as to Claim 14 of the '997 Patent on the grounds asserted in response to Statement No. 126.

131.      Denied and objected to as to Claim 15 of the '997 Patent on the grounds asserted in response to Statement No. 126.

132.      Denied and objected to as to Claim 16 of the '997 Patent on the grounds