asserted in response to Statement No. 126.

133.     Denied. The quoted portion of the Yadlowsky Application, while apparently intended to serve as a comparison with Claim 2 of the '997 Patent, is taken out of context and ignores the fact that Claim 2 also contains all of the limitations included in Claim 1 as well. None of those limitations are included in the Statement. Therefore, the comparison is invalid. The Statement is also objected to in that no specific feature alleged to be inherently disclosed in the Yadlowsky Application is identified in the Statement with the particularity required to admit or deny. Moreover, Local Civil Rule 56 (a)(3) requires that every statement of material fact must be followed by a citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. No testimony or evidence of any kind (such as tests, etc.) has been proferred to support the theory of inherency in this Statement. As a matter of law, to establish inherency, the party asserting inherency must establish that what is inherent necessarily flows from the article, machine or method each and every time.

134.     Denied and objected to as to Claim 5 of the '997 Patent on the grounds asserted in response to Statement No. 133. As a matter of law, to establish inherency, the party asserting inherency must establish that what is inherent necessarily flows from the article, machine or method each and every time.

135.     Denied and objected to as to Claim 8 of the '997 Patent on the grounds asserted in response to Statement No. 133. As a matter of law, to establish inherency, the party asserting inherency must establish that what is inherent necessarily flows from the article, machine or method each and every time.

136.     Denied and objected to as to Claim 9 of the '997 Patent on the grounds

14

asserted in response to Statement No. 133. As a matter of law, to establish inherency, the party asserting inherency must establish that what is inherent necessarily flows from the article, machine or method each and every time.

137. Denied. The quoted portion of the Yadlowsky Application, while apparently intended to serve as a comparison with Claim 10 of the '997 Patent, is taken out of context and, therefore, invalid. The Statement is also objected to in that no specific feature alleged to be inherently disclosed in the Yadlowsky Application is identified in the Statement with the particularity required to admit or deny. Moreover, Local Civil Rule 56 (a)(3) requires that every statement of material fact must be followed by a citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. No testimony or evidence of any kind (such as tests, etc.) has been proferred to support the theory of inherency in this Statement. As a matter of law, to establish inherency, the party asserting inherency must establish that what is inherent necessarily flows from the article, machine or method each and every time.

138. Denied and objected to as to Claim 11 of the '997 Patent on the grounds asserted in response to Statement No. 137. As a matter of law, to establish inherency, the party asserting inherency must that what is inherent necessarily flows from the article, machine or method each and every time.

139. Denied and objected to as to Claim 14 of the '997 Patent on the grounds asserted in response to Statement No. 137. As a matter of law, to establish inherency, the party asserting inherency must establish that what is inherent necessarily flows from the article, machine or method each and every time.

140.  Denied and objected to as to Claim 15 of the '997 Patent on the grounds asserted in response to Statement No. 137. As a matter of law, to establish inherency, the party asserting inherency must establish that what is inherent necessarily flows from the article, machine or method each and every time.

141.  Denied and objected to as to Claim 16 of the '997 Patent on the grounds asserted in response to Statement No. 137. As a matter of law, to establish inherency, the party asserting inherency must establish that what is inherent necessarily flows from the article, machine or method each and every time.

142.  Denied. The quoted portion of the Noiset Patent, while apparently intended to serve as a comparison with Claim 2 of the '997 Patent, is taken out of context and ignores the fact that Claim 2 also contains all of the limitations included in Claim 1 as well. None of those limitations are included in the Statement. Therefore, the comparison is invalid. The Statement is also objected to in that no specific feature alleged to be inherently disclosed in the Noiset patents identified in the Statement with the particularity required to admit or deny. Moreover, Local Civil Rule 56 (a)(3) requires that every statement of material fact must be followed by a citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. No testimony or evidence of any kind (such as tests, etc.) has been proferred to support the theory of inherency in this Statement. As a matter of law, to establish inherency, the party asserting inherency must establish that what is inherent necessarily flows from the article, machine or method each and every time.

143.  Denied and objected to as to Claim 5 of the '997 Patent on the grounds asserted in response to Statement No. 142 As a matter of law, to establish inherency, the

party asserting inherency must establish that what is inherent necessarily flows from the article, machine or method each and every time.

144.    Denied and objected to as to Claim 8 of the '997 Patent on the grounds asserted in response to Statement No. 142. As a matter of law, to establish inherency, the party asserting inherency must establish that what is inherent necessarily flows from the article, machine or method each and every time.

145.    Denied and objected to as to Claim 9 of the '997 Patent on the grounds asserted in response to Statement No. 142. As a matter of law, to establish inherency, the party asserting inherency must establish that what is inherent necessarily flows from the article, machine or method each and every time.

146.    Denied. The quoted portion of the Noiset patent, while apparently intended to serve as a comparison with Claim 10 of the '997 Patent, is taken out of context and, therefore, invalid. The Statement is also objected to in that no specific feature alleged to be inherently disclosed in the Noiset Patent is identified in the Statement with the particularity required to admit or deny. Moreover, Local Civil Rule 56 (a)(3) requires that every statement of material fact must be followed by a citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. No testimony or evidence of any kind (such as tests, etc.) has been proferred to support the theory of inherency in this Statement. As a matter of law, to establish inherency, the party asserting inherency must establish that what is inherent necessarily flows from the article, machine or method each and every time.

147.    Denied and objected to as to Claim 11 of the '997 Patent on the grounds asserted in response to Statement No. 146.

148.    Denied and objected to as to Claim 14 of the '997 Patent on the grounds asserted in response to Statement No. 146.

149.    Denied and objected to as to Claim 15 of the '997 Patent on the grounds asserted in response to Statement No. 146.

150.    Denied and objected to as to Claim 16 of the '997 Patent on the grounds asserted in response to Statement No. 146.

## II.    Plaintiff's Local Rule 56(a)2 Statement Of Material Fact As To Which There Is A Genuine Issue To Be Tried

1.    The '997 patent is directed specifically to a non-heat sealable fibrous web material for making infusion packages, such as tea bags, having folded and crimped seams. (See. Exh. A, col. 3, lines 27-32; Malcolm Decl. Para. 20).

2.    Heat sealable webs differ in kind from non-heat sealable webs. These two types of materials are not interchangeable and have never been used interchangeably. (See Malcolm Decl. para. 22; Farrell's Email, Tab F)

3.    The term "hydrophobic treating system" was amended to the phrase "*a hydrophobic treating system comprising a cured hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials*", in response to the Examiner's rejection during the prosecution of the '997 patent. (File History, Tab E, page 44)

4.    The term "high molecular weight" was implicitly or inherently disclosed in the initial application for the '997 patent as filed. (File History, Tab E, page 49-50)

5.    High molecular weight acrylate polymers were discussed in distinguishing

18

the invention in the '997 patent from the Kelley patent during the prosecution of the '997 patent. (File History, Tab E, page 52-55)

6. The entire content of the Kelley patent was considered in the examination of the application for the '997 patent as indicated by the Examiner. (Tab E, page 38)

7. The entire content of the Noiset patent was considered in the examination of the application for the '997 patent as indicated by the Examiner. (Tab E, page 38)

8. The claims in the '997 patent's European counterpart patent (the "European counterpart") as initially issued are substantially different in scope from the claims in the '997 patent. (Exh. A., Claims 1 and 10; Tab A, Claims 1 and 12. Donnan Decl. Exh. D)

9. The EPO allowed the European counterpart to issue over the Yadlowsky application and the Noiset patent. (Donnan Decl., Exh. D).

10. The EPO Opposition Division subsequently ruled that the European counterpart remained in force over the Kelley patent, the Yadlowsky application and the Noiset patent with amended claims. (Decision of Opposition Div., Donnan Decl. Exh. D)

11. At no time did Plaintiff admit that the subject matter of claim 1 in the European counterpart differs from the disclosure of the Kelley patent only in that the web is suitable for making mechanical seals whereas the web according to the Kelley patent is not. (See Donnan Decl.)

12. The Minutes of the EPO Opposition Division hearing are inadmissible hearsay. (Donnan Decl., par. 5)

13. The elements of Claim 1 of the '997 patent read as follows:

1. A fibrous web suited for making infusion packages for brewing beverages and exhibiting improved resistance to the failure of a mechanical seam therein,

19

said web comprising (first element)

    a porous fibrous sheet material (second element)

    impregnated throughout its extent with about one percent or more by weight (third element)

    of a hydrophobic treating system comprising a cured hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials (fourth element)

    the impregnated sheet material exhibiting no appreciable water climb when measured using water at a temperature of about 100 °C and (fifth element)

    no substantial loss of infusion characteristics (sixth element)

    while providing less than 10 percent failure in the mechanical seam upon exposure to boiling water. (seventh element) (Tab A, Claim 1)

14. With respect to the first element, the '997 patent states that "The web are of the nonheat-seal variety an require mechnical fastening, i.e., folding and crimping, for the formation of the tea bag. (Tab A, col. 3, lines 27-29).

15. With respect to the claim term "high molecular weight" in the fourth element of Claim 1, it refers to acrylic polymers having a molecular weight about 500,000 or higher on the average. This term is inherently defined in the patent by referring to the B. F, Goodrich Company's product HYCAR 26-315 and 26-373. (Tab A, Col. 4, line 20.)

16. With respect to the fifth element of claim 1, it is *not* inherent from the formation of a fibrous web suited for making infusion packages for brewing beverages

20

and exhibiting improved resistance to the failure of a mechanical seam and impregnated with throughout its extent with about one percent or more by weight of a hydrophobic treating system comprising a cured hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials. (Malcolm Decl. Para. 27.)

17. With respect to the sixth element of claim 1, it is *not* inherent from the formation of a fibrous web suited for making infusion packages for brewing beverages and exhibiting improved resistance to the failure of a mechanical seam and impregnated with throughout its extent with about one percent or more by weight of a hydrophobic treating system comprising a cured hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials. (Malcolm Decl. Para. 27.)

18. With respect to the seventh element of claim 1, it is *not* inherent from the formation of a fibrous web suited for making infusion packages for brewing beverages and exhibiting improved resistance to the failure of a mechanical seam and impregnated with throughout its extent with about one percent or more by weight of a hydrophobic treating system comprising a cured hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials. (Malcolm Decl. Para. 27.)

19. The Kelley patent requires a two component adhesive binder adapted to be heat sealed. (Tab C, col. 1, lines 29-45).

20. The Kelley patent states that one of the two components of the adhesive binder has a molecular weight in the range of about 150,000 to 300,000. (Tab C, col. 2,

lines 57-61.)

21.     A person of ordinary skill in the art would understand that the claim term "a hydrophobic treating system comprising a cured hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials" means that the hydrophobic agent used in the treating system must be chosen from the members of the group specified in this claim term. (Malcolm Decl. Para. 21.)

22.     A person of ordinary skill would not expect a high molecular polymer described in the Kelley patent to adequately perform in a folded and crimped mechanical seal of tea bags and in fact would expect such a seal to spring open and release the tea leaves. (Malcolm Decl. Para. 29.)

23.     The Kelley patent does not teach anything about a web for making infusion packages having folded and crimped seams. (Malcolm Decl. Para. 30.)

24.     The Kelley patent does not teach anything about water climb of a web for making infusion packages having folded and crimped seams. (Malcolm Decl. Paras. 23 and 30.)

25.     The Kelley patent does not teach anything about infusion characteristics of a web for making infusion packages having folded and crimped seams. (Malcolm Decl. Paras. 23 and 30.)

26.     The Kelley patent does not teach anything about seam failure rate of a web for making infusion packages having folded and crimped seams. (Malcolm Decl. Paras. 23 and 30.)

27.     A person of ordinary skill in the art will not be able to practice the

22

invention described in the '997 patent following the teaching of the Kelley patent. (Malcolm Decl. Para. 34.)

28. The concept of "water resistant" in the Kelley patent refers to the wet strength of the paper and *not* to water absorbency of the paper referred to in the '997 patent. (Malcolm Decl. Para. 32.)

29. The Kelley patent provides no indication as to water repellency referred to in the '997 patent. (Malcolm Decl. Para. 32.)

30. The Yadlowsky application primarily refers to infusion packages made of heat sealable paper. (Exh. B at page 4, lines 13-15). A person of ordinary skill reading the Yadlowsky application would not consider it to be applicable to a mechanically sealed tea bag. By mechanically sealed I am referring to a folded and crimped seam for the tea bag. (Malcolm Decl. Para. 44; Tab D, page 4, lines 13-15.)

31. The Yadlowsky application also teaches that the content of the fluoro-chemical for coating the heat sealable web is no more than 0.6% by weight, typically 0.1 to 0.3%. (Exh. B at page 4, lines 19-24; Malcolm Decl. Para. 45; Tab D, page 4, lines 19-24.)

32. The Yadlowsky application stated that the fluorocarbon-sizing agent does not provide increased water-repellency to the infusion bag substrate. (Tab D at page 8, lines 1-5; Malcolm Decl. Para. 45.)

33. There is *no* teaching or suggestion in the Yadlowsky application that the use of such a fluoro-chemical would prevent seam failure of folded and crimped seams while maintaining infusion characteristics of crimped sealed tea bags. (Malcolm Decl. Para. 45.)

34. The Yadlowsky application does *not* describe how and in what amount of the silicone is to be applied to a tea bag paper to make a folded and crimped sealed tea bag having enhanced folded and crimped seams. (Malcolm Decl. Para. 48.)

35. The Yadlowsky application does *not* teach anything about water climb of a web for making infusion packages having folded and crimped seams. (Malcolm Decl. Paras. 23 and 48.)

36. The Yadlowsky application does *not* teach anything about infusion characteristics of a web for making infusion packages having folded and crimped seams. (Malcolm Decl. Paras. 23 and 48.)

37. The Yadlowsky application does *not* teach anything about seam failure rate of a web for making infusion packages having folded and crimped seams. (Malcolm Decl. Paras. 23 and 48.)

38. A person of ordinary skill in the art will *not* be able to practice the invention described in the '997 patent following the teaching of the Yadlowsky application. (Malcolm Decl. Para. 50.)

39. The Noiset patent is directed to the problem of seam failure in *heat sealed* tea bags. (Tab B at col.1, lines 34-35. Malcolm Decl. Para. 35.)

40. The Noiset patent teaches that the total surface area of the tea bag paper covered by the silicone is no greater than 40%. (Tab B, claim 4, lines 18-19, Malcolm Decl. Para. 36.)

41. The Noiset patent says nothing about the seam failure problem associated with folded and crimped seams. (Malcolm Decl. Para. 36.)

42. A person of ordinary skill would not consider the porosity test shown in

Table 1 in the Noiset patent as a teaching of treating the entire surface area of a tea bag paper with silicone for making tea bags, as it is inconsistent with the entire teaching of the Noiset patent which requires the web material to be treated at only partial and discrete areas. (Malcolm Decl. Para. 38.)

43. The paper used to run the porosity test in Table 1 in the Noiset patent is in the context of a heat-sealable variety. (Exh. C. at col. 4, lines 7-12 and col. 5, lines 10-44, Malcolm Decl., par. 38.)

44. There is *no* teaching or suggestion whatsoever in Noiset of treating the entire web of a non-heat sealable tea bag paper, particularly, no teaching or suggestion of treating the entire web of a folded and crimped tea bag paper. (Malcolm Decl. Para. 38.)

45. With respect to Table 1 in the Noiset patent, there is not enough information given to determine the actual percent pick-up of silicone based on the final paper weight and thus there is no explicit disclosure of a tea bag paper in which the entire surface area has been treated in an amount of 1% or more in the paper. (Malcolm Decl. Para. 39.)

46. The porosity test (Table 1) in the Noiset patent is relevant only to the gas release addressed in the Noiset patent, not infusion characteristics. (Malcolm Decl. par. 2.)

47. The Noiset patent does *not* teach anything about water climb of a web for making infusion packages having folded and crimped seams. (Malcolm Decl. Paras. 23 and 40.)

48. The Noiset patent does *not* teach anything about infusion characteristics of a web for making infusion packages having folded and crimped seams. (Malcolm Decl.

Paras. 23 and 40.)

49. The Noiset patent does *not* teach anything about seam failure rate of a web for making infusion packages having folded and crimped seams. (Malcolm Decl. Paras. 23 and 40.)

50. A person of ordinary skill in the art will *not* be able to practice the invention described in the '997 patent following the teaching of the Noiset patent. (Malcolm Decl. Para. 43.)

                                                    Respectfully submitted,

December 2, 2004                              Cohen, Pontani, Lieberman & Pavane

By /s/ Sidney R. Bresnick
Myron Cohen, Esq.
Sidney R. Bresnick, Esq. (ct 16295)
Yunling Ren, Esq.
551 Fifth Avenue
New York, NY 10176
Tel. 212-687-2770
Fax 212-972-5487
      -and-
McCarter & English, LLP
Basam E. Nabulsi, Esq. (ct 20897)
Four Stamford Plaza
107 Elm Street, 9th Floor
Stamford, CT 06902
Tel. 203-965-0601
Fax 203-323-6513

Attorneys for Plaintiff,
Ahlstrom Windsor Locks LLC