characteristics while providing less than 10 percent failure in the seam ('997 patent, claims 1 and 10). Adhesiveness is not a criterion for the purpose of the invention of the '997 patent. However, the Kelley patent requires that there must be enough of the *two* component binder to give the paper an adhesive property, which in my opinion is not suitable for the purpose of the '997 patent. (Exh. D at col.5, lines 18-21).

34. Thus, the conditions, such as the type of the materials used as a binder and the amount of such materials, under which the objectives of the Kelley invention are achieved are not necessarily the conditions suitable for the objectives of the '997 patent. A person of ordinary skill in the art would not be able to use the teachings of the Kelley patent, to make a tea bag paper exhibiting no appreciable water climb and no substantial loss of infusion characteristics while providing less than 10 percent failure in the folded and crimped seam in boiling water.

**B.     The Noiset Patent**

35. The Noiset patent is directed to the problem of seam failure in *heat sealed* tea bags. This seam failure problem results from the pressure buildup or the formation of gases inside the bag when the bag is exposed to boiling water. A film of water covers the pores in the tea bag paper and prevents the entrapped gases within the bag from escaping. (Exh. C. at col.1, lines 34-35).

36. Thus, the object of the invention in the Noiset patent is to provide a means by which the entrapped gases within the heat sealed tea bag can

escape without a reduction in the infusion rate of the tea bag. This is accomplished by applying silicone to discrete areas of the bag paper so that the silicone coated area will not form a water film which traps the gases and will remain open to provide a pathway for escape of entrapped gases. At the same time, the non-silicone coated area will allow water to pass through the paper so that the infusion rate will not be adversely affected. The total surface area of the tea bag paper covered by the silicone is no greater than 40%. Silicone is the only substance disclosed in the Noiset patent for this purpose. The Noiset patent explicitly teaches that 100% coverage of silicone is undesirable as such coverage causes loss of infusion characteristics. (Exh. C. at col. 4, lines 71 to col. 5, line 4). The Noiset patent says nothing about the seam failure problem associated with folded and crimped seams.

37. In contrast, the invention disclosed and claimed in the '997 patent is directed specifically to the seam failure problem in boiling water of tea bags having folded and crimped seams. The problem arises during the brewing step when the wetting of the crimped seam due to water absorption at the seam area occurs. This wetting weakens the strength of the seam. All claims of the '997 patent require that any applicable hydrophobic agent for inhibiting water absorption thereby preventing seam failure must be applied to the entire tea bag paper, i.e., 100% of the paper area. Thus, the Noiset patent teaches away from the invention of the '997 patent by directing the application of the silicone to only a partial

surface area of the web since 100% coverage reduces infusion rate.

38. The sole reference to the application of silicone to the entire web in the Noiset patent is found in Table 1, where Noiset, having determined that only a partial surface area of the tea bag paper should be treated with silicone, describes a porosity test to ascertain an appropriate amount of silicone to be applied to the *treated* surface area. This test is performed because excessive application of silicone can result in significant reduction in porosity and limit the ability of the treated areas to act as a gas vent. A person of ordinary skill would not consider this porosity test as a teaching of treating the entire surface area of a tea bag paper with silicone for making tea bags, as it is inconsistent with the entire teaching of the Noiset patent which requires the web material to be treated at only a partial and discrete area. It should also be noted that the paper used to run this test is in the context of a heat-seal variety. (Exh. C. at col. 4, lines 7-12 and col. 5, lines 10-44). The results of this test are therefore are not necessarily applicable to a non-heat sealable tea bag paper. There is *no* teaching or suggestion whatsoever of treating the entire web of a non-heat sealable tea bag paper, particularly, no teaching or suggestion of treating the entire web of a folded and crimped sealable tea bag paper.

39. In addition, it should be noted that the percentages of silicone given relate to concentration of silicone in the emulsion that is applied to the web and not the amount of silicone in the tea bag material itself. There is no explicit disclosure of the pick-up of silicone based on the final paper

18

weight and thus there is no explicit disclosure of a tea bag paper in which the entire surface area has been treated in an amount of 1% or more in the paper. Not enough information is given to determine the actual percent pick-up in the examples of Table 1.

40. Nowhere in the Noiset patent did the patentee mention no appreciable water climb or no substantial loss of infusion characteristics while providing less than 10 percent seam failure in boiling water. In the '997 patent, these characteristics are associated only with a non-heat sealable tea bag paper suited for making tea bags having folded and crimped seams, as set forth in the claims of the '997 patent.

41. Nevertheless, Defendants argue that those properties associated with the non-heat sealable tea bag paper of the '997 patent would be inherent from the teaching of Table 1 of the Noiset patent. Defendants provided neither factual support nor an explanation for their assertion. Based on my 40 years experience in the paper making industry, I believe that the teachings in the Noiset patent will not necessarily lead to the invention of the '997 patent.

42. The attempt by Defendants to correlate porosity changes in the air vents (silicone coated pores) shown in Table 1 with the change of infusion characteristics in the '997 patent is unrealistic, because they are two different physical characteristics and there is no direct relationship between the two. Air porosity deals with air movement through an opening while infusion deals with the movement of dissolved materials in

water through water saturated pores. The fact that the Noiset patent rejects the idea of covering the entire web with silicone, regardless of at what concentration silicone will applied, also suggests that this porosity test has nothing to do with infusion characteristics. It is relevant only to the gas release addressed in the Noiset patent.

43. I am of the opinion, therefore, that a person of ordinary skill in the art, following the teaching of the Noiset patent, would not be able to make a tea bag paper as specified by the claims of the '997 patent.

C. **The Yadlowsky application**

44. The Yadlowsky application teaches a method of preventing the absorption of flavor oils into the fibers of an infusion bag by coating the fibers with a water-soluble fluoro-chemical sizing agent. This application primarily refers to infusion packages made of heat sealable paper. (Exh. B at page 4, lines 13-15). A person of ordinary skill reading the Yadlowsky application would not consider it to be applicable to a folded and crimped sealed tea bag. The Yadlowsky application specifically refers to 'heat sealing the infusion bag material by the use of heat sealable binders and/or heat sealable fibers or films." Stitching is the only other method specifically mentioned. Yadlowsky refers primarily to packages produced with heat sealable paper. The only example, which is found on page 8, refers to Dexter paper grade #3968, which, I have been informed, is a heat sealable paper. Therefore, one of ordinary skill would not be expected to consider the use of other sealing means, such as a folded and crimped

20

seam in the context of this disclosure.

45. The Yadlowsky application also teaches that the content of the fluoro-chemical for coating the heat sealable web is no more than 0.6% by weight, typically 0.1 – 0.3%. (Exh. B at page 4, lines 19-24). In addition, it is directly stated that the fluorocarbon-sizing agent does not provide increased water-repellency to the infusion bag substrate. (Exh. B at page 8, lines 1-5). There is no teaching or suggestion in the Yadlowsky application that the use of such a fluoro-chemical would prevent seam failure of a folded and crimped seams while maintaining infusion characteristics of crimped sealed tea bags.

46. As discussed above, the claims of the '997 patent are directed solely to tea bag paper suited for making folded and crimped seals rather than heat seals. The claims require that any hydrophobic agent impregnated throughout the paper must be at least 1% by weight or more than twice the amount suggested in Yadlowsky. The '997 patent also requires a degree of hydrophobicity defined by the water climb test.

47. Thus, the Yadlowsky application fails to meet at least the claim requirements for the non-heat sealable web and the minimum amount of the hydrophobic treating agent when using the fluoro-chemical alone as a coating agent.

48. Even if a silicone is "employed in conjunction with" the fluoro-chemical to treat the web as suggested by Yadlowsky in reference to the Noiset patent (Exh. B at page 8, lines 5-9), the Yadlowsky application still fails

21

to teach each and every requirement of the claims of the '997 patent. Neither the Yadlowsky application nor the Noiset patent describes how and in what amount of the silicone is to be applied to a tea bag paper to make a folded and crimped sealed tea bag having enhanced folded and crimped seams. Like the Kelley and Noiset patent, nowhere in the Yadlowsky application did the patentee mention the water climb, infusion characteristics and seam failure properties of the non-heat sealable tea bag paper for making the crimped sealed tea bags as given in the claims of the '997 patent.

49. Since both the Yadlowsky application and the Noiset patent address mainly heat sealable web materials, any properties resulting from the application of a hydrophobic agent to such heat sealable web materials are not necessarily the properties of the non-heat sealable web material as specified in the '997 patent.

50. In my opinion, a person of ordinary skill in the art, following the teaching of the Yadlowsky application will not be able to make a tea bag paper that meets the requirements of the claims in the '997 patent.

### VII. Comparison of the Claims of the '997 Patent with the Cited References

51. Plaintiff's counsel, Cohen Pontani Lieberman & Pavane, has also explained to me that claims 1 and 10 of the '997 patent are the only independent claims in the patent and that claims 2 through 9, as dependent from claim 1, must under the patent law contain all of the limitations of

22

claim 1. Similarly, claims 11 through 16, as dependent from claim 10, must contain all of the limitations of claim 10. Therefore, I have summarized claims 1 and 10 in the chart below with the understanding that if a cited reference does not include an element of claim 1 it also will not contain that the same element implicitly in claims 2 through 9. Similarly, if a cited reference does not have all of the elements of claim 10 it also will not contain that same element implicitly in claims 11 through 16.

52. The following chart summarizes my findings with respect to whether a person of ordinary skill would find each of the elements of claim 1 of the '997 patent in any of the three cited patent references:

| Claim 1 of the '997 patent | Yadlowsky | Kelley | Noiset |
|---|---|---|---|
| A fibrous web suited for making infusion packages for brewing beverages and exhibiting improved resistance to the failure of a mechanical seam therein, | No teaching or suggestion | No teaching or suggestion | No teaching or suggestion |
| said web comprising a porous fibrous sheet material | Infusion bag material for heat seal. | Nonwoven webs for heat seal. | Porous web material for heat seal. |

| | | | |
|---|---|---|---|
| impregnated throughout its extent with about one percent or more by weight of | "A fluoro-chemical sizing agent is subsequently added to the furnish at a level from about 0.05 to 0.6% fluoro-chemical sizing agent to dry furnish, ..." Exh. B at 6:19-24. | "When the polyblend is applied over the entire area, the amount of polymer that is applied may be from 20 to 100 percent by weight based on the weight of the dried fibers. Exh. D at 5:18-21. | No teaching or suggestion |
| a hydrophobic treating system comprising a cured hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials, | Fluoro-chemicals | "... a binder of adhesive composition is provided which comprises two essential components. The first ... is an aqueous dispersion of a polymer of ethyl acrylate having a low molecular weight. The second component ... is an aqueous dispersion of an emulsion polymer having an MFT of about 50 °C or higher." Id. at 1:37-44. | silicones |
| the impregnated sheet material exhibiting no appreciable water climb when measured using water at a temperature of about 100 °C. | No teaching or suggestion | No teaching or suggestion | No teaching or suggestion |
| and no substantial loss of infusion characteristics | No teaching or suggestion | No teaching or suggestion | No teaching or suggestion of infusion characteristics of folded and crimped |

24

|  |  |  |  |
|---|---|---|---|
|  |  |  | tea bags |
| while providing less than 10 percent failure in the mechanical seam upon exposure to boiling water. | No teaching or suggestion | No teaching or suggestion | No teaching or suggestion |

53. The following chart summarizes my findings with respect to whether a person of ordinary skill would find each of the elements of claim 10 of the '997 patent in any of the three cited patent references:

| Claim 10 of the '997 patent | Yadlowsky | Kelley | Noiset |
|---|---|---|---|
| A process for producing porous web materials for making infusion packages having enhanced mechanical seam integrity | No teaching or suggestion | No teaching or suggestion | No teaching or suggestion |
| comprising the steps of providing a porous absorbent web material suited for use as an infusion package, | Infusion bag material for heat seal. | Nonwoven webs for heat seal. | Porous web material for heat seal. |
| treating the entire web material | "Said treatment may be accomplished by addition of the fluoro-chemical sizing agent as a liquid suspension or emulsion during the infusioin bag stock, ..." Exh. B at 5: 24-33. | "When the polyblend is applied over the entire area, the amount of polymer that is applied may be from 20 to 100 percent by weight based on the weight of the dried fibers. Exh. D at 5:18-21. | No teaching or suggestion |

25

| | | | |
|---|---|---|---|
| with an aqueous emulsion of a hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials | Fluoro-chemicals | "... a binder of adhesive composition is provided which comprises two essential components. The first ... is an aqueous dispersion of a polymer of ethyl acrylate having a low molecular weight. The second component ... is an aqueous dispersion of an emulsion polymer having an MFT of about 50 °C or higher." Id. at 1:37-44. | Silicones |
| to provide a treated web that exhibits no appreciable water climb when measured using water at a temperature of about 100 °C. | No teaching or suggestion | No teaching or suggestion | No teaching or suggestion |
| and less than 10 percent failure in a mechanical seam therein when exposed to boiling water. | No teaching or suggestion | No teaching or suggestion | No teaching or suggestion |

## VIII. CONCLUSION

54. I find that neither the Kelley patent, nor the Yadlowsky application, nor the Noiset patent teaches, among other things, a fibrous web suited for making folded and crimped sealed tea bags, which has improved folded and crimped seams and exhibits no appreciable water climb when

26

measured using water at a temperature of about 100° C, and no substantial loss of infusion characteristics, while providing less than 10 percent failure in the folded and crimped seam upon exposure to boiling water.

55. I am also of the opinion that the combined prior art references fail to teach all of the limitations of the claims of the '997 patent. Moreover, there is no motivation or suggestion in these references to suggest to a person of ordinary skill in the art that they be combined. A person of ordinary skill in the art, who is confronted with the same problem as described in the '997 patent, would not be able to resolve the problem by combining two or more of the references. None of the three references even confronts the problem solved by the '997 patent. Moreover, there is no suggestion in any of the references for combining it with any other of the references in the same way as taught in the '997 patent.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 1, 2004.

_____
Earl W. Malcolm

# Exhibit A

US005431997A

# United States Patent [19]

Scott et al.

[11] Patent Number: 5,431,997
[45] Date of Patent: Jul. 11, 1995

[54] **PROCESS OF PRODUCING POROUS WEB MATERIALS USED FOR MAKING INFUSION PACKAGES FOR BREWING BEVERAGES AND THE WEB MATERIALS THUS PRODUCED**

[75] Inventors: Peter C. Scott, Enfield; Helen Viazmensky, South Windsor; Nicholas Wolcheck, Jr., Suffield, all of Conn.

[73] Assignee: The Dexter Corporation, Windsor Locks, Conn.

[21] Appl. No.: 86,673

[22] Filed: Jul. 1, 1993

[51] Int. Cl.$^6$ .............................................. B32B 27/00
[52] U.S. Cl. .................................... 428/290; 206/0.5; 426/77; 426/84; 428/289; 428/311.1; 428/311.7; 428/306.6; 428/308.8; 428/446; 428/449; 428/511
[58] Field of Search ............... 428/289, 290, 311.1, 428/311.7, 511, 446, 449, 306.6, 308.8; 426/77, 84; 206/0.5

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,852,795 | 9/1958 | Hermanson et al. | 15/131.1 |
| 3,174,889 | 3/1965 | Anderson et al. | 156/254 |
| 3,183,096 | 5/1965 | Hiscock | 99/77.1 |
| 3,373,043 | 3/1968 | Rubenstein | 99/77.1 |
| 3,386,834 | 6/1968 | Noiset et al. | 99/77.1 |
| 3,468,696 | 9/1969 | Conway | 117/62.1 |
| 3,616,166 | 10/1971 | Kelley | 161/148 |
| 3,881,987 | 5/1975 | Benz | 162/116 |
| 4,289,580 | 9/1981 | Elston et al. | 162/109 |
| 4,902,370 | 2/1990 | Dust et al. | 156/327 |
| 5,015,513 | 5/1991 | Newbold et al. | 428/35.5 |

Primary Examiner—James J. Bell
Attorney, Agent, or Firm—Chilton, Alix & Van Kirk

[57] **ABSTRACT**

A porous web material for making infusion packages having enhanced mechanical seam integrity is obtained by treating the entire fibrous web material with an aqueous emulsion of a hydrophobic agent selected from the group consisting of high molecular weight cross-linked acrylic polymers, silicones, fluorohydrocarbons, paraffins, alkyl ketene dimers and stearylated materials. The hydrophobic agent, which may also act as a strength imparting binder, is preferably applied as a saturating treatment. The treated web is subsequently dried to insolublize the agent on the web. The web exhibits no appreciable water climb when measured using water at a temperature of about 100° C. and no substantial loss of infusion characteristics while providing less than 10 percent failure in a mechanical seam therein when exposed to boiling water.

**16 Claims, No Drawings**

5,431,997

1

PROCESS OF PRODUCING POROUS WEB MATERIALS USED FOR MAKING INFUSION PACKAGES FOR BREWING BEVERAGES AND THE WEB MATERIALS THUS PRODUCED

BACKGROUND OF THE INVENTION

The present invention relates generally to fibrous web materials and more specifically is concerned with a process of producing porous web materials used for making infusion packages for brewing beverages, such as tea, coffee and the like and with the web materials thus produced.

It has generally been the practice in making individual cups of tea to either place the bag of tea or the like in a cup containing boiling water, or alternatively, to place the bag in an empty cup and subsequently add the boiling water. In either event, the tea bag generally tends to inflate and float to the top of the water for a time despite the high porosity of the infusion paper utilized in making the tea bags. This inflation or "ballooning effect" is generally attributable to entrapped gases and vapors within the bag that are unable to escape due to a very thin film of water surrounding the bag. The entrapped gases, both condensible and non-condensible, tend to build up a positive pressure within the bag, frequently causing opening of the seams of mechanically sealed bags, thus undesirably discharging the tea leaves into the brew and defeating the purpose of using the bag. In the mechanically sealed tea bags, the edges of the web material are brought together, folded a number of times, and the multiple fold is crimped to provide a mechanical seam securing the two edges of the web material. The mechanically sealed bags are to be distinguished from heat sealed bags where a heat seal material, usually present within the web, is subject to heat and pressure to form a heat sealed seam.

Although seam failure and leakage of tea leaves has been evidenced for some time, it has been noticed that the incidence of failure was higher when certain strength imparting binder systems were used in the infusion web material. For example, increased seam failure has been noted with binder systems using carboxy methyl cellulose (CMC) and a reaction product of epichlorohydrin and a polyamide sold under the trade name Kymene as compared with the viscose (cellulose xanthate) bonding system widely used prior thereto. Changing the binder to latex binder materials that impart comparable tensile strength to the web material, such as ethyl vinyl acetate, cross linked polyvinyl alcohol or polyvinyl chloride, appear to provide no improvement in seam integrity and may even result in significantly higher instances of seam failure and leakage.

The treatment of infusion web material in discontinuous areas with water repellent material is disclosed by Noiset et al in U.S. Pat. No. 3,386,834 as one way of minimizing the ballooning effect. The repellent treated areas are isolated spots covered from 0.1 to 40 percent of the surface of the infuser material. Additionally, Elston et al in U.S. Pat. No. 4,289,580 achieved improved infusion in heat seal tea bags when using synthetic pulp as the heat seal phase, provided that the heat seal phase is disrupted over 10 to 75 percent of the total exposed surface area. That patent notes the disadvantages with respect to infusion properties when the hydrophobic synthetic pulp phase is not disrupted. The permeability of the web material is reduced together

2

with its wettability, and the infusion is substantially retarded or inhibited.

SUMMARY OF THE INVENTION

In accordance with the present invention, it has been found that the above and related disadvantages can be avoided and mechanical seam integrity can be enhanced by treating the entire web material with a latex dispersion of a hydrophobic agent to provide a porous tea bag material which exhibits an extremely low absorbency and wettability as measured by standard water climb test procedures coupled with a retention of its infusion characteristics. The use of such material prevents the buildup of differential pressures on opposite sides of the web and facilitates the passage therethrough of condensible and noncondensible gases without adversely affecting the ability of such material to confine the dispersion of fine solid particles. The present invention achieves these characteristics by employing a hydrophobic treatment system that saturates and completely impregnates the entire web material. Although the use of a hydrophobic agent on the entire web material intended for use as an infusion material may be contraindicated, as set forth in Elston et al U.S. Pat. No. 4,289,580, it has been found in accordance with the present invention that infusion is not adversely impacted and resistance to mechanical seam failure is significantly enhanced.

Other features and advantages of the present invention will be in part obvious and in part pointed out more in detail hereinafter.

These and related advantages are achieved by providing an infusion web exhibiting improved resistance to the failure of a mechanically-crimped seam therein. The web consists of a porous fibrous sheet material impregnated throughout its extent with at least one percent by weight of a hydrophobic agent, preferably a strength imparting hydrophobic binder. Alternatively, a bonded web material may be impregnated throughout with a water repellent material. The impregnated sheet material advantageously exhibits no appreciable water climb when measured using water at a temperature of about 100° C. and no significant loss of infusion characteristics while providing less than 10 percent failure in the mechanical seam, and preferably no failure whatsoever, upon exposure to boiling water. A latex dispersion of the hydrophobic agent preferably is applied to the entire web as a saturating solution.

A better understanding of the invention will be obtain from the following detailed disclosure of the article and the desired features, properties, characteristics, and the relation of elements as well as the process steps, one with respect to each of the others, as set forth and exemplified in the description and illustrative embodiments.

DESCRIPTION OF A PREFERRED EMBODIMENT

Broadly, the present invention comprises a continuous, infuser web material impregnated throughout its extent with a hydrophobic agent, preferably in the form of a latex binder system. In order that the invention may be more clearly understood and for purposes of simplicity and brevity of discussion, the present invention will be discussed with relation to its use as tea bags and the like. The infuser tea bag webs are generally made of fibrous materials that are free from perforations or punctures yet possess a high degree of porosity and